UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY; RESTORE THE DELTA; and PLANNING AND CONSERVATION LEAGUE,

Plaintiffs,

v.

UNITED STATES BUREAU OF RECLAMATION; SCOTT DE LA VEGA, in his official capacity as Acting Secretary of the Interior; and UNITED STATES DEPARTMENT OF THE INTERIOR,

Defendants.

No. 1:20-cv-00706-DAD-EPG

ORDER GRANTING MOTION TO COMPEL JOINDER OF ABSENT CONTRACTORS; AND GRANTING UNOPPOSED MOTION TO AMEND

(Doc. Nos. 11, 14)

**BACKGROUND**

In this lawsuit, plaintiffs challenge the U.S. Bureau of Reclamation's ("Reclamation") conversion of certain existing long-term federal "water service" contracts into permanent "repayment" contracts[1] without first conducting *any* environmental review under the National Environmental Policy Act ("NEPA"). (Doc. No. 1.) Named as defendants in the initial complaint

[1] Specifically, the initial complaint, filed May 20, 2020, lists fourteen (14) contracts that had been "converted" as of February 28, 2020, as well as twenty-six (26) contracts that were in the process of being converted under the WIIN Act, for a total of forty (40) contracts. (Doc. No. 1 at ¶¶ 40–41.)

are Reclamation, as well as the U.S. Department of the Interior and Scott de la Vega,[2] the acting Secretary of the Interior (collectively, "federal defendants").

Reclamation has negotiated and executed the challenged repayment contracts pursuant to authority set forth in the 2016 Water Improvements for the Nation Act ("WIIN Act"), Pub. L. No. 114-322, 130 Stat 1628 (2016). According to plaintiffs, Reclamation asserts[3] that conversion of the water service contracts into permanent repayment contracts under the WIIN Act ("WIIN Act conversion contracts") is a non-discretionary act not subject to NEPA review. (*Id.* at ¶ 4.) Plaintiffs contend that Reclamation's position in this regard is untenable, citing various provisions of the WIIN Act and the Central Valley Project Improvement Act, Pub. L. No. 102–575, 106 Stat. 4600 (1992). (*See generally* Doc. 1.) Plaintiffs seek, among other remedies, a court order that would "vacate, set aside, and rescind Reclamation's contract conversions" and enjoin federal defendants from "taking any action pursuant to the contract conversions" or "converting any other contracts" until NEPA compliance is achieved. (Doc. No. 1 at 21.)

Before the court for decision are two motions. First, federal defendants move pursuant to Federal Rules of Civil Procedure 12(b)(7)[4] and 19 to compel joinder of the contractors whose converted contracts are being challenged. (Doc. No. 11.) In the alternative, federal defendants demand that plaintiffs drop their prayer for an order that would "void"[5] the converted contracts. (*Id.* at 6.) Plaintiffs oppose joining the absent contractors. (Doc. No. 13.) Federal defendants have filed a reply. (Doc. No. 18.)

/////

[2] Scott de la Vega is automatically substituted as a federal defendant in this action for David Bernhardt pursuant to Federal Rule of Civil Procedure 25(d).

[3] Reclamation has in fact already made this assertion in a related case. (*See N. Coast Rivers Alliance v. U.S. Dep't of the Interior*, No. 1:16-cv-00307-DAD-SKO, Doc. No. 100 at 2.)

[4] Federal defendants invoke Fed. R. of Civ. Pro. 12(b)(7), which permits any party to present by motion the defense of "failure to join a party under Rule 19" as the procedural mechanism for bringing this motion

[5] Plaintiffs' complaint does not actually use the word "void" but instead calls for the contracts to be "set aside" pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2).

In addition, plaintiffs move to amend their complaint to enumerate additional converted contracts and add claims under the Endangered Species Act ("ESA"). (Doc. No. 14.) Federal defendants have not filed any opposition to this motion. (*See* Doc. No. 19.)

**MOTION TO COMPEL JOINDER OF ABSENT CONTRACTORS**

**A. General Legal Standard Under Rule 19**

Federal Rule of Civil Procedure 19, which governs the circumstances under which persons must be joined as parties to a lawsuit, provides in relevant part:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> * * *
>
> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
>
> (B) shaping the relief; or
>
> (C) other measures;

> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

In applying Rule 19, "a court must undertake a two-part analysis: it must first determine if an absent party is 'necessary' to the suit; then if, as here, the party cannot be joined, the court must determine whether the party is 'indispensible' so that in 'equity and good conscience' the suit should be dismissed." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). "The inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application." *Id*. (internal citations and quotations omitted).

Here, no party suggests any of the absent contractors cannot be joined. Accordingly, the focus of the present dispute is whether those parties are "necessary" and therefore must be joined. As a result, the court need not struggle with whether the absent contractors are "indispensable" or, relatedly, whether dismissal is appropriate in their absence.

**B. The Absent Contractors Are "Necessary" Parties**

Under Rule 19(a)(1), a party may be deemed "required" (i.e. "necessary") under one of two circumstances. First, a party may be "required" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A); *Makah*, 910 F.2d at 558 ("First, the court must decide if complete relief is possible among those already parties to the suit."). Here, there is no suggestion that complete relief could not be accomplished in the absence of the absent contractors. Indeed, federal defendants do not even mention the "complete relief" prong of Rule 19(a)(1). (*See* Doc. Nos. 11, 18.)

Federal defendants do invoke the alternative prong of Rule 19(a)(1) which deems an absent party necessary if that party "has a legally protected interest in the suit." *Makah*, 910 F.2d at 558. "If a legally protected interest exists, the court must further determine whether that

/////

/////

/////

/////

interest will be impaired or impeded by the suit." *Id.* "Impairment may be minimized if the absent party is adequately represented in the suit." *Id.*[6]

1. Relevant Caselaw

Federal defendants focus on a line of cases that apply Rule 19 to various disputes involving contracts. (Doc. No. 11 at 5.) These cases stand for the general principle that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002). *Dawavendewa* concerned a lease between the Navajo Nation and the Salt River Project Agricultural Improvement and Power District ("SRP"), a power company that leased land from the Najavo Nation. *Id.* at 1153. The lease in question required the SRP to preferentially hire members of the Navajo Nation to work at the Navajo Generating Station ("NGS"). *Id.* Dawavendewa, a member of the Hopi Tribe, sought employment at NGS. *Id.* When he failed to secure employment there, Dawavendewa filed suit against SRP, accusing it of discriminating against him on the basis of his national origin in violation of federal civil rights laws. *Id.* at 1154. SRP moved to dismiss Dawavendewa's complaint for failure to join the Navajo Nation, an indispensable party that could not be joined due to its sovereign immunity. *See id.* Particularly relevant here, the Ninth Circuit reasoned that the Navajo Nation was "necessary" to the lawsuit because the suit concerned a "fundamental" bargained-for lease term designed to secure for the Navajo Nation employment opportunities and income for its reservation that could be "grievously impaired by a decision rendered in its absence." *Id.* at 1157.

The Ninth Circuit has drawn a line between cases such as *Dawevendewa*, where the nature of the suit threatens to "grievously impair" an existing contractual right, and circumstances in which a plaintiff is seeking only to enforce procedural requirements. "Although an absent party has no legally protected interest at stake in a suit seeking only to enforce compliance with administrative procedures, our case law makes clear that an absent party may have a legally

---

[6] Even if impairment is not expected, necessity may be found if the court determines that a risk of inconsistent rulings will affect the parties present in the suit. Fed. R. Civ. P. 19(a)(1)(B)(ii); *Makah*, 910 F.2d at 558–59. This alternative basis for a finding of necessity under Rule 19(a)(1)(B) is not at issue here.

protected interest at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 852 (9th Cir. 2019).

*Makah* provides an example of this distinction. In that case, the Makah Indian Tribe brought a suit challenging federal regulations allocating ocean harvest of migrating Columbia river salmon among various interest groups, including three other tribes. 910 F.2d at 557. The lawsuit also challenged the specific allocations made under those regulations for the 1987 harvest. *Id*. The Ninth Circuit held that the absent tribes were necessary parties to the extent the complaint sought re-allocation of the 1987 harvest, but were not necessary parties to the extent the complaint sought prospective injunctive relief against future decision-making under the challenged regulations. *Id*. at 559.

In contrast, in *Dine*, the Ninth Circuit considered a suit brought by a coalition of environmental organizations against agencies within the U.S. Department of the Interior after those agencies reauthorized coal mining activities on Navajo Nation land. *Id*. at 847–48. Plaintiffs alleged in *Dine* that the federal agency defendants violated both NEPA and the ESA by approving lease amendments and accompanying rights of way agreements between the Navajo Nation and power plant operators. *Id*. at 847. The Ninth Circuit held that the Navajo Nation was a necessary party to the suit because, if the plaintiffs succeeded in vacating the agency reauthorization decision, the Navajo Nation's interest in "the existing lease, right-of-way, and surface mining permits would be impaired." *Id*. at 853. This is because "[w]ithout the proper approvals, the [m]ine could not operate, and the Navajo Nation would lose a key source of revenue in which [it] has already substantially invested." *Id*. The Ninth Circuit indicated that the claims before it in *Dine* were distinguishable from the claims allowed to proceed in *Makah*,

/////

/////

/////

/////

/////

because in *Makah* the court could "tailor the scope of relief to being prospective only, preventing any impairment to a legally protected interest." *Id*.[7]

Following these general patterns, a district judge ruling in a related case in this district found that absent water contractors were necessary to a suit that sought to "invalidate, rescind, or enjoin" Reclamation's performance under water service contracts. *Nat. Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1186–87 (E.D. Cal. 2008). Another district judge in this same district found that absent water contractors were not necessary where plaintiffs declined to seek an order setting aside already-executed short-term water service contracts, but rather sought only to impose environmental review requirements on Reclamation's efforts to enter into future short-term water service contracts. *Pac. Coast Fed'n of Fishermen's Associations v. U.S. Dep't of the Interior*, 929 F. Supp. 2d 1039, 1062 (E.D. Cal. 2013) ("*PCFFA*").[8]

2. Necessity Analysis

In the instant case, plaintiffs appear to concede that a prayer to "set aside" a water service contract would ordinarily be considered an impairment of a legal right sufficient to render all parties to such a contract "necessary" for purposes of Rule 19. (*See* Doc. No. 13 at 45.) Instead, plaintiffs suggest that their effort to set aside the WIIN Act conversion contracts at issue in this case is distinguishable because (1) at least some of those contracts are not yet fully enforceable (*see* Doc. No. 13 at 4) and (2) if the WIIN Act conversion contracts were vacated, the absent contractors would continue to receive Central Valley Project water under their existing water service contracts (*id*. at 5).

---

[7] The court notes that *Makah*, *Dine*, and *Dawevendewa* all discuss issues of sovereign immunity in the context of determining whether absent tribes cannot be joined and therefore are "indispensable." *See Makah*, 910 F.2d at 559–60; *Dine*, 932 F.3d at 856; *Dawevendewa*, 276 F.3d at 1150. However, sovereign immunity did not drive those courts' determinations as to whether any absent party held a legally protected interest. As such, any attempt to distinguish those cases on the ground that sovereign immunity is not an issue in this case is misplaced.

[8] The district court in *PCFFA* somewhat conflated the necessity and indispensability analyses and therefore did not explicitly make a finding with regard to the issue of necessity. *See* 929 F. Supp. 2d at 1061–63. Nonetheless, in light of the fact that the plaintiffs in *PCFFA* were only requesting prospective injunctive relief against the execution of future contracts, *id*. at 1062, the holding in *PCFFA* is entirely consistent with the necessity rules articulated herein.

a. *Enforceability of the Disputed Contracts*

With regard to enforceability, plaintiffs correctly point out that many of the WIIN Act conversion contracts in dispute contain provisions that require "judicial confirmation" in state court, a step that (at least as of the date of plaintiffs' last brief) has not yet occurred. (Doc. No. 13 at 5; *see also* Doc. No. 13-1 at ¶ 5.) For example, one of the WIIN Act conversion contracts, executed on February 28, 2020, provides at Article 47:

> Promptly after the execution of this amended Contract, the Contractor will provide to the Contracting Officer a certified copy of a final decree of a court of competent jurisdiction in the State of California, confirming the proceedings on the part of the Contractor for the authorization of the execution of this amended Contract. This amended Contract shall not be binding on the United States until the Contractor secures a final decree.

Irrigation and M&I Contract No. 14-06-200-495A-IR1-P between Reclamation and Westlands Water District, available at https://www.usbr.gov/mp/wiin-act/docs/westlands-water-district.pdf (last visited February 15, 2021).

In theory, plaintiffs' argument could have some traction. In *Northern Alaska Environmental Center v. Hodel*, absent miners submitted mining plans and access permits to the National Park Service ("NPS") for review but had not yet received approval of those plans and permits. 803 F.2d 466, 469 (9th Cir. 1986). Environmental plaintiffs sued the reviewing agencies to enjoin any "further" approvals of mining plans. *Id*. Because the subject matter of the dispute concerned "NPS procedures regarding mining plan approval," the Ninth Circuit reasoned that, although the miners were certainly "interested" in how stringent those requirements would be, "miners with *pending* plans have no legal entitlement to any given set of procedures," and therefore did not have to be joined to the suit. *Id*. (emphasis added).

However, as a matter of contract law, the present case is not truly analogous to *Northern Alaska* because the WIIN Act conversion contracts have already been executed. As mentioned, plaintiffs suggest that the court should disregard any legal rights created by a WIIN Act

/////

/////

/////

conversion contract even if executed, so long as that contract contains a validation[9] clause and has not yet been validated.[10] (*See* Doc. No. 13 at 4.) This requires the court to interpret the terms of a federal contract, a process that is governed by "federal common law" (sometimes referred to as "federal contract law"), *United States v. Westlands Water Dist*., 134 F. Supp. 2d 1111, 1135 (E.D. Cal. 2001), which in turn looks to the Restatement of Contracts, *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1163 (9th Cir. 2015) (explaining that courts "often look to the ... Restatement when deciding questions of federal common law") (internal citation and quotation omitted). Applying the Restatement, at least one appellate court has found that even when an executed water repayment contract *may be voidable* by one party, this *does not mean that it is void*. As the Eighth Circuit explained in *Concerned Irrigators v. Belle Fourche Irrigation District*, "[f]ederal law gives the United States authority to enter into repayment contracts with irrigation districts, but specifies that these contracts are not 'binding on the United States until the proceedings on the part of the district for the authorization of the execution of the contract with the United States shall have been confirmed by decree of a court of competent jurisdiction, or pending appellate action if ground for appeal be laid.' 43 U.S.C. § 511 (1994)." 235 F.3d 1139, 1144 (8th Cir. 2001). The Eighth Circuit reasoned that "[e]ven if the United States is not bound by the [ ] contract because it was not judicially confirmed, the contract is not necessarily invalid." *Id.* (citing Restatement (Second) of Contracts § 7 & cmt. a (1979) (where a party has the power to avoid the legal relations created by a contract, that contract is voidable but not void)). In *Concerned Irrigators*, the Eighth Circuit enforced the terms of a repayment contract against third party landowners within the contracting irrigation district, even though the contract had not been judicially confirmed because there was "no evidence that the United States has ever attempted to escape any obligation created by the

---

[9] As federal defendants point out, not all of the WIIN Act conversion contracts challenged in this case contain a validation clause because validation is only required for irrigation district contractors, not for municipal and industrial contractors. (Doc. No. 18 at 3 n. 3 (citing 43 U.S.C. § 511).)

[10] The court will assume for purposes of this order that the challenged WIIN Act conversion contracts in this case that do contain a validation clause have not yet been validated. No party has suggested to the contrary.

contract." *Id*. In a nutshell, that contract, although potentially voidable by the United States, was not void. *See id*.

Here, as of the date of this order, there is no allegation or other suggestion that the United States disclaims its contractual obligations to the absent contractors. In fact, the instant motion, which explicitly argues that the WIIN Act conversion contracts create legally enforceable rights, belies any such suggestion, as does the letter from Reclamation to one contractor attached to Reclamation's reply brief. (*See* Doc. 18-2 (Reclamation "confirm[ing] its understanding that the [contractor's] inability to obtain a validation judgment does not render the Repayment Contract void.").)[11] The holding in *Concerned Irrigators* therefore supports a finding that the WIIN Act conversion contracts can create legal rights even in the absence of judicial confirmation.

b. *Legally Protected Interest/Impairment of Interest*

With the above conclusion in mind, the question becomes whether the executed WIIN Act conversion contracts afford the absent contractors a legally protected "interest" sufficient to trigger a finding of necessity under Rule 19(a)(1)(B). As mentioned, the WIIN Act conversion contracts are "repayment" contracts that, unlike "water service" contracts, allow contractors to prepay the repayment obligation imposed by Reclamation law, which in turn can reduce annual payments to Reclamation; these contracts also provide significant opportunities for relief from certain other requirements of Reclamation law, including acreage limitations. *See* WIIN Act, Pub. L. No. 114-322 § 4011(a), (c)(1), 130 Stat. at 187880. These bargained-for terms are no less "fundamental" than the lease terms designed to ensure employment opportunities and income for Navajo Nation members at issue in *Dawavendewa*. 276 F.3d at 1157. Moreover, the benefit of those bargained-for terms unique to a repayment contract could be "grievously impaired" if, as a result of this case, the court were to "set aside" those repayment contracts. *See id*. at 1157.

Plaintiffs relatedly suggest that the absent contractors' interests would not be significantly impaired because, if plaintiffs "obtain their requested relief, and Reclamation's conversions of existing contracts are vacated, the Contractors would continue to receive CVP water under their

---

11 The court expresses no opinion on whether the United States could change its position as to the enforceability of unvalidated contracts.

existing contracts." (Doc. No. 13 at 5.) This argument, however, does not account for the above-discussed unique and valuable provisions contained within a WIIN Act conversion contract. *See Dawavendewa*, 276 F.3d at 1157 (suggesting that the impairment analysis must focus on the interests unique to the bargained-for agreement at risk).

Before concluding whether the identified legally protected interest exists would be impaired or impeded by the suit, the court must examine whether any such impairment could be minimized "if the absent party is adequately represented in the suit." *See Makah*, 910 F.2d at 558 (internal citation and quotation omitted). "In assessing an absent party's necessity under [Rule] 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under [Rule] 24(a)." *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992). The Ninth Circuit uses the following three-step inquiry to determine if a non-party is adequately represented by existing parties:

> A non-party is adequately represented by existing parties if: (1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect.

*Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153–54 (9th Cir. 1998) (citing *Shermoen*, 982 F.2d at 1318). Here, as was the case in *Kempthorne*, federal defendants "cannot adequately represent the interests of absent contractors because they represent the government and a broad set of interests that are not the same as public or private water contractors." 539 F. Supp. 2d at 1187–88.

For these reasons, the court concludes that the absent contractors are "required to be joined" under Rule 19(a)(1)(B)(i) because they "claim[ ] interest[s] relating to the subject of the action and [are] so situated that disposing of the action in [their] absence may as a practical matter impair or impede [their] ability to protect [that] interest."

/////

/////

### C. The Public Rights Exception Does Not Bar a Finding of Necessity

There is a "public rights exception" to Rule 19's joinder requirements. "Under this exception, even if [the absent party is a] necessary party, [the absent party is] not deemed indispensable, and, consequently, dismissal is not warranted." *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (citing *Makah*, 910 F.2d at 559 n. 6). Generally, to fall within the public rights exception, "the litigation must transcend the private interests of the litigants and seek to vindicate a public right." *Id.* (internal citation omitted). For the exception to apply, the litigation must not "destroy the legal entitlements of the absent parties." *Id.* (citations omitted) (finding the public rights exception inapplicable in that case because rights of absent parties under lease agreements "could be significantly affected" if the action proceeded in their absence).

However, the public rights exception does not operate as an exception to a finding of "necessity." Rather, it operates to exempt claims from being dismissed due to an absent party otherwise being deemed indispensable. *Id.* Here, because no party suggests the absent contractors are indispensable, the public rights exception is inapplicable.

In sum, the absent contractors must be joined if plaintiffs seek to set aside the executed WIIN Act conversion contracts. Assuming plaintiffs retain this prayer for relief, any amended complaint must name the contractors that are parties to the challenged contracts. The long history of related challenges to CVP contracts indicates that these parties would participate one way or another, whether joined by way of Rule 19 or intervening by way of Rule 24. As this court has indicated in related cases, the undersigned will not tolerate duplicative briefing and will not allow the numerosity of parties to multiply the proceedings in ways that will effectively deny plaintiffs access to this forum.

## MOTION TO AMEND

As noted at the outset, plaintiffs have moved to amend their complaint to challenge additional contracts and add claims for relief under the ESA. (Doc. No. 14.) Federal defendants have taken no position on this motion. (*Id.* at 3.) Good cause appearing and in light of the fact that the Federal Rules favor granting leave to amend "freely," the motion will be granted, subject to the instant ruling on the motion to compel joinder.

**CONCLUSION AND ORDER**

For the reasons set forth above:

(1) Federal defendants' motion to compel joinder of the absent contractors (Doc. No. 11) is GRANTED; and

(2) Plaintiffs' motion to amend (Doc. No. 14) is GRANTED.

Plaintiffs shall file any amended complaint within forty-five (45) days of service of this order.

IT IS SO ORDERED.

Dated: **February 15, 2021**

UNITED STATES DISTRICT JUDGE