Jennifer T. Buckman, SBN 179143
Holly J. Jacobson, SBN 281839
Bartkiewicz Kronick & Shanahan, PC
1011 Twenty-Second Street
Sacramento, California 95816-4907
Telephone: (916) 446-4254
Facsimile: (916) 446-4018
E-Mail: jtb@bkslawfirm.com

Attorneys for City of Folsom, City of Orange Cove, City of Roseville, City of Tracy, El Dorado Irrigation District, Orland-Artois-Water District, and Westside Water District

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, RESTORE THE DELTA, and PLANNING AND CONSERVATION LEAGUE<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES BUREAU OF RECLAMATION; DEB HAALAND, in her official capacity as Secretary of the Interior; and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Federal Defendants,<br><br>CITY OF FOLSOM, et al.,<br>Defendants. | Case No.  1:20-cv-00706-DAD-EPG<br><br>JOINT STATEMENT OF UNDISPUTED FACTS<br><br>FAC Filed:     April 2, 2021<br><br>Hon. Dale A Drozd |

Bartkiewicz, Kronick & Shanahan, PC
www.bkslawfirm.com

{00255585.1}

**JOINT STATEMENT OF UNDISPUTED FACTS**

Consistent with the Stipulation of the Parties, the Parties submit the following Joint Statement of Undisputed Facts to facilitate the Court's consideration of Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motions for Summary Judgment in the absence of an administrative record.

1.     In 2016, Congress passed the Water Infrastructure Improvements for the Nation Act (WIIN Act), Pub. L. No. 114-322, 130 Stat. 1628 (2016) (codified at 42 U.S.C. § 6945(d)). On December 16, 2016, President Barack Obama signed the WIIN Act into law.

2.     The Secretary of the Interior delegated authority to convert the contracts to the United States Bureau of Reclamation.

3.     Reclamation decided that the WIIN Act did not provide it with sufficient discretion to require environmental review under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321 et seq., or consultation under Section 7 of the Endangered Species Act of 1973 (ESA), 16 U.S.C. §§1531 et seq.

4.     The Central Valley Project (CVP) contracts listed in Table A, which is attached as Appendix 1 to this Statement of Undisputed Facts, have been converted into repayment contracts.

5.     As of September 13, 2021, the public comment period concluded for the 8 CVP contracts listed in Table B:

**Table B**

| Contractor | Contract No. | Acre-Feet Per Year |
|---|---|---|
| County of Fresno | 14-06-200-8292A-IR17 | 3,000 |
| County of Tulare | 14-06-200-8293A-IR17 | 5,308 |
| Hills Valley Irrigation District | 14-06-200-8466A-IR17 | 3,346 |
| Kern-Tulare Water District | 14-06-200-8367A-IR17A | 13,300 |
| Kern-Tulare Water District | 14-06-200-8601A-IR17 | 40,000 |

| | | |
|---|---|---|
| Lower Tule River Irrigation District | 14-06-200-8237A-IR17 | 31,102 |
| Pixley Irrigation District | 14-06-200-8238A-IR17 | 31,102 |
| Tri Valley Water District | 14-06-200-8565A-IR17 | 1,142 |

6.     The CVP contracts listed in Table C have been released for public review, and it is anticipated these repayment contracts will be executed before the end of December:

**Table C**

| Contractor | Contract No. | Acre-Feet Per Year |
|---|---|---|
| City of Lindsay | 5-07-20-W0428-LTR1 | 2,500 |
| City of Orange Cove | 14-06-200-5230-LTR1 | 1,400 |
| City of Tracy | 14-06-200-7858A-IR1 | 20,000 |
| County of Madera | 14-06-200-2406A-LTR1 | 200 |
| International Water District | 14-06-200-585A-LTR1 & Amend | 1,200 |
| Kirkwood Water District | 7-07-20-W0056-LTR1 | 2,100 |
| Laguna Water District | 2-07-20-W0266-LTR1 | 800 |
| The Coelho Family Trust | 14-06-200-7859A-LTR1 | 2,080 |

7.     Reclamation did not prepare or issue an Environmental Impact Statement (EIS) on the conversion of these CVP contracts.

8.     Reclamation did not prepare or issue an Environmental Assessment (EA) on the conversion of these contracts, and has not made a finding of no significant impact or issued a notice of categorical exclusion.

9.     Reclamation has not published a NEPA notice of intent in the Federal Register with respect to the CVP contracts it converted.

10.     Reclamation did not initiate and complete consultation with the U.S. Fish and Wildlife Service (FWS) or the National Marine Fisheries Service (NMFS) under the ESA on the conversions of the contracts.

BARTKIEWICZ, KRONICK & SHANAHAN, PC
WWW.BKSLAWFIRM.COM

11.     Reclamation did not prepare a Biological Assessment under the ESA on the conversion of the contracts.

12.     On its webpage listing the WIIN Act contracts, at https://www.usbr.gov/mp/wiin-act/negotiated-conversion-contracts.html, Reclamation uses the title "Negotiated Draft Conversion Contracts."

13.     Reclamation did not make any NEPA or ESA document on the contract conversions available for public review and comment.

14.     Reclamation made the draft contracts available for public review and comment under the federal reclamation law.

15.     All three Plaintiffs submitted or joined in comment letters to Reclamation dated January 7, February 15, April 22, April 27, August 7, August 20, August 31, October 2 and 6, December 15, 2020, and March 1, 2021. Plaintiff Restore the Delta also submitted separate comment letters dated January 6 and 7, 2020. Plaintiffs Planning and Conservation League and Restore the Delta also submitted comment letters dated January 6, and October 6, 2020.[1]

16.     Plaintiffs submitted a 60-day notice letter to Reclamation on August 10, 2020, pursuant to 16 U.S.C. § 1540(g).

17.     Deliveries of CVP water are accomplished by diversions from rivers and the Delta, and there are instances when diversions have adverse environmental impacts.

18.     There are circumstances and instances where pumping of water from the Bay-Delta entrains fish and alters hydraulic flow patterns in the Delta.

19.     In some instances, the CVP can have adverse environmental effects and can harm fish and/or reduce freshwater flows.

20.     The Sacramento River Winter-Run Chinook Salmon is listed as an Endangered species under the ESA. 50 C.F.R. § 17.11. Critical habitat for the species was designated to include the Sacramento River extending from the River Mile 0 near the Delta to River Mile 302.

---

[1]  The Parties are not submitting copies of Plaintiffs' comment letters (¶¶ 15-16) at this time, but will do so if those documents prove necessary to resolve the arguments raised by the briefing.

BARTKIEWICZ, KRONICK & SHANAHAN, PC
WWW.BKSLAWFIRM.COM

BARTKIEWICZ, KRONICK & SHANAHAN, PC
WWW.BKSLAWFIRM.COM

50 C.F.R. § 226.204. The Central Valley Spring-Run Chinook Salmon is listed as a Threatened species under the ESA. 50 C.F.R. § 17.11. Critical habitat for the species was designated to include portions of the Sacramento River within the CALWATER Hydrologic Unit known as "Sacramento Delta Hydrologic Unit." 50 C.F.R. § 226.211(k)(5)(i). The Central Valley Steelhead is listed as Threatened under the ESA. 50 C.F.R. § 17.11. Critical habitat for the species was designated to include portions of the Sacramento River within the CALWATER Hydrologic Unit known as "Sacramento Delta Hydrologic Unit." 50 C.F.R. § 226.211(l)(5). The Southern Distinct Population Segment of North American Green Sturgeon is listed as Threatened under the ESA. 50 C.F.R. § 17.11. Critical habitat for this species is designated to include the Sacramento–San Joaquin Delta including all waterways up to the elevation of mean higher high water within the area defined in California Water Code Section 12220, except certain areas that were specifically excluded. 50 C.F.R. § 226.219(a)(3). The Delta Smelt is listed as Threatened under the ESA. 50 C.F.R. § 17.11. Critical habitat for the species was designated to include specified portions of "the existing contiguous waters contained within the Delta, as defined by section 12220, of the State of California's Water Code." 50 C.F.R. § 17.95–e–Fishes–Part 2.

21.     Defendants do not contest Plaintiffs' standing to bring the claims presented by their Motion for Summary Judgment.

22.     The repayment contracts do not have an expiration date and "continue so long as the Contractor pays applicable Rates and Charges" under the contract, consistent with Section 9(d) or 9(c)(l) of the Act of August 4, 1939 (53 Stat. 1195) as applicable, and other applicable law.

23.     Attached as Exhibit 1 is a true and correct copy of Westlands Water District's converted contract, which is a contract for irrigation water supply under section 9(d) of the Reclamation Act of August 4, 1939 (1939 Act) that was converted from a Section 9(e) contract pursuant to Section 4011(a)(1)(A) of the WIIN Act.

24.     Attached as Exhibit 2 are true and correct copies of the initial Interim Renewal Contract ("IRC") between the United States and Westlands Water District, 14-06-200-495A-IR1,

1    and the subsequent IRC that was in effect when Westlands' Repayment Contract with the United

2    States was signed on February 28, 2020, 14-06-200-495A-IR6.

3          25.    Attached as Exhibit 3 is a true and correct copy of El Dorado Irrigation District's

4    converted contract, which is a contract for municipal water supply under section 9(c)(1) of the

5    1939 Act that was converted from a 9(c)(2) contract under Section 4011(a)(1)(B) of the WIIN

6    Act.

7          26.    Attached as Exhibit 4 is a true and correct copy of El Dorado Irrigation District's

8    long-term water service contract as it existed prior to conversion.

9          Respectfully submitted,

10

11   Dated:  October 5, 2021          JOHN BUSE
                                      ROSS MIDDLEMISS
12

13                                      _/s/ John Buse_____

14                                    Attorneys for Plaintiff
                                      CENTER FOR BIOLOGICAL DIVERSITY
15   Dated:  October 5, 2021          LAW OFFICE OF E. ROBERT WRIGHT
                                      LAW OFFICE OF ADAM KEATS, PC
16

17

18                                      _/s/ E. Robert Wright_____
                                      Attorneys for Plaintiffs
19                                    RESTORE THE DELTA AND PLANNING AND
                                      CONSERVATION LEAGUE
20

21   Dated:  October 5, 2021          UNITED STATES DEPARTMENT OF JUSTICE
                                      JEAN E. WILLIAMS,
22                                    Deputy Assistant Attorney General
                                      DAVID W. GEHLERT
23                                    JEFFREY CANDRIAN

24

25                                      _/s/ David W. Gehlert_____
                                      Attorneys for Federal Defendants
26                                    UNITED STATES BUREAU OF
                                      RECLAMATION, DEB HAALAND, in her
27                                    official capacity as Secretary of the Interior,
                                      UNITED STATES DEPARTMENT OF THE
28                                    INTERIOR

{00255585.1}                    5
                  JOINT STATEMENT OF UNDISPUTED FACTS

1

2

Dated:  October 5, 2021

YOUNG WOOLDRIDGE, LLP
ALAN FREDERICK DOUD

3

4

___/s/ Alan A. Doud_____
Attorneys for Defendants
DEL PUERTO WATER DISTRICT,
JAMES IRRIGATION DISTRICT,
RECLAMATION DISTRICT 1606,
HILLS VALLEY IRRIGATION DISTRICT,
KERN-TULARE WATER DISTRICT

5

6

7

8

9

Dated:  October 5, 2021

HANSON BRIDGETT LLP
ADAM W. HOFMANN

10

11

12

___/s/ Adam W. Hofmann_____
Attorneys for Defendant
SANTA CLARA VALLEY WATER DISTRICT

13

14

Dated:  October 5, 2021

DOWNEY BRAND LLP
REBECCA A. SMITH

15

16

17

18

19

20

21

22

23

24

25

26

27

___/s/ Rebecca A. Smith_____
Attorneys for Defendants
SACRAMENTO MUNICIPAL UTILITY
DISTRICT, CITY OF SHASTA LAKE,
MOUNTAIN GATE COMMUNITY SERVICES
DISTRICT, SHASTA COMMUNITY SERVICES
DISTRICT, 4-M WATER DISTRICT, BELLA
VISTA WATER DISTRICT, COLUSA
COUNTY WATER DISTRICT, CORNING
WATER DISTRICT, DUNNIGAN WATER
DISTRICT, GLIDE WATER DISTRICT,
KANAWHA WATER DISTRICT, LA GRANDE
WATER DISTRICT, CENTERVILLE
COMMUNITY SERVICES DISTRICT, DAVIS
WATER DISTRICT, GLENN VALLEY WATER
DISTRICT, MYERS-MARSH MUTUAL
WATER COMPANY, HOLTHOUSE WATER
DISTRICT, PROBERTA WATER DISTRICT,
CLEAR CREEK COMMUNITY SERVICES
DISTRICT, COUNTY OF COLUSA, CORTINA
WATER DISTRICT AND LAGRANDE WATER
DISTRICT

28

1  Dated:  October 5, 2021                    BARTIKIEWICZ, KRONICK & SHANAHAN
                                              JENNIFER THOMPSON BUCKMAN
2

3                                             ___/s/ Jennifer T. Buckman_____
                                              Attorneys for Defendants
4                                             CITY OF FOLSOM, CITY OF ROSEVILLE,
                                              ORLAND-ARTOIS WATER DISTRICT,
5                                             WESTSIDE WATER DISTRICT, EL DORADO
                                              IRRIGATION DISTRICT, CITY OF TRACY,
6                                             AND CITY OF ORANGE COVE
7

8  Dated:  October 5, 2021                    ORRICK, HERRINGTON & SUTCLIFFE LLP
                                              CYNTHIA J. LARSEN
9

10                                            ___/s/ Cynthia J. Larsen_____
11                                            Attorney for Defendants
                                              WESTLANDS WATER DISTRICT,
12                                            WESTLANDS WATER DISTRICT
                                              DISTRIBUTION DISTRICT NO. 1,
13                                            WESTLANDS WATER DISTRICT
                                              DISTRIBUTION DISTRICT NO. 2, AND
14                                            WESTLANDS WATER DISTRICT FINANCING
15                                            CORPORATION

16  Dated:  October 5, 2021                   SOMACH SIMMONS & DUNN
                                              AARON FERGUSON
17

18                                            ___/s/ Aaron Ferguson_____
19                                            Attorney for Defendants
                                              BYRON-BETHANY IRRIGATION DISTRICT,
20                                            EAST BAY MUNICIPAL UTILITY DISTRICT,
                                              PLACER COUNTY WATER AGENCY,
21                                            SACRAMENTO COUNTY WATER AGENCY,
                                              AND CITY OF REDDING
22

23

24

25

26

27

28

{00255585.1}                                7
JOINT STATEMENT OF UNDISPUTED FACTS

# APPENDIX 1

**Table A**        **Contracts Converted to Repayment Contracts**

| Contractor | Contract No. | Date of Conversion | Acre-Feet Per Year |
|---|---|---|---|
| City of Folsom | 6-07-20-W1372B-P | 2/28/2020 | 7,000 |
| City of Roseville | 4-06-200-3474A-IRI-P | 2/28/2020 | 32,000 |
| East Bay Municipal Utility District | 14-06-200-5183A-LTR1-P | 2/28/2020 | 133,000 (To 165,000) |
| Placer County Water Agency | 14-06-200-5082A-IRI-P | 2/28/2020 | 35,000 |
| Sacramento County Water Agency | 6-07-20-W1372-P | 2/28/2020 | 15,000 |
| Sacramento County Water Agency | 14-06-200-5198B-IR1-P | 2/28/2020 | 30,000 |
| Sacramento Municipal Utility District | 14-06-200-5198A-IR1-P | 2/28/2020 | 30,000 |
| San Juan Water District | 6-07-20-W1373-LTR1-P | 2/28/2020 | 24,200 |
| Westlands Water District | 14-06-200-495A-IRI-P | 2/28/2020 | 1,150,000 |
| City of West Sacramento | 0-07-20-W0187-P | 5/26/2020 | 23,600 |
| Westlands Water District Distribution District No. 1 (Broadview Assignment) | 14-06-200-8092-IR5-P | 5/29/2020 | 27,000 |

| | | | |
|---|---|---|---|
| Westlands Water District<br><br>Distribution District No. 1 (Centinella Assignment) | 7-07-20-WO55B--IR5-P | 5/29/2020 | 2,500 |
| Westlands Water District<br><br>Distribution District No. 1 (Widren Assignment) | 14-06-200-8018B-IR5-P | 5/29/2020 | 2,990 |
| Westlands Water District<br><br>Distribution District No. 2 (Mercy Springs Partial Assignment) | 14-06-200-3365AC-IR5-P | 5/29/2020 | 4,198 |
| City of Shasta Lake | 4-07-20-W1134-P | 6/30/2020 | 4,400 |
| Mountain Gate Community Services District | 14-06-200-6998-P | 6/30/2020 | 1,350 |
| Shasta Community Services Dist. | 14-06-200-862A-P | 6/30/2020 | 1,000 |
| Shasta County Water Agency | 14-06-200-3367A-P | 6/30/2020 | 1,022 |
| City of Redding | 14-06-200-5272A-P | 8/11/2020 | 6,140 |
| 4-M Water District | 0-07-20-W0183-P | 9/15/2020 | 5,700 |
| Bella Vista Water District | 14-06-200-851A-P | 9/15/2020 | 24,578 |
| Colusa County Water District | 1-07-20-W0220-P | 9/15/2020 | 5,666 |
| Colusa County Water District | 14-06-200-304-A-P | 9/15/2020 | 62,200 |

9

JOINT STATEMENT OF UNDISPUTED FACTS

| | | | |
|---|---|---|---|
| Corning Water District | 14-06-200-6575-P | 9/15/2020 | 15,000 |
| Cortina Water District | 0-07-20-W0206-P | 9/15/2020 | 1,615 |
| Dunnigan Water District | 14-06-200-399-A-P | 9/15/2020 | 19,000 |
| Glide Water District | 7-07-20-W0040-P | 9/15/2020 | 10,500 |
| Kanawha Water District | 14-06-200-466-A-P | 9/15/2020 | 45,000 |
| La Grande Water District | 0-07-20-W0190-P | 9/15/2020 | 2,090 |
| La Grande Water District | 7-07-20-W0022-P | 9/15/2020 | 5,000 |
| Stony Creek Water District | 2-07-20-W0261-P | 9/15/2020 | 2,920 |
| Centerville Community Services District | 14-06-200-3367X-P | 9/28/2020 | 2,900 |
| Central San Joaquin Water Conservation District | 4-07-20-W0330-P | 9/28/2020 | 80,000 |
| Davis Water District | 14-06-200-6001A-P | 9/28/2020 | 4,000 |
| Del Puerto Water District | 14-06-200-922-LTR1-P | 9/28/2020 | 140,210 |
| Glenn Valley Water District | 1-07-20-W0219-P | 9/28/2020 | 1,730 |
| Myers-Marsh Mutual Water Company | 1-07-20-W0225-P | 9/28/2020 | 242 |
| Orland-Artois Water District | 14-06-200-8382A-P | 9/28/2020 | 53,000 |

| Stockton East Water District | 4-07-20-W0329-P | 9/28/2020 | 75,000 |
|---|---|---|---|
| Westlands Water District (Oro Loma) | 14-06-200-7823J-LTR1-P | 9/28/2020 | 4,000 |
| Westside Water District | 14-06-200-8222-LTR1-P | 9/28/2020 | 65,000 |
| Banta-Carbona Irrigation District | 14-06-200-4305A-LTR1-P | 10/22/2020 | 20,000 |
| Byron-Bethany Irrigation District | 14-06-200-4305A-LTR1-P | 10/22/2020 | 20,600 |
| Eagle Field Water District | 14-06-200-7754-LTR1-P | 10/22/2020 | 4,550 |
| Fresno Slough Water District | 14-06-200-4019A-LTR1-P | 10/22/2020 | 4,000 |
| Holthouse Water District | 1-07-20-W0224-P | 10/22/2020 | 2,327 |
| James Irrigation District | 14-06-200-700-A-LTR1-P | 10/22/2020 | 35,300 |
| Santa Clara Valley Water District and Westlands Water District No. 1 (Mercy Springs 3-Way Partial Assignment) | 14-06-200-3365AB-IR5-P | 10/22/2020 | 6,260 |
| Proberta Water District | 14-06-200-7311-P | 10/22/2020 | 3,500 |
| Reclamation Dist. No. 1606 | 14-06-200-3802A-LTR1-P | 10/22/2020 | 228 |
| The West Side Irrigation District | 7-07-20-W0045-LTR1-P | 10/22/2020 | 5,000 |
| Tranquility Irrigation District | 14-06-200-701-A-LTR1-P | 10/22/2020 | 13,800 |

| | | | |
|---|---|---|---|
| West Stanislaus Irrigation District | 14-06-200-1072-LTR1-P | 10/22/2020 | 50,000 |
| Patterson Irrigation District | 14-06-200-3598A-LTR1-P | 10/26/2020 | 16,500 |
| Tranquility Public Utilities District | 14-06-200-3537A-LTR1-P | 10/26/2020 | 70 |
| Clear Creek Community Services District | 14-06-200-489–A-P | 11/17/2020 | 15,300 |
| Contra Costa Water District | 175r-3401 A-LTR1-P | 12/28/2020 | 195,000 |
| Mercy Springs Water District | 14-06-200-3365A-LTR1-P | 12/28/2020 | 2,842 |
| Pacheco Water District | 6-07-20-W0469-P | 12/28/2020 | 10,080 |
| San Luis Water District | 14-06-200-7773A-IR1-P | 12/28/2020 | 125,080 |
| County of Colusa | 14-06-200-8310A-P | 1/14/2021 | 914 |
| El Dorado Irrigation District | 14-06-200-1357A-LTR1-P | 1/14/2021 | 7,550 |
| Panoche Water District | 14-06-200-7864A-IR1-P | 1/14/2021 | 94,000 |
| City of Avenal | 14-06-200-4619A-IR1-P | 1/22/2021 | 3,500 |
| City of Coalinga | 14-06-200-4173A-IR1-P | 1/22/2021 | 10,000 |
| City of Huron | 14-06-200-7081A-IR3 | 1/22/2021 | 3,000 |
| San Benito County Water District | 8-07-20-W0130A-P | 1/22/2021 | 43,800 |

JOINT STATEMENT OF UNDISPUTED FACTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT 1</u>**



# United States Department of the Interior

BUREAU OF RECLAMATION
2800 Cottage Way
Sacramento, CA 95825-1898

**FEB 2 8 2020**

IN REPLY REFER TO:

MP-440
2.2.4.22

Mr. Thomas Birmingham
General Manager
Westlands Water District
3130 N. Fresno Street
Fresno, California 93703-6056

Subject:   Repayment Contract No. 14-06-200-495A-IR1-P Between the United States and
          Westlands Water District

Dear Mr. Birmingham:

Enclosed is an executed original of the subject contract for your records. The Bureau of
Reclamation appreciates the effort expended by the Westlands Water District and its
representatives relative to this contract. Exhibit D to the Contract will be finalized on the
Effective Date of the Contract, in accordance with the Water Infrastructure Improvements for
the Nation Act of 2016 (Public Law 114-322).

If there are any questions, please contact Mr. Stanley Data, Repayment Specialist, at
sdata@usbr.gov or (916) 978-5246.

Sincerely,

Ernest A. Conant
Regional Director

Enclosure

Irrigation and M&I
Contract No. 14-06-200-495A-IR1-P

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT BETWEEN THE UNITED STATES
AND
WESTLANDS WATER DISTRICT
PROVIDING FOR PROJECT WATER SERVICE
SAN LUIS UNIT AND DELTA DIVISION AND FACILITIES REPAYMENT

## TABLE OF CONTENTS

| Article No. | Title | Page No. |
|---|---|---|

|  | Preamble | 1 |
|  | Explanatory Recitals | 2 |
| 1. | Definitions | 8 |
| 2. | Term of Contract – Right to use of Water | 12 |
| 3. | Water to be Made Available and Delivered to the Contractor | 14 |
| 4. | Time for Delivery of Water | 19 |
| 5. | Point of Diversion and Responsibility for Distribution of Water | 20 |
| 6. | Measurement of Water Within the Contractor's Service Area | 22 |
| 7. | Rates, Method of Payment for Water and Accelerated Repayment of Facilities | 24 |
| 8. | Non-Interest Bearing O&M Deficits | 33 |
| 9. | Sales, Transfers, or Exchanges of Water | 34 |
| 10. | Application of Payments and Adjustments | 35 |
| 11. | Temporary Reductions – Return Flows | 36 |
| 12. | Constraints on the Availability of Water | 37 |
| 13. | Unavoidable Groundwater Percolation | 39 |
| 14. | Compliance with Federal Reclamation Laws | 40 |
| 15. | Protection of Water and Air Quality | 40 |
| 16. | Water Acquired by the Contractor other than from the United States | 41 |
| 17. | Opinions and Determinations | 44 |
| 18. | Coordination and Cooperation | 44 |
| 19. | Charges for Delinquent Payments | 46 |
| 20. | Equal Employment Opportunity | 47 |
| 21. | General Obligation – Benefits Conditioned Upon Payment | 48 |
| 22. | Compliance with Civil Rights Laws and Regulations | 48 |
| 23. | Privacy Act Compliance | 49 |
| 24. | Contractor to Pay Certain Miscellaneous Costs | 50 |

Contract No. 14-06-200-495A-IR1-P

Table of Contents – continued

| Article No. | Title | Page No. |
|---|---|---|
| 25. | Water Conservation | 51 |
| 26. | Existing or Acquired Water or Water Rights | 52 |
| 27. | Operation and Maintenance of Transferred Works | 53 |
| 28. | O&M by the San Luis & Delta – Mendota Water Authority | 54 |
| 28.1 | O&M by the California Department of Water Resources | 56 |
| 28.2 | O&M by the Contractor | 58 |
| 28.3 | Pumping Plants, Power for Pumping Plants | 60 |
| 29. | Examination, Inspection, and Audit of Project Works, Records, and Reports for Determining Adequacy of Operation and Maintenance | 61 |
| 30. | Contingent on Appropriation or Allotment of Funds | 63 |
| 31. | Books, Records, and Reports | 63 |
| 32. | Assignment Limited – Successors and Assigns Obligated | 64 |
| 33. | Severability | 64 |
| 34. | Resolution of Disputes | 65 |
| 35. | Officials not to Benefit | 65 |
| 36. | Changes in Contractor's Organization and/or Service Area | 65 |
| 37. | Federal Laws | 66 |
| 38. | Notices | 66 |
| 39. | Emergency Reserve Fund | 66 |
| 40. | Administration of Federal Project Lands | 67 |
| 41. | Contamination or Pollution of Federal Property | 68 |
| 42. | Reclamation Reform Act of 1982 | 69 |
| 43. | Certification of Nonsegregated Facilities | 69 |
| 44. | Pest Management | 70 |
| 45. | Medium for Transmitting Payment | 71 |
| 46. | Contract Drafting Considerations | 71 |
| 47. | Confirmation of Contract | 71 |
| | Signature Page | 72 |

Exhibit A – Contractor's Service Area
Exhibit B – Rates and Charges
Exhibit C – Project Water Needs Assessments Purpose and Methodology
Exhibit D – Repayment Obligation

Contract No. 14-06-200-495A-IR1-P

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT BETWEEN THE UNITED STATES
AND
WESTLANDS WATER DISTRICT
PROVIDING FOR PROJECT WATER SERVICE
SAN LUIS UNIT AND DELTA DIVISION AND FACILITIES REPAYMENT

1   THIS CONTRACT, made this 28TH day of FEBRUARY_____, 2020, in

2   pursuance generally of the Act of June 17, 1902, (32 Stat. 388), and acts amendatory thereof or

3   supplementary thereto, including but not limited to, the Acts of August 26, 1937 (50 Stat. 844),

4   as amended and supplemented, August 4, 1939 (53 Stat. 1187), as amended and supplemented,

5   July 2, 1956 (70 Stat. 483), June 3 1960 (74 Stat. 156), June 21, 1963 (77 Stat. 68), October 12,

6   1982 (96 Stat. 1263), October 27, 1986 (100 Stat. 3050), as amended, Title XXXIV of the Act of

7   October 30, 1992 (106 Stat. 4706), as amended, and the Water Infrastructure Improvements for

8   the Nation Act (Public Law (Pub. L.) 114-322, 130 Stat. 1628), Section 4011 (a-d) and (f)

9   ("WIIN Act"), all collectively hereinafter referred to as Federal Reclamation law, between the

10  UNITED STATES OF AMERICA, hereinafter referred to as the United States, represented by

11  the officer executing this Contract, hereinafter referred to as the Contracting Officer, and

12  WESTLANDS WATER DISTRICT, hereinafter referred to as the Contractor, a public agency of

13  the State of California, duly organized, existing, and acting pursuant to the laws thereof;

14          WITNESSETH, That:

Contract No. 14-06-200-495A-IR1-P

<center>EXPLANATORY RECITALS</center>

15

16          [1st]     WHEREAS, the United States has constructed and is operating the

17 California Central Valley Project (Project), for diversion, storage, carriage, distribution, and

18 beneficial use, for flood control, irrigation, municipal, domestic, industrial, fish and

19 wildlife mitigation, protection and restoration, generation and distribution of electric energy,

20 salinity control, navigation, and other beneficial uses, of waters of the Sacramento River,

21 the American River, the Trinity River, and the San Joaquin River and their tributaries;

22 and

23          [2nd]    WHEREAS, the United States constructed the Delta Division Facilities,

24 including the San Luis Unit facilities (which include the San Luis Canal, the Coalinga

25 Canal, the Pleasant Valley Pumping Plant, and the Dos Amigos Pumping Plant), which

26 will be used in part for the furnishing of water to the Contractor pursuant to the terms of

27 this Contract; and

28          [3rd]     WHEREAS, the rights to Project Water were acquired by the United

29 States pursuant to California law for operation of the Project; and

30          [4th]    WHEREAS, the Contractor assigned to the United States, California State

31 Water Resources Control Board (previously California State Water Rights Board) application

32 number 15764 on October 17, 1960, following receipt of a letter, dated September 29, 1960,

33 from the then–Acting Regional Director of the Bureau of Reclamation that, "A permanent water

34 supply for your district will, of course, be assured and made available pursuant to a long term

35 contract, renewable in accordance with current provisions of Federal Reclamation law."; and

36          [5th]    WHEREAS, the terms and conditions pursuant to which Project Water is

37 to be delivered to the Contractor through December 31, 2007, are addressed in the

<center>2</center>

38   Contract Between the United States and Westlands Water District Providing for Water

39   Service, dated June 5, 1963, and the Stipulated Judgment in the lawsuit entitled Barcellos and

40   Wolfsen, Inc., v. Westlands Water District, Civ. No. F-79-106-EDP (E.D. Cal.), as consolidated

41   with Westlands Water District v. United States of America, Civ. No. F-81-245-EDP (E.D.

42   Cal.), entered on December 30, 1986; and

43            [6th]    WHEREAS, the United States and the Contractor have pursuant to

44   Subsection 3404(c)(3) of the Central Valley Project Improvement Act (CVPIA),

45   subsequently entered into binding agreements identified as Binding Agreement No. 14-

46   06-200-495A-BA, and Binding Agreement No. CV 79-106-EDP-BA, which sets out the

47   terms pursuant to which the Contractor agreed to renew its contract before the

48   expiration date after completion of the Programmatic Environmental Impact Statement

49   (PEIS) and other appropriate environmental documentation and negotiation of a renewal

50   contract; and which also sets out the consequences of a subsequent decision not to

51   renew; and

52            [7th]    WHEREAS, the United States and the Contractor entered into Delta

53   Division and San Luis Unit Contract Number 14-06-200-495A-IR1 and subsequent Interim

54   Renewal Contracts 14-06-200-495A-IR2 through 14-06-200-495A-IR6, the last of which is

55   hereinafter referred to as the "Existing Contract", which established terms for the delivery of

56   Project Water to the Contractor from the Delta Division and San Luis Unit, and which was in

57   effect the date the WIIN Act was enacted; and

58            [8th]    WHEREAS, on December 16, 2016, the 114th Congress of the United

59   States of America enacted the WIIN Act; and

3

60          [9th]   WHEREAS, Section 4011(a)(1) provides that "upon request of the

61   contractor, the Secretary of the Interior shall convert any water service contract in effect on the

62   date of enactment of this subtitle and between the United States and a water users' association

63   [Contractor] to allow for prepayment of the repayment contract pursuant to paragraph (2) under

64   mutually agreeable terms and conditions."; and

65          [10th]   WHEREAS, Section 4011(a)(1) further provides that "the manner of

66   conversion under this paragraph shall be as follows:  (A) Water service contracts that were

67   entered into under section (e) of the Act of August 4, 1939 (53 Stat. 1196), to be converted under

68   this section shall be converted to repayment contracts under section 9(d) of that Act (53 Stat.

69   1195)"; and "(B) Water service contracts that were entered under subsection (c)(2) of section 9

70   of the Act of August 4, 1939 (53 Stat. 1194), to be converted under this section shall be

71   converted to a contract under subsection (c)(1) of section 9 of that Act (53 Stat. 1195)."; and

72          [11th]   WHEREAS, Section 4011(a)(4)(C) further provides all contracts entered

73   into pursuant to Section 4011(a)(1), (2), and (3) shall "not modify other water service,

74   repayment, exchange and transfer contractual rights between the water users' association

75   [Contractor], and the Bureau of Reclamation, or any rights, obligations, or relationships of the

76   water users' association [Contractor] and their landowners as provided under State law."; and

77          [12th]   WHEREAS, Section 4011(d)(3) and (4) of the WIIN Act provides that

78   "implementation of the provisions of this subtitle shall not alter…(3) the priority of a water

79   service or repayment contractor to receive water; or (4) except as expressly provided in this

80   section, any obligations under the Federal Reclamation law, including the continuation of

81   Restoration Fund charges pursuant to section 3407(d) (Pub. L. 102-575), of the water service and

82   repayment contractors making prepayments pursuant to this section."; and

83   [13th]   WHEREAS, upon the request of the Contractor, the WIIN Act directs the

84   Secretary to convert irrigation water service contracts and municipal and industrial (M&I) water

85   service contracts into repayment contracts, amend existing repayment contracts, and allow

86   contractors to prepay their construction cost obligations pursuant to applicable Federal

87   Reclamation law; and

88   [14th]   WHEREAS, the United States has determined that the Contractor

89   has fulfilled all of its obligations under the Existing Contract; and

90   [15th]   WHEREAS, the Contractor has demonstrated to the satisfaction of the

91   Contracting Officer that the Contractor has utilized the Project Water supplies available

92   to it for reasonable and beneficial use and expects to utilize fully for reasonable and

93   beneficial use the quantity of Project Water to be made available to it pursuant to this

94   Contract; and

95   [16th]   WHEREAS, water obtained from the Project has been relied upon by

96   urban and agricultural areas within California for more than 50 years, and is considered

97   by the Contractor as an essential portion of its water supply; and

98   [17th]   WHEREAS, the economies of regions within the Project, including the

99   Contractor's, depend upon the continued availability of water, including water service

100   from the Project; and

101   [18th]   WHEREAS, the United States Court of Appeals for the Ninth Circuit has

102   held that Section 1(a) of the San Luis Act, Pub. L. 86-488 (74 Stat. 156) imposes on the

103   Secretary of the Interior a duty to provide drainage service to the San Luis Unit; and

Contract No. 14-06-200-495A-IR1-P

104        [19th]   WHEREAS, the Contractor and the Contracting Officer recognize that

105   adequate drainage service is required to maintain agricultural production within certain

106   areas served with Project Water made available under this Contract; and

107        [20th]   WHEREAS, the Contracting Officer intends, to the extent appropriated

108   funds are available, to develop and implement effective solutions to drainage problems in

109   the San Luis Unit; and

110        [21st]   WHEREAS, the Contracting Officer and the Contractor

111   acknowledge that such drainage solutions may involve actions not originally

112   contemplated and/or the construction or use of facilities, other than the San Luis Drain;

113   that the Contractor is investing in drainage solutions for lands within its boundaries that

114   should be considered by the Contracting Officer in determining drainage solutions; and that the

115   existing ratesetting policy as it relates to the allocation and collection of drainage costs may

116   require amendment to recognize those investments by the Contractor and other relevant

117   circumstances; and

118        [22nd]   WHEREAS, the Department of the Interior, Bureau of Reclamation

119   published in June 2006 the San Luis Drainage Feature Re-evaluation Final

120   Environmental Impact Statement, which considers alternatives to provide agricultural

121   drainage service to the San Luis Unit; and

122        [23rd]   WHEREAS, on March 9, 2007, the Record of Decision was signed for the

123   San Luis Drainage Feature Re-evaluation Final Environmental Impact Statement

124   identifying the retirement of up to 194,000 acres of land from irrigated agricultural

125   productions as the selected alternative; and

Contract No. 14-06-200-495A-IR1-P

126          [24th]   WHEREAS, the Secretary intends through coordination, cooperation, and

127   partnerships to pursue measures to improve water supply, water quality, and reliability of the

128   Project for all Project purposes; and

129          [25th] WHEREAS, the mutual goals of the United States and the Contractor

130   include:  to provide for reliable Project Water supplies; to control costs of those supplies;

131   to achieve repayment of the Project as required by law; to guard reasonably against Project

132   Water shortages; to achieve a reasonable balance among competing demands for use of

133   Project Water; and to comply with all applicable environmental statutes, all consistent with

134   the legal obligations of the United States relative to the Project; and

135          [26th]   WHEREAS, the parties intend by this Contract to maintain a cooperative

136   relationship in order to achieve their mutual goals; and

137          [27th]   WHEREAS, the Contractor has utilized or may utilize transfers, contract

138   assignments, rescheduling, and conveyance of Project Water and non-Project water under this

139   Contract as tools to minimize the impacts of a Condition of Shortage and to maximize the

140   beneficial use of water; and

141          [28th]   WHEREAS, the parties desire and intend that this Contract not provide a

142   disincentive to the Contractor in continuing to carry out the beneficial activities set out in

143   the Explanatory Recital immediately above; and

144          [29th]   WHEREAS, the Contracting Officer and the Contractor agree that this

145   Contract complies with Section 4011 of the WIIN Act; and

146          [30th]   WHEREAS, the Contracting Officer and the Contractor agree to amend

147   and convert the Existing Contract pursuant to section 4011 of the WIIN Act and other Federal

148   Reclamation law on the terms and conditions set forth below.

Contract No. 14-06-200-495A-IR1-P

149     NOW, THEREFORE, in consideration of the mutual and dependent covenants

150 herein contained, it is hereby mutually agreed by the parties hereto as follows:

151                             <u>DEFINITIONS</u>

152     1.     When used herein unless otherwise distinctly expressed, or manifestly

153 incompatible with the intent of the parties as expressed in this Contract, the term:

154     (a)     "Additional Capital Obligation" shall mean construction costs or other

155 capitalized costs incurred after the Effective Date of Contract or not reflected in the Existing

156 Capital Obligation as defined herein and in accordance with Section 4011, subsection (a)(2)(B)

157 and (a)(3)(B) of the Water Infrastructure Improvements for the Nation Act (Pub. L. 114-322, 130

158 Stat. 1628) ("WIIN Act");

159     (b)     "Calendar Year" shall mean the period January 1 through December 31,

160 both dates inclusive;

161     (c)     "Charges" shall mean the payments required by Federal Reclamation law

162 in addition to the Rates and Tiered Pricing Component specified in this Contract as

163 determined annually by the Contracting Officer pursuant to this Contract;

164     (d)     "Condition of Shortage" shall mean a condition respecting the Project

165 during any Year such that the Contracting Officer is unable to deliver sufficient water to meet the

166 Contract;

167     (e)     "Contracting Officer" shall mean the Secretary of the Interior's duly

168 authorized representative acting pursuant to this Contract or applicable Federal Reclamation law

169 or regulation;

170     (f)     "Contract Total" shall mean the maximum amount of water to which the

171 Contractor is entitled under subdivision (a) of Article 3 of this Contract;

Contract No. 14-06-200-495A-IR1-P

172        (g)    "Contractor's Service Area" shall mean the area to which the Contractor is

173   permitted to provide Project Water under this Contract as described in Exhibit "A"

174   attached hereto, which may be modified from time to time in accordance with Article 36

175   of this Contract without amendment of this Contract;

176        (h)    "CVPIA" shall mean the Central Valley Project Improvement Act, Title

177   XXXIV of the Act of October 30, 1992 (106 Stat. 4706);

178        (i)    "Delta Division Facilities" shall mean those existing and future Project

179   facilities in and south of the Sacramento-San Joaquin Rivers Delta, including, but not

180   limited to, the C.W. "Bill" Jones Pumping Plant, the O'Neill Forebay, the O'Neill

181   Pumping/Generating Plant, and the San Luis Reservoir, used to divert, store, and convey

182   water to those Project Contractors entitled to receive water conveyed through the Delta-

183   Mendota Canal;

184        (j)    "Eligible Lands" shall mean all lands to which Irrigation Water may be

185   delivered in accordance with Section 204 of the Reclamation Reform Act of 1982 (96 Stat.

186   1263), as amended;

187        (k)    "Excess Lands" shall mean all lands in excess of the limitations

188   contained in Section 204 of the Reclamation Reform Act of 1982, other than those lands

189   exempt from acreage limitation under Federal Reclamation law;

190        (l)    "Existing Capital Obligation" shall mean the remaining amount of

191   construction costs or other capitalized costs allocable to the Contractor as described in section

192   4011, subsections (a)(2)(A) and (a)(3)(A) of the WIIN Act, and as identified in the Central

193   Valley Project Irrigation Water Rates and/or Municipal and Industrial Water Rates, respectively,

194   in the Final 2020 Ratebooks, as adjusted to reflect payments not reflected in such schedule.  The

Contract No. 14-06-200-495A-IR1-P

195    Contracting Officer has computed the Existing Capital Obligation and such amount is set forth in

196    Exhibit D, which is incorporated herein by reference;

197    (m)    Omitted

198    (n)    "Ineligible Lands" shall mean all lands to which Irrigation Water may

199    not be delivered in accordance with Section 204 of the Reclamation Reform Act of 1982;

200    (o)    Omitted

201    (p)    "Irrigation Water" shall mean the use of Project Water to irrigate
202    lands primarily for the production of commercial agricultural crops or livestock, and
203    domestic and other uses that are incidental thereto;

204    (q)    "Landholder" shall mean a party that directly or indirectly owns or

205    leases nonexempt land, as provided in 43 CFR 426.2;

206    (r)    "Municipal and Industrial (M&I) Water" shall mean the use of Project
207    Water for municipal, industrial, and miscellaneous other purposes not falling under the
208    definition of "Irrigation Water" or within another category of water use under an
209    applicable Federal authority;

210    (s)    Omitted

211    (t)    "Operation and Maintenance" or "O&M" shall mean normal and

212    reasonable care, control, operation, repair, replacement (other than capital replacement),

213    and maintenance of Project facilities;

214    (u)    "Operating Non-Federal Entity" shall mean the entity(ies), its (their)

215    successors or assigns, which has (have) the obligation to operate and maintain all or a

216    portion of the Delta Division Facilities pursuant to written agreement(s) with the United

217    States.  When this Contract was entered into, the Operating Non-Federal Entities were the

218    San Luis & Delta-Mendota Water Authority and, with respect to San Luis Unit facilities,

219    the California Department of Water Resources, and the Contractor;

220          (v)     "Project" shall mean the Central Valley Project owned by the United

221  States and managed by the Department of the Interior, Bureau of Reclamation;

222          (w)     "Project Contractors" shall mean all parties who have contracts for

223  water service for Project Water from the Project with the United States pursuant to Federal

224  Reclamation law;

225          (x)     "Project Water" shall mean all water that is developed, diverted,

226  stored, or delivered by the Secretary in accordance with the statutes authorizing the

227  Project and in accordance with the terms and conditions of water rights acquired

228  pursuant to California law;

229          (y)     "Rates" shall mean the payments determined annually by the

230  Contracting Officer in accordance with the then-current applicable water ratesetting

231  policies for the Project, as described in subdivision (a) of Article 7 of this Contract;

232          (z)     Omitted

233          (aa)    "Repayment Obligation" for Water Delivered as Irrigation Water shall

234  mean the Existing Capital Obligation discounted by ½ of the Treasury rate, which shall be the

235  amount due and payable to the United States, pursuant to section 4011(a)(2)(A) of the WIIN Act;

236  and for Water Delivered as M&I Water shall mean the amount due and payable to the United

237  States, pursuant to  section 4011(a)(3)(A) of the WIIN Act;

238          (bb)    "Secretary" shall mean the Secretary of the Interior, a duly appointed

239  successor, or an authorized representative acting pursuant to any authority of the

240  Secretary and through any agency of the Department of the Interior;

241     (cc)   "Tiered Pricing Component" shall be the incremental amount to be

242 paid for each acre-foot of Water Delivered as described in Article 7 of this Contract and

243 as provided for in Exhibit B;

244     (dd)   "Water Delivered" or "Delivered Water" shall mean Project Water

245 diverted for use by the Contractor at the point(s) of delivery approved by the Contracting

246 Officer;

247     (ee)   "Water Made Available" shall mean the estimated amount of

248 Project Water that can be delivered to the Contractor for the upcoming Year as declared

249 by the Contracting Officer, pursuant to subdivision (a) of Article 4 of this Contract;

250     (ff)   "Water Scheduled" shall mean Project Water made available to the

251 Contractor for which times and quantities for delivery have been established by the

252 Contractor and Contracting Officer, pursuant to subdivision (b) of Article 4 of this Contract;

253 and

254     (gg)   "Year" shall mean the period from and including March 1 of each

255 Calendar Year through the last day of February of the following Calendar Year.

256     <u>TERM OF CONTRACT – RIGHT TO USE OF WATER</u>

257     2.     (a)     This Contract shall be effective June 1, 2020, hereinafter known as the

258 "Effective Date", and shall continue so long as the Contractor pays applicable Rates and Charges

259 under this Contract, consistent with Section 9(d) or 9(c)(1) of the Act of August 4, 1939 (53 Stat.

260 1195) as applicable, and applicable law;

261     (1)     <u>*Provided, That*</u> the Contracting Officer shall not seek to terminate

262 this Contract for failure to fully or timely pay applicable Rates and Charges by the Contactor,

263 unless the Contracting Officer has first provided at least sixty (60) calendar days written notice

Contract No. 14-06-200-495A-IR1-P

264    to the Contractor of such failure to pay and the Contractor has failed to cure such failure to pay,

265    or to diligently commence and maintain full curative payments satisfactory to the Contracting

266    Officer within the sixty (60) calendar days' notice period;

267                  (2)      *Provided, further,* *That* the Contracting Officer shall not seek to

268    suspend making water available or declaring Water Made Available pursuant to this Contract for

269    non-compliance by the Contractor with the terms of this Contract or Federal law, unless the

270    Contracting Officer has first provided at least thirty (30) calendar days written notice to the

271    Contractor and the Contractor has failed to cure such non-compliance, or to diligently commence

272    curative actions satisfactory to the Contracting Officer for a non-compliance that cannot be fully

273    cured within the thirty (30) calendar days' notice period.  If the Contracting Officer has

274    suspended making water available pursuant to this paragraph, upon cure of such non-compliance

275    satisfactory to the to the Contracting Officer, the Contracting Officer shall resume making water

276    available and declaring Water Made Available pursuant to this Contract;

277                  (3)      *Provided, further,* *That* this Contract may be terminated at any

278    time by mutual consent of the parties hereto.

279          (b)      Upon complete payment of the Repayment Obligation by the Contractor,

280    and notwithstanding any Additional Capital Obligation that may later be established, the acreage

281    limitations, reporting, and Full Cost pricing provisions of the Reclamation Reform Act of 1982,

282    and subdivisions (j) Eligible Lands, (k) Excess Lands, and (n) Ineligible Lands of Article 1 of

283    this Contract shall no longer be applicable.

284          (c)      Notwithstanding any provision of this Contract, the Contractor reserves

285    and shall have all rights and benefits under the Act of July 2, 1956 (70 Stat. 483), to the extent

286    allowed by law.

287     (d)     Notwithstanding any provision of this Contract, the Contractor reserves
288 and shall have all rights and benefits under the Act of June 21, 1963 (77 Stat. 68), to the extent
289 allowed by law.

290     WATER TO BE MADE AVAILABLE AND DELIVERED TO THE CONTRACTOR

291     3.     (a)     During each Year, consistent with all applicable State water rights
292 permits, and licenses, Federal law, and subject to the provisions set forth in Articles 11 and
293 12 of this Contract, the Contracting Officer shall make available for delivery to the
294 Contractor 1,150,000 acre-feet of Project Water for irrigation and M&I purposes.  Water
295 Delivered to the Contractor in accordance with this subdivision shall be scheduled and
296 paid for pursuant to the provisions of Articles 4 and 7 of this Contract.

297     (a)     (1)     Notwithstanding any other provisions of this Contract, in the
298 event the Secretary implements a program to retire land from irrigated agricultural
299 production within the Contractor's Service Area as a means of addressing drainage in the
300 San Luis Unit, the Contracting Officer shall conduct a water needs assessment to
301 determine whether the Contract Total will be reduced.  An initial water needs
302 assessment shall be conducted upon the retirement of 25 percent of the land projected to
303 be retired under such land retirement program.  Subsequent assessments shall be conducted
304 upon the retirement of 50 percent and 75 percent of the land projected to be retired and a
305 final assessment will be conducted at the conclusion of the land retirement program.  Any water
306 needs assessment performed pursuant to this paragraph (1) shall update the water needs
307 assessment used to compute the quantity of Project Water to be made available under
308 this Contract, which was submitted to the Contractor on November 2, 2000, and shall be
309 conducted pursuant to the methodology attached to this Contract as Exhibit "C."  The

14

310 Contractor may request the Contracting Officer update the methodology employed

311 based upon Contractor-specific information made available to the Contracting Officer

312 by the Contractor.  Upon completion of any water needs assessment performed

313 pursuant to this paragraph, the Contracting Officer may make a determination to reduce

314 the quantity of water to be made available under this Contract, and the Contract Total shall be

315 reduced according to that determination; *Provided, That* so long as the then-existing

316 Contract Total can be put to reasonable and beneficial use as determined by the water

317 needs assessment on Eligible Lands within the Contractor's Service Area that are not

318 retired, the retirement of land shall not affect the quantity of Project Water to be made

319 available pursuant to this Contract.

320  (b) Because the capacity of the Project to deliver Project Water has been

321 constrained in recent years and may be constrained in the future due to many factors

322 including hydrologic conditions and implementation of Federal and State laws, the

323 likelihood of the Contractor actually receiving the amount of Project Water set out in

324 subdivision (a) of this Article in any given Year is uncertain.  The Contracting Officer's

325 modeling referenced in the PEIS projected that the Contract Total set forth in this Contract

326 will not be available to the Contractor in many years.  Nothing in this subdivision (b) of this

327 Article shall affect the rights and obligations of the parties under any provision of this Contract.

328  (c) The Contractor shall utilize the Project Water in accordance with all

329 applicable legal requirements.

330  (c) (1) In the event any Project Contractor (other than a Cross Valley

331 Contractor) that receives Project Water through the Delta Division Facilities obtains a

332 contractual agreement that the Contracting Officer shall make Project Water available at

333  a point or points of delivery in or north of the Delta, at the request of the Contractor and

334  upon completion of any required environmental documentation, this Contract shall be

335  amended to provide for deliveries in or north of the Delta on mutually agreeable terms.

336  Such amendments to this Contract shall be limited solely to those changes made necessary by

337  the addition of such alternate points of delivery in or north of the Delta; *Provided,* That

338  the Contracting Officer's use of the Harvey O. Banks Pumping Plant to deliver Project

339  Water does not trigger this right of amendment.

340           (d)      The Contractor shall make reasonable and beneficial use of all water

341  furnished pursuant to this Contract.  Groundwater recharge programs (direct, indirect, or

342  in lieu), groundwater banking programs, surface water storage programs, and other

343  similar programs utilizing Project Water or other water furnished pursuant to this

344  Contract conducted within the Contractor's Service Area which are consistent with

345  applicable State law and result in use consistent with Federal Reclamation law will be

346  allowed; *Provided,* That any direct recharge program(s) is (are) described in the

347  Contractor's water conservation plan submitted pursuant to Article 25 of this Contract;

348  *Provided, further,* That such water conservation plan demonstrates sufficient lawful uses

349  exist in the Contractor's Service Area so that using a long-term average, the quantity of

350  Delivered Water is demonstrated to be reasonable for such uses and in compliance with

351  Federal Reclamation law.  Groundwater recharge programs, groundwater banking

352  programs, surface water storage programs, and other similar programs utilizing Project

353  Water or other water furnished pursuant to this Contract conducted outside the

354  Contractor's Service Area may be permitted upon written approval of the Contracting

355  Officer, which approval will be based upon environmental documentation, Project Water

356 rights, and Project operational concerns.  The Contracting Officer will address such

357 concerns in regulations, policies, or guidelines.

358       (e)     The Contractor shall comply with requirements applicable to the

359 Contractor in biological opinion(s) prepared as a result of a consultation regarding the execution

360 of any water service contract between the Contracting Officer and the Contractor in effect

361 immediately prior to the Effective Date of this Contract undertaken pursuant to Section 7 of the

362 Endangered Species Act of 1973 (ESA), as amended, that are within the Contractor's legal

363 authority to implement.  The Existing Contract, which evidences in excess of 40 years of

364 diversions for irrigation and/or M&I purposes of the quantities of Project Water provided in

365 subdivision (a) of Article 3 of this Contract, will be considered in developing an appropriate

366 baseline for any required biological assessment(s) prepared pursuant to the ESA, and any other

367 needed environmental review.  Nothing herein shall be construed to prevent the Contractor from

368 challenging or seeking judicial relief in a court of competent jurisdiction with respect to any

369 biological opinion or other environmental documentation referred to in this Article.

370       (f)     Following the declaration of Water Made Available under Article 4 of

371 this Contract, the Contracting Officer will make a determination whether Project Water, or

372 other water available to the Project, can be made available to the Contractor in addition to

373 the Contract Total under this Article during the Year without adversely impacting other

374 Project Contractors.  At the request of the Contractor, the Contracting Officer will

375 consult with the Contractor prior to making such a determination.  If the Contracting

376 Officer determines that Project Water, or other water available to the Project, can be

377 made available to the Contractor, the Contracting Officer will announce the availability of

378 such water and shall so notify the Contractor as soon as practical.  The Contracting

379    Officer will thereafter meet with the Contractor and other Project Contractors capable of

380    taking such water to determine the most equitable and efficient allocation of such water.

381    If the Contractor requests the delivery of any quantity of such water, the Contracting

382    Officer shall make such water available to the Contractor in accordance with applicable

383    statutes, regulations, guidelines, and policies.  Subject to existing  interim renewal,

384    repayment, and other long-term contractual commitments, water rights and operational

385    constraints, interim renewal, repayment, and other long-term Project Contractors shall have a

386    first right to acquire such water, including Project Water made available pursuant to

387    Section 215 of the Reclamation Reform Act of 1982.

388           (g)    The Contractor may request permission to reschedule for use during

389    the subsequent Year some or all of the Water Made Available to the Contractor during

390    the current Year, referred to as "rescheduled water."  The Contractor may request

391    permission to use during the current Year a quantity of Project Water which may be

392    made available by the United States to the Contractor during the subsequent Year referred

393    to as "preuse."  The Contracting Officer's written approval may permit such uses in

394    accordance with applicable statutes, regulations, guidelines, and policies.

395           (h)    The Contractor's right pursuant to Federal Reclamation law and

396    applicable State law to the reasonable and beneficial use of the Water Delivered pursuant to

397    this Contract shall not be disturbed, and this Contract shall continue so long as the

398    Contractor pays applicable Rates and Charges under this Contract consistent with Section

399    9(d) or 9(c)(1) of the Act of August 4, 1939 (53 Stat. 1195) as applicable, and applicable

400    law.  Nothing in the preceding sentence shall affect the Contracting Officer's ability to impose

401    shortages under Article 11 or subdivision (b) of Article 12 of this Contract.

402         (i)       Project Water furnished to the Contractor pursuant to this Contract

403 may be delivered for purposes other than those described in subdivisions (p) and (r) of

404 Article 1 of this Contract upon written approval by the Contracting Officer in

405 accordance with the terms and conditions of such approval.

406         (j)       The Contracting Officer shall make reasonable efforts to protect the

407 water rights necessary for the Project and to provide the water available under this Contract.

408 The Contracting Officer shall not object to participation by the Contractor, in the capacity

409 and to the extent permitted by law, in administrative proceedings related to the Project

410 Water rights; _Provided,_ _That_ the Contracting Officer retains the right to object to the

411 substance of the Contractor's position in such a proceeding; _Provided, further,_ _That_ in

412 such proceedings the Contracting Officer shall recognize the Contractor has a legal right

413 under the terms of this Contract to use Project Water.

414 <u>TIME FOR DELIVERY OF WATER</u>

415     4.     (a)       On or about February 20 each Calendar Year, the Contracting Officer

416 shall announce the Contracting Officer's expected declaration of the Water Made

417 Available.  Such declaration will be expressed in terms of Water Made Available and

418 will be updated monthly, and more frequently if necessary, based on the then-current

419 operational and hydrologic conditions and a new declaration with changes, if any, to the

420 Water Made Available will be made.  The Contracting Officer shall provide forecasts of

421 Project operations and the basis of the estimate, with relevant supporting information,

422 upon the written request of the Contractor.

423         (b)       On or before each March 1 and at such other times as necessary, the

424 Contractor shall submit to the Contracting Officer a written schedule, satisfactory to the

425  Contracting Officer, showing the monthly quantities of Project Water to be delivered by

426  the United States to the Contractor pursuant to this Contract for the Year commencing

427  on such March 1.  The Contracting Officer shall use all reasonable means to deliver

428  Project Water according to the approved schedule for the Year commencing on such

429  March 1.

430         (c)    The Contractor shall not schedule Project Water in excess of the

431  quantity of Project Water the Contractor intends to put to reasonable and beneficial use

432  within the Contractor's Service Area or to sell, transfer, or exchange pursuant to Article

433  9 of this Contract during any Year.

434         (d)    Subject to the conditions set forth in subdivision (a) of Article 3 of this

435  Contract, the United States shall deliver Project Water to the Contractor in accordance

436  with the initial schedule submitted by the Contractor pursuant to subdivision (b) of this

437  Article, or any written revision(s) thereto satisfactory to the Contracting Officer, submitted

438  within a reasonable time prior to the date(s) on which the requested change(s) is (are) to

439  be implemented.

440      <u>POINT OF DIVERSION AND RESPONSIBILITY FOR DISTRIBUTION OF WATER</u>

441      5.    (a)    Project Water scheduled pursuant to subdivision (b) of Article 4 of this

442  Contract shall be delivered to the Contractor at Project facilities and any additional point or

443  points of delivery either on Project facilities or another location or locations mutually

444  agreed to in writing by the Contracting Officer and the Contractor.

445         (b)    The Contracting Officer, either directly or indirectly through its

446  written agreements(s) with the Operating Non-Federal Entity(ies), shall make all

447  reasonable efforts to maintain sufficient flows and levels of water in the Project facilities

448    to deliver Project Water to the Contractor at the point or points of delivery established

449    pursuant to subdivision (a) of this Article.

450               (c)      The Contractor shall deliver Irrigation Water in accordance with any

451    applicable land classification provisions of Federal Reclamation law and the associated

452    regulations.  The Contractor shall not deliver Project Water to land outside the

453    Contractor's Service Area unless approved in advance by the Contracting Officer.

454               (d)      All Water Delivered to the Contractor pursuant to this Contract shall

455    be measured and recorded with equipment furnished, installed, operated, and maintained

456    by the Contracting Officer either directly or indirectly through its written agreements(s)

457    with the Operating Non-Federal Entity(ies), unless undertaken by the Contractor with

458    the consent of the Contracting Officer at the point or points of delivery established

459    pursuant to subdivision (a) of this Article.  Upon the request of either party to this

460    Contract, the Contracting Officer shall investigate, or cause to be investigated by the

461    appropriate Operating Non-Federal Entity(ies), the accuracy of such measurements and

462    shall take any necessary steps to adjust any errors appearing therein.  For any period of

463    time when accurate measurements have not been made, the Contracting Officer shall

464    consult with the Contractor and the appropriate Operating Non-Federal Entity(ies), if any,

465    prior to making a final determination of the quantity delivered for that period of time.

466               (e)      Absent a separate contrary written agreement with the Contractor,

467    neither the Contracting Officer nor any Operating Non-Federal Entity(ies) shall be

468    responsible for the control, carriage, handling, use, disposal, or distribution of Water

469    Delivered to the Contractor pursuant to this Contract beyond the point or points of

470    delivery established pursuant to subdivision (a) of this Article.  The Contractor shall

471   indemnify the United States, its officers, employees, agents, and assigns on account of

472   damage or claim of damage of any nature whatsoever for which there is legal

473   responsibility, including property damage, personal injury, or death arising out of or

474   connected with  the control, carriage, handling, use, disposal, or distribution of such Water

475   Delivered beyond such point or points of delivery except for any damage or claim arising

476   out of:  (i) acts or omissions of the Contracting Officer or any of its officers, employees,

477   agents, and assigns, including the Operating Non-Federal Entity(ies) with the intent of

478   creating the situation resulting in any damage or claim; (ii) willful misconduct of the

479   Contracting Officer or any of its officers, employees, agents, and assigns, including the

480   Operating Non-Federal Entity(ies); (iii) negligence of the Contracting Officer or any of its

481   officers, employees, agents, and assigns, including the Operating Non-Federal Entity(ies);

482   (iv) a malfunction of facilities owned and/or operated by the United States or the Operating

483   Non-Federal Entity(ies); or (v) failure of the United States, its officers, employees, agents,

484   and assigns, including the Operating Non-Federal Entity(ies), to provide drainage service.

### MEASUREMENT OF WATER WITHIN THE CONTRACTOR'S SERVICE AREA

486      6.    (a)    The Contractor has established a measuring program satisfactory to

487   the Contracting Officer.  The Contractor shall ensure that all surface water delivered for

488   irrigation purposes within the Contractor's Service Area is measured at each agricultural

489   turnout and such water delivered for M&I purposes is measured at each M&I service

490   connection.  The water measuring devices or water measuring methods of comparable

491   effectiveness must be acceptable to the Contracting Officer.  The Contractor shall be

492   responsible for installing, operating, maintaining, and repairing all such measuring devices

493   and implementing all such water measuring methods at no cost to the United States.  The

494   Contractor shall use the information obtained from such water measuring devices or

495   water measuring methods to ensure its proper management of the water; to bill water users for

496   water delivered by the Contractor; and, if applicable, to record water delivered for M&I

497   purposes by customer class as defined in the Contractor's water conservation plan

498   provided for in Article 25 of this Contract.  Nothing herein contained, however, shall

499   preclude the Contractor from establishing and collecting any charges, assessments, or

500   other revenues authorized by California law.  The Contractor shall include a summary of

501   all its annual surface water deliveries in the annual report described in subdivision (c) of

502   Article 25 of this Contract.

503           (b)     To the extent the information has not otherwise been provided, upon

504   execution of this Contract, the Contractor shall provide to the Contracting Officer a written

505   report describing the measurement devices or water measuring methods being used or to

506   be used to implement subdivision (a) of this Article and identifying the agricultural

507   turnouts and the M&I service connections or alternative measurement programs

508   approved by the Contracting Officer, at which such measurement devices or water

509   measuring methods are being used, and, if applicable, identifying the locations at which

510   such devices and/or methods are not yet being used including a time schedule for

511   implementation at such locations.  The Contracting Officer shall advise the Contractor

512   in writing within 60 days as to the adequacy and necessary modifications, if any, of the

513   measuring devices or water measuring methods identified in the Contractor's report and

514   if the Contracting Officer does not respond in such time, they shall be deemed adequate.

515   If the Contracting Officer notifies the Contractor that the measuring devices or methods

516   are inadequate, the parties shall within 60 days following the Contracting Officer's

517   response, negotiate in good faith the earliest practicable date by which the Contractor shall

518   modify said measuring devices and/or measuring methods as required by the Contracting

519   Officer to ensure compliance with subdivision (a) of this Article.

520        (c)    All new surface water delivery systems installed within the Contractor's

521   Service Area after the Effective Date of this Contract shall also comply with the

522   measurement provisions described in subdivision (a) of this Article.

523        (d)    The Contractor shall inform the Contracting Officer and the State of

524   California in writing by April 30 of each Year of the monthly volume of surface water

525   delivered within the Contractor's Service Area during the previous Year.

526        (e)    The Contractor shall inform the Contracting Officer and the Operating

527   Non-Federal Entity(ies) on or before the 20th calendar day of each month of the quantity

528   of Irrigation Water and M&I Water taken during the preceding month.

529   <u>RATES, METHOD OF PAYMENT FOR WATER AND ACCELERATED</u>
530   <u>REPAYMENT OF FACILITIES</u>

531       7.    (a)    Notwithstanding the Contractor's full prepayment of the

532   Repayment Obligation pursuant to section 4011, subsection (a)(2)(A) and subsection

533   (a)(3)(A) of the WIIN Act, as set forth in Exhibit D, and any payments required

534   pursuant to section 4011, subsection (b) of the WIIN Act, to reflect the adjustment for

535   the final cost allocation as described in this Article, subsection (b), the Contractor's

536   Project construction and other obligations shall be determined in accordance with:  (i)

537   the Secretary's ratesetting policy for Irrigation Water adopted in 1988 and the Secretary's

538   then-existing ratesetting policy for M&I Water, consistent with the WIIN Act; and such

539   ratesetting policies shall be amended, modified, or superseded only through a public

540   notice and comment procedure; (ii) applicable Federal Reclamation law and associated

541    rules and regulations, or policies, and (iii) other applicable provisions of this Contract.

542    Payments shall be made by cash transaction, electronic funds transfers, or any other

543    mechanism as may be agreed to in writing by the Contractor and the Contracting Officer.

544    The Rates, Charges, and Tiered Pricing Component applicable to the Contractor upon

545    execution of this Contract are set forth in Exhibit "B," as may be revised annually.

546        (1)    The Contractor shall pay the United States as provided for in this

547    Article of this Contract for all Delivered Water at Rates, Charges, and Tiered Pricing Component

548    in accordance with policies for Irrigation Water and M&I Water.  The Contractor's Rates shall

549    be established to recover its estimated reimbursable costs included in the operation and

550    maintenance component of the Rate and amounts established to recover deficits and other

551    charges, if any, including construction costs as identified in the following subdivisions.

552        (2)    In accordance with the WIIN Act, the Contractor's allocable share

553    of Project construction costs will be repaid pursuant to the provisions of this Contract.

554        (A)    The amount due and payable to the United States, pursuant

555    to the WIIN Act, shall be the Repayment Obligation.  The Repayment Obligation has been

556    computed by the Contracting Officer in a manner consistent with the WIIN Act and is set forth

557    as a lump sum payment (M&I and Irrigation) and as four (4) approximately equal annual

558    installments (Irrigation Only) to be repaid no later than three (3) years after the Effective Date of

559    this Contract as set forth in Exhibit D.  The Repayment Obligation is due in lump sum by July

560    31, 2020 as provided by the WIIN Act.  The Contractor must provide appropriate notice to the

561    Contracting Officer in writing no later than thirty (30) days prior to the Effective Date if electing

562    to repay the amount due using the lump sum alternative.  If such notice is not provided by such

563    date, the Contractor shall be deemed to have elected the installment payment alternative, in

25

564    which case, the first such payment shall be made no later than July 31, 2020.  The second

565    payment shall be made no later than the first anniversary of the first payment date.  The third

566    payment shall be made no later than the second anniversary of the first payment date.  The final

567    payment shall be made no later than June 1, 2023.  If the installment payment option is elected

568    by the Contractor, the Contractor may pre-pay the remaining portion of the Repayment

569    Obligation by giving the Contracting Officer sixty (60) days written notice, in which case, the

570    Contracting Officer shall re-compute the remaining amount due to reflect the pre-payment using

571    the same methodology as was used to compute the initial annual installment payment amount,

572    which is illustrated in Exhibit D.  Notwithstanding any Additional Capital Obligation that may

573    later be established, receipt of the Contractor's payment of the Repayment Obligation to the

574    United States shall fully and permanently satisfy the Existing Capital Obligation.

575            (B)      Additional Capital Obligations that are not reflected in, the

576    schedules referenced in Exhibit D and properly assignable to the Contractor, shall be repaid as

577    prescribed by the WIIN Act without interest except as required by law.  Consistent with Federal

578    Reclamation law, interest shall continue to accrue on the M&I portion of the Additional Capital

579    Obligation assigned to the Contractor until such costs are paid.  Increases or decreases in the

580    Additional Capital Obligation assigned to the Contractor caused solely by annual adjustment of

581    the Additional Capital Obligation assigned to each Project contractor by the Secretary shall not

582    be considered in determining the amounts to be paid pursuant to this subdivision (a)(2)(B),

583    however, will be considered under subdivision (b) of this Article.  A separate agreement shall be

584    established by the Contractor and the Contracting Officer to accomplish repayment of the

585    Additional Capital Obligation assigned to the Contractor within the timeframe prescribed by the

586    WIIN Act, subject to the following:

587               (1)     If the collective Additional Capital Obligation

588 properly assignable to the contractors exercising conversion under section 4011 of the WIIN Act

589 is less than five million dollars ($5,000,000), then the portion of such costs properly assignable

590 to the Contractor shall be repaid not more than five (5)-years after the Contracting Officer

591 notifies the Contractor of the Additional Capital Obligation; _Provided, That_ the reference to the

592 amount of five million dollars ($5,000,000) shall not be a precedent in any other context.

593               (2)     If the collective Additional Capital Obligation

594 properly assignable to the contractors exercising conversion under section 4011 of the WIIN Act

595 is equal to or greater than five million dollars ($5,000,000), then the portion of such costs

596 properly assignable to the Contractor shall be repaid as provided by applicable Federal

597 Reclamation law and Project ratesetting policy; _Provided, That_ the reference to the amount of

598 five million dollars ($5,000,000) shall not be a precedent in any other context.

599          (b)     In the event that the final cost allocation referenced in Section 4011(b) of

600 the WIIN Act determines that the costs properly assignable to the Contractor are greater than

601 what has been paid by the Contractor, the Contractor shall be obligated to pay the remaining

602 allocated costs.  The term of such additional repayment contract shall be not less than one (1)

603 year and not more than ten (10) years, however, mutually agreeable provisions regarding the rate

604 of repayment of such amount may be developed by the Contractor and Contracting Officer.  In

605 the event that the final cost allocation indicates that the costs properly assignable to the

606 Contractor are less than what the Contractor has paid, the Contracting Officer shall credit such

607 overpayment as an offset against any outstanding or future obligations of the Contractor, with the

608 exception of Restoration Fund charges pursuant to section 3407(d) of Pub. L. 102-575.

609     (c)     The Contracting Officer shall notify the Contractor of the Rates, Charges,

610 and Tiered Pricing Component as follows:

611         (1)     Prior to July 1 of each Calendar Year, the Contracting Officer shall

612 provide the Contractor an estimate of the Charges for Project Water that will be applied

613 to the period October 1, of the current Calendar Year, through September 30, of the

614 following Calendar Year, and the basis for such estimate.  The Contractor shall be

615 allowed not less than two months to review and comment on such estimates.  On or

616 before September 15 of each Calendar Year, the Contracting Officer shall notify the

617 Contractor in writing of the Charges to be in effect during the period October 1 of the current

618 Calendar Year, through September 30, of the following Calendar Year, and such

619 notification shall revise Exhibit "B."

620         (2)     Prior to October 1 of each Calendar Year, the Contracting Officer

621 shall make available to the Contractor an estimate of the Rates and Tiered Pricing Component

622 for Project Water for the following Year and the computations and cost allocations upon which

623 those Rates are based.  The Contractor shall be allowed not less than two months to review and

624 comment on such computations and cost allocations.  By December 31 of each Calendar Year,

625 the Contracting Officer shall provide the Contractor with the final Rates and Tiered Pricing

626 Component to be in effect for the upcoming Year, and such notification shall revise Exhibit

627 "B."

628     (d)     At the time the Contractor submits the initial schedule for the delivery of

629 Project Water for each Year pursuant to subdivision (b) of Article 4 of this Contract, the

630 Contractor shall make an advance payment to the United States equal to the total amount

631 payable pursuant to the applicable Rate(s) set under subdivision (a) of this Article, for the

28

632    Project Water scheduled to be delivered pursuant to this Contract during the first two

633    calendar months of the Year.  Before the end of the first month and before the end of

634    each calendar month thereafter, the Contractor shall make an advance payment to the

635    United States, at the Rate(s) set under subdivision (a) of this Article, for the Water

636    Scheduled to be delivered pursuant to this Contract during the second month

637    immediately following.  Adjustments between advance payments for Water Scheduled

638    and payments at Rates due for Water Delivered shall be made before the end of the

639    following month; _Provided, That_ any revised schedule submitted by the Contractor

640    pursuant to Article 4 of this Contract which increases the amount of Water Delivered

641    pursuant to this Contract during any month shall be accompanied with appropriate

642    advance payment, at the Rates then in effect, to assure that Project Water is not

643    delivered to the Contractor in advance of such payment.  In any month in which the

644    quantity of Water Delivered to the Contractor pursuant to this Contract equals the

645    quantity of Water Scheduled and paid for by the Contractor, no additional Project Water

646    shall be delivered to the Contractor unless and until an advance payment at the Rates

647    then in effect for such additional Project Water is made.  Final adjustment between the

648    advance payments for the Water Scheduled and payments for the quantities of Water

649    Delivered during each Year pursuant to this Contract shall be made as soon as

650    practicable but no later than April 30th of the following Year, or 60 days after the

651    delivery of Project Water rescheduled under subdivision (g) of Article 3 of this Contract

652    if such water is not delivered by the last day of February.

653            (e)      The Contractor shall also make a payment in addition to the Rate(s) in

654    subdivision (d) of this Article to the United States for Water Delivered, at the Charges and the

655 applicable Tiered Pricing Component then in effect, before the end of the month following

656 the month of delivery; *Provided,* *That* the Contractor may be granted an exception from

657 the Tiered Pricing Component pursuant to subdivision (k)(2) of this Article.  The

658 payments shall be consistent with the quantities of Irrigation Water and M&I Water Delivered as

659 shown in the water delivery report for the subject month prepared by the Operating Non-Federal

660 Entity(ies) or, if there is no Operating Non-Federal Entity(ies), by the Contracting Officer.  The

661 water delivery report shall be deemed a bill for the payment of Charges and the applicable

662 Tiered Pricing Component for Water Delivered.  Adjustment for overpayment or

663 underpayment of Charges shall be made through the adjustment of payments due to the United

664 States for Charges and Tiered Pricing Component for the next month.  Any amount to be paid

665 for past due payment of Charges and Tiered Pricing Component shall be computed pursuant to

666 Article 19 of this Contract.

667    (f)  The Contractor shall pay for any Water Delivered under subdivision

668 (a), (f), or (g) of Article 3 of this Contract as determined by the Contracting Officer

669 pursuant to applicable statutes, associated regulations, any applicable provisions of

670 guidelines or ratesetting policies; *Provided,* *That* the Rate for Water Delivered under

671 subdivision (f) of Article 3 of this Contract shall be no more than the otherwise

672 applicable Rate for Irrigation Water or M&I Water under subdivision (a) of this Article.

673    (g)  Payments to be made by the Contractor to the United States under this

674 Contract may be paid from any revenues available to the Contractor.

675    (h)  All revenues received by the United States from the Contractor

676 relating to the delivery of Project Water or the delivery of non-Project water through

677 Project facilities shall be allocated and applied in accordance with Federal Reclamation

678  law and the associated rules or regulations, and the then-current Project ratesetting policies

679  for M&I Water or Irrigation Water.

680         (i)      The Contracting Officer shall keep its accounts pertaining to the

681  administration of the financial terms and conditions of its long-term contracts, in accordance

682  with applicable Federal standards, so as to reflect the application of Project costs and

683  revenues.  The Contracting Officer shall, each Year upon request of the Contractor,

684  provide to the Contractor a detailed accounting of all Project and Contractor expense

685  allocations, the disposition of all Project and Contractor revenues, and a summary of all

686  water delivery information.  The Contracting Officer and the Contractor shall enter into

687  good faith negotiations to resolve any discrepancies or disputes relating to accountings,

688  reports, or information.

689         (j)      The parties acknowledge and agree that the efficient administration of this

690  Contract is their mutual goal.  Recognizing that experience has demonstrated that mechanisms,

691  policies, and procedures used for establishing Rates, Charges, and Tiered Pricing Component,

692  and/or for making and allocating payments, other than those set forth in this Article may be in

693  the mutual best interest of the parties, it is expressly agreed that the parties may enter into

694  agreements to modify the mechanisms, policies, and procedures for any of those purposes while

695  this Contract is in effect without amending this Contract.

696         (k)    1.      Beginning at such time as deliveries of Project Water in a Year

697  exceed 80 percent of the Contract Total, then before the end of the month following the month of

698  delivery the Contractor shall make an additional payment to the United States equal to the

699  applicable Tiered Pricing Component.  The Tiered Pricing Component for the amount of Water

700  Delivered in excess of 80 percent of the Contract Total, but less than or equal to 90 percent of the

701  Contract Total, shall equal one-half of the difference between the Rate established under

702  subdivision (a) of this Article and the Irrigation Full Cost Water Rate or M&I Full Cost Water

703  Rate, whichever is applicable.  The Tiered Pricing Component for the amount of Water

704  Delivered which exceeds 90 percent of the Contract Total shall equal the difference between (i)

705  the Rate established under subdivision (a) of this Article and (ii) the Irrigation Full Cost Water

706  Rate or M&I Full Cost Water Rate, whichever is applicable.  For all Water Delivered pursuant to

707  subdivision (a) of Article 3 of this Contract which is in excess of 80 percent of the Contract

708  Total, this increment shall be deemed to be divided between Irrigation Water and M&I Water in

709  the same proportion as actual deliveries of each bear to the cumulative total Water Delivered.

710             2.      Subject to the Contracting Officer's written approval, the

711  Contractor may request and receive an exemption from such Tiered Pricing Component for

712  Project Water delivered to produce a crop which the Contracting Officer determines will provide

713  significant and quantifiable habitat values for waterfowl in fields where the water is used and the

714  crops are produced; *Provided, That* the exemption from the Tiered Pricing Component for

715  Irrigation Water shall apply only if such habitat values can be assured consistent with the

716  purposes of the CVPIA through binding agreements executed with or approved by the

717  Contracting Officer prior to use of such water.

718             3.      For purposes of determining the applicability of the Tiered Pricing

719  Component pursuant to this Article, Water Delivered shall include Project Water that the

720  Contractor transfers to others but shall not include Project Water transferred to the Contractor,

721  nor shall it include the additional water provided to the Contractor under the provisions of

722  subdivision (f) of Article 3 of this Contract.

723             (l)      For the term of this Contract, Rates applied under the respective

724  ratesetting policies will be established to recover only reimbursable O&M (including any

725  deficits) and capital costs of the Project, as those terms are used in the then-current Project

726  ratesetting policies, and interest, where appropriate, except in instances where a minimum

727  Rate is applicable in accordance with the relevant Project ratesetting policy.  Changes of

728  significance in practices which implement the Contracting Officer's ratesetting policies will

729  not be implemented until the Contracting Officer has provided the Contractor an opportunity

730  to discuss the nature, need, and impact of the proposed change.

731         (m)      Except as provided in subsections 3405(a)(1)(B) and 3405(f) of the

732  CVPIA, the Rates for Project Water transferred by the Contractor shall be the

733  Contractor's Rates, in accordance with the applicable Project ratesetting policy, adjusted

734  upward or downward to reflect the changed costs, if any, incurred by the Contracting Officer

735  in the delivery of the transferred Project Water to the transferee's point of delivery.  If the

736  Contractor is receiving lower Rates and Charges because of inability to pay and is

737  transferring Project Water to another entity whose Rates and Charges are not adjusted

738  due to inability to pay, the Rates and Charges for transferred Project Water shall not be

739  adjusted to reflect the Contractor's inability to pay.

740         (n)      Pursuant to the Act of October 27, 1986 (100 Stat. 3050), the Contracting

741  Officer is authorized to adjust determinations of ability to pay every five years.

742                    <u>NON-INTEREST BEARING O&M DEFICITS</u>

743         8.      The Contractor and the Contracting Officer concur that, as of the Effective Date

744  of this Contract the Contractor has no non-interest bearing O&M deficits and shall have

745  no further liability therefore.

746                      SALES, TRANSFERS, OR EXCHANGES OF WATER

747          9.      (a)      The right to receive Project Water provided for in this Contract may be

748    sold, transferred, or exchanged to others for reasonable and beneficial uses within the

749    State of California if such sale, transfer, or exchange is authorized by applicable Federal

750    and State laws, and applicable guidelines or regulations then in effect.  No sale, transfer,

751    or exchange of Project Water under this Contract may take place without the prior

752    written approval of the Contracting Officer, except as provided for in subdivision (b) of

753    this Article, and no such sales, transfers, or exchanges shall be approved absent all

754    appropriate environmental documentation, including, but not limited to, documents

755    prepared pursuant to the NEPA and ESA.  Such environmental documentation should

756    include, as appropriate, an analysis of groundwater impacts and economic and social

757    effects, including environmental justice, of the proposed water transfers on both the

758    transferor and transferee.

759                      (b)      In order to facilitate efficient water management by means of water

760    transfers of the type historically carried out among Project Contractors located within the

761    same geographical area and to allow the Contractor to participate in an accelerated water

762    transfer program during the term of this Contract, the Contracting Officer shall prepare, as

763    appropriate, all necessary environmental documentation, including, but not limited to,

764    documents prepared pursuant to the NEPA and ESA, analyzing annual transfers within

765    such geographical areas and the Contracting Officer shall determine whether such

766    transfers comply with applicable law.  Following the completion of the environmental

767    documentation, such transfers addressed in such documentation shall be conducted with

768    advance notice to the Contracting Officer, but shall not require prior written approval by

769     the Contracting Officer.  Such environmental documentation and the Contracting

770     Officer's compliance determination shall be reviewed every five years and updated, as

771     necessary, prior to the expiration of the then existing five (5)-year period.  All subsequent

772     environmental documentation shall include an alternative to evaluate not less than the quantity of

773     Project Water historically transferred within the same geographical area.

774           (c)     For a water transfer to qualify under subdivision (b) of this Article, such

775     water transfer must:  (i) be for irrigation purposes for lands irrigated within the previous three

776     years, for M&I use, groundwater recharge, groundwater banking, or similar groundwater

777     activities, surface water storage, or fish and wildlife resources; not lead to land

778     conversion; and be delivered to established cropland, wildlife refuges, groundwater basins, or

779     M&I use; (ii) occur within a single Year; (iii) occur between a willing seller and a willing

780     buyer; (iv) convey water through existing facilities with no new construction or

781     modifications to facilities and be between existing Project Contractors and/or the Contractor

782     and the United States, Department of the Interior; and (v) comply with all applicable

783     Federal, State, and local or tribal laws and requirements imposed for protection of the

784     environment and Indian Trust Assets, as defined under Federal law.

785         <u>APPLICATION OF PAYMENTS AND ADJUSTMENTS</u>

786     10.     (a)     The amount of any overpayment by the Contractor of the Contractor's

787     O&M, capital, and deficit (if any) obligations for the Year shall be applied first to any current

788     liabilities of the Contractor arising out of this Contract then due and payable.

789     Overpayments of more than $1,000 shall be refunded at the Contractor's request.  In lieu of a

790     refund, any amount of such overpayment, at the option of the Contractor, may be credited

791     against amounts to become due to the United States by the Contractor.  With respect to

792 overpayment, such refund or adjustment shall constitute the sole remedy of the Contractor or

793 anyone having or claiming to have the right to the use of any of the Project Water supply

794 provided for herein.  All credits and refunds of overpayments shall be made within 30

795 days of the Contracting Officer obtaining direction as to how to credit or refund such

796 overpayment in response to the notice to the Contractor that it has finalized the accounts for the

797 Year in which the overpayment was made.

798     (b) All advances for miscellaneous costs incurred for work requested by the

799 Contractor pursuant to Article 24 of this Contract shall be adjusted to reflect the actual

800 costs when the work has been completed.  If the advances exceed the actual costs incurred, the

801 difference will be refunded to the Contractor.  If the actual costs exceed the Contractor's

802 advances, the Contractor will be billed for the additional costs pursuant to Article 24 of this

803 Contract.

804 <u>TEMPORARY REDUCTIONS – RETURN FLOWS</u>

805 11.    (a) Subject to:  (i) the authorized purposes and priorities of the Project and the

806 requirements of Federal law, and (ii) the obligations of the United States under existing

807 contracts, or renewals thereof, providing for water deliveries from the Project, the

808 Contracting Officer shall make all reasonable efforts to optimize Project Water deliveries to

809 the Contractor as provided in this Contract.

810     (b) The Contracting Officer or Operating Non-Federal Entity(ies) may

811 temporarily discontinue or reduce the quantity of Water Delivered to the Contractor as

812 herein provided for the purposes of investigation, inspection, maintenance, repair, or

813 replacement of any of the Project facilities or any part thereof necessary for the delivery of

814 Project Water to the Contractor, but so far as feasible the Contracting Officer or Operating

815     Non-Federal Entity(ies) will give the Contractor due notice in advance of such temporary

816     discontinuance or reduction, except in case of emergency, in which case no notice need be

817     given; _Provided,_ _That_ the United States shall use its best efforts to avoid any

818     discontinuance or reduction in such service.  Upon resumption of service after such

819     discontinuance or reduction, and if requested by the Contractor, the United States will, if

820     possible, deliver the quantity of Project Water which would have been delivered

821     hereunder in the absence of such discontinuance or reduction.

822         (c)     The United States reserves the right to all seepage and return flow

823     water derived from Water Delivered to the Contractor hereunder which escapes or is

824     discharged beyond the Contractor's Service Area; _Provided,_ _That_ this shall not be construed

825     as claiming for the United States any right to seepage or return flow being put to

826     reasonable and beneficial use pursuant to this Contract within the Contractor's Service

827     Area by the Contractor or those claiming by, through, or under the Contractor.

828         <u>CONSTRAINTS ON THE AVAILABILITY OF WATER</u>

829       12.    (a)     In its operation of the Project, the Contracting Officer will use all
830     reasonable means to guard against a Condition of Shortage in the quantity of Project
831     Water to be made available to the Contractor pursuant to this Contract.  In the event the
832     Contracting Officer determines that a Condition of Shortage appears probable, the
833     Contracting Officer will notify the Contractor of said determination as soon as practicable.

834         (b)     If there is a Condition of Shortage because of inaccurate runoff forecasting
835     or other similar operational errors affecting the Project; drought and other physical or natural
836     causes beyond the control of the Contracting Officer; or actions taken by the Contracting
837     Officer to meet current and future legal obligations, then, except as provided in subdivision (a) of
838     Article 17 of this Contract, no liability shall accrue against the United States or any of its
839     officers, agents, or employees for any damage, direct or indirect, arising therefrom.

840         (c)     In any Year in which there may occur a Condition of Shortage for any of

841     the reasons specified in subdivision (b) of this Article, and subject to subdivision (d) of this

842     Article, the Contracting Officer will first allocate the available Project Water consistent

843    with the Project M&I Water Shortage Policy in its form applicable under this Article 12(c) of

844    water service contracts in effect on the date of this Contract which provide water service

845    from Delta Division Facilities for determining the amount of Project Water Available

846    for delivery to the Project Contractors.  Subject to the foregoing allocation, in any year

847    in which there may occur a Condition of Shortage, the Contracting Officer shall then

848    apportion Project Water among the Contractor and others entitled to Project Water from

849    Delta Division Facilities under long-term water service or repayment contracts (or

850    renewals thereof or binding commitments therefore) in force on February 28, 2005, as

851    follows:

852    (1)    The Contracting Officer shall make an initial and subsequent

853    determination as necessary of the total quantity of Project Water estimated to be

854    scheduled or actually scheduled under subdivision (b) of Article 4 of this Contract and

855    under all other interim renewal, long-term water service or repayment contracts then in

856    force for the delivery of Project Water by the United States from Delta Division Facilities

857    during the relevant Year, the quantity so determined being hereinafter referred to as the

858    scheduled total;

859    (2)    A determination shall be made of the total quantity of Project

860    Water that is available for meeting the scheduled total, the quantity so determined being

861    hereinafter referred to as the available supply;

862    (3)    The total quantity of Project Water estimated to be scheduled or

863    actually scheduled by the Contractor during the relevant Year, under subdivision (b) of

864    Article 4 hereof, shall be divided by the scheduled total, the quotient thus obtained being

865    hereinafter referred to as the Contractor's proportionate share; and

866         (4)    The available supply shall be multiplied by the Contractor's

867 proportionate share and the result shall be the quantity of Project Water made available

868 by the United States to the Contractor for the relevant Year in accordance with the

869 schedule developed by the Contracting Officer under subdivision (c)(1) of this Article 12,

870 but in no event shall such amount exceed the Contract Total.  In the event the

871 Contracting Officer subsequently determines that the Contracting Officer can increase or

872 needs to decrease the available supply for delivery from Delta Division Facilities to

873 interim renewal, long-term water service, and repayment contractors during the relevant

874 Year, such additions or reductions to the available supply shall be apportioned consistent

875 with subparagraphs (1) through (4), inclusive.

876         (d)    By entering into this Contract, the Contractor does not waive any legal

877 rights or remedies it may have to file or participate in any administrative or judicial

878 proceeding contesting:  (i) the sufficiency of the Project M&I Water Shortage Policy; (ii)

879 the substance of such a policy; (iii) the applicability of such a policy; or (iv) the manner in

880 which such policy is implemented in order to allocate Project Water between M&I and

881 irrigation purposes; *Provided, That* the Contractor has commenced any such judicial

882 challenge or any administrative procedures necessary to institute any judicial challenge

883 within six months of the policy becoming final.  By agreeing to the foregoing, the

884 Contracting Officer does not waive any legal defenses or remedies that it may have to

885 assert in such a proceeding.  Nothing contained herein shall be interpreted to validate or

886 invalidate the Project M&I Water Shortage Policy.

887         (e)    Omitted

888 <div align="center">UNAVOIDABLE GROUNDWATER PERCOLATION</div>

889    13.    To the extent applicable, the Contractor shall not be deemed to have delivered

890 Irrigation Water to Excess Lands or Ineligible Lands within the meaning of this Contract if

891 such lands are irrigated with groundwater that reaches the underground strata as an

892 unavoidable result of the delivery of Irrigation Water by the Contractor to Eligible Lands.

893 <div align="center">COMPLIANCE WITH FEDERAL RECLAMATION LAWS</div>

894    14.    The parties agree that the delivery of Irrigation Water or use of Federal facilities
895 pursuant to this Contract is subject to Federal Reclamation law, including but not limited
896 to, the Reclamation Reform Act of 1982 (43 U.S.C. 390aa *et seq*.), as amended and
897 supplemented, and the rules and regulations promulgated by the Secretary of the Interior
898 under Federal Reclamation law.

899 <div align="center">PROTECTION OF WATER AND AIR QUALITY</div>

900    15.    (a)    The Contractor, without expense to the United States, will care for,
901 operate and maintain transferred works in a manner that preserves the quality of the water at the
902 highest feasible level as determined by the Contracting Officer.

903            (b)    The United States will care for, operate and maintain reserved works in a
904 manner that preserves the quality of the water at the highest level possible as determined by the
905 Contracting Officer.  The United States does not warrant the quality of the water delivered to the
906 Contractor and is under no obligation to furnish or construct water treatment facilities to
907 maintain or improve the quality of water delivered to the Contractor.

908            (c)    The Contractor will comply with all applicable water and air pollution
909 laws and regulations of the United States and the State of California; and will obtain all required
910 permits or licenses from the appropriate Federal, State, or local authorities necessary for the
911 delivery of water by the Contractor; and shall be responsible for compliance with all Federal,
912 State, and local water quality standards applicable to surface and subsurface drainage and/or
913 discharges generated through the use of Federal or Contractor facilities or Project Water
914 provided by the Contractor within its Service Area.

915            (d)    This Article shall not affect or alter any legal obligations of the Secretary
916 to provide drainage or other discharge services.

917            (e)    The Contracting Officer shall notify the Contractor in writing when

918 drainage service becomes available.  Thereafter, the Contracting Officer shall provide

919 drainage service to the Contractor at rates established pursuant to the then-existing

920   ratesetting policy for Irrigation Water; _Provided, That_ such ratesetting policy shall be

921   amended, modified, or superseded only through the process described in subdivision (a)

922   of Article 7 of this Contract.

923          WATER ACQUIRED BY THE CONTRACTOR OTHER THAN FROM THE UNITED
924                                         STATES

925          16.    (a)       Water or water rights now owned or hereafter acquired by the Contractor

926   other than from the United States and Irrigation Water furnished pursuant to the terms of

927   this Contract may be simultaneously transported through the same distribution facilities

928   of the Contractor subject to the following:  (i) if the facilities utilized for commingling

929   Irrigation Water and non-Project water were constructed without funds made available

930   pursuant to Federal Reclamation law, the provisions of Federal Reclamation law will be

931   applicable only to the Landholders of lands which receive Irrigation Water; (ii) the

932   eligibility of land to receive Irrigation Water must be established through the certification

933   requirements as specified in the Acreage Limitation Rules and Regulations (43 CFR Part

934   426); (iii) the water requirements of Eligible Lands within the Contractor's Service Area

935   can be established and the quantity of Irrigation Water to be utilized is less than or equal to

936   the quantity necessary to irrigate such Eligible Lands; and (iv) if the facilities utilized for

937   commingling Irrigation Water and non-Project water are (were) constructed with funds

938   made available pursuant to Federal Reclamation law, the non-Project water will be

939   subject to the acreage limitation provisions of Federal Reclamation law, unless the

940   Contractor pays to the United States the incremental fee described in 43 CFR 426.15.  In

941   determining the incremental fee, the Contracting Officer will calculate annually the cost

942   to the Federal Government, including interest, of storing or delivering non-Project water,

943   which for purposes of this Contract shall be determined as follows:  The quotient shall

944    be the unpaid distribution system costs divided by the total irrigable acreage within the

945    Contractor's Service Area.  The incremental fee per acre is the mathematical result of

946    such quotient times the interest rate determined using Section 202 (3) of the Act of

947    October 12, 1982 (96 Stat. 1263).  Such incremental fee will be charged to each acre of

948    excess or full-cost land within the Contractor's Service Area that receives non-Project

949    water through Federally financed or constructed facilities.  The incremental fee calculation

950    methodology will continue during the term of this Contract absent the promulgation of a

951    contrary Bureau of Reclamation-wide rule, regulation, or policy adopted after the

952    Contractor has been afforded the opportunity to review and comment on the proposed

953    rule, regulation, or policy.  If such rule, regulation, or policy is adopted, it shall supersede

954    this provision.

955            (b)      Water or water rights now owned or hereafter acquired by the

956    Contractor, other than from the United States may be stored, conveyed, and/or diverted

957    through Project facilities, subject to the completion of appropriate environmental

958    documentation, with the approval of the Contracting Officer and the execution of any

959    contract determined by the Contracting Officer to be necessary, consistent with the

960    following provisions:

961            (1)      The Contractor may introduce non-Project water into Project

962    facilities and deliver said water to lands within the Contractor's Service Area, including

963    Ineligible Lands, subject to payment to the United States and/or to any applicable

964    Operating Non-Federal Entity of an appropriate rate as determined by the applicable

965    Project ratesetting policy, the Reclamation Reform Act of 1982, and the Project use

966    power policy, if such Project use power policy is applicable, each as amended, modified, or

967  superseded from time to time.

968  (2)  Delivery of such non-Project water in and through Project

969  facilities shall only be allowed to the extent such deliveries do not:  (i) interfere with

970  other Project purposes as determined by the Contracting Officer; (ii) reduce the quantity or

971  quality of water available to other Project Contractors; (iii) interfere with the delivery of

972  contractual water entitlements to any other Project Contractors; or (iv) interfere with the

973  physical maintenance of the Project facilities.

974  (3)  Neither the United States nor the Operating Non-Federal

975  Entity(ies) shall be responsible for control, care, or distribution of the non-Project water

976  before it is introduced into or after it is delivered from the Project facilities.  The

977  Contractor hereby releases and agrees to defend and indemnify the United States and the

978  Operating Non-Federal Entity(ies), and their respective officers, agents, and employees,

979  from any claim for damage to persons or property, direct or indirect, resulting from the

980  act(s) of the Contractor, its officers, employees, agents, or assigns, in (i) extracting or

981  diverting non-Project water from any source, or (ii) diverting such non-Project water into

982  Project facilities.

983  (4)  Diversion of such non-Project water into Project facilities shall

984  be consistent with all applicable laws, and if involving groundwater, consistent with any

985  applicable groundwater management plan for the area from which it was extracted.

986  (5)  After Project purposes are met, as determined by the

987  Contracting Officer, the United States and Project Contractors entitled to Project Water

988  from Delta Division Facilities shall share priority to utilize the remaining capacity of the

989  facilities declared to be available by the Contracting Officer for conveyance and

990 transportation of non-Project water prior to any such remaining capacity being made

991 available to non-Project contractors.  Other Project Contractors shall have a second priority

992 to any remaining capacity of facilities declared to be available by the Contracting Officer

993 for conveyance and transportation of non-Project water prior to any such remaining

994 capacity being made available to non-Project contractors.

995                                    OPINIONS AND DETERMINATIONS

996          17.     (a)      Where the terms of this Contract provide for actions to be based upon

997 the opinion or determination of either party to this Contract, said terms shall not be

998 construed as permitting such action to be predicated upon arbitrary, capricious, or

999 unreasonable opinions or determinations.  Both parties, notwithstanding any other

1000 provisions of this Contract, expressly reserve the right to seek relief from and appropriate

1001 adjustment for any such arbitrary, capricious, or unreasonable opinion or determination.

1002 Each opinion or determination by either party shall be provided in a timely manner.

1003 Nothing in this subdivision (a) of this Article is intended to or shall affect or alter the

1004 standard of judicial review applicable under Federal law to any opinion or determination

1005 implementing a specific provision of Federal law embodied in statute or regulation.

1006                (b)      The Contracting Officer shall have the right to make determinations

1007 necessary to administer this Contract that are consistent with the provisions of this

1008 Contract, the laws of the United States and of the State of California, and the rules and

1009 regulations promulgated by the Secretary.  Such determinations shall be made in

1010 consultation with the Contractor to the extent reasonably practicable.

1011                                    COORDINATION AND COOPERATION

1012          18.     (a)      In order to further their mutual goals and objectives, the Contracting

44

1013 Officer and the Contractor shall communicate, coordinate, and cooperate with each other,

1014 and with other affected Project Contractors, in order to improve the O&M of the

1015 Project.  The communication, coordination, and cooperation regarding O&M shall

1016 include, but not be limited to, any action which will or may materially affect the quantity

1017 or quality of Project Water supply, the allocation of Project Water supply, and Project

1018 financial matters including, but not limited to, budget issues.  The communication,

1019 coordination, and cooperation provided for hereunder shall extend to all provisions of

1020 this Contract.  Each party shall retain exclusive decision making authority for all actions,

1021 opinions, and determinations to be made by the respective party.

1022        (b)     Within 120 days following the Effective Date of this Contract, the

1023 Contractor, other affected Project Contractors, and the Contracting Officer shall arrange to

1024 meet with interested Project Contractors to develop a mutually agreeable, written Project-

1025 wide process, which may be amended as necessary separate and apart from this Contract.

1026 The goal of this process shall be to provide, to the extent practicable, the means of

1027 mutual communication and interaction regarding significant decisions concerning

1028 Project O&M on a real-time basis.

1029        (c)     In light of the factors referred to in subdivision (b) of Article 3 of this

1030 Contract, it is the intent of the Secretary to improve water supply reliability.  To carry out

1031 this intent:

1032               (1)     The Contracting Officer will, at the request of the Contractor,

1033 assist in the development of integrated resource management plans for the Contractor.

1034 Further, the Contracting Officer will, as appropriate, seek authorizations for implementation

1035 of partnerships to improve water supply, water quality, and reliability.

1036        (2)     The Secretary will, as appropriate, pursue program and project

1037 implementation and authorization in coordination with Project Contractors to improve the

1038 water supply, water quality, and reliability of the Project for all Project purposes.

1039        (3)     The Secretary will coordinate with Project Contractors and the

1040 State of California to seek improved water resource management.

1041        (4)     The Secretary will coordinate actions of agencies within the

1042 Department of the Interior that may impact the availability of water for Project purposes.

1043        (5)     The Contracting Officer shall periodically, but not less than

1044 annually, hold division-level meetings to discuss Project operations, division-level water

1045 management activities, and other issues as appropriate.

1046        (d)     Without limiting the contractual obligations of the Contracting Officer

1047 under the other Articles of this Contract, nothing in this Article shall be construed to limit

1048 or constrain the Contracting Officer's ability to communicate, coordinate, and cooperate

1049 with the Contractor or other interested stakeholders or to make decisions in a timely fashion

1050 as needed to protect health, safety, or the physical integrity of structures or facilities.

1051        <u>CHARGES FOR DELINQUENT PAYMENTS</u>

1052    19.    (a)     The Contractor shall be subject to interest, administrative, and penalty
1053 charges on delinquent payments.  If a payment is not received by the due date, the
1054 Contractor shall pay an interest charge on the delinquent payment for each day the payment
1055 is delinquent beyond the due date.  If a payment becomes 60 days delinquent, the
1056 Contractor shall pay, in addition to the interest charge, an administrative charge to
1057 cover additional costs of billing and processing the delinquent payment.  If a payment is
1058 delinquent 90 days or more, the Contractor shall pay, in addition to the interest and
1059 administrative charges, a penalty charge for each day the payment is delinquent beyond the
1060 due date, based on the remaining balance of the payment due at the rate of 6 percent per
1061 year.  The Contractor shall also pay any fees incurred for debt collection services associated
1062 with a delinquent payment.

1063        (b)     The interest rate charged shall be the greater of either the rate prescribed
1064 quarterly in the <u>Federal Register</u> by the Department of the Treasury for application to

46

Contract No. 14-06-200-495A-IR1-P

1065 overdue payments, or the interest rate of 0.5 percent per month.  The interest rate charged
1066 will be determined as of the due date and remain fixed for the duration of the delinquent
1067 period.

1068      (c)      When a partial payment on a delinquent account is received, the amount
1069 received shall be applied first to the penalty charges, second to the administrative charges,
1070 third to the accrued interest, and finally to the overdue payment.

1071                    <u>EQUAL EMPLOYMENT OPPORTUNITY</u>

1072      20.      During the performance of this Contract, the Contractor agrees as follows:

1073      (a)      The Contractor will not discriminate against any employee or applicant
1074 for employment because of race, color, religion, sex, sexual orientation, gender identity, or
1075 national origin.  The Contractor will take affirmative action to ensure that applicants are
1076 employed, and that employees are treated during employment, without regard to their race,
1077 color, religion, sex, sexual orientation, gender identity, or national origin.  Such action shall
1078 include, but not be limited to, the following:  employment, upgrading, demotion, or
1079 transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other
1080 forms of compensation; and selection for training, including apprenticeship.  The Contractor
1081 agrees to post in conspicuous places, available to employees and applicants for employment,
1082 notices to be provided by the Contracting Officer setting forth the provisions of this
1083 nondiscrimination clause.

1084      (b)      The Contractor will, in all solicitations or advertisements for employees
1085 placed by or on behalf of the Contractor, state that all qualified applicants will receive
1086 consideration for employment without regard to race, color, religion, sex, sexual orientation,
1087 gender identity, or national origin.

1088      (c)      The Contractor will not discharge or in any other manner discriminate
1089 against any employee or applicant for employment because such employee or applicant has
1090 inquired about, discussed, or disclosed the compensation of the employee or applicant or
1091 another employee or applicant.  This provision shall not apply to instances in which an
1092 employee who has access to the compensation information of other employees or applicants as
1093 part of such employee's essential job functions discloses the compensation of such other
1094 employees or applicants to individuals who do not otherwise have access to such information,
1095 unless such disclosure is in response to a formal complaint or charge, in furtherance of an
1096 investigation, proceeding, hearing, or action, including an investigation conducted by the
1097 employer, or is consistent with the Contractor's legal duty to furnish information.

1098      (d)      The Contractor will send to each labor union or representative of
1099 workers with which it has a collective bargaining agreement or other contract or understanding,
1100 a notice, to be provided by the Contracting Officer, advising the labor union or workers'
1101 representative of the Contractor's commitments under section 202 of Executive Order No.
1102 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places
1103 available to employees and applicants for employment.

(e)     The Contractor will comply with all provisions of Executive Order No. 11246 of Sept. 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(f)     The Contractor will furnish all information and reports required by Executive Order No. 11246 of Sept. 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to its books, records, and accounts by the Contracting Agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(g)     In the event of the Contractor's noncompliance with the nondiscrimination clauses of this Contract or with any of such rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of Sept. 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(h)     The Contractor will include the provisions of paragraphs (a) through (g) in every subcontract or purchase order unless exempted by the rules, regulations, or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order No. 11246 of Sept. 24, 1965, so that such provisions will be binding upon each subcontractor or vendor.  The Contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions, including sanctions for noncompliance:  *Provided, however, That* in the event the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

## GENERAL OBLIGATION – BENEFITS CONDITIONED UPON PAYMENT

21.   (a)     The obligation of the Contractor to pay the United States as provided in this Contract is a general obligation of the Contractor notwithstanding the manner in which the obligation may be distributed among the Contractor's water users and notwithstanding the default of individual water users in their obligation to the Contractor.

(b)     The payment of charges becoming due pursuant to this Contract is a condition precedent to receiving benefits under this Contract.  The United States shall not make water available to the Contractor through Project facilities during any period in which the Contractor is in arrears in the advance payment of water rates due the United States.  The Contractor shall not deliver water under the terms and conditions of this Contract for lands or parties that are in arrears in the advance payment of water rates as levied or established by the Contractor.

1142            (c)       With respect to subdivision (b) of this Article, the Contractor shall have no

1143 obligation to require advance payment for water rates which it levies.

1144               <u>COMPLIANCE WITH CIVIL RIGHTS LAWS AND REGULATIONS</u>

1145         22.      (a)       The Contractor shall comply with Title VI of the Civil Rights Act of 1964
1146 (Pub. L. 88-352; 42 U.S.C. § 2000d), the Rehabilitation Act of 1973 (Pub. L. 93-112, Title V, as
1147 amended; 29 U.S.C. § 791, et seq.), the Age Discrimination Act of 1975 (Pub. L. 94-135, Title
1148 III; 42 U.S.C. 6101, et seq.), Title II of the Americans with Disabilities Act of 1990 (Pub. L. 101-
1149 336; 42 U.S.C. § 12131, et seq.), and any other applicable civil rights laws, and with the
1150 applicable implementing regulations and any guidelines imposed by the U.S.
1151 Department of the Interior and/or Bureau of Reclamation.

1152            (b)       These statutes prohibit any person in the United States from being
1153 excluded from participation in, being denied the benefits of, or being otherwise subjected to
1154 discrimination under any program or activity receiving financial assistance from the Bureau
1155 of Reclamation on the grounds of race, color, national origin, disability, or age. By
1156 executing this Contract, the Contractor agrees to immediately take any measures necessary
1157 to implement this obligation, including permitting officials of the United States to inspect
1158 premises, programs, and documents.

1159            (c)       The Contractor makes this Contract in consideration of and for the
1160 purpose of obtaining any and all Federal grants, loans, contracts, property discounts, or other
1161 Federal financial assistance extended after the date hereof to the Contractor by the Bureau
1162 of Reclamation, including installment payments after such date on account of
1163 arrangements for Federal financial assistance which were approved before such date.
1164 The Contractor recognizes and agrees that such Federal assistance will be extended in
1165 reliance on the representations and agreements made in this Article and that the United
1166 States reserves the right to seek judicial enforcement thereof.

1167            (d)       Complaints of discrimination against the Contractor shall be investigated
1168 by the Contracting Officer's Office of Civil Rights.

1169                          <u>PRIVACY ACT COMPLIANCE</u>

1170         23.      (a)       The Contractor shall comply with the Privacy Act of 1974 (Privacy Act)
1171 (5 U.S.C. § 552a) and the Department of the Interior rules and regulations under the Privacy
1172 Act (43 C.F.R. § 2.45, et seq.) in maintaining Landholder certification and reporting
1173 records required to be submitted to the Contractor for compliance with Sections 206,
1174 224(c), and 228 of the Reclamation Reform Act of 1982 (43 U.S.C. §§ 390ff, 390ww, and
1175 390zz), and pursuant to 43 C.F.R. § 426.18.

1176            (b)       With respect to the application and administration of the criminal penalty
1177 provisions of the Privacy Act (5 U.S.C. § 552a(i)), the Contractor and the Contractor's
1178 employees who are responsible for maintaining the certification and reporting records

referenced in paragraph (a) above are considered to be employees of the Department of the Interior. See 5 U.S.C. § 552a(m).

        (c)    The Contracting Officer or a designated representative shall provide the Contractor with current copies of the Department of the Interior Privacy Act regulations and the Bureau of Reclamation Federal Register Privacy Act System of Records Notice (Interior/WBR-31, Acreage Limitation) which govern the maintenance, safeguarding, and disclosure of information contained in the Landholders' certification and reporting records.

        (d)    The Contracting Officer shall designate a full-time employee of the Bureau of Reclamation to be the System Manager responsible for making decisions on denials pursuant to 43 C.F.R. §§ 2.61 and 2.64 and amendment requests pursuant to 43 C.F.R. § 2.72. The Contractor is authorized to grant requests by individuals for access to their own records.

        (e)    The Contractor shall forward promptly to the System Manager each proposed denial of access under 43 C.F.R. § 2.64 and each request for amendment of records filed under 43 C.F.R. § 2.71; notify the requester accordingly of such referral; and provide the System Manager with information and records necessary to prepare an appropriate response to the requester. These requirements do not apply to individuals seeking access to their own certification and reporting forms filed with the Contractor pursuant to 43 C.F.R. § 426.18 unless the requester elects to cite the Privacy Act as an authority for the request.

        (f)    Upon complete payment of the Repayment Obligation by the Contractor, this Article 23 will no longer be applicable.

<u>CONTRACTOR TO PAY CERTAIN MISCELLANEOUS COSTS</u>

    24.    In addition to all other payments to be made by the Contractor pursuant to this Contract, the Contractor shall pay to the United States, within 60 days after receipt of a bill and detailed statement submitted by the Contracting Officer to the Contractor for such specific items of direct cost incurred by the United States for work requested by the Contractor associated with this Contract plus indirect costs in accordance with applicable Bureau of Reclamation policies and procedures. All such amounts referred to in this Article shall not exceed the amount agreed to in writing in advance by the Contractor. This Article shall not apply to costs for routine contract administration.

Contract No. 14-06-200-495A-IR1-P

## WATER CONSERVATION

25.    (a)    Prior to the delivery of water provided from or conveyed through Federally constructed or Federally financed facilities pursuant to this Contract, the Contractor shall develop a water conservation plan, as required by subsection 210(b) of the Reclamation Reform Act of 1982 and 43 C.F.R. 427.1 (Water Conservation Rules and Regulations).

Additionally, an effective water conservation and efficiency program shall be based on the Contractor's water conservation plan that has been determined by the Contracting Officer to meet the conservation and efficiency criteria for evaluating water conservation plans established under Federal law.  The water conservation and efficiency program shall contain definite water conservation objectives, appropriate economically feasible water conservation measures, and time schedules for meeting those objectives.  Continued Project Water delivery pursuant to this Contract shall be contingent upon the Contractor's continued implementation of such water conservation program.  In the event the Contractor's water conservation plan or any revised water conservation plan completed pursuant to subdivision (d) of this Article 25 have not yet been determined by the Contracting Officer to meet such criteria, due to circumstances which the Contracting Officer determines are beyond the control of the Contractor, water deliveries shall be made under this Contract so long as the Contractor diligently works with the Contracting Officer to obtain such determination at the earliest practicable date, and thereafter the Contractor immediately begins implementing its water conservation and efficiency program in accordance with the time schedules therein.

(b)    Should the amount of M&I Water delivered pursuant to subdivision (a) of Article 3 of this Contract equal or exceed two thousand (2,000) acre-feet per Year, the Contractor shall implement the Best Management Practices identified by the time

1236 frames issued by the Mid-Pacific Region's then-existing conservation and efficiency

1237 criteria for such M&I Water unless any such practice is determined by the Contracting

1238 Officer to be inappropriate for the Contractor.

1239   (c) The Contractor shall submit to the Contracting Officer a report on the

1240 status of its implementation of the water conservation plan on the reporting dates specified in the

1241 then-existing conservation and efficiency criteria established under Federal law.

1242   (d) At five (5)-year intervals, the Contractor shall revise its water

1243 conservation plan to reflect the then-existing conservation and efficiency criteria for evaluating

1244 water conservation plans established under Federal law and submit such revised water

1245 management plan to the Contracting Officer for review and evaluation.  The Contracting Officer

1246 will then determine if the water conservation plan meets the Bureau of Reclamation's then-

1247 existing conservation and efficiency criteria for evaluating water conservation plans established

1248 under Federal law.

1249   (e) If the Contractor is engaged in direct groundwater recharge, such activity

1250 shall be described in the Contractor's water conservation plan.

1251     <u>EXISTING OR ACQUIRED WATER OR WATER RIGHTS</u>

1252   26. Except as specifically provided in Article 16 of this Contract, the provisions

1253 of this Contract shall not be applicable to or affect non-Project water or water rights now owned

1254 or hereafter acquired by the Contractor or any user of such water within the Contractor's Service

1255 Area.  Any such water shall not be considered Project Water under this Contract.  In addition,

1256 this Contract shall not be construed as limiting or curtailing any rights which the Contractor or

1257 any water user within the Contractor's Service Area acquires or has available under any other

1258 contract pursuant to Federal Reclamation law.

Contract No. 14-06-200-495A-IR1-P

1259                    OPERATION AND MAINTENANCE OF TRANSFERRED WORKS

1260        27.    (a)      Upon substantial completion of the Project works, or as otherwise
1261    determined by the Contracting Officer, and following written notification, the care, operation,
1262    and maintenance of any or all of those Project works may be transferred to the Contractor.  Title
1263    to the transferred works will remain in the name of the United States, unless otherwise provided
1264    by the Congress of the United States.

1265                    (b)      The Contractor, without expense to the United States, will care for,
1266    operate, and maintain the transferred works in full compliance with the terms of this Contract
1267    and in such a manner that the transferred works remain in good and efficient condition.

1268                    (c)      Necessary repairs of the transferred works shall be made promptly by the
1269    Contractor.  In case of unusual conditions or serious deficiencies in the care, operation, and
1270    maintenance of the transferred works threatening or causing interruption of water service, the
1271    Contracting Officer may issue to the Contractor a special written notice of those necessary
1272    repairs.  Except in the case of an emergency, the Contractor will be given 60 days to either: 1)
1273    make the necessary repairs; or 2) submit a plan for accomplishing the repairs acceptable to the
1274    Contracting Officer that contains a timeframe for completing the necessary repairs.  In the case
1275    of an emergency the written notice of necessary repairs will include a timeframe for completion
1276    of the repairs.  If the Contractor fails to either: 1) make the necessary repairs within the identified
1277    timeframe; or 2) submit a plan for accomplishing the repairs acceptable to the Contracting
1278    Officer within 60 days of receipt of the notice and accomplish the repairs within the timeframe
1279    identified therein, the Contracting Officer may cause the repairs to be made, and the cost of those
1280    repairs shall be paid by the Contractor as directed by the Contracting Officer.

1281                    (d)      The Contractor shall not make any substantial changes in the transferred
1282    works without first obtaining written consent of the Contracting Officer.  The Contractor will
1283    take all reasonable measures to prevent any unauthorized encroachment on project land and
1284    rights-of-way and address any such encroachment as soon as the Contractor becomes aware of its
1285    existence.

1286                    (e)      The Contractor agrees to indemnify the United States for, and hold the
1287    United States and all of its representatives harmless from, all damages resulting from suits,
1288    actions, or claims of any character, except for intentional torts committed by employees of the
1289    United States, brought on account of any injury to any person or property arising out of any act,
1290    omission, neglect, or misconduct in the manner or method of performing any construction, care,
1291    operation, maintenance, supervision, examination, inspection, or other duties of the Contractor or
1292    the United States on transferred works required under this Contract, regardless of who performs
1293    those duties.

1294                    (f)      The Contractor will cooperate with the Contracting Officer in
1295    implementing an effective dam safety program.  The United States agrees to provide the
1296    Contractor and the appropriate agency of the State or States in which the Project facilities are
1297    located with design data, designs, and an operating plan for the dam(s) and related facilities
1298    consistent with the current memorandum of understanding between the United States and the

Contract No. 14-06-200-495A-IR1-P

State of California relating to the coordination of planning, design, construction, operation, and maintenance processes for dams and related facilities.

(g)     In the event the Contractor is found to be operating the transferred works or any part thereof in violation of this Contract or the Contractor is found to be failing any financial commitments or other commitments to the United States under the terms and conditions of this Contract, then upon the election of the Contracting Officer, the United States may take over from the Contractor the care, operation, and maintenance of the transferred works by giving written notice to the Contractor of such election and the effective date thereof.  Thereafter, during the period of operation by the United States, upon notification by the Contracting Officer the Contractor will pay to the United States, annually in advance, the cost of operation and maintenance of the works as determined by the Contracting Officer.  Following written notification from the Contracting Officer the care, operation, and maintenance of the works may be transferred back to the Contractor.

(h)     In addition to all other payments to be made by the Contractor under this Contract, the Contractor will reimburse to the United States, following the receipt of a statement from the Contracting Officer, all miscellaneous costs incurred by the United States for any work involved in the administration and supervision of this Contract.

(i)     Nothing in this article will be deemed to waive the sovereign immunity of the United States.

## O&M BY THE SAN LUIS & DELTA – MENDOTA WATER AUTHORITY

28.     (a)     The O&M of a portion of the Project facilities which serve the Contractor, and responsibility for funding a portion of the costs of such O&M, have been transferred to the San Luis & Delta-Mendota Water Authority, an Operating Non-Federal Entity by separate agreement (8-07-20-X0354-X) between the United States and Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority.  That separate agreement shall not interfere with or affect the rights or obligations of the Contractor or the United States hereunder.

(b)     The Contracting Officer has previously notified the Contractor in writing that the Operation and Maintenance of a portion of the Project facilities which serve the Contractor has been transferred to the Operating Non-Federal Entity, and therefore, the Contractor shall pay directly to the Operating Non-Federal Entity, or to any successor approved by the Contracting Officer under the terms and conditions of the

1330   separate agreement between the United States and the Operating Non-Federal Entity

1331   described in subdivision (a) of this Article, all rates, charges, or assessments of any kind,

1332   including any assessment for reserve funds, which the Operating Non-Federal Entity or such

1333   successor determines, sets, or establishes for the Operation and Maintenance of the portion of the

1334   Project facilities operated and maintained by the Operating Non-Federal Entity or such

1335   successor.  Such direct payments to Operating Non-Federal Entity or such successor shall

1336   not relieve the Contractor of its obligation to pay directly to the United States the

1337   Contractor's share of the Project Rates, Charges, and Tiered Pricing Component except to

1338   the extent the Operating Non-Federal Entity collects payments on behalf of the United

1339   States in accordance with the separate agreement identified in subdivision (a) of this

1340   Article.

1341            (c)      For so long as the O&M of any portion of the Project facilities

1342   serving the Contractor is performed by Operating Non-Federal Entity San Luis &

1343   Delta-Mendota Water Authority, or any successor thereto, the Contracting Officer

1344   shall adjust those components of the Rates for Water Delivered under this Contract

1345   representing the cost associated with the activity being performed by Operating Non-

1346   Federal Entity San Luis & Delta-Mendota Water Authority, or its successor.

1347            (d)      In the event the Operation and Maintenance of the Project facilities

1348   operated and maintained by the Operating Non-Federal Entity is re-assumed by the

1349   United States during the term of this Contract, the Contracting Officer shall so notify the

1350   Contractor, in writing, and present to the Contractor a revised Exhibit "B" which shall

1351   include the portion of the Rates to be paid by the Contractor for Project Water under this

1352   Contract representing the Operation and Maintenance costs of the portion of such Project

1353    facilities which have been re-assumed.  The Contractor shall, thereafter, in the absence of written

1354    notification from the Contracting Officer to the contrary, pay the Rates, Charges, and Tiered

1355    Pricing Component specified in the revised Exhibit "B" directly to the United States in

1356    compliance with Article 7 of this Contract.

1357           <u>O&M BY THE CALIFORNIA DEPARTMENT OF WATER RESOURCES</u>

1358       28.1    (a)      The O&M of a portion of the Project facilities which serve the Contractor,

1359    and responsibility for funding a portion of the costs of such O&M, have been transferred to the

1360    California Department of Water Resources, an Operating Non-Federal Entity by a separate

1361    agreement (14-06-200-9755) between the United States and Operating Non-Federal

1362    Entity California Department of Water Resources.  This separate agreement shall not

1363    interfere with or affect the rights or obligations of the Contractor or the United States

1364    hereunder.

1365           (b)      The Contracting Officer has previously notified the Contractor in writing

1366    that the O&M of a portion of the Project facilities which serve the Contractor has been

1367    transferred to the Operating Non-Federal Entity California Department of Water

1368    Resources, and the Contractor shall pay directly to Operating Non-Federal Entity San

1369    Luis & Delta-Mendota Water Authority, or to any successor approved by the Contracting

1370    Officer under the terms and conditions of the separate agreement between the United

1371    States and Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority,

1372    described in subdivision (a) of Article 28 of this Contract, all rates, charges, or assessments of

1373    any kind, including any assessment for reserve funds, which Operating Non-Federal Entity

1374    California Department of Water Resources, or such successor determines, sets, or establishes for

1375    the O&M of the conveyance and conveyance pumping portion of the Project facilities

1376  operated and maintained by Operating Non-Federal Entity California Department of

1377  Water Resources, or such successor.  Such direct payments to Operating Non-Federal

1378  Entity San Luis & Delta-Mendota Water Authority, or such successor, shall not relieve

1379  the Contractor of its obligation to pay directly to the United States the Contractor's

1380  share of the Project Rates, Charges, and Tiered Pricing Component except to the extent

1381  the Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority collects

1382  payments on behalf of the United States in accordance with the separate agreement

1383  identified in subdivision (a) of Article 28 of this Contract.

1384        (c)     For so long as the O&M of any portion of the Project facilities serving

1385  the Contractor is performed by Operating Non-Federal Entity California Department of

1386  Water Resources, or any successor thereto, the Contracting Officer shall adjust those

1387  components of the Rates for Water Delivered under this Contract representing the cost associated

1388  with the activity being performed by Operating Non-Federal Entity California Department of

1389  Water Resources, or its successor.

1390        (d)     In the event the O&M of the Project facilities operated and maintained by

1391  Operating Non-Federal Entity California Department of Water Resources is re-assumed by the

1392  United States during the term of this Contract, the Contracting Officer shall so notify the

1393  Contractor, in writing, and present to the Contractor a revised Exhibit "B" which shall

1394  include the portion of the Rates and Charges, to be paid by the Contractor for Project

1395  Water under this Contract representing the O&M costs of the portion of such Project

1396  facilities which have been re-assumed.  The Contractor shall, thereafter, in the absence of

1397  written notification from the Contracting Officer to the contrary, pay the Rates, Charges,

1398  and Tiered Pricing Component specified in the revised Exhibit "B" directly to the United

1399  States in compliance with Article 7 of this Contract.

1400  <center>O&M BY THE CONTRACTOR</center>

1401      28.2    (a)      During the term of this Contract, the Contractor shall act as the Operating

1402  Non-Federal Entity for a portion of the Project facilities which serves the California Department

1403  of Fish and Wildlife (formally referred to as California Department of Fish and Game), the City

1404  of Huron, and the City of Coalinga, including but not limited to the Coalinga Canal System,

1405  which consists in part of the Coalinga Canal and turnouts and Pleasant Valley Pumping Plant.

1406  The Contractor, without expense to the United States, shall care for, operate, and maintain such

1407  portion of the Project facilities for the furnishing of water to the California Department of Fish

1408  and Wildlife, the City of Huron, and the City of Coalinga in full compliance with Federal

1409  Reclamation law and in such manner that they will remain in good and efficient condition;

1410  *Provided,* That the United States shall finance the costs of all major replacements of such

1411  facilities that the Contracting Officer determines are needed; *Provided, further,* That if the

1412  California Department of Fish and Wildlife, the City of Huron, or the City of Coalinga

1413  fails to pay to the Contractor in advance such entity's share of the O&M costs, consistent

1414  with any agreements between the Contractor and the California Department of Fish and

1415  Wildlife, the City of Huron, or the City of Coalinga, respectively, the Contractor shall be

1416  relieved of its obligation to the O&M of such facilities for the benefit of the non-paying entity.

1417          (b)      The Contracting Officer previously notified the California Department of

1418  Fish and Wildlife, the City of Huron, and the City of Coalinga in writing that the O&M of a

1419  portion of the Project facilities which serves the California Department of Fish and

1420  Wildlife, the City of Huron, and the City of Coalinga has been transferred to the Contractor.

<center>58</center>

Contract No. 14-06-200-495A-IR1-P

1421      Therefore, the California Department of Fish and Wildlife, the City of Huron, and the City of

1422      Coalinga have entered separate agreements with the Contractor providing the terms and

1423      conditions pursuant to which the Contractor will operate and maintain a portion of the

1424      Project facilities which serves the California Department of Fish and Wildlife, the City of

1425      Huron, and the City of Coalinga, including the amount(s) the California Department of

1426      Fish and Wildlife, the City of Huron, and the City of Coalinga are to pay the Contractor

1427      for that service.  Consistent with any such agreements, the California Department of Fish

1428      and Wildlife, the City of Huron, and the City of Coalinga shall pay directly to the

1429      Contractor all rates, charges, or assessments of any kind, including any assessment for

1430      reserve funds, which the Contractor sets or establishes for a portion of the Project facilities which

1431      serves the California Department of Fish and Wildlife, the City of Huron, and the City of

1432      Coalinga and is operated and maintained by the Contractor.  Such direct payments to the

1433      Contractor shall not relieve the Contractor of its obligation to pay directly to the United

1434      States the California Department of Fish and Wildlife, the City of Huron, and the City

1435      of Coalinga its share of the Project Rates, Charges, and Tiered Pricing Component

1436      referred to in this Contract.

1437               (c)      For so long as the O&M for a portion of the Project facilities which serves

1438      the California Department of Fish and Wildlife, the City of Huron, and the City of Coalinga is

1439      performed by the Contractor, the Contracting Officer shall adjust those components of the Rates

1440      for Water Delivered under the Contracts representing the cost associated with the activity being

1441      performed by the Contractor.

1442               (d)      The United States may re-assume O&M for a portion of the Project

1443      facilities which serves the California Department of Fish and Wildlife, the City of Huron, and the

1444 City of Coalinga.  In that event, the Contracting Officer shall so notify the California Department

1445 of Fish and Wildlife, the City of Huron, and the City of Coalinga, in writing, and present to

1446 the Contractor a revised Exhibit "B" which shall include the portion of the Rates and Charges

1447 to be paid by the California Department of Fish and Wildlife, the City of Huron, and the City of

1448 Coalinga for Project Water under this Contract representing the O&M costs for a portion of the

1449 Project facilities which serves the California Department of Fish and Wildlife, the City of

1450 Huron, and the City of Coalinga.  The California Department of Fish and Wildlife, the

1451 City of Huron, and the City of Coalinga shall, thereafter, in the absence of written

1452 notification from the Contracting Officer to the contrary, pay the Rates, Charges, and Tiered

1453 Pricing Component specified in the revised Exhibit "B" directly to the United State in

1454 compliance with Article 7 of their contracts.  The Contractor shall, thereafter, be relieved

1455 of all of its obligations under this Article 28.2.

1456 <u>PUMPING PLANTS, POWER FOR PUMPING PLANTS</u>

1457 28.3.   (a)      The United States shall furnish and install pumping plants and furnish

1458 the amount of Project power the Contracting Officer determines is necessary to deliver Project

1459 Water to the Contractor from the Delta-Mendota, San Luis, and Coalinga Canals, including the

1460 Pleasant Valley Pumping Plant, at the point(s) of delivery identified pursuant to subdivision

1461 (a) of Article 5 of this Contract at heads and elevations sufficient to irrigate by gravity the

1462 areas within the Contractor's Service Area below 700 feet mean sea level elevation.

1463 (b)      With advance approval of the Contracting Officer, the Contractor

1464 may, at its own expense, furnish and install pumping facilities, and related electrical

1465 equipment, to enable it to divert and deliver Project Water from the Delta-Mendota, San

1466 Luis, and Coalinga Canals and the Pleasant Valley Pumping Plant before the United States

Contract No. 14-06-200-495A-IR1-P

1467   furnishes and installs all the pumping plants referred to in subdivision (a) of this Article.

1468   The United States shall furnish the amount of Project power needed to operate such

1469   pumping facilities; *Provided, That* the Contractor maintains an agreement with an entity

1470   to convey such power to such facilities, and the Contractor agrees to pay any and all

1471   charges assessed by that entity for such service.

1472            (c)    The furnishing of power by the United States shall be in conformance

1473   with operating criteria, rules, and regulations, including the Project use power policy,

1474   established by the Contracting Officer; *Provided, That* any such operating criteria, rules,

1475   and regulations, including the Project use power policy, established by the Contracting

1476   Officer shall not excuse the United States from its obligation under subdivision (a) of this

1477   Article.  Such operating criteria, rules, and regulations shall be developed in cooperation

1478   with the Contractor and shall be based on acceptable irrigation management practices and the

1479   power generation capacity available to the United States for the furnishing of Project Water to

1480   the Contractor.

1481            (d)    The Contracting Officer or his representative shall at all times have

1482   access to and may inspect and investigate the pumping facilities for the purpose of ascertaining

1483   if they are being kept in safe and proper operating condition.

1484   <u>EXAMINATION, INSPECTION, AND AUDIT OF PROJECT WORKS, RECORDS, AND</u>
1485   <u>REPORTS FOR DETERMINING ADEQUACY OF OPERATION AND MAINTENANCE</u>

1486      29.    (a)    The Contracting Officer may, from time to time, examine the following:
1487   the Contractor's books, records, and reports; the project works being operated by the Contractor;
1488   the adequacy of the operation and maintenance program[s]; the reserve fund; and the water
1489   conservation program including the water conservation fund, if applicable.  Notwithstanding title
1490   ownership, where the United States retains a financial, physical, or liability interest in facilities
1491   either constructed by the United States or with funds provided by the United States, the
1492   Contracting Officer may examine any or all of the project works providing such interest to the
1493   United States.

Contract No. 14-06-200-495A-IR1-P

1494          (b)     The Contracting Officer may, or the Contractor may ask the Contracting
1495  Officer to, conduct special inspections of any project works being operated by the Contractor and
1496  special audits of the Contractor's books and records to ascertain the extent of any operation and
1497  maintenance deficiencies to determine the remedial measures required for their correction and to
1498  assist the Contractor in solving specific problems.  Except in an emergency, any special
1499  inspection or audit shall be made only after written notice thereof has been delivered to the
1500  Contractor by the Contracting Officer.

1501          (c)     The Contractor shall provide access to the project works, operate any
1502  mechanical or electrical equipment, and be available to assist in the examination, inspection, or
1503  audit.

1504          (d)     The Contracting Officer shall prepare reports based on the examinations,
1505  inspections, or audits and furnish copies of such reports and any recommendations to the
1506  Contractor.

1507          (e)     The costs incurred by the United States in conducting operation and
1508  maintenance examinations, inspections, and audits and preparing associated reports and
1509  recommendations related to high- and significant-hazard dams and associated facilities shall be
1510  nonreimbursable.  Associated facilities include carriage, distribution, and drainage systems;
1511  pumping and pump-generating plants; powerplant structures; tunnels/pipelines; diversion and
1512  storage dams (low-hazard); Type 2 bridges which are Bureau of Reclamation-owned bridges not
1513  located on a public road; regulating reservoirs (low-hazard); fish passage and protective
1514  facilities, including hatcheries; river channelization features; rural/municipal water systems;
1515  desalting and other water treatment plants; maintenance buildings and service yards; facilities
1516  constructed under Federal loan programs (until paid out); and recreation facilities (reserved
1517  works only); and any other facilities as determined by the Contracting Officer.

1518          (f)     (1)     The Contractor shall reimburse the actual cost incurred by the

1519   United States in making O&M examinations, inspections, and audits, and preparing

1520   associated reports and recommendations.

1521          (g)     Expenses incurred by the Contractor, as applicable, in participating in the
1522  operation and maintenance site examination will be borne by the Contractor.

1523          (h)     Requests by the Contractor for consultations, design services, or
1524  modification reviews, and the completion of any operation and maintenance activities identified
1525  in the formal recommendations resulting from the examination (unless otherwise noted) are to be
1526  funded as project operation and maintenance and are reimbursable by the Contractor to the extent
1527  of current project operation and maintenance allocations.

1528          (i)     Site visit special inspections that are beyond the regularly scheduled
1529  operation and maintenance examinations conducted to evaluate particular concerns or problems
1530  and provide assistance relative to any corrective action (either as a follow up to an operation and
1531  maintenance examination or when requested by the Contractor) shall be nonreimbursable.

1532     (j)     The Contracting Officer may provide the State(s) an opportunity to
1533 observe and participate in, at its (their) own expense, the examinations and inspections.  The
1534 State(s) may be provided copies of reports and any recommendations relating to such
1535 examinations and inspections.

1536                    CONTINGENT ON APPROPRIATION OR ALLOTMENT OF FUNDS

1537     30.     The expenditure or advance of any money or the performance of any obligation of
1538 the United States under this Contract shall be contingent upon appropriation or allotment
1539 of funds.  Absence of appropriation or allotment of funds shall not relieve the Contractor
1540 from any obligations under this Contract.  No liability shall accrue to the United States in case
1541 funds are not appropriated or allotted.

1542                            BOOKS, RECORDS, AND REPORTS

1543     31.     (a)     The Contractor shall establish and maintain accounts and other books and
1544 records pertaining to administration of the terms and conditions of this Contract, including
1545 the Contractor's financial transactions; water supply data; project operations, maintenance, and
1546 replacement logs; project land and rights-of-way use agreements; the water users' land-use (crop
1547 census), land-ownership, land-leasing, and water-use data; and other matters that the
1548 Contracting Officer may require.  Reports shall be furnished to the Contracting Officer
1549 in such form and on such date or dates as the Contracting Officer may require.  Subject to
1550 applicable Federal laws and regulations, each party to this Contract shall have the right during
1551 office hours to examine and make copies of the other party's books and records relating to
1552 matters covered by this Contract.

1553     (b)     Notwithstanding the provisions of subdivision (a) of this Article, no

1554 books, records, or other information shall be requested from the Contractor by the

1555 Contracting Officer unless such books, records, or information are reasonably related to the

1556 administration or performance of this Contract.  Any such request shall allow the Contractor a

1557 reasonable period of time within which to provide the requested books, records, or

1558 information.

1559     (c)     At such time as the Contractor provides information to the Contracting

1560 Officer pursuant to subdivision (a) of this Article, a copy of such information shall be provided

1561 to the Operating Non-Federal Entity(ies).

1562 <u>ASSIGNMENT LIMITED – SUCCESSORS AND ASSIGNS OBLIGATED</u>

1563    32.    (a)    The provisions of this Contract shall apply to and bind the successors and
1564 assigns of the parties hereto, but no assignment or transfer of this Contract or any right or interest
1565 therein by either party shall be valid until approved in writing by the other party.

1566          (b)    The assignment of any right or interest in this Contract by either party

1567 shall not interfere with the rights or obligations of the other party to this Contract absent the

1568 written concurrence of said other party.

1569          (c)    The Contracting Officer shall not unreasonably condition or withhold

1570 approval of any proposed assignment.

1571                          <u>SEVERABILITY</u>

1572    33.    In the event that a person or entity who is neither (i) a party to a Project contract,

1573 nor (ii) a person or entity that receives Project Water from a party to a Project contract, nor (iii)

1574 an association or other form of organization whose primary function is to represent parties to

1575 Project contracts, brings an action in a court of competent jurisdiction challenging the

1576 legality or enforceability of a provision included in this Contract and said person, entity,

1577 association, or organization obtains a final court decision holding that such provision is

1578 legally invalid or unenforceable and the Contractor has not intervened in that lawsuit in

1579 support of the plaintiff(s), the parties to this Contract shall use their best efforts to (i)

1580 within 30 days of the date of such final court decision identify by mutual agreement the

1581 provisions in this Contract which must be revised and (ii) within three months thereafter

1582 promptly agree on the appropriate revision(s).  The time periods specified above may be

1583 extended by mutual agreement of the parties.  Pending the completion of the actions

1584 designated above, to the extent it can do so without violating any applicable provisions of

1585 law, the United States shall continue to make the quantities of Project Water specified in this

1586  Contract available to the Contractor pursuant to the provisions of this Contract which were not

1587  found to be legally invalid or unenforceable in the final court decision.

1588  <u>RESOLUTION OF DISPUTES</u>

1589  34.    Should any dispute arise concerning any provisions of this Contract, or the

1590  parties' rights and obligations thereunder, the parties shall meet and confer in an attempt

1591  to resolve the dispute.  Prior to the Contractor commencing any legal action, or the

1592  Contracting Officer referring any matter to the Department of Justice, the party shall

1593  provide to the other party 30 days' written notice of the intent to take such action;

1594  *Provided,* *That* such notice shall not be required where a delay in commencing an action

1595  would prejudice the interests of the party that intends to file suit.  During the 30-day

1596  notice period, the Contractor and the Contracting Officer shall meet and confer in an

1597  attempt to resolve the dispute.  Except as specifically provided, nothing herein is intended

1598  to waive or abridge any right or remedy that the Contractor or the United States may have.

1599  <u>OFFICIALS NOT TO BENEFIT</u>

1600  35.    No Member of or Delegate to the Congress, Resident Commissioner, or official of
1601  the Contractor shall benefit from this Contract other than as a water user or landowner in the
1602  same manner as other water users or landowners.

1603  <u>CHANGES IN CONTRACTOR'S ORGANIZATION AND/OR SERVICE AREA</u>

1604  36.    (a)    While this Contract is in effect, no change may be made in the
1605  Contractor's Service Area or organization, by inclusion or exclusion of lands or by any other
1606  changes which may affect the respective rights, obligations, privileges, and duties of either the
1607  United States or the Contractor under this Contract, including, but not limited to, dissolution,
1608  consolidation, or merger, except upon the Contracting Officer's written consent.

1609  (b)    Within 30 days of receipt of a request for such a change, the Contracting

1610  Officer will notify the Contractor of any additional information required by the Contracting

1611  Officer for processing said request, and both parties will meet to establish a mutually agreeable

1612  schedule for timely completion of the process.  Such process will analyze whether the proposed

1613 change, is likely to:  (i) result in the use of Project Water contrary to the terms of this Contract;

1614 (ii) impair the ability of the Contractor to pay for Project Water furnished under this Contract or

1615 to pay for any Federally-constructed facilities for which the Contractor is responsible; and (iii)

1616 have an impact on any Project Water rights applications, permits, or licenses.  In addition,

1617 the Contracting Officer shall comply with the NEPA and the ESA.  The Contractor will

1618 be responsible for all costs incurred by the Contracting Officer in this process, and such

1619 costs will be paid in accordance with Article 24 of this Contract.

1620 <div align="center">FEDERAL LAWS</div>

1621 37.     By entering into this Contract, the Contractor does not waive its rights to contest

1622 the validity or application in connection with the performance of the terms and

1623 conditions of this Contract of any Federal law or regulation; *Provided, That* the

1624 Contractor agrees to comply with the terms and conditions of this Contract unless and

1625 until relief from application of such Federal law or regulation to the implementing

1626 provision of the Contract is granted by a court of competent jurisdiction.

1627 <div align="center">NOTICES</div>

1628 38.     Any notice, demand, or request authorized or required by this Contract shall be
1629 deemed to have been given, on behalf of the Contractor, when mailed, postage prepaid, or
1630 delivered to the Area Manager, South-Central California Area Office, 1243 N Street, Fresno,
1631 California 93721, Bureau of Reclamation, and on behalf of the United States, when mailed,
1632 postage prepaid, or delivered to the Board of Directors of the Westlands Water District, P.O. Box
1633 6056, Fresno, California 93703-6056.  The designation of the addressee or the address may be
1634 changed by notice given in the same manner as provided in this Article for other notices.

1635 <div align="center">EMERGENCY RESERVE FUND</div>

1636 39.     (a)     Commencing on June 1, 2020, the Contractor shall accumulate and
1637 maintain a reserve fund or demonstrate to the satisfaction of the Contracting Officer that other
1638 funds are available for use as an emergency reserve fund.  The Contractor shall establish and
1639 maintain that emergency reserve fund to meet costs incurred during periods of special stress

Contract No. 14-06-200-495A-IR1-P

1640 caused by damaging droughts, storms, earthquakes, floods, or other emergencies threatening or
1641 causing interruption of water service.

1642 (b) The Contractor shall accumulate the reserve fund with annual deposits or
1643 investments of not less than $500,000 to a Federally insured, interest- or dividend-bearing
1644 account or in securities guaranteed by the Federal Government: _Provided, That_ money in the
1645 reserve fund, including accrued interest, shall be available within a reasonable time to meet
1646 expenses for such purposes as those identified in paragraph (d) herein.  Such annual deposits and
1647 the accumulation of interest to the reserve fund shall continue until the basic amount of
1648 $1,500,000 is accumulated.  Following an emergency expenditure from the fund, the annual
1649 deposits shall continue from the year following the emergency expenditure until the previous
1650 balance is restored.  After the initial amount is accumulated or after the previous balance is
1651 restored, the annual deposits may be discontinued, and the interest earnings shall continue to
1652 accumulate and be retained as part of the reserve fund.

1653 (c) Upon mutual written agreement between the Contractor and the
1654 Contracting Officer, the basic reserve fund or the accumulated reserve fund may be adjusted to
1655 account for risk and uncertainty stemming from the size and complexity of the project; the size
1656 of the annual operation and maintenance budget; additions to, deletions from, or changes in
1657 project works; and operation and maintenance costs not contemplated when this Contract was
1658 executed.

1659 (d) The Contractor may make expenditures from the reserve fund only for
1660 meeting routine or recurring operation and maintenance costs incurred during periods of special
1661 stress, as described in paragraph (a) herein; or for meeting unforeseen extraordinary operation
1662 and maintenance costs; or for meeting unusual or extraordinary repair or replacement costs; or
1663 for meeting betterment costs (in situations where recurrence of severe problems can be
1664 eliminated) during periods of special stress.  Proposed expenditures from the fund shall be
1665 submitted to the Contracting Officer in writing for review and written approval prior to
1666 disbursement.  Whenever the reserve fund is reduced below the current balance by expenditures
1667 therefrom, the Contractor shall restore that balance by the accumulation of annual deposits as
1668 specified in paragraph (b) herein.

1669 (e) During any period in which any of the project works are operated and
1670 maintained by the United States, the Contractor agrees the reserve fund shall be available for like
1671 use by the United States.

1672 (f) On or before August 1 of each year, the Contractor shall provide a current
1673 statement of the principal and accumulated interest of the reserve fund account to the Contracting
1674 Officer.

## ADMINISTRATION OF FEDERAL PROJECT LANDS

1676 40. (a) The lands and interests in lands acquired, withdrawn, or reserved and
1677 needed by the United States for the purposes of care, operation, and maintenance of San Luis
1678 Unit facilities may be used by the Contractor for such purposes.  The Contractor shall ensure that
1679 no unauthorized encroachment occurs on Federal project lands and rights-of-way.  The

1680  Contractor does not have the authority to issue any land-use agreement or grant that conveys an
1681  interest in Federal real property, nor to lease or dispose of any interest of the United States.

1682  (b)  The United States retains responsibility for compliance with the National
1683  Historic Preservation Act of 1966 (NHPA), and the Native American Graves Protection and
1684  Repatriation Act of 1990 (NAGPRA). The Contractor will notify the Contracting Officer and,
1685  only when on tribal land, also notify the appropriate tribal official, immediately upon the
1686  discovery of any potential historic properties or Native American human remains, funerary
1687  objects, sacred objects, or objects of cultural patrimony.

1688  <u>CONTAMINATION OR POLLUTION OF FEDERAL PROPERTY</u>

1689  41.  (a)  The Contractor shall not allow contamination or pollution of Federal
1690  project lands, project waters, or project works of the United States or administered by the United
1691  States and for which the Contractor has the responsibility for care, operation, and maintenance
1692  by its employees or agents.  The Contractor shall also take reasonable precautions to prevent
1693  such contamination or pollution by third parties.

1694  (b)  The Contractor shall comply with all applicable Federal, State, and local
1695  laws and regulations and Bureau of Reclamation policies and instructions existing, or hereafter
1696  enacted or promulgated, concerning any hazardous material that will be used, produced,
1697  transported, stored, released, or disposed of on or in Federal project lands, project waters, or
1698  project works.

1699  (c)  "Hazardous material" means (1) any substance falling within the
1700  definition of "hazardous substance," "pollutant or contaminant," or "hazardous waste" under the
1701  Comprehensive Environmental Response, Compensation and Liability Act
1702  (42 U.S.C. § 9601(14), (29), and (33)); (2) oil, as defined by the Clean Water Act
1703  (33 U.S.C. § 1321(a)) and the Oil Pollution Act (33 U.S.C. § 2701(23)); (3) thermal pollution,
1704  refuse, garbage, sewage effluent, industrial waste, mine or mill tailings, mineral salts, pesticides,
1705  and other solid waste, and (4) any other substance regulated as hazardous or toxic under Federal,
1706  State, local or Tribal law.

1707  (d)  Upon discovery of any event which may or does result in contamination or
1708  pollution of Federal project lands, project water, or project works, the Contractor shall
1709  immediately undertake all measures necessary to protect public health and the environment,
1710  including measures necessary to contain or abate any such contamination or pollution, and shall
1711  report such discovery with full details of the actions taken to the Contracting Officer.  Reporting
1712  shall be within a reasonable time period but shall not exceed 24 hours from the time of discovery
1713  if it is an emergency and the first working day following discovery in the event of a non-
1714  emergency.

1715  (e)  If violation of the provisions of this Article occurs and the Contractor does
1716  not take immediate corrective action, as determined by the Contracting Officer, the Contractor
1717  may be subject to remedies imposed by the Contracting Officer, which may include termination
1718  of this Contract.

(f)     The Contractor shall be liable for any response action or corrective measure necessary to protect public health and the environment or to restore Federal project lands, project waters, or project works that are adversely affected as a result of such violation, and for all costs, penalties or other sanctions that are imposed for violation of any Federal, State, local, or Tribal laws and regulations concerning hazardous material.  At the discretion of the Contracting Officer, the United States may also terminate this Contract, as a result of such violation.

(g)     The Contractor shall defend, indemnify, protect and save the United States harmless from and against any costs, expenses, claims, damages, demands, or other liability arising from or relating to Contractor's violation of this Article.

(h)     The Bureau of Reclamation agrees to provide information necessary for the Contractor, using reasonable diligence, to comply with the provisions of this Article.

## RECLAMATION REFORM ACT OF 1982

42.     (a)     Upon a Contractor's compliance with and discharge of the Repayment Obligation pursuant to this Contract, subsections (a) and (b) of Section 213 of the Reclamation Reform Act of 1982 (96 Stat. 1269) shall apply to affected lands.

(b)     The obligation of a Contractor to pay the Additional Capital Obligation shall not affect the Contractor's status as having repaid all of the construction costs assignable to the Contractor or the applicability of subsections (a) and (b) of section 213 of the Reclamation Reform Act of 1982 (96 Stat. 1269) once the Repayment Obligation is paid.

## CERTIFICATION OF NONSEGREGATED FACILITIES

43.     The Contractor hereby certifies that it does not maintain or provide for its employees any segregated facilities at any of its establishments and that it does not permit its employees to perform their services at any location under its control where segregated facilities are maintained.  It certifies further that it will not maintain or provide for its employees any segregated facilities at any of its establishments and that it will not permit its employees to perform their services at any location under its control where segregated facilities are maintained.  The Contractor agrees that a breach of this certification is a violation of the Equal Employment Opportunity clause in this Contract.  As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, creed, color, or national origin, because of habit, local custom, disability, or otherwise.  The Contractor further agrees that (except where it has obtained

Contract No. 14-06-200-495A-IR1-P

1754 identical certifications from proposed subcontractors for specific time periods) it will obtain
1755 identical certifications from proposed subcontractors prior to the award of subcontracts
1756 exceeding $10,000 which are not exempt from the provisions of the Equal Employment
1757 Opportunity clause; that it will retain such certifications in its files; and that it will forward the
1758 following notice to such proposed subcontractors (except where the proposed subcontractors
1759 have submitted identical certifications for specific time periods):

1760              NOTICE TO PROSPECTIVE SUBCONTRACTORS OF REQUIREMENT FOR
1761                      CERTIFICATIONS OF NONSEGREGATED FACILITIES

1762 A Certification of Nonsegregated Facilities must be submitted prior to the award of a subcontract
1763 exceeding $10,000 which is not exempt from the provisions of the Equal Employment
1764 Opportunity clause.  The certification may be submitted either for each subcontract or for all
1765 subcontracts during a period (i.e., quarterly, semiannually, or annually).  Note:  The penalty for
1766 making false statements in offers is prescribed in 18 U.S.C. § 1001.

1767                              <u>PEST MANAGEMENT</u>

1768         44.     (a)     The Contractor is responsible for complying with applicable Federal,
1769 State, and local laws, rules, and regulations related to pest management in performing its
1770 responsibilities under this contract.

1771                 (b)     The Contractor is responsible for effectively avoiding the introduction and
1772 spread of, and for otherwise controlling, undesirable plants and animals, as defined by the
1773 Contracting Officer, on or in Federal project lands, Federal project waters, and Federal project
1774 works for which and to the extent that the Contractor has operation and maintenance
1775 responsibility.  The Contractor is responsible for exercising the level of precaution necessary in
1776 meeting this responsibility, including inspecting its vehicles, watercraft, and equipment for
1777 reproductive and vegetative parts, foreign soil, mud, or other debris that may cause the spread of
1778 weeds, invasive species and other pests, and removing such materials before moving its vehicles,
1779 watercraft, and equipment onto any Federal land, into any Federal project facility waters, or out
1780 of any area on Federal project land where work is performed.

1781                 (c)     Where decontamination of the Contractor's vehicles, watercraft, or
1782 equipment is required prior to entering Federal project land or waters, the decontamination shall
1783 be performed by the Contractor at the point of prior use, or at an approved offsite facility able to
1784 process generated cleaning wastes, pursuant to applicable laws, rules, and regulations.  Upon the
1785 completion of work, the Contractor will perform any required decontamination within the work
1786 area before moving the vehicles, watercraft, and equipment from Federal project lands and
1787 waters.

1788                 (d)     Programs for the control of undesirable plants and animals on Federal
1789 project lands, and in Federal project waters and Federal project works for which the Contractor
1790 has operation and maintenance responsibility will incorporate Integrated Pest Management
1791 (IPM) concepts and practices.  IPM refers to a systematic and environmentally compatible
1792 program to maintain pest populations within economically and environmentally tolerable levels.
1793 In implementing an IPM program, the Contractor will adhere to applicable Federal and State

Contract No. 14-06-200-495A-IR1-P

laws and regulations and Department of the Interior and Bureau of Reclamation policies, directives, guidelines, and manuals, including but not limited to, the Department of the Interior Manual, Part 517 *Integrated Pest Management Policy* and Part 609 *Weed Control Program*, the Plant Protection Act of June 20, 2000 (Pub. L. 106-224), and Executive Order 13112 of February 3, 1999.

## MEDIUM FOR TRANSMITTING PAYMENT

45.　　(a)　　All payments from the Contractor to the United States under this Contract shall be by the medium requested by the United States on or before the date payment is due.  The required method of payment may include checks, wire transfers, or other types of payment specified by the United States.

　　　　(b)　　Upon execution of this Contract, the Contractor shall furnish the Contracting Officer with the Contractor's taxpayer's identification number (TIN).  The purpose for requiring the Contractor's TIN is for collecting and reporting any delinquent amounts arising out of the Contractor's relationship with the United States.

## CONTRACT DRAFTING CONSIDERATIONS

46.　　This amended Contract has been negotiated and reviewed by the parties hereto, each of whom is sophisticated in the matters to which this amended Contract pertains.  The double-spaced Articles of this amended Contract have been drafted, negotiated, and reviewed by the parties, and no one party shall be considered to have drafted the stated Articles.  Single-spaced Articles are standard Articles pursuant to Bureau of Reclamation policy.

## CONFIRMATION OF CONTRACT

47.　　Promptly after the execution of this amended Contract, the Contractor will provide to the Contracting Officer a certified copy of a final decree of a court of competent jurisdiction in the State of California, confirming the proceedings on the part of the Contractor for the authorization of the execution of this amended Contract.  This amended Contract shall not be binding on the United States until the Contractor secures a final decree.

1820    IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the day

1821    and year first above written.

1822    APPROVED AS TO LEGAL UNITED STATES OF AMERICA
        FORM AND SUFFICIENCY

        OFFICE OF REGIONAL SOLICITOR
        DEPARTMENT OF THE INTERIOR

1823                                    By: _____
1824                                         Regional Director
1825                                         Interior Region 10: California-Great Basin
1826                                         Bureau of Reclamation

1827                                    WESTLANDS WATER DISTRICT
1828

1829                                    By: _____
1830                                         President of the Board of Directors

1831    Attest:

1832    By: _____
1833        Secretary of the Board of Directors

72



**Westlands Water District**

Contract No. 14-06-200-495A-IR1-P

Exhibit A

☐ District Boundary
☒ Contractor's Service Area

— BUREAU OF —
RECLAMATION

Date: 1/21/2020
File Name: N:\Districts\Contracts\westlands\Westlands_14_06_200_495_IR1_2020.mxd

0   5   10 Miles

N

805-202-120

**EXHIBIT B**
**WESTLANDS WATER DISTRICT**
**2020 Rates and Charges**
**(Per Acre-Foot)**

| | Irrigation Water SLC | Irrigation Water Mendota Pool | M&I Water SLC |
|---|---|---|---|
| **COST-OF-SERVICE (COS) RATE** | | | |
| Construction Costs | $0.00 | $0.00 | $0.00 |
|   DMC Aqueduct Intertie | $0.00 | $0.00 | |
| O&M Components | | | |
|   Water Marketing | $8.97 | $8.97 | $6.12 |
|   Storage | $18.01 | $18.01 | $14.99 |
|   Credit for other PUE Remittance [1] | ($2.28) | $0.00 | ($1.99) |
|   Direct Pumping | | | |
| American Recovery and Reinvestment Act (ARRA) | $0.00 | $0.00 | $0.00 |
| **TOTAL COS RATE** | $24.70 | $26.98 | $19.12 |
| | | | |
| **Project Use Energy Payment[2]** | | | |
|   Direct Pumping | $11.35 | $0.00 | $10.46 |
|   Other PUE Remittance | $2.28 | $0.00 | $1.99 |
| | | | |
| **IRRIGATION FULL-COST RATE \*** | | | |
|   Section 202(3) Rate is applicable to a Qualified Recipient or to a Limited Recipient receiving irrigation water on or before October 1, 1981. | TBD | TBD | |
|   Section 205(a)(3) Rate is applicable to a Limited Recipient that did not receive irrigation water on or before October 1, 1981. | TBD | TBD | |
| | | | |
| **M&I FULL COST RATE** | | | |
| | | | |
| **TIERED PRICING COMPONENTS (In Addition to Total COS Rate Above)** | | | |
| **IRRIGATION \*** | | | |
| Tier 2 Rate: >80% <=90% of Contract Total [Section 202(3) Irrigation Full Cost Rate - Irrigation COS Rate]/2 (Amount to be added to Tier 1 Rate) | TBD | TBD | |
| Tier 3 Rate: >90% of Contract Total [Section 202(3) Irrigation Full Cost Rate - Irrigation COS Rate] (Amount to be added to Tier 1 Rate) | TBD | TBD | |
| **M&I** | | | |
| Tier 2 Rate:  >80% <=90% of Contract Total [M&I Full Cost Rate - M&I COS Rate]/2 (Amount to be Added to Tier 1 Rate) | | | $0.00 |
| Tier 3 Rate:  >90% of Contract Total [M&I Full Cost Rate - M&I COS Rate] (Amount to Be Added to Tier 1 Rate) | | | $0.00 |
| | | | |
| **CHARGES AND ASSESSMENTS** *(Payments in addition to Rates)* | | | |
|   P.L. 102-575 Surcharge (Restoration Fund Payment) [Section 3407(d)(2)(A)] | $10.91 | $10.91 | $21.82 |
|   P.L. 106-377 Assessment (Trinity Public Utilities District) [Appendix B, Section 203] | $0.12 | $0.12 | $0.12 |

**EXPLANATORY NOTES**

1 Project Use Energy payment is being remitted to Western Area Power Auithority for storage and direct pumping based on the deliveries of a select few contractors.  The rates for the select few contractors are reduced as a credit in the O&M rates.  All Contractors will ultimately pay for the storage and direct pumping service but as an offset to the amount paid by the select few.

2 Project Use Energy payment is in addition to the Contract Rate and Full-Cost Water Rates.  Refer to the water rate books for more information.

* For Irrigation water, if construction paid under WIIN Act is paid in lump sum, full cost rates and tier pricing component is not applicable for 2020 water rates.

The CVP M&I Water Shortage Policy per EIS/EIR dated August 2015 and Record of Decision dated November 2015 defines the M&I Historic Use as the average quantity of CVP water put to beneficial use during the last three years of water deliveries, unconstrained (100% allocation) by the availability of CVP water for South of the Delta. Contractor's last three years in acre feet (AF) are revised as follows: 2006 = 2,806 AF; 2011 = 2,570 AF; 2017 = 2,264 AF; which equals a M&I Historic use average quantity of 2,547 AF.

**Additional detail of rate components is available on the Internet at:**
http://www.usbr.gov/mp/cvpwaterrates/ratebooks/index.html

Irrigation and M&I
Contract No. 14-06-200-495A-IR1-P

Exhibit C

**Central Valley Project (CVP) Water Needs Assessments Purpose and Methodology**

Purpose:

Water needs assessments have been performed for each CVP water contractor eligible to participate in the CVP long-term contract renewal process. These water needs assessments serve three purposes:

Confirm past beneficial use of CVP water;
Provide water demand and supply information under current and future conditions for the environmental documents; and
Provide an estimate of contractor-specific needs for CVP water by the year 2025 to serve as a starting point for discussions regarding contract quantities in the negotiation process.

These three purposes require that the water needs assessments be done for a number of different timeframes.

**Small Contractors exempt from Detailed Water Needs Assessments:**

In order to minimize the informational burdens on CVP water contractors with small amounts of CVP supply under contract, an exemption from the requirement for detailed water needs assessments has been provided to these contractors. The exemption applies to contractors who provide agricultural water to a service area of 2000 irrigable acres, or less, and/or provide urban water now, or in the future, in the amount of 2000 acre-feet annually, or less. A contractor may be exempt from the water needs assessment requirement for its urban water service, but not for its agricultural water service, or vice-a-versa. These contractors are assumed to demonstrate future need if they have beneficially used their CVP supplies in the past.

**Past Beneficial Use:**

Originally, Reclamation requested water demand and supply information for the 1979 through 1997 timeframe. Reclamation believes that evaluations of beneficial use, current and future CVP needs based on information for a 19-year period of record, including both wet and dry periods, is a scientifically defendable way of conducting water needs assessments. However, the concerns of the CVP water contractors with respect to the magnitude of the information request persuaded Reclamation to perform the assessments using a representative snapshot year approach, instead. Although less scientifically rigorous, the snapshot year approach appears adequate for cursory evaluations of water needs.

Nineteen Eighty Nine, is the snapshot year chosen to confirm past beneficial use of CVP water for the American, Delta, Contra Costa, Sacramento, and San Felipe regions (refer to the definitions on the next page). This year was chosen because most CVP water contractors received full delivery of their requested water supplies and the total annual precipitation for most CVP regions was in the normal range. Since 1989 was a drought

year in the Friant region, 1996 was the snapshot year selected to calculate past beneficial use for this region.  Water Need Assessments for the Stanislaus Region have been deferred pending the resolution of operational issues in the Stanislaus River basin. Some contractors have elected to deviate from the selected snapshot year because of the unavailability of information for that year.  Following is a description of the regions:

| | |
|---|---|
| **American**: | American River Division |
| **Delta**: | Delta Division combined with West San Joaquin Division, but not the Contra Costa Unit |
| **Contra Costa**: | Contra Costa Unit |
| **Stanislaus**: | East Side Division |
| **Friant**: | Friant Division combined with Hidden Unit, Buchanan Unit, and Cross Valley Canal |
| **Sacramento**: | Sacramento River Division combined with Trinity River and Shasta Divisions |
| **San Felipe**: | San Felipe Division |

The environmental documentation associated with the CVP long-term contract renewals specifies 1995 as the base year.  Therefore, water supply and demand information is indicated on the water needs assessments for the 1995 level of development, if available. In many cases, the information provided to demonstrate past beneficial use is also reasonably representative of 1995 level water supplies and demands.

**Definition of Need for CVP Water Supplies:**

An important function of these assessments is the estimation of year 2025 CVP water needs.  The assessments compare all demands and all supplies (including CVP supplies) estimated for the 2025 level of development for a normal hydrologic year.  Demands include agricultural, urban and, on occasion, environmental water demands.  For these assessments, current CVP contract supplies are set as the maximum annual contractual amount for each water contractor, except in the Friant Division.  The Friant Division's Class II contract amounts are based on wet hydrologic year and were reduced to 40% of the contract amount to reflect normal year hydrology. The results are displayed in Column 39 as Unmet Demand.  If the number in this column is positive or only slightly negative [1] then the CVP water contractor is deemed to have full future need of the maximum annual CVP supply currently under contract for all year types.  Dry year and critically dry year analyses were only performed for urban contractors who did not demonstrate full future need of their CVP contract supply in a normal hydrologic year.

The methodology used to estimate agricultural and urban water demands as well as to estimate the availability of non-CVP supplies is described in the following sections.

---

[1] If the negative amount is within 10% for contracts in excess of 15,000 acre-feet, or within 25% for contracts equal to, or less than, 15,000 acre-feet; the test of full future need of CVP supplies under contract is deemed to be met.

**Agricultural Water Demand:**

Agricultural water demand is defined as the sum of the district's irrigation water demand and the intra-district conveyance losses, where irrigation water demand is the product of the irrigated acreage in a district and the average farm delivery requirement. The farm delivery requirement is defined as the unit amount of water necessary to supply crop water needs in excess of effective precipitation and varies based on crop type, climate, irrigation water quality, soil salinity and irrigation method. The district's irrigation water demand is not necessarily the sum of all the on-farm irrigation water demands because such measures as recycling of intra-district return flows are effective in reducing the overall district irrigation water demand. The assumption for this analysis is that the continued implementation of water use efficiency measures between now and the year 2025 will further reduce the unit amount of water needed to grow crops in the future. Often, it is also assumed that district conveyance losses will decrease in the future. Specifically, district irrigation efficiencies are assumed to increase from an average of 75 percent currently to 85 percent by the year 2025, where district irrigation efficiency is defined as follows:

District Irrigation Efficiency = <u>Supply B Non Recoverable Losses to the District</u>
Supply

or

= <u>District's Crop Water Requirement of Applied Water (ETAW) + Recoverable  losses within the District [2]</u>
District's Irrigation Water Demand

<u>Certain districts, such as those with large elevation differences within their boundaries, have target district irrigation efficiencies of 80 percent.</u>

<u>Estimating Crop Water Requirements</u>

Generally, the CVP water contractors' Water Management Plans provide historical information on crop water requirements. This information was used in the snapshot year analyses to confirm past beneficial use of CVP supplies and to reflect the base condition in the environmental documents.

Reclamation estimated crop water requirements for the year 2025 level of development based on the CVP water contractors' estimates of future crops and acreage planted multiplied by estimates of the farm delivery requirements for each crop. Reclamation staff initially estimated crop water requirements for all regions using evapotranspiration (ET) and effective precipitation (EP) data from several sources: 1) California Department of Water Resources (DWR) Bulletin 160-98, 2) DWR Bulletin 113-3, and 3) Reclamation knowledge and experience. The ET and EP information was tabulated on a Detailed Analysis Unit (DAU) basis and then proportioned to each district based on the district's area in a DAU. The data was then used in combination with other traditional

---

[2] Recoverable loss is defined as water recovered or recoverable by the district or irrigators for reuse.

methodologies for determining crop water requirements to estimate each district's total irrigation water demand in the year 2025.

In February 2000, representatives of the Friant and Delta Region CVP water contractors expressed the following concerns with using this methodology:

The crop water requirements estimated are too low;

The effective precipitation component to meeting crop water requirements is too high for some areas.

In order to address these concerns a number of evaluations were performed.

One analysis compared the agricultural water demand calculations performed by the districts' private consultant and those performed by Reclamation for the water districts in the Delta Region. This analysis indicated that Reclamation's and the consultant's estimation of these water demands on a regional basis is close (within 8%). However, the results of the agricultural water demand determinations diverge as the regional area is broken into sub-regions and especially when the comparison is made at the district level.

A comparison of calculations of ET and EP for alfalfa in the Friant Region using the methodologies of Bulletin 160-98, Reclamation and the Natural Resources Conservation Service (NRCS) indicates that Bulletin 160-98 consistently estimates EP higher than the other two methods at the district level. One reason for this difference appears to be that the Bulletin 160-98 methodology estimates the contribution of rainfall to the soil moisture profile in the non-irrigation season in a different way than the other two methodologies. Similarly, a comparison of ET values shows that the Bulletin 160-98 values are consistently lower than the NRCS values at the district level. This difference is most likely the result of Bulletin 160-98's use of Aactual@ ET values. AActual@ ET is potential ET modified to reflect regional agricultural practices by farmers. The NRCS method uses potential ET values without modification.

Based on discussions with DWR, the affected CVP water contractors and their consultants; Reclamation concluded that the regional agricultural practices taken into account by Bulletin 160-98 may not be reflective of current and/or future practices by the CVP water contractors. For this reason, Reclamation determined that it was more prudent to use potential ET values than the Aactual@ ET values from Bulletin 160-98 in evaluating 2025 crop water requirements for water districts located in the Friant and Delta Regions.
In addition, Reclamation and representatives of the Friant and Delta Region water contractors agreed on a different methodology to estimate EP than the one used in Bulletin 160-98 because of the lack of dependable rainfall. The bulletin assumes rainfall is effective if it can be stored in the soil moisture profile, or directly meet crop water needs during any month. However, in actual practice to effectively manage farm operations, a farmer may need to pre-irrigate one or more fields earlier in the month only to have a major precipitation later in the month, thus reducing the effectiveness of the

4

rainfall during that month.

**Revised Agricultural Water Demand Methodology for the Friant and Delta Regions:**

Following is a description of the revised methodology for estimating ET and EP:

EP is estimated to be 50 percent of long-term average annual rainfall with the exception of citrus EP. For citrus groves, it is estimated that one inch of the initial rainfall is stored before the soil seals over and the runoff begins; then about 10% of the additional rainfall for the season is estimated to be effective.

ET is determined using California Irrigation Management Information System (CIMIS) potential ET data and crop coefficients supplied by the University of California Cooperative Extension.

No change was made to the ET and EP determinations for the CVP water contractors in the other regions because these regions are located in areas of higher precipitation not as sensitive to the issues raised in the comparative analyses.

**Urban Water Demand:**

Urban water demand is defined as the sum of residential, nonresidential and distribution system demands. The components of residential demand include indoor and outdoor demand. Originally, information on residential and a portion of nonresidential demand was requested in terms of these two components; however, most CVP water contractors were unable to provide the information in that format. Therefore, the information request was revised to a combined figure for indoor and outdoor use. Nonresidential demand includes commercial, institutional and industrial demands. Distribution system demands consist of unaccounted beneficial use and distribution system losses where:

Unaccounted beneficial use includes water for such uses as fire fighting, mainline flushing, storm drain flushing, sewer and street cleaning, construction site use, water quality testing and other testing.

Distribution system losses accounts for water lost because of leaks in storage and distribution systems, evaporation, illegal connections, and water theft.

Projected M&I water demand will be influenced over time by many factors, including future land use changes, population shifts, and improvements in residential and distribution system efficiencies over time. As is the case for agricultural water demands, the methodology assumes that the implementation of water conservation measures in the next 25 years will increase the efficiency of urban water use and reduce unit M&I water demands. Specifically, the average per capita usage is assumed to decrease from 5% to 14% depending on the location in the state.

**Non-CVP Water Supplies:**

Non-CVP water supplies can include groundwater including the conjunctive use of surface and groundwater, State Water Project (SWP) supplies, local surface water supplies, recycled water, inter-district return flows and water transfers. The methodology considers water transfers a beneficial use of water. Water transfers are, therefore, included in the 2025 level assessments if there is evidence of a commitment by both parties to engage in the transfer in this timeframe.

Average values for SWP and local surface supplies are used in the 2025 level assessments unless the analysis is for dry or critical year conditions. Often the source of information is the 10-year average surface water supply from the contractor's Water Management Plan. If there is an indication that surface water supplies will decrease in the future because of increased upstream diversions or increased environmental requirements, the surface water supply is reduced to reflect these considerations in the 2025 level assessment.

Where available, groundwater safe yields are used to estimate future groundwater pumping. Safe yield is defined as the amount of groundwater a district can pump on a long-term average and not cause the long-term decline of groundwater levels leading to excessive depths for pumping or leading to degradation of groundwater quality. A safe yield value is the result of a complex interaction between many factors; a change in any one of the factors can have an impact on the value obtained from safe yield computations. The main factors involved in safe yield computations can include, but are not limited to, water supply, consumptive use, losses to the system, and water quality. Adding to the complexity of the analysis is that many, if not most, of the factors involved in a safe yield computation are time dependent, and have both short-term and long-term trends--which may be quite different. If a safe yield analysis is not available for the contractors' groundwater resources, groundwater pumping and recharge, if applicable, is estimated from historical information for the 2025 level assessments.

Originally, groundwater pumping for the Friant Region was estimated based on historical estimates of groundwater pumping for 1996 from the water contractors' Water Management Plans. During the February 2000 discussions with representatives of the Friant Region water contractors, the issue of groundwater was raised. Specifically, Reclamation was requested to evaluate the possibility of using the original safe yields estimated by Reclamation as the supply available from groundwater in the 2025 level assessments. Reclamation agreed to investigate the use of these original safe yields because the original safe yields were developed for ultimate buildout and included CVP groundwater recharge. Following is a summary of the analysis performed to estimate groundwater pumping for the Friant Region in the 2025 level assessments:

**Analysis of Groundwater Pumping in the Friant Region:**

Groundwater technical studies were conducted by Reclamation in the 1940's and 1950's to characterize the geohydrology, groundwater occurrence and groundwater conditions in

6

each district, and to determine each district's safe yield. Prior to the delivery of CVP water supplies, farmers irrigated mainly with groundwater, although some local surface water sources were also used. Because recharge of groundwater could not keep pace with the use of water primarily for agricultural purposes, groundwater levels had declined in many areas, and groundwater overdraft was common throughout the region.

A review of Reclamation's original safe yields for the Friant Region shows that these safe yield estimates are generally less than the estimated amounts of groundwater pumping for 1996. Reclamation's original safe yield estimates are also generally less than the updated safe yield estimates performed by Reclamation for some of the districts in the early 1990's. However, the 1990's safe yield estimates are considered preliminary numbers and were never adopted by Reclamation nor accepted by the Friant water contractors. Historical estimates of groundwater pumping indicate that these water contractors are pumping groundwater in excess of the original safe yields.

The groundwater pumping in excess of safe yield has resulted in the continued decline in the groundwater tables underlying most of the districts. A review of hundreds of individual well hydrographs shows that this increase in pumping has not been supported by the aquifer. Most districts are still experiencing declining groundwater levels since the inception of CVP deliveries. With the exception of five districts (Delano Earlimart, Exeter, Lindmore, Lindsay-Strathmore and Orange Cove), cumulative groundwater storage has decreased in the remaining 19 Friant districts since the CVP began importing water into those districts. The five districts that show overall rises in groundwater storage change have unique geohydrologic conditions and were evaluated individually to determine appropriate levels of groundwater pumping for the 2025 level assessments. From the analysis performed, it can be concluded that CVP deliveries since 1986, as evidenced by a continuous decline in storage from 1986 to 1992, have not been sufficient to maintain a reasonably stable groundwater levels, nor have CVP deliveries supported an increase in groundwater levels in wet years under the conjunctive use operations practiced by most districts. Safe yield pumping in combination with surface water supplies should have sustained or raised groundwater levels to some stable level. However, historical groundwater pumping has been higher than the safe yield values. In addition, unforeseen factors in the original safe yield analysis such as the magnitude of groundwater use by non-district entities primarily for urban needs within the boundaries of the district, the magnitude of groundwater and surface water use by adjacent districts, changes in the type of crops, droughts and reductions in CVP water deliveries may render even the original safe yield values as too high. However, the unavailability of critical information and the lack of time to perform an analysis make the determination of new safe yields for the Friant Region infeasible at this time. Therefore, Reclamation concurs that the original safe yields are appropriate to depict groundwater pumping in the 2025 level assessments for the Friant Region.

**Sources of Information**

The Water Management Plans that most water districts have prepared in response to the mandates of the Central Valley Project Improvement Act and the Reclamation Reform

Act provide information on agricultural, urban and environmental water demands as well as on water supplies available to meet these demands. In most cases, these plans depict information for a representative year, although some plans provide a number of years of historical information as well as projections for the future. Fortunately, the representative year for many of these plans is either 1989, or 1996. The water contractors were asked to verify that information contained in these plans may be used to calculate past beneficial use and/or to depict current conditions for the purposes of the environmental documentation. In addition, the agricultural water contractors were requested to provide projections of types of crops planted, irrigated acres and amounts and types of non-CVP water supplies for the year 2025. Similarly, the urban water contractors were asked to provide population projections, projections of nonresidential water demand and amounts and types of non-CVP water supplies for the year 2025.

Other sources of information included DWR Bulletin 160-98, DWR Bulletin 113-3, CIMIS information, crop coefficients from various sources, Reclamation's annual crop reports, the January 2000 Water Forum Agreements for the American River, Reclamation's groundwater safe yield studies and miscellaneous planning and environmental documents.

# Exhibit

## Repayment Obligation - Current Calculation under the WIIN Act, Section 4011 (a) (2)

| Unpaid Construction Cost from the 2020 Water Rate Books* |
|---|

| | |
|---|---|
| Contractor: | **Westlands Water District DD #1** |
| Facility: | **San Luis Canal (Delta-Mendota Pool and DD#2 provided separate)** |
| Contract: | **Exhibits vary by Contract as either C or D and are identified below for this combined Exhibit** |
| | **Exhibit D: 14-06-200-0495A-IR1-P**          **Exhibit C: 14-06-200-8092-IR5-P,** |
| | **Exhibit C: 7-07-20-W0055B-IR5-P**          **Exhibit C: 14-06-200-8018B-IR5-P** |

### Irrigation Construction Cost (2020 Irrigation Ratebook, Schedule A-2Ba and A-2Bc)

| | Unpaid Cost | Discount |
|---|---|---|
| Construction Cost (Excludes Intertie): | $   249,446,036 | |
| 2019 Repayment (Estimate) ** | $     49,813,728 | |
| Adjusted Construction Cost (Excludes Intertie): | $   199,632,308 | $  192,478,622 |
| Intertie Construction Cost: | $     17,953,803 | $    15,703,711 |
| Total | $   217,586,111 | $  208,182,333 |

| | | | |
|---|---|---|---|
| If Paid in Installments (Used 20 yr CMT) | | | |
| | Due**** | | |
| Payment 1 | 6/1/2020 | | $   52,841,692 |
| Payment 2 | 6/2/2021 | | $   52,841,692 |
| Payment 3 | 6/2/2022 | | $   52,841,692 |
| Payment 4 | 6/2/2023 | | $   52,841,692 |
| Total Installment Payments | | | $ 211,366,768 |

| | |
|---|---|
| 20 yr CMT Rates - 06/01/2020 | 1.220% |
| Discount Rate (1/2 of the Treasury Rate per the WIIN Act, Section 4011(a)(2)(A)) | 0.610% |

### M&I Construction Cost (2020 M&I Ratebook, Sch A-2Ba)

| | Unpaid Cost |
|---|---|
| Construction Cost: | $       286,220 |
| 2019 Repayment (Estimate) ** | $         21,307 |
| Adjusted Construction Cost***: | $       264,913 |

| | | |
|---|---|---|
| **Calculation Support:** | Irrigation Lump Sum or First Payment**** | 6/1/2020 |
| | Days Until the End of the Fiscal Year | 121 |

| | Unpaid Allocated Construction Cost | | | Unpaid Intertie Construction Cost | | | Total |
|---|---|---|---|---|---|---|---|
| Fiscal Yr | Beginning Balance | Straight Line Repayment | Present Value | Beginning Balance | Straight Line Repayment | Present Value | Present Values |
| 2020 | $  199,632,308 | $ 18,148,392 | $  18,002,127 | $  17,953,803 | $   408,041 | $   404,752 | $  18,406,880 |
| 2021 | $  181,483,917 | $ 18,148,392 | $  17,928,991 | $  17,545,762 | $   408,041 | $   403,108 | $  18,332,099 |
| 2022 | $  163,335,525 | $ 18,148,392 | $  17,820,287 | $  17,137,721 | $   408,041 | $   400,664 | $  18,220,951 |
| 2023 | $  145,187,133 | $ 18,148,392 | $  17,712,242 | $  16,729,680 | $   408,041 | $   398,235 | $  18,110,477 |
| 2024 | $  127,038,742 | $ 18,148,392 | $  17,604,853 | $  16,321,639 | $   408,041 | $   395,820 | $  18,000,673 |
| 2025 | $  108,890,350 | $ 18,148,392 | $  17,498,114 | $  15,913,598 | $   408,041 | $   393,420 | $  17,891,535 |
| 2026 | $    90,741,958 | $ 18,148,392 | $  17,392,023 | $  15,505,557 | $   408,041 | $   391,035 | $  17,783,058 |
| 2027 | $    72,593,567 | $ 18,148,392 | $  17,286,575 | $  15,097,516 | $   408,041 | $   388,664 | $  17,675,239 |
| 2028 | $    54,445,175 | $ 18,148,392 | $  17,181,766 | $  14,689,475 | $   408,041 | $   386,308 | $  17,568,074 |
| 2029 | $    36,296,783 | $ 18,148,392 | $  17,077,593 | $  14,281,434 | $   408,041 | $   383,966 | $  17,461,558 |
| 2030 | $    18,148,392 | $ 18,148,392 | $  16,974,051 | $  13,873,393 | $   408,041 | $   381,638 | $  17,355,689 |
| 2031-63 | | | | $  13,465,352 | $ 13,465,352 | $ 11,376,101 | $  11,376,101 |
| Total, Lump Sum Payment | | | $ 192,478,622 | | | $ 15,703,711 | $ 208,182,333 |

| | | | |
|---|---|---|---|
| Amount of Reduction, Lump Sum | $     7,153,686 | $  2,250,091 | $   9,403,777 |

* Costs are assumed to be paid and all charges are assumed to be accurate.  If at a later date charges are determined to need
    update, they are still required.  Also, unpaid charges are still a requirement under contract.
** 2019 Repayment is based on a conservative estimate.  If not sufficient, the remainder will be billed.
*** Excludes Interest to payment date as Interest will be computed as an annual expense as usual.
****Contractor has 60 days from the effective date of the contract or installment dates to make payment.

# Exhibit D

**Repayment Obligation - Current Calculation under the WIIN Act, Section 4011 (a) (2)**

**Unpaid Construction Cost from the 2020 Water Rate Books***

| | |
|---|---|
| Contractor: | **Westlands Water District** |
| Facility: | **Delta Mendota Pool (San Luis Canal and DD#2 provided separate)** |
| Contract: | **14-06-200-0495A-IR1-P** |

| Irrigation Construction Cost (2020 Irrigation Ratebook, Schedule A-2Ba and A-2Bc) | | | | | | |
|---|---|---|---|---|---|---|
| | | | **Unpaid Cost** | | **Discount** | |
| Construction Cost (Excludes Intertie): | | $ | 388,865 | | | |
| 2019 Repayment (Estimate) ** | | $ | 5,757 | | | |
| Adjusted Construction Cost (Excludes Intertie): | | $ | 383,108 | $ | 369,380 | |
| Intertie Construction Cost: | | $ | 190,033 | $ | 166,217 | |
| Total | | $ | 573,141 | $ | 535,596 | |
| | | | | | | |
| If Paid in Installments (Used 20 yr CMT) | | | | | | |
| | Due**** | | | | | |
| Payment 1 | 6/1/2020 | | | $ | 135,947 | |
| Payment 2 | 6/1/2021 | | | $ | 135,947 | |
| Payment 3 | 6/1/2022 | | | $ | 135,947 | |
| Payment 4 | 6/1/2023 | | | $ | 135,947 | |
| Total Installment Payments | | | | $ | 543,789 | |
| | | | | | | |
| 20 yr CMT Rates - 06/01/2020 | | | | | 1.220% | |
| Discount Rate (1/2 of the Treasury Rate per the WIIN Act, Section 4011(a)(2)(A)) | | | | | 0.610% | |

| M&I Construction Cost (2020 M&I Ratebook, Sch A-2Ba) | | |
|---|---|---|
| | | **Unpaid Cost** |
| Construction Cost: | $ | - |
| 2019 Repayment (Estimate) ** | $ | - |
| Adjusted Construction Cost***: | $ | - |

| **Calculation Support:** | Irrigation Lump Sum or First Payment**** | 6/1/2020 |
|---|---|---|
| | Days Until the End of the Fiscal Year | 121 |

| | Unpaid Allocated Construction Cost | | | | Unpaid Intertie Construction Cost | | | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Beginning | Straight Line | Present | | Beginning | Straight Line | Present | | Present | |
| Fiscal Yr | Balance | Repayment | Value | | Balance | Repayment | Value | | Values | |
| 2020 | $ 383,108 | $ 34,828 | $ 34,547 | | $ 190,033 | $ 4,319 | $ 4,284 | | $ 38,831 | |
| 2021 | $ 348,280 | $ 34,828 | $ 34,407 | | $ 185,714 | $ 4,319 | $ 4,267 | | $ 38,674 | |
| 2022 | $ 313,452 | $ 34,828 | $ 34,198 | | $ 181,395 | $ 4,319 | $ 4,241 | | $ 38,439 | |
| 2023 | $ 278,624 | $ 34,828 | $ 33,991 | | $ 177,076 | $ 4,319 | $ 4,215 | | $ 38,206 | |
| 2024 | $ 243,796 | $ 34,828 | $ 33,785 | | $ 172,757 | $ 4,319 | $ 4,190 | | $ 37,975 | |
| 2025 | $ 208,968 | $ 34,828 | $ 33,580 | | $ 168,438 | $ 4,319 | $ 4,164 | | $ 37,744 | |
| 2026 | $ 174,140 | $ 34,828 | $ 33,376 | | $ 164,119 | $ 4,319 | $ 4,139 | | $ 37,515 | |
| 2027 | $ 139,312 | $ 34,828 | $ 33,174 | | $ 159,800 | $ 4,319 | $ 4,114 | | $ 37,288 | |
| 2028 | $ 104,484 | $ 34,828 | $ 32,973 | | $ 155,482 | $ 4,319 | $ 4,089 | | $ 37,062 | |
| 2029 | $ 69,656 | $ 34,828 | $ 32,773 | | $ 151,163 | $ 4,319 | $ 4,064 | | $ 36,837 | |
| 2030 | $ 34,828 | $ 34,828 | $ 32,574 | | $ 146,844 | $ 4,319 | $ 4,039 | | $ 36,614 | |
| 2031-63 | | | | | $ 142,525 | $ 142,525 | $ 120,411 | | $ 120,411 | |
| Total, Lump Sum Payment | | | $ 369,380 | | | | $ 166,217 | | $ 535,596 | |
| | | | | | | | | | | |
| Amount of Reduction, Lump Sum | | $ 13,728 | | | | $ 23,816 | $ 37,545 | | | |

\* Costs are assumed to be paid and all charges are assumed to be accurate.  If at a later date charges are determined to need
   update, they are still required.  Also, unpaid charges are still a requirement under contract.
\** 2019 Repayment is based on a conservative estimate.  If not sufficient, the remainder will be billed.
\*** Excludes Interest to payment date as Interest will be computed as an annual expense as usual.
\****Contractor has 60 days from the effective date of the contract or installment dates to make payment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BARTKIEWICZ, KRONICK & SHANAHAN, PC
WWW.BKSLAWFIRM.COM

**EXHIBIT 2**

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

INTERIM RENEWAL CONTRACT BETWEEN THE UNITED STATES
AND
WESTLANDS WATER DISTRICT
PROVIDING FOR PROJECT WATER SERVICE
SAN LUIS UNIT AND DELTA DIVISION

Table of Contents

| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 1-7 |
| 1 | Definitions | 7-11 |
| 2 | Term of Contract and Right to Use of Water | 11-13 |
| 3 | Water to be Made Available and Delivered to the Contractor | 13-19 |
| 4 | Time for Delivery of Water | 19-20 |
| 5 | Point of Diversion and Responsibility for Distribution of Water | 20-22 |
| 6 | Measurement of Water Within the Contractor's Service Area | 22-24 |
| 7 | Rates and Method of Payment for Water | 24-29 |
| 8 | Non-Interest Bearing Operation and Maintenance Deficits | 29 |
| 9 | Sales, Transfers, or Exchanges of Water | 30-31 |
| 10 | Application of Payments and Adjustments | 31-32 |
| 11 | Temporary Reductions--Return Flows | 32-33 |
| 12 | Constraints on the Availability of Water | 33-36 |
| 13 | Unavoidable Groundwater Percolation | 36 |
| 14 | Rules and Regulations | 36 |
| 15 | Water and Air Pollution Control | 37 |
| 16 | Quality of Water | 37-38 |
| 17 | Water Acquired by the Contractor Other Than From the United States | 38-41 |
| 18 | Opinions and Determinations | 41 |
| 19 | Coordination and Cooperation | 42-43 |
| 20 | Charges for Delinquent Payments | 43-44 |

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

## Table of Contents - continued

| Article No. | Title | Page No. |
|---|---|---|
| 21 | Equal Opportunity | 44-45 |
| 22 | General Obligation--Benefits Conditioned Upon Payment | 45 |
| 23 | Compliance With Civil Rights Laws and Regulations | 46 |
| 24 | Privacy Act Compliance | 46-47 |
| 25 | Contractor to Pay Certain Miscellaneous Costs | 47 |
| 26 | Water Conservation | 48-49 |
| 27 | Existing or Acquired Water or Water Rights | 49-50 |
| 28 | Operation and Maintenance by San Luis and Delta-Mendota Water Authority | 50-51 |
| 28.1 | Operation and Maintenance by California Department of Water Resources | 52-53 |
| 28.2 | Operation and Maintenance by the Contractor | 54-56 |
| 28.3 | Pumping Plants, Power for Pumping Plants, and Transfer of Operation and Maintenance to the Contractor | 56-60 |
| 29 | Contingent on Appropriation or Allotment of Funds | 60 |
| 30 | Books, Records, and Reports | 60-61 |
| 31 | Assignment Limited--Successors and Assigns Obligated | 61 |
| 32 | Severability | 61-62 |
| 33 | Resolution of Disputes | 62-63 |
| 34 | Officials Not to Benefit | 63 |
| 35 | Changes in Contractor's Service Area | 63 |
| 36 | Federal Laws | 63-64 |
| 37 | Notices | 64 |
| | Signature Page | 65 |

Exhibit A - Map of Contractor's Service Area

Exhibit B - Rates and Charges

Exhibit C - Central Valley Project Water Needs Assessments Purpose and
Methodology

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

1    UNITED STATES
2    DEPARTMENT OF THE INTERIOR
3    BUREAU OF RECLAMATION
4    Central Valley Project, California

5    INTERIM RENEWAL CONTRACT BETWEEN THE UNITED STATES
6    AND WESTLANDS WATER DISTRICT
7    PROVIDING FOR PROJECT WATER SERVICE FROM
8    SAN LUIS UNIT AND DELTA DIVISION

9    THIS CONTRACT, made this __27__ day of __December__, 2008, in pursuance generally

10   of the Act of June 17, 1902 (32 Stat. 388), and acts amendatory or supplementary thereto, including,

11   but not limited to, the Acts of August 26, 1937 (50 Stat. 844), as amended and supplemented, August

12   4, 1939 (53 Stat. 1187), as amended and supplemented, July 2, 1956 (70 Stat. 483), June 3, 1960

13   (74 Stat. 156), June 21, 1963 (77 Stat. 68), October 12, 1982 (96 Stat. 1263), October 27, 1986

14   (100 Stat. 3050), as amended, and Title XXXIV of the Act of October 30, 1992 (106 Stat. 4706), all

15   collectively hereinafter referred to as Federal Reclamation law, between THE UNITED STATES OF

16   AMERICA, hereinafter referred to as the United States, and the WESTLANDS WATER DISTRICT,

17   hereinafter referred to as the Contractor, a public agency of the State of California, duly organized,

18   existing, and acting pursuant to the laws thereof;

19   WITNESSETH, That:

20   EXPLANATORY RECITALS

21   [1st]   WHEREAS, the United States has constructed and is operating the California Central

22   Valley Project (Project), for diversion, storage, carriage, distribution and beneficial use, for flood

control, irrigation, municipal, domestic, industrial, fish and wildlife mitigation, protection and

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

24  restoration, generation and distribution of electric energy, salinity control, navigation and other

25  beneficial uses, of waters of the Sacramento River, the American River, the Trinity River, and the

26  San Joaquin River and their tributaries; and

27      [2nd]   WHEREAS, the United States constructed the Delta Division Facilities, including the

28  San Luis Unit facilities (which include the San Luis Canal, the Coalinga Canal, the Pleasant Valley

29  Pumping Plant, and the Dos Amigos Pumping Plant), which will be used in part for the furnishing of

30  water to the Contractor pursuant to the terms of this Contract; and

31      [3rd]   WHEREAS, the rights to Project Water were acquired by the United States pursuant to

32  California law for operation of the Project; and

33      [4th]   WHEREAS, the terms and conditions pursuant to which Project Water is to be

34  delivered to the Contractor through December 31, 2007, are addressed in the Contract Between the

35  United States and Westlands Water District Providing for Water Service, dated June 5, 1963, and the

36  Stipulated Judgment in the lawsuit entitled Barcellos and Wolfsen, Inc., v. Westlands Water District,

37  Civ. No. F-79-106-EDP (E.D. Cal.), as consolidated with Westlands Water District v. United States

38  of America, Civ. No. F-81-245-EDP (E.D. Cal.), entered on December 30, 1986, hereinafter referred

39  to as the Existing Contract; and

40      [5th]   WHEREAS, the United States and the Contractor have pursuant to

41  Subsection 3404(c)(3) of the Central Valley Project Improvement Act (CVPIA), subsequently entered

42  into binding agreements identified as Binding Agreement No. 14-06-200-495A-BA, and Binding

43  Agreement No. CV 79-106-EDP-BA, which sets out the terms pursuant to which the Contractor

2

44  agreed to renew the Existing Contract before the expiration date after completion of the

45  Programmatic Environmental Impact Statement (PEIS) and other appropriate environmental

46  documentation and negotiation of a renewal contract; and which also sets out the consequences of a

47  subsequent decision not to renew: and

48      [6th]    WHEREAS, Section 3404(c) of the CVPIA provides for long-term renewal of the

49  Existing Contract following completion of appropriate environmental documentation, including the

50  PEIS, which was required by Section 3409 of the CVPIA, pursuant to the National Environmental

51  Policy Act (NEPA) analyzing the direct and indirect impacts and benefits of implementing the

52  CVPIA and the potential renewal of all existing contracts for Project Water; and

ᴗ       [7th]    WHEREAS, rights of renewal of Existing Contract and to convert said contract to a

54  contract as provided by subsection (d), Section 9 of the Act of August 4, 1939 (53 Stat. 1187), are set

55  forth in said contract; and

56      [8th]    WHEREAS, the United States has completed the PEIS, but since all the environmental

57  documentation necessary to execute a long-term renewal contract has not been completed, the

58  Contractor has requested an interim renewal contract pursuant to Section 3404(c)(1) of the CVPIA;

59  and

60      [9th]    WHEREAS, the United States has determined that the Contractor has fulfilled all of

61  its obligations under the Existing Contract; and

3

62      [10th]   WHEREAS, the Contractor has demonstrated to the satisfaction of the Contracting

63    Officer that the Contractor has utilized the Project Water supplies available to it for reasonable and

64    beneficial use and expects to utilize fully for reasonable and beneficial use the quantity of Project

65    Water to be made available to it pursuant to this Contract; and

66      [11th]   WHEREAS, water obtained from the Project has been relied upon by urban and

67    agricultural areas within California for more than 50 years, and is considered by the Contractor as an

68    essential portion of its water supply; and

69      [12th]   WHEREAS, the economies of regions within the Project, including the Contractor's,

70    depend upon the continued availability of water, including water service from the Project; and

71      [12.1]   WHEREAS, the United States Court of Appeals for the Ninth Circuit has held that

72    Section 1(a) of the San Luis Act, Public Law (P.L.) 86-488 (74 Stat. 156) imposes on the Secretary of

73    the Interior (Secretary) a duty to provide drainage service to the San Luis Unit; and

74      [12.2]   WHEREAS, the Contractor and the Contracting Officer recognize that adequate

75    drainage service is required to maintain agricultural production within certain areas served with

76    Project Water made available under this Contract, and all renewals thereof; and

77      [12.3]   WHEREAS, the Contacting Officer intends, to the extent appropriated funds are

78    available, to develop and implement effective solutions to drainage problems in the San Luis Unit; and

79      [12.4]   WHEREAS, the Contracting Officer and the Contractor acknowledge that such

80    drainage solutions may involve actions not originally contemplated and/or the construction or use of

81    facilities, other than the San Luis Drain; that the Contractor is investing in drainage solutions for

4

82    lands within its boundaries that should be considered by the Contracting Officer in determining

83    drainage solutions; and that the existing ratesetting policy as it relates to the allocation and collection

84    of drainage costs may require amendment to recognize those investments by the Contractor and other

85    relevant circumstances; and

86    [12.5] WHEREAS, the Department of the Interior (Interior), Bureau of Reclamation published

87    in June 2006 the San Luis Drainage Feature Re-evaluation Final Environmental Impact Statement,

88    which considers alternatives to provide agricultural drainage service to the San Luis Unit; and

89    [12.6] WHEREAS, on March 9, 2007, the Record of Decision was signed for the San Luis

90    Drainage Feature Re-evaluation Final Environmental Impact Statement identifying the retirement of

     up to 194,000 acres of land from irrigated agricultural productions as the selected alternative; and

92    [13[th]] WHEREAS, the Secretary intends through coordination, cooperation, and partnerships

93    to pursue measures to improve water supply, water quality, and reliability of the Project for all Project

94    purposes; and

95    [14[th]] WHEREAS, the mutual goals of the United States and the Contractor include: to

96    provide for reliable Project Water supplies; to control costs of those supplies; to achieve repayment of

97    the Project as required by law; to guard reasonably against Project Water shortages; to achieve a

98    reasonable balance among competing demands for use of Project Water; and to comply with all

99    applicable environmental statutes, all consistent with the legal obligations of the United States

100    relative to the Project; and

101  [14.1]  WHEREAS, the parties intend by this Contract to develop a more cooperative

102 relationship in order to achieve their mutual goals; and

103  [15th]   WHEREAS, the Contractor has utilized or may utilize transfers, contract assignments,

104 rescheduling and conveyance of Project Water and non-Project water under this Contract as tools to

105 minimize the impacts of Conditions of Shortage and to maximize the beneficial use of water; and

106  [15.1]  WHEREAS, the parties desire and intend that this Contract not provide a disincentive

107 to the Contractor in continuing to carry out the beneficial activities set out in the Explanatory Recital

108 immediately above; and

109  [15.2]  WHEREAS, in order to continue water service provided under Project water service

110 contracts that expire prior to the completion of the PEIS, the United States intends to execute interim

111 renewal contracts for a period not to exceed three (3) Years in length, and for successive interim

112 periods of not more than two (2) Years in length, until appropriate environmental documentation,

113 including the PEIS, is finally completed, at which time the Secretary shall, pursuant to Federal

114 Reclamation law, upon request of the Contractor, enter into a long-term renewal contract for a period

115 of twenty-five (25) Years; and may thereafter renew such long-term renewal contracts for successive

116 periods not to exceed twenty-five (25) Years each; and

117  [15.3]  WHEREAS, the Secretary intends to assure uninterrupted water service and continuity

118 of contract through the process set forth in Article 2 hereof; and

119  [16th]   WHEREAS, the United States and the Contractor are willing to enter into this

120 Contract pursuant to Federal Reclamation law on the terms and conditions set forth below;

121     NOW, THEREFORE, in consideration of the mutual and dependent covenants herein

122     contained, it is hereby mutually agreed by the parties hereto as follows:

123                                        DEFINITIONS

124     1.      When used herein unless otherwise distinctly expressed, or manifestly incompatible

125     with the intent of the parties as expressed in this Contract, the term:

126     (a)     "Calendar Year" shall mean the period January I through December 31, both dates

127     inclusive;

128             (b)     "Charges" shall mean the payments required by Federal Reclamation law in

129     addition to the Rates as determined annually by the Contracting Officer pursuant to this Contract;

130             (c)     "Condition of Shortage" shall mean a condition respecting the Project during

131     any Year such that the Contracting Officer is unable to deliver sufficient water to meet the Contract;

132             (d)     "Contracting Officer" shall mean the Secretary of the Interior's duly authorized

133     representative acting pursuant to this Contract or applicable Federal Reclamation law or regulation;

134             (e)     "Contract Total" shall mean the maximum amount of water to which the

135     Contractor is entitled under subdivision (a) of Article 3 of this Contract;

136             (f)     "Contractor's Service Area" shall mean the area to which the Contractor is

137     permitted to provide Project Water under this Contract as described in Exhibit "A" attached hereto,

138     which may be modified from time to time in accordance with Article 35 of this Contract without

139     amendment of this Contract;

7

140  (g)  "CVPIA" shall mean the Central Valley Project Improvement Act,

141  Title XXXIV of the Act of October 30, 1992 (106 Stat. 4706);

142  (g)  (1))  "Delta Division Facilities" shall mean those existing and future Project

143  facilities in and south of the Sacramento-San Joaquin Rivers Delta, including, but not limited to, the

144  C.W. "Bill" Jones Pumping Plant, the O'Neill Forebay, the O'Neill Pumping/Generating Plant, and

145  the San Luis Reservoir, used to divert, store, and convey water to those Project Contractors entitled to

146  receive water conveyed through the Delta-Mendota Canal;

147  (h)  "Eligible Lands" shall mean all lands to which Irrigation Water may be

148  delivered in accordance with Section 204 of the Reclamation Reform Act of October 12, 1982

149  (96 Stat. 1263), as amended, hereinafter referred to as RRA;

150  (i)  "Excess Lands" shall mean all lands in excess of the limitations contained in

151  Section 204 of the RRA, other than those lands exempt from acreage limitation under Federal

152  Reclamation law;

153  (j)  Omitted.

154  (k)  "Ineligible Lands" shall mean all lands to which Irrigation Water may not be

155  delivered in accordance with Section 204 of the RRA;

156  (l)  Omitted.

157  (m)  "Irrigation Water" shall mean water made available from the Project that is

158  used primarily in the production of agricultural crops or livestock, including domestic use incidental

159  thereto, and watering of livestock;

8

160    (n)  "Landholder" shall mean a party that directly or indirectly owns or leases

161 nonexempt land, as provided in 43 CFR 426.2;

162    (o)  "Municipal and Industrial (M&I) Water" shall mean Project Water, other than

163 Irrigation Water, made available to the Contractor.  M&I Water shall include water used for human

164 use and purposes such as the watering of landscaping or pasture for animals (e.g., horses) which are

165 kept for personal enjoyment or water delivered to landholdings operated in units of less than five

166 acres unless the Contractor establishes to the satisfaction of the Contracting Officer that the use of

167 water delivered to any such landholding is a use described in subdivision (m) of this Article;

168    (p)  Omitted.

169    (q)  "Operation and Maintenance" or "O&M" shall mean normal and reasonable

170 care, control, operation, repair, replacement (other than capital replacement), and maintenance of

171 Project facilities;

172    (r)  "Operating Non-Federal Entity" shall mean the entity(ies), its (their) successors

173 or assigns, which has (have) the obligation to operate and maintain all or a portion of the Delta

174 Division Facilities pursuant to written agreement(s) with the United States.  When this Contract was

175 entered into, the Operating Non-Federal Entities were the San Luis and Delta-Mendota Water

176 Authority and, with respect to San Luis Unit facilities, the California Department of Water Resources,

177 and the Contractor;

178    (s)  "Project" shall mean the Central Valley Project owned by the United States and

managed by the Department of the Interior, Bureau of Reclamation;

9

180         (t)     "Project Contractors" shall mean all parties who have water service contracts

181 for Project Water from the Project with the United States pursuant to Federal Reclamation law;

182         (u)     "Project Water" shall mean all water that is developed, diverted, stored, or

183 delivered by the Secretary in accordance with the statutes authorizing the Project and in accordance

184 with the terms and conditions of water rights acquired pursuant to California law;

185         (v)     "Rates" shall mean the payments determined annually by the Contracting

186 Officer in accordance with the then current applicable water ratesetting policies for the Project, as

187 described in subdivision (a) of Article 7 of this Contract;

188         (w)     Omitted.

189         (x)     "Secretary" shall mean the Secretary of the Interior, a duly appointed

190 successor, or an authorized representative acting pursuant to any authority of the Secretary and

191 through any agency of the Interior;

192         (y)     Omitted

193         (z)     "Water Delivered" or "Delivered Water" shall mean Project Water diverted for

194 use by the Contractor at the point(s) of delivery approved by the Contracting Officer;

195         (aa)     "Water Made Available" shall mean the estimated amount of Project Water

196 that can be delivered to the Contractor for the upcoming Year as declared by the Contracting Officer,

197 pursuant to subdivision (a) of Article 4 of this Contract;

198              (bb)    "Water Scheduled" shall mean Project Water made available to the Contractor

199    for which times and quantities for delivery have been established by the Contractor and Contracting

200    Officer, pursuant to subdivision (b) of Article 4 of this Contract; and

201              (cc)    "Year" shall mean the period from and including March 1 of each Calendar

202    Year through the last day of February of the following Calendar Year.

203                  TERM OF CONTRACT - RIGHT TO USE OF WATER

204      2.    (a)    This Contract shall be effective from January 1, 2008 and shall remain in

205    effect through February 28, 2010, and thereafter will be renewed as described in this Article.  Except

206    as provided in subdivision (b) of this Article, until completion of all appropriate environmental

207    review, and provided that the Contractor has complied with all the terms and conditions of the interim

208    renewal contract in effect for the period immediately preceding the requested successive interim

209    renewal contract, this Contract will be renewed, upon request of the Contractor, for successive

210    interim periods each of which shall be no more than two (2) Years in length.  Also, except as

211    provided in subdivision (b) of this Article, in order to promote orderly and cost-effective contract

212    administration, the terms and conditions in subsequent interim renewal contracts shall be identical to

213    the terms and conditions in the interim renewal contract immediately preceding the subsequent

214    interim renewal contract: Provided, however, That each party preserves the right to propose

215    modification(s) in any interim renewal contract other than those described in subdivision (b) of this

216    Article, in which case the parties shall negotiate in good faith appropriate modification(s) to be

included in any successive interim renewal contracts.  Said modification(s) of each successive interim

218    renewal contract shall be agreed upon within a reasonable time prior to the expiration of the then

219    existing interim renewal contract. Nothing in this Article shall in any way alter the obligation that,

220    upon final completion of any necessary environmental documentation, the Secretary shall, pursuant to

221    Federal Reclamation law, upon request of the Contractor, enter into a long-term renewal contract for a

222    period of twenty-five (25) Years and may thereafter renew such long-term renewal contracts for

223    successive periods not to exceed twenty-five (25) Years each.

224                    (b)        The parties have engaged and if necessary will continue to engage in

225    good faith negotiations intended to permit the execution of a twenty-five (25) Year long-term renewal

226    contract contemplated by Section 3404 (c) of the CVPIA, hereinafter referred to as a long-term

227    renewal contract. The parties recognize the possibility that this schedule may not be met without

228    further negotiations. Accordingly: In the event (i) the Contractor and Contracting Officer have

229    reached agreement on the terms of the Contractor's long-term renewal contract or (ii) the Contractor

230    and Contracting Officer have not completed the negotiations on the Contractor's long-term renewal

231    contract, believe that further negotiations on that contract would be beneficial, and mutually commit

232    to continue to negotiate to seek to reach agreement, but (iii) all environmental documentation

233    required to allow execution of the Contractor's long-term renewal contract by both parties has not

234    been completed in time to allow execution of the Contractor's long-term renewal contract by

235    February 28, 2010, then (iv), the parties will expeditiously complete the environmental .

236    documentation required of each of them in order to execute the Contractor's long-term renewal

237    contract at the earliest practicable date. In addition, the Contractor's then current interim renewal

238    contract will be renewed without change upon the request of either party through the agreed-upon

239    effective date of the Contractor's long-term renewal contract or, in the absence of agreement on the

240    terms of the Contractor's long-term renewal contract, through the succeeding February 28.

241            (c)     The omission of language in this Contract providing for conversion of this

242    interim renewal contract or any subsequent renewals thereof to a repayment contract, pursuant to the

243    Act of July 2, 1956 (70 Stat. 483), shall not prejudice the Contractor's right to assert a right to have

244    such language included in subsequent renewals of this Contract or to exercise such conversion, all as

245    provided by law, or to negotiate the language regarding such conversion to be included in subsequent

246    renewal contracts.

247            <u>WATER TO BE MADE AVAILABLE AND DELIVERED TO THE CONTRACTOR</u>

248       3.    (a)     During each Year, consistent with all applicable State water rights permits, and

249    licenses, Federal law, and subject to the provisions set forth in Articles 11 and 12 of this Contract, the

250    Contracting Officer shall make available for delivery to the Contractor 1,150,000 acre-feet of Project

251    Water for irrigation and M&I purposes.  <u>Provided, however</u>, during the two (2) month period of

252    January and February of Year, 2008, the Contracting Officer shall make available for delivery to the

253    Contractor that portion of the 2007 allocation of Project Water unused by the Contractor under the

254    Existing Contract.  Water Delivered to the Contractor in accordance with this subdivision shall be

255    scheduled and paid for pursuant to the provisions of Articles 4 and 7 of this Contract.

256            (a)    (1)     Notwithstanding any other provisions of this Contract, in the event the

Secretary implements a program to retire land from irrigated agricultural production within the

13

258    Contractor's Service Area as a means of addressing drainage in the San Luis Unit, the Contracting

259    Officer shall conduct a water needs assessment to determine whether the Contract Total will be

260    reduced. An initial water needs assessment shall be conducted upon the retirement of 25 percent of

261    the land projected to be retired under such land retirement program. Subsequent assessments shall be

262    conducted upon the retirement of 50 percent and 75 percent of the land projected to be retired and a

263    final assessment will be conducted at the conclusion of the land retirement program. Any water needs

264    assessment performed pursuant to this paragraph (1) shall update the water needs assessment used to

265    compute the quantity of Project Water to be made available under this Contract, which was submitted

266    to the Contractor on November 2, 2000, and shall be conducted pursuant to the methodology attached

267    to this Contract as Exhibit "C." The Contractor may request the Contracting Officer update the

268    methodology employed based upon Contractor-specific information made available to the

269    Contracting Officer by the Contractor. Upon completion of any water needs assessment performed

270    pursuant to this paragraph, the Contracting Officer may make a determination to reduce the quantity

271    of water to be made available under this Contract, and the Contract Total shall be reduced according

272    to that determination; Provided, so long as the then-existing Contract Total can be put to reasonable

273    and beneficial use as determined by the water needs assessment on Eligible Lands within the

274    Contractor's Service Area that are not retired, the retirement of land shall not affect the quantity of

275    Project Water to be made available pursuant to this Contract.

276           (b)    Because the capacity of the Project to deliver Project Water has been

277    constrained in recent years and may be constrained in the future due to many factors including

278    hydrologic conditions and implementation of Federal and State laws, the likelihood of the Contractor

279    actually receiving the amount of Project Water set out in subdivision (a) of this Article in any given

280    Year is uncertain. The Contracting Officer's modeling referenced in the PEIS projected that the

281    Contract Total set forth in this Contract will not be available to the Contractor in many years.

282    Nothing in this subdivision (b) of this Article shall affect the rights and obligations of the parties

283    under any provision of this Contract.

284          (c)     The Contractor shall utilize the Project Water in accordance with all applicable

285    legal requirements.

286          (c)    (1)    In the event any Project Contractor (other than a Cross Valley

287    Contractor) that receives Project Water through the Delta Division Facilities obtains a contractual

288    agreement that the Contracting Officer shall make Project Water available at a point or points of

289    delivery in or north of the Delta, at the request of the Contractor and upon completion of any required

290    environmental documentation, this Contract shall be amended to provide for deliveries in or north of

291    the Delta on mutually agreeable terms. Such amendments to this Contract shall be limited solely to

292    those changes made necessary by the addition of such alternate points of delivery in or north of the

293    Delta; Provided, That the Contracting Officer's use of the Harvey O. Banks Pumping Plant to deliver

294    Project Water does not trigger this right of amendment.

295          (d)     The Contractor shall make reasonable and beneficial use of all water furnished

296    pursuant to this Contract. Ground-water recharge programs (direct, indirect, or in lieu), ground-

water banking programs, surface water storage programs, and other similar programs utilizing Project

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

298    Water or other water furnished pursuant to this Contract conducted within the Contractor's Service

299    Area which are consistent with applicable State law and result in use consistent with Federal

300    Reclamation law will be allowed; Provided, That any direct recharge program(s) is (are) described in

301    the Contractor's water conservation plan submitted pursuant to Article 26 of this Contract; Provided,

302    further, That such water conservation plan demonstrates sufficient lawful uses exist in the

303    Contractor's Service Area so that using a long-term average, the quantity of Delivered Water is

304    demonstrated to be reasonable for such uses and in compliance with Federal Reclamation law.

305    Ground-water recharge programs, ground-water banking programs, surface water storage programs,

306    and other similar programs utilizing Project Water or other water furnished pursuant to this Contract

307    conducted outside the Contractor's Service Area may be permitted upon written approval of the

308    Contracting Officer, which approval will be based upon environmental documentation, Project Water

309    rights, and Project operational concerns. The Contracting Officer will address such concerns in

310    regulations, policies, or guidelines.

311           (e)    The Contractor shall comply with requirements applicable to the Contractor in

312    biological opinion(s) prepared as a result of a consultation regarding the execution of this Contract

313    undertaken pursuant to Section 7 of the Endangered Species Act of 1973 (ESA), as amended, that are

314    within the Contractor's legal authority to implement. The Existing Contract, which evidences in

315    excess of 40 years of diversions for irrigation and/or M&I purposes of the quantities of Project Water

316    provided in subdivision (a) of Article 3 of this Contract, will be considered in developing an

317    appropriate baseline for the biological assessment(s) prepared pursuant to the ESA, and any other

16

318   needed environmental review. Nothing herein shall be construed to prevent the Contractor from

319   challenging or seeking judicial relief in a court of competent jurisdiction with respect to any

320   biological opinion or other environmental documentation referred to in this Article.

321          (f)      Following the declaration of Water Made Available under Article 4 of this

322   Contract, the Contracting Officer will make a determination whether Project Water, or other water

323   available to the Project, can be made available to the Contractor in addition to the Contract Total

324   under this Article during the Year without adversely impacting other Project Contractors. At the

325   request of the Contractor, the Contracting Officer will consult with the Contractor prior to making

326   such a determination. If the Contracting Officer determines that Project Water, or other water

327   available to the Project, can be made available to the Contractor, the Contracting Officer will

328   announce the availability of such water and shall so notify the Contractor as soon as practical. The

329   Contracting Officer will thereafter meet with the Contractor and other Project Contractors capable of

330   taking such water to determine the most equitable and efficient allocation of such water. If the

331   Contractor requests the delivery of any quantity of such water, the Contracting Officer shall make

332   such water available to the Contractor in accordance with applicable statutes, regulations, guidelines,

333   and policies. Subject to existing interim renewal and long-term contractual commitments, water

334   rights and operational constraints, interim renewal and long-term Project Contractors shall have a first

335   right to acquire such water, including Project Water made available pursuant to Section 215 of the

336   RRA.

17

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

337          (g)          The Contractor may request permission to reschedule for use during the

338      subsequent Year some or all of the Water Made Available to the Contractor during the current Year,

339      referred to as "rescheduled water." The Contractor may request permission to use during the current

340      Year a quantity of Project Water which may be made available by the United States to the Contractor

341      during the subsequent Year referred to as "preuse." The Contracting Officer's written approval may

342      permit such uses in accordance with applicable statutes, regulations, guidelines, and policies.

343          (h)          The Contractor's right pursuant to Federal Reclamation law and applicable

344      State law to the reasonable and beneficial use of Water Delivered pursuant to this Contract during the

345      term thereof and any subsequent interim renewal contracts, as described in Article 2 of this Contract,

346      during the terms thereof shall not be disturbed so long as the Contractor shall fulfill all of its

347      obligations under this Contract and any renewals thereof. Nothing in the preceding sentence shall

348      affect the Contracting Officer's ability to impose shortages under Article 11 or subdivision (b) of

349      Article 12 of this Contract or applicable provisions of any subsequent interim renewal contracts.

350          (i)          Project Water furnished to the Contractor pursuant to this Contract may be

351      delivered for purposes other than those described in subdivisions (m) and (o) of Article 1 of this

352      Contract upon written approval by the Contracting Officer in accordance with the terms and

353      conditions of such approval.

354          (j)          The Contracting Officer shall make reasonable efforts to protect the water

355      rights necessary for the Project and to provide the water available under this Contract and any renewal

356      thereof. The Contracting Officer shall not object to participation by the Contractor, in the capacity

18

357    and to the extent permitted by law, in administrative proceedings related to the Project Water rights;

358    Provided, that the Contracting Officer retains the right to object to the substance of the Contractor's

359    position in such a proceeding; Provided, further, That in such proceedings the Contracting Officer

360    shall recognize the Contractor has a legal right under the terms of this Contract to use Project Water.

361    <div align="center">TIME FOR DELIVERY OF WATER</div>

362    4.    (a)    On or about February 20 each Calendar Year, the Contracting Officer shall

363    announce the Contracting Officer's expected declaration of the Water Made Available. Such

364    declaration will be expressed in terms of Water Made Available and will be updated monthly, and

365    more frequently if necessary, based on the then-current operational and hydrologic conditions and a

366    new declaration with changes, if any, to the Water Made Available will be made. The Contracting

367    Officer shall provide forecasts of Project operations and the basis of the estimate, with relevant

368    supporting information, upon the written request of the Contractor.

369    (b)    On or before each March 1 and at such other times as necessary, the Contractor

370    shall submit to the Contracting Officer a written schedule, satisfactory to the Contracting Officer,

371    showing the monthly quantities of Project Water to be delivered by the United States to the

372    Contractor pursuant to this Contract for the Year commencing on such March 1. The Contracting

373    Officer shall use all reasonable means to deliver Project Water according to the approved schedule for

374    the Year commencing on such March 1.

375    (c)  The Contractor shall not schedule Project Water in excess of the quantity of

376 Project Water the Contractor intends to put to reasonable and beneficial use within the Contractor's

377 Service Area or to sell, transfer, or exchange pursuant to Article 9 of this Contract during any Year.

378    (d)  Subject to the conditions set forth in subdivision (a) of Article 3 of this

379 Contract, the United States shall deliver Project Water to the Contractor in accordance with the initial

380 schedule submitted by the Contractor pursuant to subdivision (b) of this Article, or any written

381 revision(s) thereto satisfactory to the Contracting Officer, submitted within a reasonable time prior to

382 the date(s) on which the requested change(s) is (are) to be implemented.

383   POINT OF DIVERSION AND RESPONSIBILITY FOR DISTRIBUTION OF WATER

384  5. (a)  Project Water scheduled pursuant to subdivision (b) of Article 4 of this

385 Contract shall be delivered to the Contractor at Project facilities and any additional point or points of

386 delivery either on Project facilities or another location or locations mutually agreed to in writing by

387 the Contracting Officer and the Contractor.

388    (b)  The Contracting Officer, either directly or indirectly through its written

389 agreements(s) with the Operating Non-Federal Entity(ies), shall make all reasonable efforts to

390 maintain sufficient flows and levels of water in the Project facilities to deliver Project Water to the

391 Contractor at the point or points of delivery established pursuant to subdivision (a) of this Article.

392    (c)  The Contractor shall deliver Irrigation Water in accordance with any applicable

393 land classification provisions of Federal Reclamation law and the associated regulations. The

394    Contractor shall not deliver Project Water to land outside the Contractor's Service Area unless

395    approved in advance by the Contracting Officer.

396         (d)    All Water Delivered to the Contractor pursuant to this Contract shall be

397    measured and recorded with equipment furnished, installed, operated, and maintained by the

398    Contracting Officer either directly or indirectly through its written agreements(s) with the Operating

399    Non-Federal Entity(ies), unless undertaken by the Contractor with the consent of the Contracting

400    Officer at the point or points of delivery established pursuant to subdivision (a) of this Article. Upon

401    the request of either party to this Contract, the Contracting Officer shall investigate, or cause to be

402    investigated by the appropriate Operating Non-Federal Entity(ies) the accuracy of such measurements

       and shall take any necessary steps to adjust any errors appearing therein. For any period of time when

404    accurate measurements have not been made, the Contracting Officer shall consult with the Contractor

405    and the appropriate Operating Non-Federal Entity(ies), if any, prior to making a final determination of

406    the quantity delivered for that period of time.

407         (e)    Absent a separate contrary written agreement with the Contractor, neither the

408    Contracting Officer nor any Operating Non-Federal Entity(ies) shall be responsible for the control,

409    carriage, handling, use, disposal, or distribution of Water Delivered to the Contractor pursuant to this

410    Contract beyond the point or points of delivery established pursuant to subdivision (a) of this Article.

411    The Contractor shall indemnify the United States, its officers, employees, agents, and assigns on

412    account of damage or claim of damage of any nature whatsoever for which there is legal

       responsibility, including property damage, personal injury, or death arising out of or connected with

21

414 the control, carriage, handling, use, disposal, or distribution of such Water Delivered beyond such

415 point or points of delivery except for any damage or claim arising out of: (i) acts or omissions of the

416 Contracting Officer or any of its officers, employees, agents, and assigns, including the Operating

417 Non-Federal Entity(ies) with the intent of creating the situation resulting in any damage or claim;

418 (ii) willful misconduct of the Contracting Officer or any of its officers, employees, agents, and

419 assigns, including the Operating Non-Federal Entity(ies); (iii) negligence of the Contracting Officer

420 or any of its officers, employees, agents, and assigns including the Operating Non-Federal Entity(ies);

421 (iv) a malfunction of facilities owned and/or operated by the United States or the Operating

422 Non-Federal Entity(ies); or (v) failure of the United States, its officers, employees, agents, and

423 assigns, including the Operating Non-Federal Entity(ies), to provide drainage service.

424    MEASUREMENT OF WATER WITHIN THE CONTRACTOR'S SERVICE AREA

425  6.  (a)  The Contractor has established a measuring program satisfactory to the

426 Contracting Officer. The Contractor shall ensure that all surface water delivered for irrigation

427 purposes within the Contractor's Service Area is measured at each agricultural turnout and such water

428 delivered for M&I purposes is measured at each M&I service connection. The water measuring

429 devices or water measuring methods of comparable effectiveness must be acceptable to the

430 Contracting Officer. The Contractor shall be responsible for installing, operating, maintaining, and

431 repairing all such measuring devices and implementing all such water measuring methods at no cost

432 to the United States. The Contractor shall use the information obtained from such water measuring

433 devices or water measuring methods to ensure its proper management of the water; to bill water users

434    for water delivered by the Contractor; and, if applicable, to record water delivered for M&I purposes

435    by customer class as defined in the Contractor's water conservation plan provided for in Article 26 of

436    this Contract. Nothing herein contained, however, shall preclude the Contractor from establishing

437    and collecting any charges, assessments, or other revenues authorized by California law. The

438    Contractor shall include a summary of all its annual surface water deliveries in the annual report

439    described in subdivision (c) of Article 26 of this Contract.

440          (b)     To the extent the information has not otherwise been provided, upon execution

441    of this Contract, the Contractor shall provide to the Contracting Officer a written report describing the

442    measurement devices or water measuring methods being used or to be used to implement subdivision

443    (a) of this Article and identifying the agricultural turnouts and the M&I service connections or

444    alternative measurement programs approved by the Contracting Officer, at which such measurement

445    devices or water measuring methods are being used, and, if applicable, identifying the locations at

446    which such devices and/or methods are not yet being used including a time schedule for

447    implementation at such locations. The Contracting Officer shall advise the Contractor in writing

448    within 60 days as to the adequacy and necessary modifications, if any, of the measuring devices or

449    water measuring methods identified in the Contractor's report and if the Contracting Officer does not

450    respond in such time, they shall be deemed adequate. If the Contracting Officer notifies the

451    Contractor that the measuring devices or methods are inadequate, the parties shall within 60 days

452    following the Contracting Officer's response, negotiate in good faith the earliest practicable date by

which the Contractor shall modify said measuring devices and/or measuring methods as required by

454   the Contracting Officer to ensure compliance with subdivision (a) of this Article.

455   (c)   All new surface water delivery systems installed within the Contractor's

456   Service Area after the effective date of this Contract shall also comply with the measurement

457   provisions described in subdivision (a) of this Article.

458   (d)   The Contractor shall inform the Contracting Officer and the State of California

459   in writing by April 30 of each Year of the monthly volume of surface water delivered within the

460   Contractor's Service Area during the previous Year.

461   (e)   The Contractor shall inform the Contracting Officer and the Operating

462   Non-Federal Entity(ies) on or before the 20th calendar day of each month of the quantity of Irrigation

463   Water and M&I Water taken during the preceding month.

464                    RATES AND METHOD OF PAYMENT FOR WATER

465   7.   (a)   The Contractor shall pay the United States as provided in this Article for all

466   Delivered Water at Rates and Charges established in accordance with: (i) the Secretary's ratesetting

467   policy for Irrigation Water adopted in 1988 and the Secretary's then-existing ratesetting policy for

468   M&I Water. Such ratesetting policies shall be amended, modified, or superseded only through a

469   public notice and comment procedure; (ii) applicable Federal Reclamation law and associated rules

470   and regulations, or policies; and (iii) other applicable provisions of this Contract. Payments shall be

471   made by cash transaction, electronic funds transfer, or any other mechanism as may be agreed to in

472   writing by the Contractor and the Contracting Officer. The Rates and Charges applicable to the

473   Contractor upon execution of this Contract are set forth in Exhibit "B," as may be revised annually.

24

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

474           (b)      The Contracting Officer shall notify the Contractor of the Rates and Charges as

475    follows:

476           (1)      Prior to July 1 of each Calendar Year, the Contracting Officer shall

477    provide the Contractor an estimate of the Charges for Project Water that will be applied to the period

478    October 1, of the current Calendar Year, through September 30, of the following Calendar Year, and

479    the basis for such estimate. The Contractor shall be allowed not less than two months to review and

480    comment on such estimates. On or before September 15 of each Calendar Year, the Contracting

481    Officer shall notify the Contractor in writing of the Charges to be in effect during the period

482    October 1 of the current Calendar Year, through September 30, of the following Calendar Year, and

     such notification shall revise Exhibit "B."

484           (2)      Prior to October 1 of each Calendar Year, the Contracting Officer shall

485    make available to the Contractor an estimate of the Rates for Project Water for the following Year

486    and the computations and cost allocations upon which those Rates are based. The Contractor shall be

487    allowed not less than two months to review and comment on such computations and cost allocations.

488    By December 31 of each Calendar Year, the Contracting Officer shall provide the Contractor with the

489    final Rates to be in effect for the upcoming Year, and such notification shall revise Exhibit "B."

490           (c)      At the time the Contractor submits the initial schedule for the delivery of

491    Project Water for each Year pursuant to subdivision (b) of Article 4 of this Contract, the Contractor

492    shall make an advance payment to the United States equal to the total amount payable pursuant to the

     applicable Rate(s) set under subdivision (a) of this Article, for the Project Water scheduled to be

494    delivered pursuant to this Contract during the first two calendar months of the Year. Before the end

495    of the first month and before the end of each calendar month thereafter, the Contractor shall make an

496    advance payment to the United States, at the Rate(s) set under subdivision (a) of this Article, for the

497    Water Scheduled to be delivered pursuant to this Contract during the second month immediately

498    following. Adjustments between advance payments for Water Scheduled and payments at Rates due

499    for Water Delivered shall be made before the end of the following month; Provided, That any revised

500    schedule submitted by the Contractor pursuant to Article 4 of this Contract which increases the

501    amount of Water Delivered pursuant to this Contract during any month shall be accompanied with

502    appropriate advance payment, at the Rates then in effect, to assure that Project Water is not delivered

503    to the Contractor in advance of such payment. In any month in which the quantity of Water Delivered

504    to the Contractor pursuant to this Contract equals the quantity of Water Scheduled and paid for by the

505    Contractor, no additional Project Water shall be delivered to the Contractor unless and until an

506    advance payment at the Rates then in effect for such additional Project Water is made. Final

507    adjustment between the advance payments for the Water Scheduled and payments for the quantities

508    of Water Delivered during each Year pursuant to this Contract shall be made as soon as practicable

509    but no later than April 30th of the following Year, or 60 days after the delivery of Project Water

510    rescheduled under subdivision (g) of Article 3 of this Contract if such water is not delivered by the

511    last day of February.

512          (d)    The Contractor shall also make a payment in addition to the Rate(s) in

513    subdivision (c) of this Article to the United States for Water Delivered, at the Charges then in effect,

26

514    before the end of the month following the month of delivery.  The payments shall be consistent with

515    the quantities of Irrigation Water and M&I Water Delivered as shown in the water delivery report for

516    the subject month prepared by the Operating Non-Federal Entity(ies) or, if there is no Operating

517    Non-Federal Entity, by the Contracting Officer.  The water delivery report shall be deemed a bill for

518    the payment of Charges for Water Delivered.  Adjustment for overpayment or underpayment of

519    Charges shall be made through the adjustment of payments due to the United States for Charges for

520    the next month.  Any amount to be paid for past due payment of Charge shall be computed pursuant

521    to Article 20 of this Contract.

522                    (e)    The Contractor shall pay for any Water Delivered under subdivision (a), (f), or

          (g) of Article 3 of this Contract as determined by the Contracting Officer pursuant to applicable

524    statutes, associated regulations, any applicable provisions of guidelines or ratesetting policies;

525    Provided, That the Rate for Water Delivered under subdivision (d) of Article 3 of this Contract shall

526    be no more than the otherwise applicable Rate for Irrigation Water or M&I Water under subdivision

527    (a) of this Article.

528                    (f)    Payments to be made by the Contractor to the United States under this Contract

529    may be paid from any revenues available to the Contractor.

530                    (g)    All revenues received by the United States from the Contractor relating to the

531    delivery of Project Water or the delivery of non-Project water through Project facilities shall be

532    allocated and applied in accordance with Federal Reclamation law and the associated rules or

          regulations, and the then-current Project ratesetting policies for M&I Water or Irrigation Water.

27

534    (h)  The Contracting Officer shall keep its accounts pertaining to the administration

535 of the financial terms and conditions of its long-term contracts, in accordance with applicable Federal

536 standards, so as to reflect the application of Project costs and revenues. The Contracting Officer

537 shall, each Year upon request of the Contractor, provide to the Contractor a detailed accounting of all

538 Project and Contractor expense allocations, the disposition of all Project and Contractor revenues,

539 and a summary of all water delivery information. The Contracting Officer and the Contractor shall

540 enter into good faith negotiations to resolve any discrepancies or disputes relating to accountings,

541 reports, or information.

542    (i)  The parties acknowledge and agree that the efficient administration of this

543 Contract is their mutual goal. Recognizing that experience has demonstrated that mechanisms,

544 policies, and procedures used for establishing Rates and Charges and/or for making and allocating

545 payments, other than those set forth in this Article may be in the mutual best interest of the parties, it

546 is expressly agreed that the parties may enter into agreements to modify the mechanisms, policies,

547 and procedures for any of those purposes while this Contract is in effect without amending this

548 Contract.

549    (j)  Omitted.

550    (k)  For the term of this Contract, Rates applied under the respective ratesetting

551 policies will be established to recover only reimbursable O&M (including any deficits) and capital

552 costs of the Project, as those terms are used in the then-current Project ratesetting policies, and

553 interest, where appropriate, except in instances where a minimum Rate is applicable in accordance

28

554 with the relevant Project ratesetting policy. Changes of significance in practices which implement the

555 Contracting Officer's ratesetting policies will not be implemented until the Contracting Officer has

556 provided the Contractor an opportunity to discuss the nature, need, and impact of the proposed

557 change.

558    (l)  Except as provided in subsections 3405(a)(1)(B) and 3405(f) of the CVPIA,

559 the Rates for Project Water transferred by the Contractor shall be the Contractor's Rates, in

560 accordance with the applicable Project ratesetting policy, adjusted upward or downward to reflect the

561 changed costs, if any, incurred by the Contracting Officer in the delivery of the transferred Project

562 Water to the transferee's point of delivery. If the Contractor is receiving lower Rates and Charges

 because of inability to pay and is transferring Project Water to another entity whose Rates and

564 Charges are not adjusted due to inability to pay, the Rates and Charges for transferred Project Water

565 shall not be adjusted to reflect the Contractor's inability to pay.

566    (m)  Pursuant to the Act of October 27, 1986 (100 Stat. 3050), the Contracting

567 Officer is authorized to adjust determinations of ability to pay every five years.

568        NON-INTEREST BEARING O&M DEFICITS

569  8.  The Contractor and the Contracting Officer concur that, as of the effective date of this

570 Contract the Contractor has no non-interest bearing O&M deficits and shall have no further liability

571 therefore.

29

Irrigation and M&J
Contract No. 14-06-200-495A-IR1

572              SALES, TRANSFERS, OR EXCHANGES OF WATER

573        9.     (a)     The right to receive Project Water provided for in this Contract may be sold,

574    transferred, or exchanged to others for reasonable and beneficial uses within the State of California if

575    such sale, transfer, or exchange is authorized by applicable Federal and State laws, and applicable

576    guidelines or regulations then in effect. No sale, transfer, or exchange of Project Water under this

577    Contract may take place without the prior written approval of the Contracting Officer, except as

578    provided for in subdivision (b) of this Article, and no such sales, transfers, or exchanges shall be

579    approved absent all appropriate environmental documentation, including, but not limited to,

580    documents prepared pursuant to the NEPA and ESA. Such environmental documentation should

581    include, as appropriate, an analysis of ground-water impacts and economic and social effects,

582    including environmental justice, of the proposed water transfers on both the transferor and transferee.

583              (b)     In order to facilitate efficient water management by means of water transfers of

584    the type historically carried out among Project Contractors located within the same geographical area

585    and to allow the Contractor to participate in an accelerated water transfer program during the term of

586    this Contract, the Contracting Officer shall prepare, as appropriate, all necessary environmental

587    documentation, including, but not limited to, documents prepared pursuant to the NEPA and ESA,

588    analyzing annual transfers within such geographical areas and the Contracting Officer shall determine

589    whether such transfers comply with applicable law. Following the completion of the environmental

590    documentation, such transfers addressed in such documentation shall be conducted with advance

591    notice to the Contracting Officer, but shall not require prior written approval by the Contracting

592 Officer. Such environmental documentation and the Contracting Officer's compliance determination

593 shall be reviewed every five years and updated, as necessary, prior to the expiration of the then

594 existing five-year period. All subsequent environmental documentation shall include an alternative to

595 evaluate not less than the quantity of Project Water historically transferred within the same

596 geographical area.

597      (c)  For a water transfer to qualify under subdivision (b) of this Article, such water

598 transfer must: (i) be for irrigation purposes for lands irrigated within the previous three years, for

599 M&I use, ground-water recharge, ground-water banking, or similar groundwater activities, surface

600 water storage, or fish and wildlife resources; not lead to land conversion; and be delivered to

601 established cropland, wildlife refuges, ground-water basins, or M&I use; (ii) occur within a single

602 Year; (iii) occur between a willing seller and a willing buyer; (iv) convey water through existing

603 facilities with no new construction or modifications to facilities and be between existing Project

604 Contractors and/or the Contractor and the United States, Department of the Interior; and (v) comply

605 with all applicable Federal, State, and local or tribal laws and requirements imposed for protection of

606 the environment and Indian Trust Assets, as defined under Federal law.

607          APPLICATION OF PAYMENTS AND ADJUSTMENTS

608   10.  (a)  The amount of any overpayment by the Contractor of the Contractor's O&M,

609 capital, and deficit (if any) obligations for the Year shall be applied first to any current liabilities of

610 the Contractor arising out of this Contract then due and payable. Overpayments of more than $1,000

shall be refunded at the Contractor's request. In lieu of a refund, any amount of such overpayment, at

612    the option of the Contractor, may be credited against amounts to become due to the United States by

613    the Contractor. With respect to overpayment, such refund or adjustment shall constitute the sole

614    remedy of the Contractor or anyone having or claiming to have the right to the use of any of the

615    Project Water supply provided for herein. All credits and refunds of overpayments shall be made

616    within 30 days of the Contracting Officer obtaining direction as to how to credit or refund such

617    overpayment in response to the notice to the Contractor that it has finalized the accounts for the Year

618    in which the overpayment was made.

619         (b)    All advances for miscellaneous costs incurred for work requested by the

620    Contractor pursuant to Article 25 of this Contract shall be adjusted to reflect the actual costs when the

621    work has been completed. If the advances exceed the actual costs incurred, the difference will be

622    refunded to the Contractor. If the actual costs exceed the Contractor's advances, the Contractor will

623    be billed for the additional costs pursuant to Article 25 of this Contract.

624               <u>TEMPORARY REDUCTIONS--RETURN FLOWS</u>

625    11.   (a)    Subject to: (i) the authorized purposes and priorities of the Project and the

626    requirements of Federal law, and (ii) the obligations of the United States under existing contracts, or

627    renewals thereof, providing for water deliveries from the Project, the Contracting Officer shall make

628    all reasonable efforts to optimize Project Water deliveries to the Contractor as provided in this

629    Contract.

630         (b)    The Contracting Officer or Operating Non-Federal Entity(ies) may temporarily

631    discontinue or reduce the quantity of Water Delivered to the Contractor as herein provided for the

32

632    purposes of investigation, inspection, maintenance, repair, or replacement of any of the Project

633    facilities or any part thereof necessary for the delivery of Project Water to the Contractor, but so far as

634    feasible the Contracting Officer or Operating Non-Federal Entity(ies) will give the Contractor due

635    notice in advance of such temporary discontinuance or reduction, except in case of emergency, in

636    which case no notice need be given; Provided, That the United States shall use its best efforts to avoid

637    any discontinuance or reduction in such service.  Upon resumption of service after such reduction or

638    discontinuance, and if requested by the Contractor, the United States will, if possible, deliver the

639    quantity of Project Water which would have been delivered hereunder in the absence of such

640    discontinuance or reduction.

(c)    The United States reserves the right to all seepage and return flow water

642    derived from Water Delivered to the Contractor hereunder which escapes or is discharged beyond the

643    Contractor's Service Area; Provided, That this shall not be construed as claiming for the United States

644    any right to seepage or return flow being put to reasonable and beneficial use pursuant to this

645    Contract within the Contractor's Service Area by the Contractor or those claiming by, through, or

646    under the Contractor.

647                          CONSTRAINTS ON THE AVAILABILITY OF WATER

648    12.    (a)    In its operation of the Project, the Contracting Officer will use all reasonable

649    means to guard against a Condition of Shortage in the quantity of water to be made available to the

650    Contractor pursuant to this Contract.  In the event the Contracting Officer determines that a Condition

33

651   of Shortage appears probable, the Contracting Officer will notify the Contractor of said determination

652   as soon as practicable.

653           (b)       If there is a Condition of Shortage because of errors in physical operations of

654   the Project, drought, other physical causes beyond the control of the Contracting Officer or actions

655   taken by the Contracting Officer to meet legal obligations then, except as provided in subdivision

656   (a) of Article 18 of this Contract, no liability shall accrue against the United States or any of its

657   officers, agents, or employees for any damage, direct or indirect, arising therefrom.

658           (c)       In any Year in which there may occur a Condition of Shortage for any of the

659   reasons specified in subdivision (b) of this Article, and subject to subdivision (d) of this Article, the

660   Contracting Officer will first allocate the available Project Water consistent with the Project M&I

661   Water Shortage in its form applicable under Article 12(c) of water service contracts in effect on the

662   date of this contract which provide water service from Delta Division Facilities for determining the

663   amount of Project Water Available for delivery to the Project Contractors.  Subject to the foregoing

664   allocation, in any year in which there may occur a Condition of Shortage, the Contracting Officer

665   shall then apportion Project Water among the Contractor and others entitled to Project Water from

666   Delta Division Facilities under long-term water service or repayment contracts (or renewals thereof or

667   binding commitments therefore) in force on February 28, 2005, as follows:

668           (1)       The Contracting Officer shall make an initial and subsequent

669   determination as necessary of the total quantity of Project Water estimated to be scheduled or actually

670   scheduled under subdivision (b) of Article 4 of this Contract and under all other interim renewal,

34

671 long-term water service or repayment contracts then in force for the delivery of Project Water by the

672 United States from Delta Division Facilities during the relevant Year, the quantity so determined

673 being hereinafter referred to as the scheduled total;

674         (2)     A determination shall be made of the total quantity of Project Water

675 that is available for meeting the scheduled total, the quantity so determined being hereinafter referred

676 to as the available supply;

677         (3)     The total quantity of Project Water estimated to be scheduled or

678 actually scheduled by the Contractor during the relevant Year, under subdivision (b) of Article 4

679 hereof, shall be divided by the scheduled total, the quotient thus obtained being hereinafter referred to

680 as the Contractor's proportionate share; and

681         (4)     The available supply shall be multiplied by the Contractor's

682 proportionate share and the result shall be the quantity of Project Water made available by the

683 United States to the Contractor for the relevant Year in accordance with the schedule developed by

684 the Contracting Officer under subdivision (c) (1) of this Article 12, but in no event shall such amount

685 exceed the Contract Total. In the event the Contracting Officer subsequently determines that the

686 Contracting Officer can increase or needs to decrease the available supply for delivery from Delta

687 Division Facilities to interim renewal, long-term water service, and repayment contractors during the

688 relevant Year, such additions or reductions to the available supply shall be apportioned consistent

689 with subparagraphs (1) through (4), inclusive.

690          (d)     By entering into this Contract, the Contractor does not waive any legal rights or

691   remedies it may have to file or participate in any administrative or judicial proceeding contesting

692   (i) the sufficiency of the Project M&I Water Shortage Policy; (ii) the substance of such a policy;

693   (iii) the applicability of such a policy; or (iv) the manner in which such policy is implemented in order

694   to allocate Project Water between M&I and irrigation purposes; Provided, That the Contractor has

695   commenced any such judicial challenge or any administrative procedures necessary to institute any

696   judicial challenge within six months of the policy becoming final. By agreeing to the foregoing, the

697   Contracting Officer does not waive any legal defenses or remedies that it may have to assert in such a

698   proceeding. Nothing contained herein shall be interpreted to validate or invalidate the Project M&I

699   Water Shortage Policy.

700          (e)     Omitted.

701                    UNAVOIDABLE GROUND-WATER PERCOLATION

702   13.     To the extent applicable, the Contractor shall not be deemed to have delivered

703   Irrigation Water to Excess Lands or Ineligible Lands within the meaning of this Contract if such lands

704   are irrigated with ground water that reaches the underground strata as an unavoidable result of the

705   delivery of Irrigation Water by the Contractor to Eligible Lands.

706                              RULES AND REGULATIONS

707   14.     The parties agree that the delivery of Irrigation Water or use of Federal facilities
708   pursuant to this Contract is subject to Federal Reclamation law, including but not limited to, the RRA
709   (43 U.S.C.390 aa et seq.), as amended and supplemented, and the rules and regulations promulgated
710   by the Secretary under Federal Reclamation law.

711 ## WATER AND AIR POLLUTION CONTROL

712   15.   The Contractor, in carrying out this Contract, shall comply with all applicable water
713 and air pollution laws and regulations of the United States and the State of California, and shall
714 obtain all required permits or licenses from the appropriate Federal, State, or local authorities.

715 ## QUALITY OF WATER

716   16.   (a)   Project facilities used to deliver Project Water to the Contractor pursuant to

717 this Contract shall be operated and maintained to enable the United States to deliver Project Water to

718 the Contractor in accordance with the water quality standards specified in subsection 2(b) of the Act

719 of August 26, 1937 (50 Stat. 865), as added by Section 101 of the Act of October 27, 1986

720 (100 Stat. 3050) or other existing Federal laws. The United States is under no obligation to construct

or furnish water treatment facilities to maintain or to improve the quality of Water Delivered to the

722 Contractor pursuant to this Contract. The United States does not warrant the quality of Water

723 Delivered to the Contractor pursuant to this Contract.

724   (b)   The O&M of Project facilities shall be performed in such manner as is

725 practicable to maintain the quality of raw water made available through such facilities at the highest

726 level reasonably attainable as determined by the Contracting Officer. The Contractor shall be

727 responsible for compliance with all Federal and State water quality standards applicable to surface

728 and subsurface agricultural drainage discharges generated through the use of Federal or Contractor

729 facilities or Project Water provided by the Contractor within the Contractor's Service Area.

730   (c)   The Contracting Officer shall notify the Contractor in writing when drainage

731 service becomes available. Thereafter, the Contracting Officer shall provide drainage service to the

732 Contractor at rates established pursuant to the then-existing ratesetting policy for Irrigation Water;

37

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

733    Provided, That such ratesetting policy shall be amended, modified, or superseded only through the

734    process described in subdivision (a) of Article 7 of this Contract.

735    WATER ACQUIRED BY THE CONTRACTOR OTHER THAN FROM THE UNITED STATES

736    17.    (a)    Water or water rights now owned or hereafter acquired by the Contractor other

737    than from the United States and Irrigation Water furnished pursuant to the terms of this Contract may

738    be simultaneously transported through the same distribution facilities of the Contractor subject to the

739    following:  (i) if the facilities utilized for commingling Irrigation Water and non-Project water were

740    constructed without funds made available pursuant to Federal Reclamation law, the provisions of

741    Federal Reclamation law will be applicable only to the Landholders of lands which receive Irrigation

742    Water; (ii) the eligibility of land to receive Irrigation Water must be established through the

743    certification requirements as specified in the Acreage Limitation Rules and Regulations

744    (43 CFR Part 426); (iii) the water requirements of Eligible Lands within the Contractor's Service Area

745    can be established and the quantity of Irrigation Water to be utilized is less than or equal to the

746    quantity necessary to irrigate such Eligible Lands; and (iv) if the facilities utilized for commingling

747    Irrigation Water and non-Project water are (were) constructed with funds made available pursuant to

748    Federal Reclamation law, the non-Project water will be subject to the acreage limitation provisions of

749    Federal Reclamation law, unless the Contractor pays to the United States the incremental fee

750    described in 43 CFR 426.15.  In determining the incremental fee, the Contracting Officer will

751    calculate annually the cost to the Federal Government, including interest, of storing or delivering non-

752    Project water, which for purposes of this Contract shall be determined as follows:  The quotient shall

753   be the unpaid distribution system costs divided by the total irrigable acreage within the Contractor's

754   Service Area. The incremental fee per acre is the mathematical result of such quotient times the

755   interest rate determined using Section 202 (3) of the Act of October 12, 1982 (96 Stat. 1263). Such

756   incremental fee will be charged to each acre of excess or full-cost land within the Contractor's

757   Service Area that receives non-Project water through Federally-financed or -constructed facilities.

758   The incremental fee calculation methodology will continue during the term of this Contract absent the

759   promulgation of a contrary Reclamation-wide rule, regulation, or policy adopted after the Contractor

760   has been afforded the opportunity to review and comment on the proposed rule, regulation, or policy.

761   If such rule, regulation, or policy is adopted, it shall supersede this provision.

      (b)     Water or water rights now owned or hereafter acquired by the Contractor, other

763   than from the United States may be stored, conveyed, and/or diverted through Project facilities,

764   subject to the completion of appropriate environmental documentation, with the approval of the

765   Contracting Officer and the execution of any contract determined by the Contracting Officer to be

766   necessary, consistent with the following provisions:

767         (1)     The Contractor may introduce non-Project water into Project facilities

768   and deliver said water to lands within the Contractor's Service Area, including Ineligible Lands,

769   subject to payment to the United States and/or to any applicable Operating Non-Federal Entity of an

770   appropriate rate as determined by the applicable Project ratesetting policy, the RRA, and the Project

771   use power policy, if such Project use power policy is applicable, each as amended, modified, or

772   superseded from time to time.

773                     (2)       Delivery of such non-Project water in and through Project facilities

774 shall only be allowed to the extent such deliveries do not: (i) interfere with other Project purposes as

775 determined by the Contracting Officer; (ii) reduce the quantity or quality of water available to other

776 Project Contractors; (iii) interfere with the delivery of contractual water entitlements to any other

777 Project Contractors; or (iv) interfere with the physical maintenance of the Project facilities.

778                     (3)       Neither the United States nor the Operating Non-Federal Entity(ies)

779 shall be responsible for control, care or distribution of the non-Project water before it is introduced

780 into or after it is delivered from the Project facilities. The Contractor hereby releases and agrees to

781 defend and indemnify the United States and the Operating Non-Federal Entity(ies), and their

782 respective officers, agents, and employees, from any claim for damage to persons or property, direct

783 or indirect, resulting from the act(s) of the Contractor, its officers, employees, agents, or assigns, in

784 (i) extracting or diverting non-Project water from any source, or (ii) diverting such non-Project water

785 into Project facilities.

786                     (4)       Diversion of such non-Project water into Project facilities shall be

787 consistent with all applicable laws, and if involving ground water, consistent with any applicable

788 ground-water management plan for the area from which it was extracted.

789                     (5)       After Project purposes are met, as determined by the Contracting

790 Officer, the United States and Project Contractors entitled to Project Water from Delta Division

791 Facilities shall share priority to utilize the remaining capacity of the facilities declared to be available

792 by the Contracting Officer for conveyance and transportation of non-Project water prior to any such

793  remaining capacity being made available to non-Project contractors. Other Project Contractors shall

794  have a second priority to any remaining capacity of facilities declared to be available by the

795  Contracting Officer for conveyance and transportation of non-Project water prior to any such

796  remaining capacity being made available to non-Project contractors.

797  <div align="center">OPINIONS AND DETERMINATIONS</div>

798      18.      (a)      Where the terms of this Contract provide for actions to be based upon the

799  opinion or determination of either party to this Contract, said terms shall not be construed as

800  permitting such action to be predicated upon arbitrary, capricious, or unreasonable opinions or

801  determinations. Both parties, notwithstanding any other provisions of this Contract, expressly reserve

     the right to seek relief from and appropriate adjustment for any such arbitrary, capricious, or

803  unreasonable opinion or determination. Each opinion or determination by either party shall be

804  provided in a timely manner. Nothing in this subdivision (a) of this Article is intended to or shall

805  affect or alter the standard of judicial review applicable under Federal law to any opinion or

806  determination implementing a specific provision of Federal law embodied in statute or regulation.

807      (b)      The Contracting Officer shall have the right to make determinations necessary

808  to administer this Contract that are consistent with the provisions of this Contract, the laws of the

809  United States and of the State of California, and the rules and regulations promulgated by the

810  Secretary. Such determinations shall be made in consultation with the Contractor to the extent

811  reasonably practicable.

<div align="center">41</div>

812           COORDINATION AND COOPERATION

813        19.    (a)      In order to further their mutual goals and objectives, the Contracting Officer

814    and the Contractor shall communicate, coordinate, and cooperate with each other, and with other

815    affected Project Contractors, in order to improve the O&M of the Project. The communication,

816    coordination, and cooperation regarding O&M shall include, but not be limited to, any action which

817    will or may materially affect the quantity or quality of Project Water supply, the allocation of Project

818    Water supply, and Project financial matters including, but not limited to, budget issues. The

819    communication, coordination, and cooperation provided for hereunder shall extend to all provisions

820    of this Contract. Each party shall retain exclusive decision making authority for all actions, opinions,

821    and determinations to be made by the respective party.

822              (b)      Within 120 days following the effective date of this Contract, the Contractor,

823    other affected Project Contractors, and the Contracting Officer shall arrange to meet with interested

824    Project Contractors to develop a mutually agreeable, written Project-wide process, which may be

825    amended as necessary separate and apart from this Contract. The goal of this process shall be to

826    provide, to the extent practicable, the means of mutual communication and interaction regarding

827    significant decisions concerning Project O&M on a real-time basis.

828              (c)      In light of the factors referred to in subdivision (b) of Article 3 of this Contract,

829    it is the intent of the Secretary to improve water supply reliability. To carry out this intent:

830                   (1)      The Contracting Officer will, at the request of the Contractor, assist in

831    the development of integrated resource management plans for the Contractor. Further, the

42

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

832  Contracting Officer will, as appropriate, seek authorizations for implementation of partnerships to

833  improve water supply, water quality, and reliability.

834             (2)    The Secretary will, as appropriate, pursue program and project

835  implementation and authorization in coordination with Project Contractors to improve the water

836  supply, water quality, and reliability of the Project for all Project purposes.

837             (3)    The Secretary will coordinate with Project Contractors and the State of

838  California to seek improved water resource management.

839             (4)    The Secretary will coordinate actions of agencies within the

840  Department of the Interior that may impact the availability of water for Project purposes.

                (5)    The Contracting Officer shall periodically, but not less than annually,

842  hold division-level meetings to discuss Project operations, division-level water management

843  activities, and other issues as appropriate.

844        (d)    Without limiting the contractual obligations of the Contracting Officer under

845  the other Articles of this Contract, nothing in this Article shall be construed to limit or constrain the

846  Contracting Officer's ability to communicate, coordinate, and cooperate with the Contractor or other

847  interested stakeholders or to make decisions in a timely fashion as needed to protect health, safety, or

848  the physical integrity of structures or facilities.

849                    CHARGES FOR DELINQUENT PAYMENTS

850      20.    (a)    The Contractor shall be subject to interest, administrative, and penalty charges
851  on delinquent installments or payments. When a payment is not received by the due date, the
852  Contractor shall pay an interest charge for each day the payment is delinquent beyond the due date.
      When a payment becomes 60 days delinquent, the Contractor shall pay an administrative charge to

43

854     cover additional costs of billing and processing the delinquent payment. When a payment is
855     delinquent 90 days or more, the Contractor shall pay an additional penalty charge of six percent per
856     year for each day the payment is delinquent beyond the due date. Further, the Contractor shall pay
857     any fees incurred for debt collection services associated with a delinquent payment.

858           (b)      The interest charge rate shall be the greater of the rate prescribed quarterly in
859     the Federal Register by the Department of the Treasury for application to overdue payments, or the
860     interest rate of one-half of one percent per month prescribed by Section 6 of the Reclamation Project
861     Act of 1939 (Public Law 76-260). The interest charge rate shall be determined as of the due date and
862     remain fixed for the duration of the delinquent period.

863           (c)      When a partial payment on a delinquent account is received, the amount
864     received shall be applied, first to the penalty, second to the administrative charges, third to the
865     accrued interest, and finally to the overdue payment.

866                                <u>EQUAL OPPORTUNITY</u>

867      21.     During the performance of this Contract, the Contractor agrees as follows:

868           (a)      The Contractor will not discriminate against any employee or applicant for
869     employment because of race, color, religion, sex, or national origin. The Contractor will take
870     affirmative action to ensure that applicants are employed, and that employees are treated during
871     employment, without regard to their race, color, religion, sex, or national origin. Such action shall
872     include, but not be limited to, the following: Employment, upgrading, demotion, or transfer;
873     recruitment or recruitment advertising; layoff or termination, rates of payment or other forms of
874     compensation; and selection for training, including apprenticeship. The Contractor agrees to post in
875     conspicuous places, available to employees and applicants for employment, notices to be provided by
876     the Contracting Officer setting forth the provisions of this nondiscrimination clause.

877           (b)      The Contractor will, in all solicitations or advertisements for employees placed
878     by or on behalf of the Contractor, state that all qualified applicants will receive consideration for
879     employment without discrimination because of race, color, religion, sex, or national origin.

880           (c)      The Contractor will send to each labor union or representative of workers with
881     which it has a collective bargaining agreement or other contract or understanding, a notice, to be
882     provided by the Contracting Officer, advising the said labor union or workers' representative of the
883     Contractor's commitments under Section 202 of Executive Order 11246 of September 24, 1965, and
884     shall post copies of the notice in conspicuous places available to employees and applicants for
885     employment.

886     (d)  The Contractor will comply with all provisions of Executive Order
887 No. 11246 of September 24, 1965, as amended, and of the rules, regulations, and relevant orders of
888 the Secretary of Labor.

889     (e)  The Contractor will furnish all information and reports required by said
890 amended Executive Order and by the rules, regulations, and orders of the Secretary of Labor, or
891 pursuant thereto, and will permit access to its books, records, and accounts by the Contracting Officer
892 and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules,
893 regulations, and orders.

894     (f)  In the event of the Contractor's noncompliance with the nondiscrimination
895 clauses of this Contract or with any of the said rules, regulations, or orders, this Contract may be
896 canceled, terminated, or suspended, in whole or in part, and the Contractor may be declared ineligible
897 for further Government contracts in accordance with procedures authorized in said amended
898 Executive Order, and such other sanctions may be imposed and remedies invoked as provided in said
899 Executive Order, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided
900 by law.

       (g)  The Contractor will include the provisions of paragraphs (a) through (g) in
902 every subcontract or purchase order unless exempted by the rules, regulations, or orders of the
903 Secretary of Labor issued pursuant to Section 204 of said amended Executive Order, so that such
904 provisions will be binding upon each subcontractor or vendor. The Contractor will take such action
905 with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a
906 means of enforcing such provisions, including sanctions for noncompliance: Provided, however,
907 That in the event the Contractor becomes involved in, or is threatened with, litigation with a
908 subcontractor or vendor as a result of such direction, the Contractor may request the United States to
909 enter into such litigation to protect the interests of the United States.

910     GENERAL OBLIGATION--BENEFITS CONDITIONED UPON PAYMENT

911  22.  (a)  The obligation of the Contractor to pay the United States as provided in this
912 Contract is a general obligation of the Contractor notwithstanding the manner in which the obligation
913 may be distributed among the Contractor's water users and notwithstanding the default of individual
914 water users in their obligations to the Contractor.

915     (b)  The payment of charges becoming due hereunder is a condition precedent to
916 receiving benefits under this Contract. The United States shall not make water available to the
917 Contractor through Project facilities during any period in which the Contractor may be in arrears in
918 the advance payment of water rates due the United States. The Contractor shall not furnish water

919  made available pursuant to this Contract for lands or parties which are in arrears in the advance
920  payment of water rates levied or established by the Contractor.

921  (c)  With respect to subdivision (b) of this Article, the Contractor shall have no
922  obligation to require advance payment for water rates which it levies.

923  ## COMPLIANCE WITH CIVIL RIGHTS LAWS AND REGULATIONS

924  23.  (a)  The Contractor shall comply with Title VI of the Civil Rights Act of 1964
925  (42 U.S.C. 2000d), Section 504 of the Rehabilitation Act of 1975 (P.L. 93-112, as amended), the Age
926  Discrimination Act of 1975 (42 U.S.C. 6101, et seq.), and any other applicable civil rights laws, as
927  well as with their respective implementing regulations and guidelines imposed by the United States
928  Department of the Interior and/or Reclamation.

929  (b)  These statutes require that no person in the United States shall, on the grounds
930  of race, color, national origin, handicap, or age, be excluded from participation in, be denied the
931  benefits of, or be otherwise subjected to discrimination under any program or activity receiving
932  financial assistance from Reclamation. By executing this Contract, the Contractor agrees to
933  immediately take any measures necessary to implement this obligation, including permitting officials
934  of the United States to inspect premises, programs, and documents.

935  (c)  The Contractor makes this agreement in consideration of and for the purpose of
936  obtaining any and all Federal grants, loans, contracts, property discounts, or other Federal financial
937  assistance extended after the date hereof to the Contractor by Reclamation, including installment
938  payments after such date on account of arrangements for Federal financial assistance, which were
939  approved before such date. The Contractor recognizes and agrees that such Federal assistance will be
940  extended in reliance on the representations and agreements made in this Article, and that the United
941  States reserves the right to seek judicial enforcement thereof.

942  ## PRIVACY ACT COMPLIANCE

943  24.  (a)  The Contractor shall comply with the Privacy Act of 1974 (5 U.S.C. 552a) (the
944  Act) and the Interior rules and regulations under the Act (43 CFR 2.45 et seq.) in maintaining
945  Landholder acreage certification and reporting records, required to be submitted to the Contractor for
946  compliance with Sections 206 and 228 of the RRA (96 Stat. 1266), and pursuant to 43 CFR 426.18.

947  (b)  With respect to the application and administration of the criminal penalty
948  provisions of the Act (5 U.S.C. 552a(i)), the Contractor and the Contractor's employees responsible
949  for maintaining the certification and reporting records referenced in (a) above are considered to be
950  employees of the Department of the Interior (See 5 U.S.C. 552a(m)).

951    (c)    The Contracting Officer or a designated representative shall provide the
952 Contractor with current copies of the Interior Department Privacy Act regulations and Reclamation
953 Federal Register Privacy Act System of Records Notice (Acreage Limitation--Interior,
954 Reclamation-31) which govern the maintenance, safeguarding, and disclosure of information
955 contained in the Landholder's certification and reporting records.
956    (d)    The Contracting Officer shall designate a full-time employee of Reclamation to
957 be the System Manager who shall be responsible for making decisions on denials pursuant to
958 43 CFR 2.61 and 2.64 amendment requests pursuant to 43 CFR 2.72. The Contractor is authorized to
959 grant requests by individuals for access to their own records.

960    (e)    The Contractor shall forward promptly to the System Manager each proposed
961 denial of access under 43 CFR 2.64; and each request for amendment of records filed under
962 43 CFR 2.71; notify the requester accordingly of such referral; and provide the System Manager with
963 information and records necessary to prepare an appropriate response to the requester. These
964 requirements do not apply to individuals seeking access to their own certification and reporting forms
965 filed with the Contractor pursuant to 43 CFR 426.18, unless the requester elects to cite the Privacy
966 Act as a basis for the request.

967    ## CONTRACTOR TO PAY CERTAIN MISCELLANEOUS COSTS

968    25.    In addition to all other payments to be made by the Contractor pursuant to this

969 Contract, the Contractor shall pay to the United States, within 60 days after receipt of a bill and

970 detailed statement submitted by the Contracting Officer to the Contractor for such specific items of

971 direct cost incurred by the United States for work requested by the Contractor associated with this

972 Contract plus indirect costs in accordance with applicable Bureau of Reclamation policies and

973 procedures. All such amounts referred to in this Article shall not exceed the amount agreed to in

974 writing in advance by the Contractor. This Article shall not apply to costs for routine contract

975 administration.

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

976                                        WATER CONSERVATION

977        26.      (a)        Prior to the delivery of water provided from or conveyed through Federally-

978   constructed or Federally-financed facilities pursuant to this Contract, the Contractor shall be

979   implementing an effective water conservation and efficiency program based on the Contractor's water

980   conservation plan that has been determined by the Contracting Officer to meet the conservation and

981   efficiency criteria for evaluating water conservation plans established under Federal law.  The water

982   conservation and efficiency program shall contain definite water conservation objectives, appropriate

983   economically feasible water conservation measures, and time schedules for meeting those objectives.

984   Continued Project Water delivery pursuant to this Contract shall be contingent upon the Contractor's

985   continued implementation of such water conservation program.  In the event the Contractor's water

986   conservation plan or any revised water conservation plan completed pursuant to subdivision (d) of

987   this Article 26 have not yet been determined by the Contracting Officer to meet such criteria, due to

988   circumstances which the Contracting Officer determines are beyond the control of the Contractor,

989   water deliveries shall be made under this Contract so long as the Contractor diligently works with the

990   Contracting Officer to obtain such determination at the earliest practicable date, and thereafter the

991   Contractor immediately begins implementing its water conservation and efficiency program in

992   accordance with the time schedules therein.

993               (b)        Should the amount of M&I Water delivered pursuant to subdivision (a) of

994   Article 3 of this Contract equal or exceed 2,000 acre-feet per Year, the Contractor shall implement the

995   Best Management Practices identified by the time frames issued by the California Urban Water

48

996   Conservation Council for such M&I Water unless any such practice is determined by the Contracting

997   Officer to be inappropriate for the Contractor.

998       (c)    The Contractor shall submit to the Contracting Officer a report on the status of

999   its implementation of the water conservation plan on the reporting dates specified in the then-existing

1000   conservation and efficiency criteria established under Federal law.

1001       (d)    At five-year intervals, the Contractor shall revise its water conservation plan to

1002   reflect the then-current conservation and efficiency criteria for evaluating water conservation plans

1003   established under Federal law and submit such revised water management plan to the Contracting

1004   Officer for review and evaluation.  The Contracting Officer will then determine if the water

      conservation plan meets Reclamation's then-current conservation and efficiency criteria for

1006   evaluating water conservation plans established under Federal law.

1007       (e)    If the Contractor is engaged in direct ground-water recharge, such activity shall

1008   be described in the Contractor's water conservation plan.

1009           EXISTING OR ACQUIRED WATER OR WATER RIGHTS

1010   27.    Except as specifically provided in Article 17 of this Contract, the provisions of this

1011   Contract shall not be applicable to or affect non-Project water or water rights now owned or hereafter

1012   acquired by the Contractor or any user of such water within the Contractor's Service Area.  Any such

1013   water shall not be considered Project Water under this Contract.  In addition, this Contract shall not

1014   be construed as limiting or curtailing any rights which the Contractor or any water user within the

49

1015    Contractor's Service Area acquires or has available under any other contract pursuant to Federal

1016    Reclamation law.

1017                       O&M BY THE SAN LUIS AND DELTA-MENDOTA WATER AUTHORITY

1018         28.      (a)       The O&M of a portion of the Project facilities which serve the Contractor, and

1019    responsibility for funding a portion of the costs of such O&M, have been transferred to the San Luis

1020    and Delta-Mendota Water Authority, an Operating Non-Federal Entity by separate agreement

1021    (8-07-20-X0354) between the United States and Operating Non-Federal Entity San Luis and Delta-

1022    Mendota Water Authority. That separate agreement shall not interfere with or affect the rights or

1023    obligations of the Contractor or the United States hereunder.

1024                      (b)       The Contracting Officer has previously notified the Contractor in writing that

1025    the O&M of a portion of the Project facilities which serve the Contractor has been transferred to

1026    Operating Non-Federal Entity San Luis and Delta-Mendota Water Authority, and therefore, the

1027    Contractor shall pay directly to Operating Non-Federal Entity San Luis and Delta-Mendota Water

1028    Authority, or to any successor approved by the Contracting Officer under the terms and conditions of

1029    the separate agreement between the United States and Operating Non-Federal Entity San Luis and

1030    Delta-Mendota Water Authority, described in subdivision (a) of this Article, all rates, charges, or

1031    assessments of any kind, including any assessment for reserve funds, which Operating Non-Federal

1032    Entity San Luis and Delta-Mendota Water Authority, or such successor determines, sets, or

1033    establishes for the O&M of the portion of the Project facilities operated and maintained by Operating

1034    Non-Federal Entity San Luis and Delta-Mendota Water Authority, or such successor. Such direct

50

1035     payments to Operating Non-Federal Entity San Luis and Delta-Mendota Water Authority, or such

1036     successor shall not relieve the Contractor of its obligation to pay directly to the United States the

1037     Contractor's share of the Project Rates and Charges except to the extent the Operating Non-Federal

1038     Entity collects payments on behalf of the United States in accordance with subdivision (a) of this

1039     Article.

1040           (c)      For so long as the O&M of any portion of the Project facilities serving the

1041     Contractor is performed by Operating Non-Federal Entity San Luis and Delta-Mendota Water

1042     Authority, or any successor thereto, the Contracting Officer shall adjust those components of the

1043     Rates for Water Delivered under this Contract representing the cost associated with the activity being

        performed by Operating Non-Federal Entity San Luis and Delta-Mendota Water Authority, or its

1045     successor.

1046           (d)      In the event the O&M of the Project facilities operated and maintained by

1047     Operating Non-Federal Entity San Luis and Delta-Mendota Water Authority is re-assumed by the

1048     United States during the term of this Contract, the Contracting Officer shall so notify the Contractor,

1049     in writing, and present to the Contractor a revised Exhibit "B" which shall include the portion of the

1050     Rates to be paid by the Contractor for Project Water under this Contract representing the O&M costs

1051     of the portion of such Project facilities which have been re-assumed.  The Contractor shall, thereafter,

1052     in the absence of written notification from the Contracting Officer to the contrary, pay the Rates and

1053     Charges specified in the revised Exhibit "B" directly to the United States in compliance with Article 7

1054     of this Contract.

1055          O&M BY THE CALIFORNIA DEPARTMENT OF WATER RESOURCES

1056          28.1    (a)      The O&M of a portion of the Project facilities which serve the Contractor, and

1057    responsibility for funding a portion of the costs of such O&M, have been transferred to the California

1058    Department of Water Resources, an Operating Non-Federal Entity by a separate agreement

1059    (14-06-200-9755) between the United States and Operating Non-Federal Entity California

1060    Department of Water Resources. This separate agreement shall not interfere with or affect the rights

1061    or obligations of the Contractor or the United States hereunder.

1062                  (b)      The Contracting Officer has previously notified the Contractor in writing that

1063    the O&M of a portion of the Project facilities which serve the Contractor has been transferred to

1064    Operating Non-Federal Entity California Department of Water Resources, and the Contractor shall

1065    pay directly to Operating Non-Federal Entity San Luis and Delta-Mendota Water Authority, or to any

1066    successor approved by the Contracting Officer under the terms and conditions of the separate

1067    agreement between the United States and Operating Non-Federal Entity San Luis and Delta-Mendota

1068    Water Authority, described in subdivision (a) of Article 28 of this Contract, all rates, charges, or

1069    assessments of any kind, including any assessment for reserve funds, which Operating Non-Federal

1070    Entity California Department of Water Resources, or such successor determines, sets, or establishes

1071    for the O&M conveyance and conveyance pumping portion of the Project facilities operated and

1072    maintained by Operating Non-Federal Entity California Department of Water Resources, or such

1073    successor. Such direct payments to Operating Non-Federal Entity San Luis and Delta-Mendota Water

1074    Authority, or such successor shall not relieve the Contractor of its obligation to pay directly to the

1075 United States the Contractor's share of the Project Rates and Charges except to the extent the

1076 Operating Non-Federal Entity San Luis and Delta-Mendota Water Authority collects payments on

1077 behalf of the United States in accordance with the separate agreement identified in subdivision (a) of

1078 Article 28 of this Contract.

1079    (c) For so long as the O&M of any portion of the Project facilities serving the

1080 Contractor is performed by Operating Non-Federal Entity California Department of Water Resources,

1081 or any successor thereto, the Contracting Officer shall adjust those components of the Rates for Water

1082 Delivered under this Contract representing the cost associated with the activity being performed by

1083 Operating Non-Federal Entity California Department of Water Resources, or its successor.

    (d) In the event the O&M of the Project facilities operated and maintained by

1085 Operating Non-Federal Entity California Department of Water Resources is re-assumed by the

1086 United States during the term of this Contract, the Contracting Officer shall so notify the Contractor,

1087 in writing, and present to the Contractor a revised Exhibit "B" which shall include the portion of the

1088 Rates and Charges, to be paid by the Contractor for Project Water under this Contract representing the

1089 O&M costs of the portion of such Project facilities which have been re-assumed. The Contractor

1090 shall, thereafter, in the absence of written notification from the Contracting Officer to the contrary,

1091 pay the Rates and Charges specified in the revised Exhibit "B" directly to the United States in

1092 compliance with Article 7 of this Contract.

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

1093                          <u>O&M BY THE CONTRACTOR</u>

1094        28.2    (a)     During the term of this Contract, the Contractor shall act as the Operating

1095    Non-Federal Entity for a portion of the Project facilities which serves the Department of Fish and

1096    Game, the City of Huron, and the City of Coalinga, including but not limited to the Coalinga Canal

1097    System, which consists in part of the Coalinga Canal and turnouts and Pleasant Valley Pumping

1098    Plant. The Contractor, without expense to the United States, shall care for, operate, and maintain

1099    such portion of the Project facilities for the furnishing of water to the Department of Fish and Game,

1100    the City of Huron, and the City of Coalinga in full compliance with Federal Reclamation law and in

1101    such manner that they will remain in good and efficient condition; <u>Provided, That</u> the United States

1102    shall finance the costs of all major replacements of such facilities that the Contracting Officer

1103    determines are needed; <u>Provided further</u>, That if the Department of Fish and Game, the City of Huron,

1104    or the City of Coalinga fails to pay to the Contractor in advance such entity's share of the O&M costs,

1105    consistent with any agreements between the Contractor and the Department of Fish and Game, the

1106    City of Huron, or the City of Coalinga, respectively, the Contractor shall be relieved of its obligation

1107    to the O&M of such facilities for the benefit of the non-paying entity.

1108                 (b)     The Contracting Officer previously notified the Department of Fish and Game,

1109    the City of Huron, and the City of Coalinga in writing that the O&M of a portion of the Project

1110    facilities which serves the Department of Fish and Game, the City of Huron, and the City of Coalinga

1111    has been transferred to the Contractor. Therefore, the Department of Fish and Game and the City of

1112    Huron have entered, and the City of Coalinga is expected to enter, separate agreements with the

54

1113 Contractor providing the terms and conditions pursuant to which the Contractor will operate and

1114 maintain a portion of the Project facilities which serves the Department of Fish and Game, the City of

1115 Huron, and the City of Coalinga, including the amount(s) the Department of Fish and Game, the City

1116 of Huron, and the City of Coalinga are to pay the Contractor for that service. Consistent with any

1117 such agreements, the Department of Fish and Game, the City of Huron, and the City of Coalinga shall

1118 pay directly to the Contractor all rates, charges, or assessments of any kind, including any assessment

1119 for reserve funds, which the Contractor sets, or establishes for a portion of the Project facilities which

1120 serves the Department of Fish and Game, the City of Huron, and the City of Coalinga and is operated

1121 and maintained by the Contractor. Such direct payments to the Contractor shall not relieve the

Contractor of its obligation to pay directly to the United States the Department of Fish and Game, the

1123 City of Huron, and the City of Coalinga its share of the Project Rates and Charges referred to in this

1124 Contract.

1125              (c)      For so long as the O&M for a portion of the Project facilities which serves the

1126 Department of Fish and Game, the City of Huron, and the City of Coalinga is performed by the

1127 Contractor, the Contracting Officer shall adjust those components of the Rates for Water Delivered

1128 under the Contracts representing the cost associated with the activity being performed by the

1129 Contractor.

1130              (d)      The United States may re-assume O&M for a portion of the Project facilities

1131 which serves the Department of Fish and Game, the City of Huron, and the City of Coalinga. In that

11ᵔᵔ event, the Contracting Officer shall so notify the Department of Fish and Game, the City of Huron,

1133    and the City of Coalinga, in writing, and present to the Contractor a revised Exhibit "B" which shall

1134    include the portion of the Rates and Charges to be paid by the Department of Fish and Game, the City

1135    of Huron, and the City of Coalinga for Project Water under this Contract representing the O&M costs

1136    for a portion of the Project facilities which serves the Department of Fish and Game, the City of

1137    Huron, and the City of Coalinga.  The Department of Fish and Game, the City of Huron, and the City

1138    of Coalinga shall, thereafter, in the absence of written notification from the Contracting Officer to the

1139    contrary, pay the Rates and Charges specified in the revised Exhibit "B" directly to the United States

1140    in compliance with Article 7 of their contracts.  The Contractor shall, thereafter, be relieved of all of

1141    its obligations under this Article 28.2.

1142
1143
<div align="center">

PUMPING PLANTS, POWER FOR PUMPING PLANTS, AND TRANSFER
OF O&M TO THE CONTRACTOR
</div>

1144    28.3.   (a)    The United States shall furnish and install pumping plants and furnish the

1145    amount of Project power the Contracting Officer determines is necessary to deliver Project Water to

1146    the Contractor from the Delta-Mendota, San Luis, and Coalinga Canals, including the Pleasant Valley

1147    Pumping Plant, at the point(s) of delivery identified pursuant to subdivision (a) of Article 5 of this

1148    Contract at heads and elevations sufficient to irrigate by gravity the areas within the Contractor's

1149    Service Area below 700 feet mean sea level elevation.

1150        (b)    With advance approval of the Contracting Officer, the Contractor may, at its

1151    own expense, furnish and install pumping facilities, and related electrical equipment, to enable it to

1152    divert and deliver Project Water from the Delta-Mendota, San Luis, and Coalinga Canals and the

1153    Pleasant Valley Pumping Plant before the United States furnishes and installs all the pumping plants

<div align="center">56</div>

1154     referred to in subdivision (a) of this Article. The United States shall furnish the amount of Project

1155     power needed to operate such pumping facilities; Provided, That the Contractor maintains an

1156     agreement with an entity to convey such power to such facilities, and the Contractor agrees to pay any

1157     and all charges assessed by that entity for such service.

1158             (c)      The furnishing of power by the United States shall be in conformance with

1159     operating criteria, rules, and regulations, including the project use power policy, established by the

1160     Contracting Officer; Provided, That any such operating criteria, rules, and regulations, including the

1161     project use power policy, established by the Contracting Officer shall not excuse the United States

1162     from its obligation under subdivision (a) of this Article. Such operating criteria, rules, and

        regulations shall be developed in cooperation with the Contractor and shall be based on acceptable

1164     irrigation management practices and the power generation capacity available to the United States for

1165     the furnishing of Project Water to the Contractor.

1166             (d)      The Contractor hereby agrees to operate and maintain, at its own expense, all

1167     of the pumping facilities described in subdivisions (a) and (b) of this Article in such a manner that

1168     remain in good and efficient condition; Provided, That the United States shall finance the costs of all

1169     major replacements that the Contracting Officer determines are needed.

1170             (e)      The Contracting Officer or his representative shall at all times have access to

1171     and may inspect and investigate the pumping facilities for the purpose of ascertaining if they are

1172     being kept in safe and proper operating condition.

1173    (f)    No change in any of the pumping facilities, which in the opinion of the

1174    Contracting Officer is substantial, shall be made by the Contractor without first obtaining the written

1175    consent of the Contracting Officer. The Contractor shall promptly make any and all repairs and

1176    replacements to the pumping facilities which in the opinion of the Contracting Officer are necessary.

1177    In the event the Contractor neglects or fails to make such repairs and replacements or in the event of

1178    operation by the United States of the pumping facilities pursuant to subdivision (g) of this Article, the

1179    United States may cause the repairs and replacements to be made and the cost thereof, as determined

1180    by the Contracting Officer, shall be paid by the Contractor to the United States upon notice of the

1181    payment due but not later than April 1 of the year following that during which such work was

1182    completed.

1183    (g)    In the event the Contracting Officer determines that the Contractor has not

1184    properly cared for, operated, and maintained said pumping facilities or has failed to comply with any

1185    of the provisions of this Article, then at the election of the Contracting Officer the United States may

1186    take over from the Contractor the care and O&M of the pumping facilities by giving written notice to

1187    the Contractor of such election and the effective date thereof. Thereafter, during the period of

1188    operation by the United States, the Contractor shall pay to the United States in advance of the use of

1189    such pumping facilities the Contractor's share of the cost of O&M thereof and replacements

1190    therefore, as fixed in notices from the Contracting Officer. In the event such advances are inadequate

1191    to properly care for, operate, and maintain the pumping facilities to the end of any year, the

1192    Contracting Officer may give written notice of a supplemental O&M charge and the Contractor shall

1193   pay such amount on or before the date specified in said notice. Any amount of such advances

1194   remaining unexpended or unobligated, at the option of the Contractor, either shall be refunded or

1195   credited upon amounts to become due to the United States from the Contractor under the provisions

1196   of this Contract in subsequent years. The pumping facilities so taken back by the United States may

1197   be returned to the Contractor upon the furnishing to the Contractor of a written 90-day notice of

1198   intention to retransfer.

1199          (h)      The Contractor shall hold the United States, its officers, and employees

1200   harmless from every and all claim for damages to persons or property arising out of or connected with

1201   the Contractor's O&M of the pumping facilities referred to in this Article; Provided, That nothing

       contained herein shall be construed as an assumption of liability by the Contractor to parties other

1203   than the United States with respect to such matters.

1204          (i)      During the time the pumping facilities are operated and maintained by the

1205   Contractor, in addition to all other payments to be made by the Contractor under this Contract, the

1206   Contractor shall pay to the United States pursuant to Article 25 hereof, costs incurred by the

1207   United States for work associated with the pumping facilities under this Contract normally charged by

1208   the United States to water users and properly and equitably chargeable to the Contractor.

1209          (j)      The Contracting Officer may make review of any part or all of the pumping

1210   facilities being operated by the Contractor pursuant to this Article to assist the Contractor in assessing

1211   the condition of facilities and the adequacy of the maintenance program(s). The Contracting Officer

1212   shall prepare reports based on the examinations, inspections or audits, and furnish copies of such

1213 reports and any recommendations to the Contractor. The Contractor shall reimburse the actual cost

1214 incurred by the United States in making O&M examinations, inspections, and audits, and preparing

1215 associated reports and recommendations.

1216         (k)    If deemed necessary by the Contracting Officer or requested by the Contractor,

1217 special inspections of the pumping facilities being operated by the Contractor and of the Contractor's

1218 books and records may be made to ascertain the extent of any O&M deficiencies, to determine the

1219 remedial measures required for their correction, and to assist the Contractor in solving specific

1220 problems. Any special inspection or audit shall, except in a case of emergency, be made after written

1221 notice to the Contractor and the actual cost thereof shall be paid by the Contractor to the United

1222 States.

1223 <div align="center">CONTINGENT ON APPROPRIATION OR ALLOTMENT OF FUNDS</div>

1224     29.    The expenditure or advance of any money or the performance of any obligation of the
1225 United States under this Contract shall be contingent upon appropriation or allotment of funds.
1226 Absence of appropriation or allotment of funds shall not relieve the Contractor from any obligations
1227 under this Contract. No liability shall accrue to the United States in case funds are not appropriated
1228 or allotted.

1229 <div align="center">BOOKS, RECORDS, AND REPORTS</div>

1230     30.    (a)    The Contractor shall establish and maintain accounts and other books and
1231 records pertaining to administration of the terms and conditions of this Contract including: the
1232 Contractor's financial transactions, water supply data, and Project land and right-of-way agreements;
1233 the water users' land-use (crop census), land ownership, land-leasing and water use data; and other
1234 matters that the Contracting Officer may require. Reports thereon shall be furnished to the
1235 Contracting Officer in such form and on such date or dates as the Contracting Officer may require.
1236 Subject to applicable Federal laws and regulations, each party to this Contract shall have the right
1237 during office hours to examine and make copies of the other party's books and records relating to
1238 matters covered by this Contract.

1239           (b)     Notwithstanding the provisions of subdivision (a) of this Article, no books,

1240   records, or other information shall be requested from the Contractor by the Contracting Officer unless

1241   such books, records, or information are reasonably related to the administration or performance of

1242   this Contract. Any such request shall allow the Contractor a reasonable period of time within which

1243   to provide the requested books, records, or information.

1244           (c)     At such time as the Contractor provides information to the Contracting Officer

1245   pursuant to subdivision (a) of this Article, a copy of such information shall be provided to the

1246   Operating Non-Federal Entity (ies).

1247           ASSIGNMENT LIMITED--SUCCESSORS AND ASSIGNS OBLIGATED

          31.   (a)    The provisions of this Contract shall apply to and bind the successors and
1249
1250   assigns of the parties hereto, but no assignment or transfer of this Contract or any right or interest
  therein shall be valid until approved in writing by the Contracting Officer.

1251           (b)     The assignment of any right or interest in this Contract by either party shall not
1252   interfere with the rights or obligations of the other party to this Contract absent the written
1253   concurrence of said other party.

1254           (c)     The Contracting Officer shall not unreasonably condition or withhold approval

1255   of any proposed assignment.

1256                      SEVERABILITY

1257           32.     In the event that a person or entity who is neither (i) a party to a Project contract, nor

1258   (ii) a person or entity that receives Project Water from a party to a Project contract, nor (iii) an

1259   association or other form of organization whose primary function is to represent parties to Project

1260   contracts, brings an action in a court of competent jurisdiction challenging the legality or

1261    enforceability of a provision included in this Contract and said person, entity, association, or

1262    organization obtains a final court decision holding that such provision is legally invalid or

1263    unenforceable and the Contractor has not intervened in that lawsuit in support of the plaintiff(s), the

1264    parties to this Contract shall use their best efforts to (i) within 30 days of the date of such final court

1265    decision identify by mutual agreement the provisions in this Contract which must be revised and

1266    (ii) within three months thereafter promptly agree on the appropriate revision(s). The time periods

1267    specified above may be extended by mutual agreement of the parties. Pending the completion of the

1268    actions designated above, to the extent it can do so without violating any applicable provisions of

1269    law, the United States shall continue to make the quantities of Project Water specified in this Contract

1270    available to the Contractor pursuant to the provisions of this Contract which were not found to be

1271    legally invalid or unenforceable in the final court decision.

1272    <div align="center">RESOLUTION OF DISPUTES</div>

1273    33.    Should any dispute arise concerning any provisions of this Contract, or the parties'

1274    rights and obligations thereunder, the parties shall meet and confer in an attempt to resolve the

1275    dispute. Prior to the Contractor commencing any legal action, or the Contracting Officer referring

1276    any matter to the Department of Justice, the party shall provide to the other party 30 days' written

1277    notice of the intent to take such action; Provided, That such notice shall not be required where a delay

1278    in commencing an action would prejudice the interests of the party that intends to file suit. During

1279    the 30-day notice period, the Contractor and the Contracting Officer shall meet and confer in an

1280    attempt to resolve the dispute.  Except as specifically provided, nothing herein is intended to waive or

1281    abridge any right or remedy that the Contractor or the United States may have.

1282                                    OFFICIALS NOT TO BENEFIT

1283        34.    No Member of or Delegate to Congress, Resident Commissioner, or official of the
1284    Contractor shall benefit from this Contract other than as a water user or landowner in the same
1285    manner as other water users or landowners.

1286                            CHANGES IN CONTRACTOR'S SERVICE AREA

1287        35.    (a)    While this Contract is in effect, no change may be made in the Contractor's
1288    Service Area, by inclusion or exclusion of lands, dissolution, consolidation, merger, or otherwise,
1289    except upon the Contracting Officer's written consent.

1290            (b)    Within 30 days of receipt of a request for such a change, the Contracting

        Officer will notify the Contractor of any additional information required by the Contracting Officer

1292    for processing said request, and both parties will meet to establish a mutually agreeable schedule for

1293    timely completion of the process.  Such process will analyze whether the proposed change is likely to:

1294    (i) result in the use of Project Water contrary to the terms of this Contract; (ii) impair the ability of the

1295    Contractor to pay for Project Water furnished under this Contract or to pay for any Federally-

1296    constructed facilities for which the Contractor is responsible; and (iii) have an impact on any Project

1297    Water rights applications, permits, or licenses.  In addition, the Contracting Officer shall comply with

1298    the NEPA and the ESA.  The Contractor will be responsible for all costs incurred by the Contracting

1299    Officer in this process, and such costs will be paid in accordance with Article 25 of this Contract.

1300                                    FEDERAL LAWS

1301        36.    By entering into this Contract, the Contractor does not waive its rights to contest the
        validity or application in connection with the performance of the terms and conditions of this

                                            63

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

1303    Contract of any Federal law or regulation; Provided, That the Contractor agrees to comply with the
1304    terms and conditions of this Contract unless and until relief from application of such Federal law or
1305    regulation to the implementing provision of the Contract is granted by a court of competent
1306    jurisdiction.

1307    <div align="center">NOTICES</div>

1308        37.    Any notice, demand, or request authorized or required by this Contract shall be
1309    deemed to have been given, on behalf of the Contractor, when mailed, postage prepaid, or delivered
1310    to the Area Manager, South-Central California Area Office, 1243 N Street, Fresno, California 93721,
1311    and on behalf of the United States, when mailed, postage prepaid, or delivered to the Board of
1312    Directors of the Westlands Water District, P.O. Box 6056, Fresno, California 93703-6056.  The
1313    designation of the addressee or the address may be changed by notice given in the same manner as
1314    provided in this Article for other notices.

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

1315        IN WITNESS WHEREOF, the parties hereto have executed this Interim Renewal Contract as
1316   of the day and year first above written.

1317
1318   **APPROVED AS TO LEGAL**                THE UNITED STATES OF AMERICA
       **FORM AND SUFFICIENCY**

1319   **OFFICE OF REGIONAL SOLICITOR**        By: _____
       **DEPARTMENT OF THE INTERIOR**
1320                                               Regional Director, Mid-Pacific Region
1321                                               Bureau of Reclamation

1322

1323                                           WESTLANDS WATER DISTRICT _____

1324                                           By: _____
1325                                               President of the Board of Directors

1326   Attest:

1327   By: _____
1328        Secretary of the Board of Directors

65



Note: The Public Land Survey depicted here was digitized from USGS topographic maps.



# Westlands Water District

### Contract No. 14-06-200-495A-LTR1
### Exhibit A

Contractor's Service Area

District Boundary

Miles
0    5    10

Date: October 18, 2004
File Name: N:\district\contracts\westlands\westlands.mxd

805-202-7

Irrigation and M&I
Contract No.  14-06-200-495A-IR1

EXHIBIT B
WESTLANDS WATER DISTRICT
Contract Year 2007

| | Irrigation SLC | Irrigation DMC | M&I Water |
|---|---|---|---|
| **Operation and Maintenance (O&M) and Cost-of-Service Rates:** | | | |
| Capital Rates | $18.23 | $15.80 | $8.99 |
| O&M Rates | | | |
|    Water Marketing | $6.86 | $6.86 | $5.76 |
|    Storage | $7.68 | $7.68 | $9.16 |
|    Conveyance | * | * | * |
|    Direct Pumping (Project Use Energy) | $2.21 | | $2.02 |
|    Tracy Pumping | * | * | * |
|    San Luis Drain | $0.24 | | |
|    CFO/PFR Adj. Rate** | $0.00 | $0.00 | $0.00 |
| Deficit Rates | | | |
|    Non-Interest Bearing | $0 | $0 | $0 |
|    Interest Bearing | $0 | $0 | $0 |
| *TOTAL COST-OF-SERVICE RATES (COS):* | $35.22 | $30.34 | $25.93 |
| **Irrigation Full Cost Rates** | | | |
| Section 202(3) Rate is applicable to a Qualified Recipient or to a Limited Recipient receiving irrigation water on or before October 1, 1981. | $56.03 | $44.98 | |
| Section 205(a)(3) Rate is applicable to a Limited Recipient that did not receive irrigation water on or before October 1, 1981. | $70.40 | $57.75 | |
| **Surcharges Under P.L. 102-575 To Restoration Fund*** | $8.58 | $8.58 | $17.15 |
| **P.L. 106-377 Trinity Public Utilities District Assessment ****** | $0.11 | $0.11 | $0.11 |

*Except for Folsom-South Canal, Conveyance Operation and Maintenance Costs were removed for ratesetting purposes and are to be billed directly to the water authorities (See Schedule A-9 for cost detail).

** Chief Financial Officer (CFO) Adjustment and Provision for Replacement (PFR) Credit are being distributed over a 5-year period beginning in FY 2003 for the contractor that request the cost be deferred.

***The surcharges are payments in addition to the water rates and were determined pursuant to Title XXXIV c      lic Law 102-575.  Restoration fund surcharges under P.L. 102-575 are on a fiscal year basis (10/1-9/30).

*·     The Trinity Public Utilities District Assessment is applicable to each acre-foot of water delivered from 3/1/07-2/29/08.  The Trinity Public Utilities District Assessment is adjusted annually.

**Additional detail of rate components is available on the Internet at** www.mp.usbr.gov/cvpwaterrates/.

Irrigation and M&I
Contract No. 14-06-200-495A-IR1

Exhibit C

# Central Valley Project (CVP) Water Needs Assessments Purpose and Methodology

Purpose:

Water needs assessments have been performed for each CVP water contractor eligible to participate in the CVP long-term contract renewal process. These water needs assessments serve three purposes:

Confirm past beneficial use of CVP water;
Provide water demand and supply information under current and future conditions for the environmental documents; and
Provide an estimate of contractor-specific needs for CVP water by the year 2025 to serve as a starting point for discussions regarding contract quantities in the negotiation process.

These three purposes require that the water needs assessments be done for a number of different timeframes.

## Small Contractors exempt from Detailed Water Needs Assessments:

In order to minimize the informational burdens on CVP water contractors with small amounts of CVP supply under contract, an exemption from the requirement for detailed water needs assessments has been provided to these contractors. The exemption applies to contractors who provide agricultural water to a service area of 2000 irrigable acres, or less, and/or provide urban water now, or in the future, in the amount of 2000 acre-feet annually, or less. A contractor may be exempt from the water needs assessment requirement for its urban water service, but not for its agricultural water service, or vice-a-versa. These contractors are assumed to demonstrate future need if they have beneficially used their CVP supplies in the past.

## Past Beneficial Use:

Originally, Reclamation requested water demand and supply information for the 1979 through 1997 timeframe. Reclamation believes that evaluations of beneficial use, current and future CVP needs based on information for a 19-year period of record, including both wet and dry periods, is a scientifically defendable way of conducting water needs assessments. However, the concerns of the CVP water contractors with respect to the magnitude of the information request persuaded Reclamation to perform the assessments using a representative snapshot year approach, instead. Although less scientifically rigorous, the snapshot year approach appears adequate for cursory evaluations of water needs.

Nineteen Eighty Nine, is the snapshot year chosen to confirm past beneficial use of CVP water for the American, Delta, Contra Costa, Sacramento, and San Felipe regions (refer to the definitions on the next page). This year was chosen because most CVP water contractors received full delivery of their requested water supplies and the total annual precipitation for most CVP regions was in the normal range. Since 1989 was a drought

1

year in the Friant region, 1996 was the snapshot year selected to calculate past beneficial use for this region. Water Need Assessments for the Stanislaus Region have been deferred pending the resolution of operational issues in the Stanislaus River basin. Some contractors have elected to deviate from the selected snapshot year because of the unavailability of information for that year. Following is a description of the regions:

| | |
|---|---|
| **American:** | American River Division |
| **Delta:** | Delta Division combined with West San Joaquin Division, but not the Contra Costa Unit |
| **Contra Costa:** | Contra Costa Unit |
| **Stanislaus:** | East Side Division |
| **Friant:** | Friant Division combined with Hidden Unit, Buchanan Unit, and Cross Valley Canal |
| **Sacramento:** | Sacramento River Division combined with Trinity River and Shasta Divisions |
| **San Felipe:** | San Felipe Division |

The environmental documentation associated with the CVP long-term contract renewals specifies 1995 as the base year. Therefore, water supply and demand information is indicated on the water needs assessments for the 1995 level of development, if available. In many cases, the information provided to demonstrate past beneficial use is also reasonably representative of 1995 level water supplies and demands.

**Definition of Need for CVP Water Supplies:**

An important function of these assessments is the estimation of year 2025 CVP water needs. The assessments compare all demands and all supplies (including CVP supplies) estimated for the 2025 level of development for a normal hydrologic year. Demands include agricultural, urban and, on occasion, environmental water demands. For these assessments, current CVP contract supplies are set as the maximum annual contractual amount for each water contractor, except in the Friant Division. The Friant Division's Class II contract amounts are based on wet hydrologic year and were reduced to 40% of the contract amount to reflect normal year hydrology. The results are displayed in Column 39 as Unmet Demand. If the number in this column is positive or only slightly negative [1] then the CVP water contractor is deemed to have full future need of the maximum annual CVP supply currently under contract for all year types. Dry year and critically dry year analyses were only performed for urban contractors who did not demonstrate full future need of their CVP contract supply in a normal hydrologic year.

The methodology used to estimate agricultural and urban water demands as well as to estimate the availability of non-CVP supplies is described in the following sections.

---

[1] If the negative amount is within 10% for contracts in excess of 15,000 acre-feet, or within 25% for contracts equal to, or less than, 15,000 acre-feet; the test of full future need of CVP supplies under contract is deemed to be met.

2

**Agricultural Water Demand:**

Agricultural water demand is defined as the sum of the district's irrigation water demand and the intra-district conveyance losses, where irrigation water demand is the product of the irrigated acreage in a district and the average farm delivery requirement. The farm delivery requirement is defined as the unit amount of water necessary to supply crop water needs in excess of effective precipitation and varies based on crop type, climate, irrigation water quality, soil salinity and irrigation method. The district's irrigation water demand is not necessarily the sum of all the on-farm irrigation water demands because such measures as recycling of intra-district return flows are effective in reducing the overall district irrigation water demand. The assumption for this analysis is that the continued implementation of water use efficiency measures between now and the year 2025 will further reduce the unit amount of water needed to grow crops in the future. Often, it is also assumed that district conveyance losses will decrease in the future. Specifically, district irrigation efficiencies are assumed to increase from an average of 75 percent currently to 85 percent by the year 2025, where district irrigation efficiency is defined as follows:

District Irrigation Efficiency = Supply B Non Recoverable Losses to the District
Supply

or

= District's Crop Water Requirement of Applied Water (ETAW) + Recoverable losses within the District [2]
District's Irrigation Water Demand

Certain districts, such as those with large elevation differences within their boundaries, have target district irrigation efficiencies of 80 percent.

Estimating Crop Water Requirements

Generally, the CVP water contractors' Water Management Plans provide historical information on crop water requirements. This information was used in the snapshot year analyses to confirm past beneficial use of CVP supplies and to reflect the base condition in the environmental documents.

Reclamation estimated crop water requirements for the year 2025 level of development based on the CVP water contractors' estimates of future crops and acreage planted multiplied by estimates of the farm delivery requirements for each crop. Reclamation staff initially estimated crop water requirements for all regions using evapotranspiration (ET) and effective precipitation (EP) data from several sources: 1) California Department of Water Resources (DWR) Bulletin 160-98, 2) DWR Bulletin 113-3, and 3) Reclamation knowledge and experience. The ET and EP information was tabulated on a Detailed Analysis Unit (DAU) basis and then proportioned to each district based on the district's area in a DAU. The data was then used in combination with other traditional

---

[2] Recoverable loss is defined as water recovered or recoverable by the district or irrigators for reuse.

3

methodologies for determining crop water requirements to estimate each district's total irrigation water demand in the year 2025.

In February 2000, representatives of the Friant and Delta Region CVP water contractors expressed the following concerns with using this methodology:

The crop water requirements estimated are too low;

The effective precipitation component to meeting crop water requirements is too high for some areas.

In order to address these concerns a number of evaluations were performed.

One analysis compared the agricultural water demand calculations performed by the districts' private consultant and those performed by Reclamation for the water districts in the Delta Region. This analysis indicated that Reclamation's and the consultant's estimation of these water demands on a regional basis is close (within 8%). However, the results of the agricultural water demand determinations diverge as the regional area is broken into sub-regions and especially when the comparison is made at the district level.

A comparison of calculations of ET and EP for alfalfa in the Friant Region using the methodologies of Bulletin 160-98, Reclamation and the Natural Resources Conservation Service (NRCS) indicates that Bulletin 160-98 consistently estimates EP higher than the other two methods at the district level. One reason for this difference appears to be that the Bulletin 160-98 methodology estimates the contribution of rainfall to the soil moisture profile in the non-irrigation season in a different way than the other two methodologies. Similarly, a comparison of ET values shows that the Bulletin 160-98 values are consistently lower than the NRCS values at the district level. This difference is most likely the result of Bulletin 160-98's use of Aactual@ ET values. AActual@ ET is potential ET modified to reflect regional agricultural practices by farmers. The NRCS method uses potential ET values without modification.

Based on discussions with DWR, the affected CVP water contractors and their consultants; Reclamation concluded that the regional agricultural practices taken into account by Bulletin 160-98 may not be reflective of current and/or future practices by the CVP water contractors. For this reason, Reclamation determined that it was more prudent to use potential ET values than the Aactual@ ET values from Bulletin 160-98 in evaluating 2025 crop water requirements for water districts located in the Friant and Delta Regions.

In addition, Reclamation and representatives of the Friant and Delta Region water contractors agreed on a different methodology to estimate EP than the one used in Bulletin 160-98 because of the lack of dependable rainfall. The bulletin assumes rainfall is effective if it can be stored in the soil moisture profile, or directly meet crop water needs during any month. However, in actual practice to effectively manage farm operations, a farmer may need to pre-irrigate one or more fields earlier in the month only to have a major precipitation later in the month, thus reducing the effectiveness of the

4

rainfall during that month.

## Revised Agricultural Water Demand Methodology for the Friant and Delta Regions:

Following is a description of the revised methodology for estimating ET and EP:

- EP is estimated to be 50 percent of long-term average annual rainfall with the exception of citrus EP. For citrus groves, it is estimated that one inch of the initial rainfall is stored before the soil seals over and the runoff begins; then about 10% of the additional rainfall for the season is estimated to be effective.

- ET is determined using California Irrigation Management Information System (CIMIS) potential ET data and crop coefficients supplied by the University of California Cooperative Extension.

No change was made to the ET and EP determinations for the CVP water contractors in the other regions because these regions are located in areas of higher precipitation not as sensitive to the issues raised in the comparative analyses.

## Urban Water Demand:

Urban water demand is defined as the sum of residential, nonresidential and distribution system demands. The components of residential demand include indoor and outdoor demand. Originally, information on residential and a portion of nonresidential demand was requested in terms of these two components; however, most CVP water contractors were unable to provide the information in that format. Therefore, the information request was revised to a combined figure for indoor and outdoor use. Nonresidential demand includes commercial, institutional and industrial demands. Distribution system demands consist of unaccounted beneficial use and distribution system losses where:

- Unaccounted beneficial use includes water for such uses as fire fighting, mainline flushing, storm drain flushing, sewer and street cleaning, construction site use, water quality testing and other testing.

- Distribution system losses accounts for water lost because of leaks in storage and distribution systems, evaporation, illegal connections, and water theft.

Projected M&I water demand will be influenced over time by many factors, including future land use changes, population shifts, and improvements in residential and distribution system efficiencies over time. As is the case for agricultural water demands, the methodology assumes that the implementation of water conservation measures in the next 25 years will increase the efficiency of urban water use and reduce unit M&I water demands. Specifically, the average per capita usage is assumed to decrease from 5% to 14% depending on the location in the state.

**Non-CVP Water Supplies:**

Non-CVP water supplies can include groundwater including the conjunctive use of surface and groundwater, State Water Project (SWP) supplies, local surface water supplies, recycled water, inter-district return flows and water transfers. The methodology considers water transfers a beneficial use of water. Water transfers are, therefore, included in the 2025 level assessments if there is evidence of a commitment by both parties to engage in the transfer in this timeframe.

Average values for SWP and local surface supplies are used in the 2025 level assessments unless the analysis is for dry or critical year conditions. Often the source of information is the 10-year average surface water supply from the contractor's Water Management Plan. If there is an indication that surface water supplies will decrease in the future because of increased upstream diversions or increased environmental requirements, the surface water supply is reduced to reflect these considerations in the 2025 level assessment.

Where available, groundwater safe yields are used to estimate future groundwater pumping. Safe yield is defined as the amount of groundwater a district can pump on a long-term average and not cause the long-term decline of groundwater levels leading to excessive depths for pumping or leading to degradation of groundwater quality. A safe yield value is the result of a complex interaction between many factors; a change in any one of the factors can have an impact on the value obtained from safe yield computations. The main factors involved in safe yield computations can include, but are not limited to, water supply, consumptive use, losses to the system, and water quality. Adding to the complexity of the analysis is that many, if not most, of the factors involved in a safe yield computation are time dependent, and have both short-term and long-term trends--which may be quite different. If a safe yield analysis is not available for the contractors' groundwater resources, groundwater pumping and recharge, if applicable, is estimated from historical information for the 2025 level assessments.

Originally, groundwater pumping for the Friant Region was estimated based on historical estimates of groundwater pumping for 1996 from the water contractors' Water Management Plans. During the February 2000 discussions with representatives of the Friant Region water contractors, the issue of groundwater was raised. Specifically, Reclamation was requested to evaluate the possibility of using the original safe yields estimated by Reclamation as the supply available from groundwater in the 2025 level assessments. Reclamation agreed to investigate the use of these original safe yields because the original safe yields were developed for ultimate buildout and included CVP groundwater recharge. Following is a summary of the analysis performed to estimate groundwater pumping for the Friant Region in the 2025 level assessments:

**Analysis of Groundwater Pumping in the Friant Region:**

Groundwater technical studies were conducted by Reclamation in the 1940's and 1950's to characterize the geohydrology, groundwater occurrence and groundwater conditions in

6

each district, and to determine each district's safe yield. Prior to the delivery of CVP water supplies, farmers irrigated mainly with groundwater, although some local surface water sources were also used. Because recharge of groundwater could not keep pace with the use of water primarily for agricultural purposes, groundwater levels had declined in many areas, and groundwater overdraft was common throughout the region.

A review of Reclamation's original safe yields for the Friant Region shows that these safe yield estimates are generally less than the estimated amounts of groundwater pumping for 1996. Reclamation's original safe yield estimates are also generally less than the updated safe yield estimates performed by Reclamation for some of the districts in the early 1990's. However, the 1990's safe yield estimates are considered preliminary numbers and were never adopted by Reclamation nor accepted by the Friant water contractors. Historical estimates of groundwater pumping indicate that these water contractors are pumping groundwater in excess of the original safe yields.

The groundwater pumping in excess of safe yield has resulted in the continued decline in the groundwater tables underlying most of the districts. A review of hundreds of individual well hydrographs shows that this increase in pumping has not been supported by the aquifer. Most districts are still experiencing declining groundwater levels since the inception of CVP deliveries. With the exception of five districts (Delano Earlimart, Exeter, Lindmore, Lindsay-Strathmore and Orange Cove), cumulative groundwater storage has decreased in the remaining 19 Friant districts since the CVP began importing water into those districts. The five districts that show overall rises in groundwater storage change have unique geohydrologic conditions and were evaluated individually to determine appropriate levels of groundwater pumping for the 2025 level assessments. From the analysis performed, it can be concluded that CVP deliveries since 1986, as evidenced by a continuous decline in storage from 1986 to 1992, have not been sufficient to maintain reasonably stable groundwater levels, nor have CVP deliveries supported an increase in groundwater levels in wet years under the conjunctive use operations practiced by most districts. Safe yield pumping in combination with surface water supplies should have sustained or raised groundwater levels to some stable level. However, historical groundwater pumping has been higher than the safe yield values. In addition, unforeseen factors in the original safe yield analysis such as the magnitude of groundwater use by non-district entities primarily for urban needs within the boundaries of the district, the magnitude of groundwater and surface water use by adjacent districts, changes in the type of crops, droughts and reductions in CVP water deliveries may render even the original safe yield values as too high. However, the unavailability of critical information and the lack of time to perform an analysis make the determination of new safe yields for the Friant Region infeasible at this time. Therefore, Reclamation concurs that the original safe yields are appropriate to depict groundwater pumping in the 2025 level assessments for the Friant Region.

## Sources of Information

The Water Management Plans that most water districts have prepared in response to the mandates of the Central Valley Project Improvement Act and the Reclamation Reform

Act provide information on agricultural, urban and environmental water demands as well as on water supplies available to meet these demands. In most cases, these plans depict information for a representative year, although some plans provide a number of years of historical information as well as projections for the future. Fortunately, the representative year for many of these plans is either 1989, or 1996. The water contractors were asked to verify that information contained in these plans may be used to calculate past beneficial use and/or to depict current conditions for the purposes of the environmental documentation. In addition, the agricultural water contractors were requested to provide projections of types of crops planted, irrigated acres and amounts and types of non-CVP water supplies for the year 2025. Similarly, the urban water contractors were asked to provide population projections, projections of nonresidential water demand and amounts and types of non-CVP water supplies for the year 2025.

Other sources of information included DWR Bulletin 160-98, DWR Bulletin 113-3, CIMIS information, crop coefficients from various sources, Reclamation's annual crop reports, the January 2000 Water Forum Agreements for the American River, Reclamation's groundwater safe yield studies and miscellaneous planning and environmental documents.

STATE OF CALIFORNIA          )
                             )ss
COUNTY OF FRESNO             )

I, Dave Ciapponi, do hereby certify that I am the duly appointed, qualified and acting Secretary of Westlands Water District, a public district organized under the laws of the State of California with its offices at Fresno, California; that Resolution No. 120-07 was duly and regularly adopted by the Board of Directors of Westlands Water District at a meeting of said Board of Directors duly called and held on the 17th of December, 2007, at the offices of said Westlands Water District at which a quorum of said Directors was present and acting; and that said Resolution is still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and seal as Secretary of said District this 21st day of December, 2007.



Secretary
Westlands Water District

## RESOLUTION NO. 120-07

## WESTLANDS WATER DISTRICT

### A RESOLUTION OF THE BOARD OF DIRECTORS APPROVING THE FORM OF THE INTERIM RENEWAL CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND WESTLANDS WATER DISTRICT PROVIDING FOR PROJECT WATER SERVICE, AND AUTHORIZING EXECUTION THEREOF

WHEREAS, Westlands Water District (District) entered into a contract for water service with the United States on June 5, 1963, Contract No. 14-06-200-495-A (1963 Contract), which provides for the delivery of up to 1,008,000 acre feet of water diverted through Central Valley Project facilities, the right to which was confirmed under paragraph 4 of the *Barcellos* Judgment and in other contracts between the District and the United States; and

WHEREAS, on June 29, 1965, the Legislature of the State of California enacted the Westlands Water District Merger Law, California Water Code sections 37800, *et seq*, which merged the West Plains Water Storage District into the District; and

WHEREAS, after the merger of West Plains Water Storage District into the District, the District entered into a contract for water service with the United States on December 30, 1986, Contract No. 79-106-EDP (1986 Contract), which provides for the delivery of up to an additional 250,000 acre-feet of water diverted through Central Valley Project facilities, the right to which was confirmed under paragraph 5 of the *Barcellos* Judgment and in other contracts between the District and the United States; and

WHEREAS, on September 30, 1997, the District and the United States entered into the Binding Agreement for Early Renewal Between the United States and Westlands Water District, Binding Agreement No. 14-06-200-495A-BA, and the Binding Agreement for Early Renewal Between the United States and Westlands Water District, Binding Agreement No. CV-79-106-EDP-BA, which provide the terms for the renewal of both the 1963 Contract and the 1986 Contract before their expiration dates; and

WHEREAS, the District and the United States have entered into negotiations to renew the 1963 Contract and the 1986 Contract, and both the District and the United States have expressed the intent to enter into a long-term renewal contract under mutually agreed upon terms and conditions obligating the United States to furnish the District up to 1,150,000 acre-feet of Central Valley Project water per year; and

WHEREAS, the environmental documentation required under Federal Law for execution of any long-term renewal contract has been delayed for reasons beyond the control of the parties; and

WHEREAS, it is anticipated prior to December 31, 2007, that the United States will tender a form of an interim renewal contract to the District, Interim Contract No. 14-06-200-495A-IR1 (Interim Renewal Contract), which provides for the delivery of up to 1,150,000 acre-feet of water diverted through Central Valley Project facilities; and

WHEREAS, it is imperative to the District and its landowners that the District renew its rights under the 1963 Contract and the 1986 Contract to continue water service to lands within the District for beneficial use, and the District therefore proposes to enter into the Interim Renewal Contract; and

WHEREAS, the District has reviewed the terms and conditions of the form of the Interim Renewal Contract and finds the form and content thereof to be acceptable to the District and appropriate for execution; and

WHEREAS, on October 23, 2007 the District Board adopted Resolution No. 116-07, a resolution of the Board of Directors approving the filing of a statutory categorical exemption under the California Environmental Quality Act for approval of the interim renewal contract between the United States of America and Westlands Water District providing for water service, which categorical exemption was filed on November 1, 2007.

NOW, THEREFORE, BE IT AND IT IS HEREBY RESOLVED as follows:

1.      The facts set forth in the recitals above and in the documents referenced therein are true and correct, and the Board so finds and determines.

2.      The Interim Renewal Contract in substantially the form presented to the Board and on file with the Secretary is hereby approved.

3.      The President of the District is hereby authorized to execute the Interim Renewal Contract with such additional changes and/or modifications as are approved by the President of the District and its legal counsel.

4.      A certified copy of this resolution shall be prepared and transmitted by the District's Secretary to the Bureau of Reclamation.

5.      The District's officers and staff are authorized and directed to do all things necessary and appropriate to carry out the foregoing and to take such additional actions as may be necessary or convenient to carry out the intent of this Resolution.

Adopted at a regular meeting of the Board of Directors in Fresno, California, this 17th day of December, 2007.

2

AYES:        Directors Coelho, Devine, Diener, Enos, Errotabere, Esajian,
             Sagouspe, Sheely, and Woolf

NOES:        None

ABSENT:      None

Dave Ciapponi, Secretary

3

Irrigation and M&I
Contract No.  14-06-200-495A-LTR1

Westlands Water District
Contract Year 2007
Exhibit B

| | Irrigation SLC | Irrigation DMC | M&I Water |
|---|---|---|---|
| **O&M AND COST-OF-SERVICE RATES:** | | | |
| Capital Rates | $18.23 | $15.80 | $8.99 |
| O&M Rates | | | |
|    Water Marketing | $6.86 | $6.86 | $5.76 |
|    Storage | $7.68 | $7.68 | $9.16 |
|    Conveyance | * | * | * |
|    Direct Pumping (Project Use Energy) | $2.21 | | $2.02 |
|    Tracy Pumping | * | * | * |
|    San Luis Drain | $0.24 | | |
| Deficit Rates | | | |
|    Non-Interest Bearing | $0 | $0 | $0 |
|    Interest Bearing | $0 | $0 | $0 |
| *TOTAL COST-OF-SERVICE RATES (COS):* | $35.22 | $30.34 | $25.93 |
| **M&I FULL-COST RATE** | | | $32.55 |
| **Tiered Pricing Components (in addition to total COS rate above)** | | | |
| Tiered Pricing Component >80% <=90% of Contract Total [202 (3) Rate - COS Rate /2]: | N/A | N/A | |
| Tiered Pricing Component >90% of Contract Total [202 (3) Rate - COS Rate]: | N/A | N/A | |
| **Irrigation Full Cost Rates** | | | |
| Section 202(3) Rate is applicable to a Qualified Recipient or to a Limited Recipient receiving irrigation water on or before October 1, 1981. | $56.03 | $44.98 | |
| Section 205(a)(3) Rate is applicable to a Limited Recipient that did not receive irrigation water on or before October 1, 1981. | $70.40 | $57.75 | |
| ⸎  CHARGES UNDER P.L. 102-575 TO ᴬ  ⸝ORATION FUND** | | | |

|  | $8.58 | $8.58 | $17.15 |
|---|---|---|---|
| 4L SURCHARGES | $8.58 | $8.58 | $17.15 |

\*Except for Folsom-South Canal, Conveyance Operation and Maintenance Costs were removed for ratesetting purposes and are to be billed directly to the water authorities (See Schedule A-9 for cost detail).

\*\*The surcharges are payments in addition to the water rates and were determined pursuant to Title XXXIV of Public Law 102-575. Restoration fund surcharges under P.L. 102-575 are on a fiscal year basis (10/1-9/30).

**Additional detail of rate components is available on the Internet at www.mp.usbr.gov/cvpwaterrates/.**



# United States Department of the Interior

BUREAU OF RECLAMATION
Mid-Pacific Regional Office
2800 Cottage Way
Sacramento, CA  95825-1898

IN REPLY REFER TO:

MP-440
WTR-4.00

MAR 3 0 2018

Board of Directors
Westlands Water District
P.O. Box 6056
Fresno, CA 93703

Subject:  Interim Renewal Contract No. 14-06-200-495A-IR6 Between the United States and
Westlands Water District Providing for Project Water Service – Central Valley Project,
California

Dear Board of Directors:

Enclosed is an executed original of the subject contract for your records.  The Bureau of
Reclamation appreciates the effort expended by Westlands Water District and its
representatives relative to this contract.

If there are any questions, please contact Mr. Stanley Data, Repayment Specialist, at
916-978-5246, or e-mail sdata@usbr.gov.

Sincerely,

Richard J. Woodley
Regional Resource Manager

Enclosure

Irrigation and M&I
Contract No. 14-06-200-495A-IR6

1    UNITED STATES
2    DEPARTMENT OF THE INTERIOR
3    BUREAU OF RECLAMATION
4    Central Valley Project, California

5    INTERIM RENEWAL CONTRACT BETWEEN THE UNITED STATES
6    AND
7    WESTLANDS WATER DISTRICT
8    PROVIDING FOR PROJECT WATER SERVICE
9    FROM THE SAN LUIS UNIT AND DELTA DIVISION

10    THIS CONTRACT, made this ___1ST___ day of ___MARCH___, 2018,

11    in pursuance generally of the Act of June 17, 1902 (32 Stat. 388), and acts amendatory or

12    supplementary thereto, including, but not limited to, the acts of August 26, 1937 (50 Stat. 844),

13    as amended and supplemented, August 4, 1939 (53 Stat. 1187), as amended and supplemented,

14    July 2, 1956 (70 Stat. 483), June 21, 1963 (77 Stat. 68), October 12, 1982 (96 Stat. 1263), as

15    amended, and Title XXXIV of the Act of October 30, 1992 (106 Stat. 4706), all collectively

16    hereinafter referred to as Federal Reclamation law, between the UNITED STATES OF

17    AMERICA, hereinafter referred to as the United States, and WESTLANDS WATER

18    DISTRICT, hereinafter referred to as the Contractor, a public agency of the State of California,

19    duly organized, existing, and acting pursuant to the laws thereof;

20    WITNESSETH, That:

21    EXPLANATORY RECITALS

22    WHEREAS, the United States and the Contractor entered into interim renewal Contract

23    (long-form interim renewal contract) No. 14-06-200-495A-IR1 which provided for the continued

24    water service after Contract No. 14-06-200-495A (which addressed the "Contract Between the

Irrigation and M&I
Contract No. 14-06-200-495A-IR6

25   United States and Westlands Water District Providing for Water Service", dated June 5, 1963,

26   and the Stipulated Judgment in the lawsuit entitled *Barcellos and Wolfsen, Inc. v. Westlands*

27   *Water District*, Civ. No. F-79-106-EDP (E.D. Cal.), as consolidated with *Westlands Water*

28   *District* v. *United States of America*, Civ. No. F-81-245-EDP (E.D. Cal.), entered into on

29   December 30, 1986) ended water service on December 31, 2007; and

30                    WHEREAS, the last long-form interim renewal contract between the United

31   States and the Contractor is Contract No. 14-06-200-495A-IR1, hereinafter referred to as IR1; and

32                    WHEREAS, the United States and the Contractor have entered into successive

33   renewals of IR1, the most recent of which is Contract No. 14-06-200-495A-IR5, hereinafter

34   referred to as IR5, effective March 1, 2016, through February 28, 2018; and

35                    WHEREAS, the United States and the Contractor have made significant progress

36   in their negotiations of a long-term renewal contract, believe that further negotiations on the

37   long-term renewal contract would be beneficial, and mutually commit to continue to negotiate to

38   seek to reach agreement, but anticipate that the environmental documentation necessary for

39   execution of any long-term renewal contract may be delayed for reasons beyond the control of

40   the parties; and

41                    WHEREAS, the Contractor has requested a subsequent interim renewal contract

42   pursuant to IR5; and

43                    WHEREAS, the United States has determined that the Contractor has to date

44   fulfilled all of its obligations under IR5; and

45                    WHEREAS, the United States is willing to renew IR5 pursuant to the terms and

46   conditions set forth below;

2

Irrigation and M&I
Contract No. 14-06-200-495A-IR6

47            NOW, THEREFORE, in consideration of the mutual and dependent covenants

48   herein contained, it is hereby mutually agreed by the parties hereto as follows:

49                         <u>RENEWAL AND REVISION OF</u>
50                         <u>CONTRACT NO. 14-06-200-495A-IR5</u>

51       1.       Except as specifically modified by this Contract, all provisions of IR5 are

52   renewed with the same force and effect as if they were included in full text with the exception of

53   Article 1 of IR5 thereof, which is revised as follows:

54            (a)       The first sentence in subdivision (a) of Article 1 of IR5 is replaced with

55   the following language: "This Contract shall be effective from March 1, 2018, and shall remain

56   in effect through February 29, 2020, and thereafter will be renewed as described in Article 2 of

57   IR1 if a long-term renewal contract has not been executed with an effective commencement date

58   of March 1, 2020."

59            (b)       Subdivision (b) of Article 1 of IR5 is amended by deleting the date

60   "February 28, 2018," and replacing same with the date "February 29, 2020."

Irrigation and M&I
Contract No. 14-06-200-495A-IR6

61          IN WITNESS WHEREOF, the parties hereto have executed this Contract as of

62     the day and year first above written.

63

64                                              UNITED STATES OF AMERICA

64
65                                              By: _____
66                                                  Regional Director, Mid-Pacific Region
                                                    Bureau of Reclamation

67
68                                              WESTLANDS WATER DISTRICT

69                                              By: _____
70
71     Attest:                                      President of the Board of Directors

72     By: _____
73         Secretary of the Board of Directors

4