TODD KIM, Assistant Attorney General
DAVID W. GEHLERT, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
999 18th Street
South Terrace, Suite 370.
Denver, CO 80202
Telephone:  (303) 844-1386
Facsimile:  (303) 844-1350
david.gehlert@usdoj.gov

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; RESTORE THE DELTA; and PLANNING AND CONSERVATION LEAGUE,<br><br>                     Plaintiffs,<br><br>v.<br><br>UNITED STATES BUREAU OF RECLAMATION, *et al.,*<br><br>                     Defendants. | CASE NO.  1:20-cv-00706-DAD-EPG<br><br>**FEDERAL DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Noticed Date: Feb. 1, 2022<br>Noticed Time: None<br>Courtroom: 5, 7th Floor-Fresno<br>Judge: Hon. Dale A. Drozd |

# TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

Factual Background ........................................................................................................... 3

    I.      The Central Valley Project ................................................................................ 3

    II.     Reclamation Contracts ...................................................................................... 4

    III.    Delivery Of Water Under The Contracts .......................................................... 5

    IV.    Conversion Of The Contracts ........................................................................... 6

Statutory Background ........................................................................................................ 7

    I.      The National Environmental Policy Act ........................................................... 7

    II.     The Endangered Species Act ............................................................................ 8

    III.    The Water Infrastructure Improvements For The Nation Act ......................... 9

Standard of Review .......................................................................................................... 12

Argument ......................................................................................................................... 14

    I.      The WIIN Act Does Not Provide Reclamation Discretion To Benefit Protected
            Species Or The Environment When  Converting Contracts Under The Wiin Act ..... 14

          A.     Through Section 4011(a)(1) Congress Provided Reclamation Limited
                  Discretion to Negotiate Some of the Financial Terms of Repayment ........... 14

          B.     The WIIN Act Deprives Reclamation of the Discretion to Benefit
                  Protected Species or the Environment Because it Imposes an
                  Overarching Requirement that the Contract Conversions Not Change
                  Certain Contractual Rights Including the Terms of Water Service ................ 17

          C.     The Savings Clauses in Section 4012 of the WIIN Act Do Not Vest
                  Reclamation with Discretion to Benefit Protected Species or the
                  Environment ................................................................................................... 18

               1.     The savings clauses do not demonstrate that Congress intended
                     the ESA to apply to Reclamation's conversion of contracts
                     pursuant to the WIIN Act ...................................................................... 19

               2.     The savings clauses do not demonstrate that Congress intended
                       NEPA to apply to Reclamation's conversion of contracts
                     pursuant to the WIIN Act ...................................................................... 21

                   a.     The savings clause referencing the CVPIA does not
                          require the application of NEPA .............................................. 21

b.      The savings clause referencing State law does not require
                the application of NEPA ......................................................... 23

II.     Even If The Court Concludes The Plain Language Of The Statute Does Not
        Define The Scope Of Reclamation's Discretion, Reclamation's Interpretation
        Of The Statute Should Be Affirmed ........................................................... 24

Conclusion ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Alaska Wilderness League v. Jewell*,
   788 F.3d 1212 (9th Cir. 2015) ................................................................................ 12, 24

*Am. Bankers Ass'n v. Gould*,
   412 F.3d 1081 (9th Cir. 2005) ................................................................................ 18, 24

*Barnhart v. Walton*,
   535 U.S. 212 (2002) ...................................................................................................... 12

*California ex rel. Lockyer v. U.S. Dep't of Agric.*,
   575 F.3d 999 (9th Cir. 2009) ........................................................................................ 12

*California Natural Resources Agency v. Ross*,
   No. 1:20-CV-00426 and 00431, 2020 WL 2404853 (E.D. Cal., May 11, 2020) ...................... 1, 19

*Central Delta Water Agency v. Bureau of Reclamation*,
   452 F.3d 1021 (9th Cir. 2006) ........................................................................................ 3

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................................ 12, 24

*Cir. City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ...................................................................................................... 16

*City & Cty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ...................................................................................... 18

*Dep't of Transp. v. Pub. Citizen*,
   541 U.S. 752 (2004) ........................................................................................................ 8

*Dugan v. Rank*,
   372 U.S. 609 (1963) ........................................................................................................ 3

*E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Off. of Admin. Hearings*,
   758 F.3d 1162 (9th Cir. 2014) ...................................................................................... 13

*Earth Island Inst. v. Nash*,
   No. 119CV01420DADSAB, 2020 WL 1936701 n.22 (E.D. Cal. Apr. 21, 2020) ........................ 13

*Forelaws on Board v. Johnson*,
   743 F.2d 677 (9th Cir. 1984) ........................................................................................ 22

*Grand Canyon Tr. v. U.S. Bureau of Reclamation*,
   691 F.3d 1008 (9th Cir. 2012) ...................................................................... 8, 12, 15, 17, 20

*Grant Cnty. Black Sands Irrigation Dist. v. U.S. Bureau of Reclamation*,
   579 F.3d 1345 (Fed. Cir. 2009) ...................................................................................... 4

*Hapner v. Tidwell*,
   621 F.3d 1239 (9th Cir. 2010) ........................................................................................ 7

*Indian Hills Holdings, LLC v. Frye*,
 337 F.R.D. 293 (S.D. Cal. 2020) ............................................................................ 20

*Karuk Tribe of California v. U.S. Forest Serv.*,
 681 F.3d 1006 (9th Cir. 2012) ............................................................................... 12

*Marbled Murrelet v. Babbitt*,
 83 F.3d 1068 (9th Cir.1996) .................................................................................. 15

*Metropolitan Edison Co. v. People Against Nuclear Energy*,
 460 U.S. 766 (1983)................................................................................................ 23

*Nat. Res. Def. Council v. Houston*,
 146 F.3d 1118 (9th Cir. 1998) ................................................................... 12, 15, 16

*Native Ecosystems Council v. U.S. Forest Serv.*,
 428 F.3d 1233 (9th Cir. 2005) .................................................................................. 8

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
 551 U.S. 644 (2007)..................................................................................... 8, 14, 17

*Oregon Nat. Res. Council v. Allen*,
 476 F.3d 1031 (9th Cir. 2007) ................................................................................ 11

*Peterson v. Dep't. of Interior*,
 899 F.2d 799 (9th Cir. 1990) ................................................................................... 4

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
 566 U.S. 639 (2012)................................................................................................ 15

*Rainero v. Archon Corp.*,
 844 F.3d 832 (9th Cir. 2016) .................................................................................. 14

*Russello v. United States*,
 464 U.S. 16 (1983).................................................................................................. 21

*Shomberg v. United States*,
 348 U.S. 540 (1955)................................................................................................ 18

*Sierra Club v. Babbitt*,
 65 F.3d 1502 (9th Cir. 1995) ................................................................................... 8

*Skidmore v. Swift & Co.*,
 323 U.S. 134 (1944)................................................................................................ 13

*Stand Up for California! v. U.S. Dep't of the Interior*,
 959 F.3d 1154 (9th Cir. 2020) .................................................................................. 8

*State Water Res. Control Bd. Cases*,
 136 Cal.App.4th 674, 39 Cal. Rptr. 3d 189 (2006)................................................. 3

*Tennessee Valley Authority v. Hill*,
 437 U.S. 153 (1978)................................................................................................ 19

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*,
 340 F.3d 969 (9th Cir. 2003) ............................................................................. 8, 17

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ................................................................................................ 13

*United States v. Wilson,*
    631 F.2d 118 (9th Cir. 1980) .................................................................................... 1

*Westlands Water Dist. v. U.S. Dep't of Interior,*
    376 F.3d 853 (9th Cir. 2004) .................................................................................... 3

**Statutes**

5 U.S.C. § 551 ............................................................................................................ 9

16 U.S.C. § 1531(b) .................................................................................................. 10

16 U.S.C. § 1536(a) .................................................................................................. 11

42 U.S.C. § 4332(C) .............................................................................................. 9, 28

42 U.S.C. § 4332(C)(iii) ............................................................................................. 9

43 U.S.C. § 371-600e .................................................................................................. 4

43 U.S.C. § 383 ......................................................................................................... 28

43 U.S.C. § 423e ......................................................................................................... 5

43 U.S.C. § 485h ......................................................................................................... 5

43 U.S.C. § 485h(c)(1)(A) .......................................................................................... 5

43 U.S.C. § 485h(e) .................................................................................................... 4

43 U.S.C. § 485h-1(1) ............................................................................................... 19

43 U.S.C. § 485h-1(2) ................................................................................................. 6

Pub. L. No. 97-293, 96 Stat. 1261 (1982) ............................................................... 12

Pub. L. No. 102-575, § 3404(c)(1), 106 Stat. 4600, 4708-09 (1992) ..................... 27

Pub. L. No. 102-575, § 3404(c), 106 Stat. 4600 (1992) .......................................... 27

Pub. L. No. 114-322, 130 Stat 1628 (2016) ............................................................... 1

**Regulations**

40 C.F.R. § 1502.14(c) ............................................................................................... 7

40 C.F.R. § 1508.11 .................................................................................................... 7

40 C.F.R. § 1508.9(b) ................................................................................................. 7

50 C.F.R. § 402.03 ...................................................................................................... 8

50 C.F.R. § 402.14(a) ................................................................................................. 8

50 C.F.R. § 402.14(h) ................................................................................................. 9

50 C.F.R. § 402.14(I) .................................................................................................. 9

***Introduction***

Plaintiffs seek to void contracts between Central Valley Project (CVP) water contractors and the Bureau of Reclamation (Reclamation) because they were converted pursuant to the Water Infrastructure Improvements for the Nation Act, Pub. L. 114-322, 130 Stat 1628 (2016) (WIIN Act or Act) without an environmental analysis under the National Environmental Policy Act (NEPA) or consultation under Section 7 of the Endangered Species Act (ESA).  Summary judgment should be entered in favor of the Federal Defendants because the plain text of the WIIN Act demonstrates that Congress did not vest Reclamation with discretion to impose additional environmental protections when converting contracts under the Act and therefore mooted the need for NEPA or ESA compliance.

Congress passed the WIIN Act, in part, to modify long-standing Reclamation law and allow CVP water contractors to prepay their share of CVP-related construction costs owed to the United States.  Section 4011 of the Act requires Reclamation, upon the request of a CVP contractor, to convert a water service contract into a repayment contract allowing prepayment (prepayment contract) and sets specific requirements for the terms of the converted contract.  After reviewing the WIIN Act and its requirements, Reclamation determined that it lacked sufficient discretion to require compliance with NEPA and the consultation requirements of Section 7 of the ESA when converting contracts pursuant to Congress's mandate.[1]  Reclamation has now converted approximately 67 CVP contracts into prepayment contracts.  *See* JOINT STATEMENT OF UNDISPUTED FACTS (ECF 143) at ¶ 4 (Joint Facts).  Despite Congress's clear mandate that Reclamation "shall" convert CVP contracts into

---

[1]      Reclamation's decision did not preclude the application of NEPA and Section 7 to the CVP's operations.  In August of 2016 Reclamation reinitiated consultation on the long term operation of the CVP and companion State Water Project.  An Environmental Impact Statement (EIS) followed in December of 2019 and Biological Opinions were adopted on February 18, 2020.  *See California Natural Resources Agency v. Ross,* No. 1:20-CV-00426 and 00431 (E.D. Cal.), ECF 143-2; *see also United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (court can take judicial notice of documents filed in its other cases).  Reclamation recently announced it is again reinitiating consultation on the long term operations of the CVP.  *See id.* at ECF 202-1.

prepayment contracts, and the express conditions—unmentioned by Plaintiffs—that Congress imposed on the converted contracts which prevent Reclamation from modifying any existing water service contractual rights, Plaintiffs seek summary judgment that Reclamation was required to comply with NEPA and Section 7 of the ESA when converting contracts under the WIIN Act. *See* PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF 130).

Plaintiffs' motion must be denied because their interpretation of the WIIN Act is at odds with the plain language of the statute. For instance, while Plaintiffs emphasize a statutory clause providing that the conversions are to be done "under mutually agreeable terms and conditions," Plaintiffs entirely ignore the predicate to that clause, which speaks directly to the narrow end Congress intended to be achieved: the contracts are to be converted "to allow for prepayment of the repayment contract pursuant to Paragraph 2" of Section 4011(a), which grants Reclamation only the limited discretion to negotiate some of the financial terms of the contractor's prepayment.

In addition, Section 4011(a)(4)—the conditions on contract conversions Plaintiffs fail to mention—strictly cabins Reclamation's discretion. Specifically, Section 4011(a)(4)(C) precludes Reclamation from using the contract conversions as a means to "modify other water service, repayment, exchange and transfer contractual rights" of the contractor. Thus, Reclamation lacks the discretion to change the contracts' terms of water service, *i.e.*, the physical delivery of water to contractors.

Faced with the plain language of Section 4011—which clearly shows that NEPA and the ESA do not apply to WIIN Act contract conversions—Plaintiffs attempt to rescue their claims by stretching the savings clauses in Section 4012 of the Act. The savings clauses never mention NEPA, presumably because where Congress intended NEPA to apply it said so explicitly, as it did in Section 4007 of the WIIN Act. Nonetheless, Plaintiffs attempt to shoehorn in NEPA's requirements through a savings clause, which mandates that the WIIN Act not be interpreted or implemented in a

manner that could affect or modify Reclamation's obligation under the Central Valley Project Improvement Act (CVPIA).  To be sure, the CVPIA does expressly require NEPA when a contract is *renewed*.  But the WIIN Act conversions do not occur because the contracts are expiring, as renewals do.  Instead, Congress mandated that the conversions occur upon a contractor's request, at any point in the existing contract's term, and be done pursuant to the detailed requirements imposed by Section 4011(a) of the WIIN Act, none of which include NEPA or ESA compliance.

Finally, while a savings clause does state that the WIIN Act does not "override[], modif[y], or amend[] the applicability of the Endangered Species Act," Reclamation has not modified the applicability of the ESA because it has long been the law that an agency is only required to consult when it has discretion to benefit listed species—discretion that the WIIN Act expressly removed. Further, given that Congress devoted Section 4010 of the WIIN Act to delineating the actions it intended to be taken "to benefit threatened and endangered species and other wildlife," the absence of an express obligation to consult on the contract conversions is telling.

*Factual Background*

## I.     THE CENTRAL VALLEY PROJECT.

The CVP is the nation's largest federal water management project. *Central Delta Water Agency v. Bureau of Reclamation,* 452 F.3d 1021, 1023 (9th Cir. 2006).  Operated by Reclamation, the CVP spans more than 450 miles, supplying water to "two hundred water districts, providing water for about thirty million people, irrigating California's most productive agricultural region and generating electricity at nine powerplants." *Westlands Water Dist. v. U.S. Dep't of Interior,* 376 F.3d 853, 861 (9th Cir. 2004); *Dugan v. Rank,* 372 U.S. 609, 612 (1963).  The CVP's water is delivered pursuant to more than 250 contracts with various agricultural, industrial, and commercial entities and municipal water agencies. *See State Water Res. Control Bd. Cases,* 136 Cal.App.4th 674, 692, 39 Cal. Rptr. 3d 189 (2006).

In addition to governing the distribution of water within the CVP, the contracts are the means through which the government recoups some of federal funds spent constructing the CVP, along with a share of the project's operation and maintenance expenses.  *See  Grant Cnty. Black Sands Irrigation Dist. v. U.S. Bureau of Reclamation*, 579 F.3d 1345, 1351–52 (Fed. Cir. 2009); *see also* 43 U.S.C. § 485h(e).

## II.    RECLAMATION CONTRACTS.

The Reclamation Act of 1902 (1902 Act), codified as amended at 43 U.S.C. §§ 371-600e, established the use of contracts to provide the terms for both water delivery and project repayment. *Peterson v. Dep't. of Interior*, 899 F.2d 799, 803-04 (9th Cir. 1990) (recounting the evolution of contracting under reclamation law).  Reclamation initially contracted directly with water users, but that changed with the passage of Omnibus Adjustment Act of 1926, 43 U.S.C. § 423e, which authorized Reclamation to contract directly with water user associations. *Id.* at 804.  Responding to the Depression's impact on water users' ability to meet their repayment obligations, the Reclamation Project Act of 1939 (1939 Act), codified as amended at 43 U.S.C. § 485h, confirmed Reclamation's ability to use a form of contract not tied to a contractor's repayment of project debt and provided the nomenclature for the two most common forms of contract (and the only forms relevant to this case): the repayment contract and the water service contract.

Section 9(d) "repayment" contracts require irrigation water contractors to repay project-related construction costs in fixed annual installments over a predetermined period of time, in addition to their ongoing share of operation and maintenance expenses.  *Grant Cnty.*, 579 F.3d at 1351.  Each contractor's share of the costs to be repaid is generally proportional to its share of the water supply.  By contrast, Section 9(e) "water service" contracts are either short or long-term

contracts for irrigation water delivery at an annual rate set by Reclamation.[2] *Id.* at 1352.  Because the final construction cost allocation for the CVP was done only recently, the vast majority of the contractors on the CVP (and all the contractors who converted their contracts pursuant to the WIIN Act) hold water service contracts.[3]  As is discussed in detail below, the WIIN Act facilitated conversion of water service contracts to repayment contracts by allowing Reclamation to calculate a fixed repayment obligation from "the remaining construction costs identified in water project specific irrigation [or municipal and industrial] rate repayment schedules" and also created a new ability for the contractors to prepay this repayment obligation. WIIN Act, §§ 4011(a)(2)(A) and 4011(a)(3)(A).

## III.    DELIVERY OF WATER UNDER THE CONTRACTS.

Plaintiffs appear to believe that contractors are entitled to delivery of the full quantity of water set out in their contracts, subject only to the physical availability of water.  *See* ECF 130 at 20. That is not the case.  The Westlands Water District (Westlands) contract Plaintiffs reference in their memorandum[4] illustrates the complex factors—including drought, compliance with applicable Biological Opinions under the ESA, water rights, water quality and other applicable state and federal laws—that often constrain the quantity of water a contractor will actually receive in any given year.

Article 3 of the contract addresses the water to be made available under the contract.  The

---

[2]      The 1939 Act also expanded the use to which project water can be put.  Section 9(c) authorized Reclamation to contract for the delivery of water for municipal and miscellaneous purposes (primarily power generation).  As with irrigation water, water for those purposes can be provided pursuant to a repayment contract, pursuant to § 9(c)(1) of the 1939 Act, or a water service contract pursuant to § 9(c)(2).  *See* 43 U.S.C. § 485h(c)(1)(A) & (B).

[3]      For the same reason, CVP contractors holding water service contracts have generally not taken advantage of the existing ability to convert water service contracts into repayment contracts. *See* 43 U.S.C. § 485h-1(2).

[4]      Westlands Water District Contract, Contract No. 14-06-200-495-IR1-P, attached as Exhibit 1 to Joint Facts (Westlands Converted Contract).

Article explains that the quantity of water a contractor will "actually receiv[e] . . . in any given Year is uncertain," in part because the quantity of water to be made available under the contract is subject to the requirements of state and federal law and the shortage provisions of Article 12.  Westlands Converted Contract, Exhibit 1 to Joint Facts, at Art. 3(a) & (3)(b).  Among the state laws that can restrict deliveries are CVP water right terms and conditions imposed by the State Water Resources Control Board.  Among the federal laws that can restrict deliveries is the ESA.  Article 12 (b) immunizes the United States against claims for shortages caused by, among others, current and future legal obligations.[5]  *Id.* at Art. 12(b).  State law and federal law requirements fall under this clause of the contract, which effectively places those legal obligations ahead of delivery of water to the contractors.

## IV.    CONVERSION OF THE CONTRACTS.

Plaintiffs attempt to make much of the undisputed fact that Reclamation and the contractors negotiated some aspects of the contact conversions,  *E.g.,* ECF 130 at 14.   What Plaintiffs ignore is that the scope of the negotiations was limited to the contractors' repayment obligations, the inclusion of Reclamation's current standard terms and conditions required nation-wide for all contracts, technical corrections, updates, and conforming edits to references to standard articles and administrative requirements—all matters not affecting how contractors receive water from the CVP.

Michael Jackson, the Reclamation official who oversaw the CVP-wide negotiation process, periodically submitted declarations in support of status reports filed in *N. Coast Rivers Alliance et al. v. U.S. Dept. of the Interior, et al.*, 1:16cv307, (E.D. CA) (*N. Coast*).  Those declarations addressed the progress of the negotiations and sometimes touched on their scope.  In one, Mr. Jackson explained

> [t]he WIIN Act contracts will not alter the maximum quantity of water to be

---

[5]     Article 17(a) provides an exception that allows the parties to seek relief from "opinion[s] or determinations[s] they believe to be 'arbitrary, capricious or unreasonable.'"

> delivered, or place of use designations already provided for under any respective contractors' existing water service contract. Each WIIN Act contract will also include the applicable updated standard articles terms and conditions as required by Reclamation's Directives and Standards, located at http://www.usbr.gov/recman/DandS.html, which help ensure consistent application of Reclamation policies. Except for conforming edits, I expect the applicable standard article terms and conditions to be the same for every WIIN Act contract.

*N. Coast*, ECF 106-1, ¶ 4.  In another, he made a point that is particularly relevant here: the contracts converted under the WIIN Act will have the same "water delivery provisions" as the existing contracts.  *N. Coast,* ECF 100, ¶ 3 (provided in ECF 130-1 at 82).

The resulting converted contracts confirm the limited scope of the negotiations.  As the representative agricultural and municipal and industrial contracts provided in the parties' Joint Statement of Undisputed Facts illustrate, none of the contract articles addressed to water service—delivery of water to the contractors—changed in a material way.  *Compare* Westlands Converted Contract, Ex. 1 to Joint Facts, at Arts. 3 (Water to be Made Available and Delivered to the Contractor); 4 (Time for Delivery of Water); 6 (Measurement of Water Within Contractor's Service Area); 9 (Sales, Transfer or Exchange of Water); and 12 (Constraints on the Availability of Water) *with* Westlands Existing Contract, Ex.  2 to Joint Facts, at Arts. 3, 4, 6, 9 and 12; *compare* El Dorado Irrigation District Converted Contract, Ex. 3 to Joint Facts, at Arts. 3, 4, 6, 9 and 12 *with* El Dorado Irrigation District Existing Contract*,* Ex. 4 to Joint Facts, at Arts. 3, 4, 6, 9 and 12.

### *Statutory Background*

## I.      THE NATIONAL ENVIRONMENTAL POLICY ACT.

NEPA is a purely procedural statute intended to protect the environment by fostering informed agency decision-making.  *Hapner v. Tidwell*, 621 F.3d 1239, 1244 (9th Cir. 2010).  Where NEPA applies, it requires that an environmental impact statement (EIS) be prepared for proposed "major Federal actions" which will "significantly affect[] the quality of the human environment."  42 U.S.C. § 4332(C); 40 C.F.R. § 1508.11.  An EIS furthers NEPA's purpose of informed decision

making by assessing the environmental impact of the proposed action and reasonable alternatives to the proposed action, including a "no action" alternative. *See* 42 U.S.C. § 4332(C)(iii); 40 C.F.R. §§ 1508.9(b), 1502.14(c).

However, NEPA is subject to a "rule of reason," which governs whether and to what extent its procedures apply. *See Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 767 (2004). Under the rule of reason, NEPA's procedures do not apply where an agency lacks meaningful control over the environmental effects of a proposed action. *Id.*; *Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1163 (9th Cir. 2020); *Sierra Club v. Babbitt,* 65 F.3d 1502, 1513 (9th Cir. 1995).

Because NEPA does not provide a private right of action, allegations that NEPA has been violated must be brought under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq. E.g., Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005).

## II.     THE ENDANGERED SPECIES ACT.

The ESA contains both substantive and procedural requirements designed to carry out the goal of conserving endangered and threatened species and the ecosystems on which they depend. 16 U.S.C. § 1531(b). Plaintiffs' claims implicate the procedural provisions of Section 7 of the ESA. As with NEPA, the procedural requirements of Section 7 do not apply when an agency lacks discretion over a proposed action. 50 C.F.R. § 402.03; *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007); *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1017–18 (9th Cir. 2012), *as amended* (Sept. 17, 2012) ("the ESA consultation requirement applies only if the agency has the discretionary control 'to inure to the benefit of a protected [listed] species.'") (quoting *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.,* 340 F.3d 969, 977 (9th Cir.2003)).

When Section 7 applies, it instructs an agency that is proposing to take an action that "may affect" species listed under the ESA must consult with the National Marine Fisheries Service or the Fish and Wildlife Service, depending on the species.  16 U.S.C. § 1536(a); 50 C.F.R. § 402.14(a). At the conclusion of formal consultation, the consulting agency issues a biological opinion as to whether the proposed action is likely to jeopardize the continued existence of any listed species or result in the destruction or adverse modification of critical habitat.  *Id.* at § 1536(b); 50 C.F.R. § 402.14(h).  If the proposed action is not likely to result in jeopardy, but may result in the incidental "take" of members of a listed species, the biological opinion must include an incidental take statement specifying reasonable and prudent measures to minimize the take and mandatory terms and conditions to implement the reasonable and prudent measures. *See id.* at § 1536(b)(4); 50 C.F.R. § 402.14(I). Any take in compliance with the terms and conditions of an incidental take statement "shall not be considered to be a prohibited taking of the species concerned." *Id.* at §1536(o)(2).

Section 11 of ESA provides that "any person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof."  *Id.* at § 1540(g)(1)(A).  No such citizen suit may be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation."[6]  *Id.* at § 1540(g)(2)(A)(i).

## III.    THE WATER INFRASTRUCTURE IMPROVEMENTS FOR THE NATION ACT.

As explained above, the WIIN Act altered the traditional "repayment" landscape by explicitly authorizing the conversion of existing contracts to allow for the prepayment of CVP-related construction debts that otherwise would have been paid to Reclamation over an extended period of time.  WIIN Act, § 4011(a).  To facilitate accelerated repayment, Congress mandated that

---

[6]      Plaintiffs provided notice of alleged violations on August 10, 2020.  Joint Facts at ¶ 16.

Reclamation, upon request by a contractor,

> *shall* convert any water service contract in effect on the date of enactment of this subtitle and between the United States and a water users' association to allow for prepayment of the repayment contract pursuant to paragraph (2) under mutually agreeable terms and conditions.

*Id.* at § 4011(a)(1) (emphasis added).[7]

Through the four numbered paragraphs of Section 4011(a), Congress provided detailed instructions on the process for converting contracts into prepayment contracts. Paragraph (1) requires Reclamation to convert contracts upon request by a contractor and explains the purpose for which contracts are to be converted: "to allow for prepayment of the repayment contract pursuant to paragraph (2)." WIIN Act, §4011(a)(1).

Paragraph (2) sets the parameters for prepayment of irrigation contracts. *Id.* at § 4011(a)(2). Sub-paragraph (A) allows irrigation contractors to choose between prepaying construction costs through either a "lump sum or [] accelerated prepayment of the remaining construction costs." It also specifies how Reclamation is to calculate the amount of construction costs each contractor owes. Sub-paragraph (B) provides the terms for repayment of construction costs or other capitalized costs incurred after the effective date of the existing contract. Sub-paragraph (C) precludes the use of power revenues for prepayment. Finally, Sub-paragraph (D) mandates that the converted contracts must continue "so long as the contractor pays applicable charges."

Paragraph (3) sets similar parameters for the prepayment of contracts for municipal, industrial and miscellaneous purposes. For those contracts, Congress required construction costs to be repaid in a lump sum, and again instructed that the converted contracts will "continue so long as the contractor pays applicable charges." *Id.* at § 4011(a)(3).

---

[7]     In addition, Congress gave incentive for irrigation water users to convert their contracts by exempting converted contracts from certain requirements of the Reclamation Reform Act, Pub. L. No. 97-293, 96 Stat. 1261 (1982), including the limitation on the number of acres that can be irrigated with water from Reclamation facilities (commonly referred to as the "excess land provisions."). WIIN Act, § 4011(c)(1).

Paragraph (4) imposes "conditions" on all contracts entered into pursuant to the WIIN Act. *Id.* at § 4011(a)(4). Most relevant here, Sub-paragraph (C) expressly instructs that the terms of the converted contracts "shall not modify other *water service*, repayment, exchange and transfer contractual rights between the water users' association [contractor], and the Bureau of Reclamation . . ."[8] *Id.* at § 4011(a)(4)(C) (emphasis added).

In addition to setting out the process and terms for converting contracts to enable prepayment, the WIIN Act includes general "savings language" which, *inter alia*, prevent the Act from being interpreted or implemented to modify any obligation under the CVPIA,[9] or to modify the applicability of the ESA, including the application of the smelt and salmonid biological opinions to the operation of the CVP. *Id.* at § 4012(a)(2) & (3). Another savings clause expressly prohibits Reclamation from interpreting or implementing the Act in a manner that "would cause *additional* adverse effects on listed fish species beyond the range of effects anticipated to occur to the listed fish species for the duration of the applicable biological opinion…" *Id.* at § 4012(a)(4) (emphasis added).

Finally, other provisions of the WIIN Act speak to endangered species and NEPA. Section 4010 sets out the "actions" Congress intends Reclamation to take "to benefit threatened and endangered species and other wildlife," including a detailed monitoring program. *See* WIIN Act § 4010(a)(1). Section 4007 instructs that if Reclamation uses funds derived from prepayment to finance new storage projects it "shall comply with all applicable environmental laws, including the National Environmental Policy Act." *Id.* at §§ 4007(h), (b)(4) & (c)(3).

---

[8]     The Act defines "water users' association" very broadly to include every possible form of contractor. *See* WIIN Act, § 4011(f)(5).

[9]     The Act creates an exception for the Stanislaus River predator management program. WIIN Act, § 4012(a)(2).

### Standard of Review

Because the ESA's citizen suit provision does not provide a standard of review, Plaintiffs'

ESA claims, like their NEPA claims, are reviewed under the APA's deferential standard of review.

*E.g.*, *Oregon Nat. Res. Council v. Allen*, 476 F.3d 1031, 1036 (9th Cir. 2007).  Under the APA, an

agency's action is presumed valid and can only be set aside "if the court determines that the action

was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *See*

*Karuk Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (*en*

*banc*) (quoting 5 U.S.C. § 706(2)(A)).

Plaintiffs suggest that Reclamation's interpretation of the WIIN Act is not entitled to the

deference accorded agency decisions by the APA because "[i]n the Ninth Circuit, '[a]n agency's

threshold decision that certain activities are not subject to NEPA is reviewed for reasonableness.'"[10]

ECF 130 at 10 (quoting *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1011 (9th

Cir. 2009)).  But unlike this case, *Lockyer* did not turn on an agency's interpretation of the scope of

its own discretion.  In cases where the application of NEPA or the ESA turn on an agency's

interpretation of the scope of its discretion under a statute it is charged with administering, the Ninth

Circuit has applied the APA's deferential arbitrary and capricious standard.  *Nat. Res. Def. Council*

*v. Houston*, 146 F.3d 1118, 1127 (9th Cir. 1998) ("the issue is whether the Bureau was arbitrary and

capricious"); *Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1919 (9th Cir. 2015) ("Because

Congress has "delegated administrative authority to the agency to interpret this statute," the

---

[10]     Plaintiffs also advance two arguments that *de novo* review should apply.  ECF 130 at 10.
Those arguments are easily disposed of.  Plaintiffs first argue that Reclamation has not made a
"NEPA related decision."  But Reclamation did make an "NEPA related decision."  As Plaintiffs
acknowledge, Reclamation determined that the WIIN Act did not accord the agency sufficient
discretion for NEPA to apply.  Plaintiffs then argue that review must be *de novo* because
Reclamation does not administer the ESA.  But Reclamation does administer Subtitle J of the WIIN
Act, and it is the agency's lack of discretion under the WIIN Act that was the basis for its conclusion
that the ESA did not apply.

deferential standard of *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842–45 (1984) applies.) (internal punctuation omitted); *Grand Canyon Trust*, 691 F.3d at 1016.

This Court should follow the Ninth Circuit and apply the arbitrary and capricious standard. *Cf. Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002) (because an agency "reached its interpretation through means less formal than 'notice and comment' rulemaking does not automatically deprive that interpretation of the judicial deference otherwise its due.").  At a minimum, Reclamation's interpretation of the WIIN Act merits "some deference whatever its form" under *Skidmore v. Swift & Co.,* 323 U.S. 134, 139–40 (1944), to the extent the interpretation is persuasive.  *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Off. of Admin. Hearings*, 758 F.3d 1162, 1173–74 (9th Cir. 2014) (quoting *United States v. Mead Corp.,* 533 U.S. 218, 234 (2001)).

While Reclamation's decision is entitled to deference, in some cases the question of the deference to be accorded an agency's decision has less importance, as this Court has recognized. *See Earth Island Inst. v. Nash*, No. 119CV01420DADSAB, 2020 WL 1936701, at *17 n.22 (E.D. Cal. Apr. 21, 2020) (declining to decide the applicable deference standard because "under any arguably applicable standard the outcome here remains the same.").  This is such a case, where Reclamation prevails regardless of the amount of deference given to its construction of the WIIN Act.  First, the plain language of the WIIN Act unambiguously shows that Reclamation lacked discretion to take action for the benefit of either listed species or the environment when converting the contracts.  Second, even if the WIIN Act did not speak directly to the scope of Reclamation's discretion in converting contracts, Reclamation's interpretation of the WIIN Act should be affirmed because it is both a "plausible construction of the statute," under the governing *Chevron* standard, and "reasonable," under the standard Plaintiffs urge.

*Argument*

## I. THE WIIN ACT DOES NOT PROVIDE RECLAMATION DISCRETION TO BENEFIT PROTECTED SPECIES OR THE ENVIRONMENT WHEN CONVERTING CONTRACTS UNDER THE WIIN ACT.

As Plaintiffs acknowledge, whether Reclamation was required to comply with both the consultation requirement of the ESA and the procedural requirements of NEPA when converting contracts under the WIIN Act turns on the extent of the discretion available to the agency. *See* ECF 130 at 14 & 22.   Plaintiffs reason that because the WIIN Act states that the contracts shall be converted "under mutually agreeable terms and conditions" and Reclamation held negotiation sessions with the contractors, it must follow that the WIIN Act vests Reclamation with sufficient discretion to act for the benefit of protected species or the environment.  The WIIN Act does not.

As with any case that turns on statutory interpretation, this Court's analysis necessarily begins with the plain language of the Act. *E.g., Rainero v. Archon Corp.*, 844 F.3d 832, 837 (9th Cir. 2016).  The plain language of Section 4011(a)(1) provides Reclamation discretion to negotiate some of the financial terms of repayment, but that is all.  And, even assuming *arguendo* that Reclamation had broader discretion, Section 4011(a)(4)(C) expressly deprives Reclamation of the discretion to benefit protected species or the environment by precluding the agency from modifying specific contractual rights, including the terms of water service, when converting the contracts.

### A. Through Section 4011(a)(1) Congress Provided Reclamation Limited Discretion to Negotiate Some of the Financial Terms of Repayment.

Section 4011(a)(1)of the WIIN Act requires the Secretary, "upon the request" of any water contractor, to convert water service contracts into repayment contracts "to allow for prepayment of the repayment contract pursuant to paragraph (2) under mutually agreeable terms and conditions." WIIN Act, § 4011(a)(1) (emphasis added).

Certainly nothing in the plain text of Section 4011(a), which does not mention either the ESA or NEPA, suggests that Congress intended Reclamation to consider the protection of listed species or

the environment as ends to be achieved when converting the contracts.  *Home Builders*, 551 U.S. at 671 (holding that Section 402 of the Clean Water Act did not require the EPA to consult because "[n]othing in the text of § 402(b) authorizes the EPA to consider the protection of threatened or endangered species as an end in itself when evaluating a transfer application.").  Nonetheless, Plaintiffs emphasize the "mutually agreeable terms and conditions" clause in Section 4011(a)(1) and argue that in *Natural Resources Defense Council v. Houston*, the Ninth Circuit held that statutory "language, *virtually identical to that at issue here*, gave Reclamation sufficient discretion to trigger application of the ESA," and by extension NEPA.[11]  ECF 130 at 15 & 23 (citing *Houston*, 146 F.3d 1118, 1123-1126 (9th Cir. 1998)) (emphasis supplied by Plaintiffs).  Plaintiffs' reliance on *Houston* is misplaced for several reasons.

First, Plaintiffs are simply wrong in claiming that the statutory language at issue in *Houston* is "virtually identical" to that at issue here because Plaintiffs entirely ignore the predicate to the phrase "under mutually agreeable terms and conditions."  *Cf. RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, 645 (2012) (a cardinal rule of statutory construction is that every clause and part of a statute should be given effect if possible).  That predicate explains Congress's purpose in mandating that contracts be converted upon request: "to allow for prepayment of the repayment contract pursuant to paragraph 2."  WIIN Act, § 4011(a)(1).

The "mutually agreeable terms and conditions" of the statute at issue in *Houston* were not so narrowly confined.  There, 43 U.S.C. § 485h-1(1) allowed Reclamation to enter into long term contracts that provided a right of renewal "under stated terms and conditions mutually agreeable to

---

[11]     The Ninth Circuit has long recognized that if an agency has sufficient discretion for the ESA to apply, it also has sufficient discretion for NEPA to apply.  *E.g., Marbled Murrelet v. Babbitt,* 83 F.3d 1068, 1075 (9th Cir.1996); *accord Grand Canyon Tr.*, 691 F.3d at 1022.

the parties," and provided no effective limit on the scope of those terms.[12]  Because the terms were unbounded, Reclamation had the discretion to take action that has traditionally implicated the ESA and NEPA, such as imposing "material changes" to water delivery.  *See Grand Canyon Tr.*, 691 F.3d at 1022.

In contrast, Paragraph (2) of Section 4011(a) demonstrates that rather than contemplating a wholesale rewriting of the contract terms, Congress intended Reclamation to take specific actions: negotiate *some* "mutually agreeable" *financial* terms for the prepayment of construction costs. Paragraph (2) allows Reclamation to agree to have the contractor's repayment obligation prepaid through either a lump sum payment or an accelerated repayment schedule, provided that all payments are made within three years. *Id.* at § 4011(a)(2).  Paragraph (2) also sets out the specific terms by which the repayment obligation will be determined. *Id.*  Thus, Reclamation had no discretion to negotiate the amount to be repaid; its discretion was limited to determining, within the limits set by the statute, the timing and means (lump sum or on a schedule) of the repayment.

Both logic and the statutory canon of *ejusdem generis*[13] counsel that the general reference to "mutually agreeable terms and conditions" is limited by the preceding specific reference "to allow for prepayment of the repayment contract pursuant to paragraph (2)," which grants Reclamation only limited discretion to agree to certain means of repayment.  *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001).  Accordingly, Section 4011(a)(1) vested Reclamation with limited discretion to negotiate the certain terms of prepayment within the confines set by Section 4011(a)(2).

---

[12]    The statute's sole requirement was that the agreed upon terms "provide for an increase or decrease in the charges set forth in the contract to reflect, among other things, increases or decreases in construction, operation, and maintenance costs and improvement or deterioration in the party's repayment capacity." *See id.*

[13]    "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.17 (1991).

An additional reason why Plaintiffs' attempt to rely on *Houston* must fail is because the statute at issue in *Houston* wholly lacked the sidebars on discretion imposed by Section 4011(a)(4) of the WIIN Act.  In *Houston*, the Ninth Circuit found the ESA applicable because Reclamation retained the discretion to "reduce the amount of water available for sale."  146 F.3d at 1126.  Here, as explained below, Congress expressly denied Reclamation the discretionary power to decrease the supply of water available to the contractors when it forbid Reclamation from changing contractual rights under the contracts, including the terms of water service.[14]  WIIN Act, § 4011(c)(4).

> **B.    The WIIN Act Deprives Reclamation of the Discretion to Benefit Protected Species or the Environment Because it Imposes an Overarching Requirement that the Contract Conversions Not Change Certain Contractual Rights Including the Terms of Water Service.**

Section 4011(a)(4) of the WIIN Act curtails any discretion available to Reclamation by imposing three specific "conditions" on "all contracts" entered into pursuant to the Act.  *Cf.* ECF 130 at 15 (acknowledging that "specific language" can curb an agency's discretion).  Most importantly here, Section 4011(a)(4)(C) mandates that the WIIN Act contracts shall

> not modify other *water service*, repayment, exchange and transfer contractual rights between the water users' association [Contractor], and the Bureau of Reclamation, or any rights, obligations, or relationships of the water users' association [Contractor] and their landowners as provided under State law.

WIIN Act, § 4011(a)(4)(C) (emphasis added).  The listed rights which cannot be modified in conversion encompass effectively all substantive terms of the contract other than the payment terms Congress expressly authorized to be changed, and certainly reach any contract terms relating to water service, the delivery of water to the contractors.  Because this condition deprives Reclamation of any discretion to act for the benefit of protected species or the environment it precludes the

---

[14]     Nonetheless, Congress's preservation of the terms of water service effectively *affirmed* Reclamation's ability to reduce the quantity of water actually delivered through implementation of the contracts pursuant to the existing smelt and salmonid Biological Opinions because the existing contracts included shortage provisions allowing Reclamation to reduce the quantity of water delivered when necessary to comply with a Biological Opinion.  WIIN Act, § 4012(a)(3).

application of the ESA's consultation requirement and NEPA.[15]  *E.g.*, *Turtle Island,* 340 F.3d at 977; *Grand Canyon Trust,* 691 F.3d at 1017.

In sum, this case is effectively no different than *Home Builders,* where the Supreme Court held the ESA inapplicable to actions "an agency is *required* by statute to undertake once certain specified triggering events have occurred." 551 U.S. at 669 (emphasis in original).  In *Home Builders*, the Supreme Court found that although the Clean Water Act provided the Environmental Protection Agency discretion to "exercise some judgment" on whether statutory criteria had been met, that discretion did not allow EPA to consider the protection of listed species when applying those criteria.  *Id.* at 671.  So too here.  The WIIN Act requires Reclamation to convert contracts once the "triggering event" of agreed upon financial terms of repayment occurs, and does not provide Reclamation discretion to use the contract conversion process as a means to benefit protected species or the environment.

### C.   The Savings Clauses in Section 4012 of the WIIN Act Do Not Vest Reclamation with Discretion to Benefit Protected Species or the Environment.

Plaintiffs' reliance on the savings clauses of Section 4012 to save their claims fails for two reasons.  First, as a threshold matter, the general savings clauses should not be interpreted to override the clear and specific language of Section 4011(a)(4)(C), which as discussed above, precludes Reclamation from using the contract conversion process as a means to benefit protected species and the environment by mandating that the WIIN Act contracts "not modify the water service, repayment, exchange and transfer" rights provided by the existing contracts.  *See e.g., City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018) (citing *Shomberg v. United States*, 348 U.S. 540, 547–48 (1955)) (savings clauses are not to be interpreted to override clear and

---

[15]    Put in different terms, because Congress forbid Reclamation from changing the status quo of water delivery under the contracts, it also forbid the application of NEPA and the ESA.  *See Grand Canyon Trust,* 691 F.3d 1022 (NEPA does not apply to annual plans because the plans do not change the status quo).

specific language in a statute).

Second, as explained below, Reclamation's interpretation of Section 4011 is readily harmonized with each of the savings clauses cited by Plaintiffs.  *See Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005) (statutes are to be construed "to fit, if possible, all parts into a harmonious whole") (citation and internal punctuation omitted).  Indeed, other provisions of the WIIN Act—wholly ignored by Plaintiffs—illustrate that the savings clauses were not intended to mandate the application of either the ESA's consultation provisions or NEPA to the contract conversions.

> **1.    The savings clauses do not demonstrate the Congress intended the ESA to apply to Reclamation's conversion of contracts pursuant to the WIIN Act.**

The WIIN Act includes savings language providing that the Act

> shall not be interpreted or implemented in a manner that … overrides, modifies, or amends the applicability of the Endangered Species Act of 1973 or the application of the smelt and salmonid biological opinions to the operation of the Central Valley Project ...

WIIN Act, § 4012(a)(3).  According to Plaintiffs, "*[t]his language cannot be any clearer*; the contract conversions must comply with the ESA."  ECF 130 at 24 (emphasis added).  But obviously the language could be much clearer.  Had Congress intended to require consultation over the contract conversions, it could have said so directly—as it did with the application of NEPA to the new storage projects authorized in Section 4007 of the Act.  *See* WIIN Act, § 4007(b)(4).

Rather than "expressly requir[ing] compliance" with the ESA's consultation requirement, *cf.* ECF 130 at 8, Congress merely directed that the WIIN Act could not to change "the *applicability* of the [ESA]."  WIIN Act, § 4012(a)(3) (emphasis added).  Reclamation has not interpreted the WIIN Act in a manner that modifies the applicability of the ESA.[16]  As discussed above, it was established

---

[16]    Plaintiffs similarly misunderstand Reclamation's interpretation of the WIIN Act when they suggest that Reclamation has construed the WIIN Act as repealing the ESA by implication.  *Cf.* ECF

law long before the passage of the WIIN Act that the ESA does not apply to actions over which an agency lacks sufficient discretion to act for the benefit of a protected species.

Plaintiffs' attempt to buttress their reading of the savings clause with this Court's decision in *California Natural Resources Agency v. Ross,* is misplaced for the same basic reason.  Plaintiffs note that in *Ross*, this Court observed that "nothing in the WIIN Act modifies (or even bends) any of Federal Defendants' obligations under the ESA."  ECF 130 at 24 (citing *Ross,* No. 1:20-CV-00426 and 00431, 2020 WL 2404853 at *20 (E.D. Cal., May 11, 2020)).  But that observation does not mean the ESA's consultation requirement is applicable here because, again, a federal agency's "obligations under the ESA" arise only when a statute grants an agency sufficient discretion to act for the benefit of protected species.  *E.g. Grand Canyon Tr.,* 691 F.3d at 1017–18.

Plaintiffs further attempt to rely on the savings language at §4012(a)(4), which also addresses listed species but, like Section 4012(a)(3) discussed above, again fails to instruct Reclamation to consult over the contract conversions.  *Cf.* ECF 130 at 17.  Section 4012(a)(4) does no more than reiterate Congress's intent to maintain, for purposes of contract conversions, the operational *status quo* set by the existing Biological Opinions.  It prevents Reclamation from interpreting the WIIN Act in a manner that

> would cause *additional* adverse effects on listed fish species beyond the range of effects anticipated to occur to the listed fish species for the duration of the applicable biological opinion, using the best scientific and commercial data available …

WIIN Act, § 4012(a)(4) (emphasis added).

Finally, Plaintiffs attempt to create a consultation requirement from the savings clauses referencing the ESA is undone by Section 4010 of the Act—unmentioned by Plaintiffs—which sets out a long list of specific "actions" Congress intended to be taken "to benefit threatened and

---

130 at 24 (citing *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189-90 (1978)).  The WIIN Act does not repeal the ESA.  Rather, because the WIIN Act tightly limits Reclamation's discretion in converting contracts, the ESA's consultation requirement is inapplicable.

endangered species and other wildlife."  Conspicuously absent from that list is consultation pursuant to the ESA when converting the contracts.  *See* WIIN Act, § 4010.  Here again, both logic and canons of statutory construction undermine Plaintiffs' argument.  Because Congress specifically listed the actions it intended to be taken to benefit protected species, it follows that Congress did not intend Reclamation to use the contract conversion process as a means to benefit protected species. *Indian Hills Holdings, LLC v. Frye*, 337 F.R.D. 293, 306 (S.D. Cal. 2020) (applying the interpretive canon *expression unis est exclusion alterius*—expressing one item of an associated group or series excludes another left unmentioned).

### 2. The savings clauses do not demonstrate that Congress intended NEPA to apply to Reclamation's conversion of contracts pursuant to the WIIN Act.

The plain language of the WIIN Act demonstrates an obvious point—Congress is well aware of how to expressly require the application of NEPA.  *See* WIIN Act, § 4007(b)(4) (requiring compliance with "all applicable environmental laws, including [NEPA] when participating in a federally owned storage project under the Act).  The fact that Congress did not condition Section 4011 contract conversions on NEPA compliance is strong evidence that Congress did not intend NEPA to apply.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

#### a.   The savings clause referencing the CVPIA does not require the application of NEPA.

Despite Congress having expressly applied NEPA in Section 4007, but not in Section 4011, Plaintiffs argue Congress implicitly applied NEPA to the Section 4011 contract conversion process through savings language which speaks to the WIIN Act's relationship with the CVPIA:

> This subtitle shall not be interpreted or implemented in a manner that … affects or modifies any obligation under the Central Valley Project Improvement Act (Pub.

L. No. 102-575; 106 Stat. 4706), except for the savings provisions for the Stanislaus River predator management program expressly established by section 11(d) and provisions in section 11(g)

130 ECF at 16 (quoting WIIN Act, § 4012(a)(2).   As Plaintiffs correctly point out, one of the many obligations imposed on Reclamation by the CVPIA is to conduct environmental review for the renewal of any existing "long-term" CVP contracts.  ECF 130 at 16 (citing Pub. L. No. 102-575, § 3404(c)(1), 106 Stat. 4600, 4708-09).  Plaintiffs thus read the WIIN Act's savings language to require Reclamation "to complete 'appropriate environmental review' of CVP contracts *before renewal*."[17]  *Id.* (emphasis added).

Plaintiffs' attempt to use the CVPIA as a means to bootstrap NEPA into the contract conversion process fails because the mandatory contract conversions under the WIIN Act are not "renewals" of existing contracts under the CVPIA.  By its plain terms, subsection (c) of Section 3404 of the CVPIA applies only to the renewal of existing long-term contracts for another term of up to 25 years.  CVPIA, Pub. L. No. 102-575, § 3404(c), 106 Stat. 4600 (1992) (authorizing Reclamation to renew "existing [CVP] long-term repayment or water service contract[s] … for a period of 25 years and … successive periods of up to 25 years each.").  Here, rather than renewing existing contracts, Reclamation, acting at the request of the contractors, converted them to create a prepayment contract under the authority of the WIIN Act.  Further, the converted contracts are not for a 25-year term (or less), but instead last so long as the contractor continues to pay applicable charges.  In short, the CVPIA and the WIIN Act are different statutes through which Congress imposed different obligations on Reclamation.  Therefore, the requirements imposed by the CVPIA when renewing a contract do not apply to Reclamation's conversion of contracts under the WIIN

---

[17]     Plaintiffs also emphasize that both Section 102(2) of NEPA and Ninth Circuit precedent direct that agencies are to comply with NEPA "to the fullest extent possible."  ECF 130 at 15 (citing *Forelaws on Board v. Johnson*, 743 F.2d 677, 683 (9th Cir. 1984)).  Here, however, Congress has effectively defined the extent to which NEPA can be applied through the limitations on Reclamation's discretion imposed by both Section 4011(a)(1) and Section 4011(a)(4)(C).

Act.

### b. The savings clause referencing State law does not require the application of NEPA.

Consistent with the instruction in Section 8 of the 1902 Reclamation Act requiring Reclamation projects to be operated in conformity with state law, 43 U.S.C. § 383, Congress instructed that the WIIN Act is not to be interpreted or implemented in a manner that "preempts or modifies any obligation of the United States to act in conformance with applicable State law, including applicable State water law." WIIN Act, § § 4012(a)(1). Plaintiffs do *not* suggest that Reclamation has somehow construed the WIIN Act in a manner that does not conform with state law. Instead, Plaintiffs suggest that this Court should transform an EIS under NEPA's EIS from a document intended to address environmental impacts, 42 U.S.C. § 4332(C), to a means to "determine whether contract terms and conditions conform with State law, including State water law." ECF 130 at 16-17. That suggestion cannot be condoned because NEPA was not intended to have an agency "assess *every* impact or effect of its proposed action, but only the impact or effect on the environment." *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 772 (1983) (emphasis in original).

Even if Plaintiffs' desire to transform an EIS into a mechanism for examining state law had some support in NEPA, it still would have to be rejected because it asks this Court to stand a century of Reclamation law on its head by having Reclamation usurp the State's role in determining what uses of water are "reasonable and beneficial" under the California Constitution. *Cf.* ECF 130 at 17 (suggesting an EIS would enable Reclamation to determine whether California's constitutional prohibition on waste and unreasonable use of water use has been met) (citing Cal. Const. art. X, § 2). In short, the plain text of Section 4012(a)(1) merely reiterates a deference to state law that has guided Reclamation law for more than a century. There is no basis to use that language to expand the purpose of an EIS or upend the State's role in determining what uses of water are beneficial that

Reclamation law has recognized for more than a century.

In sum, all of the savings clauses cited by Plaintiffs do what savings clauses are generally intended to do—preserve the *status quo*.  In any event, even assuming *arguendo* the savings clauses could be interpreted more broadly, they are still subject to the conditions imposed by Section 4011(a)(4) of the WIIN Act, which expressly preclude Reclamation from altering a broad variety of existing contractual rights, including the terms of water service.  Simply put, regardless of how the savings clauses are interpreted, the plain language of the WIIN Act precludes the application of either NEPA or the consultation requirements of the ESA to the contract conversions mandated by the WIIN Act.

## II.  EVEN IF THE COURT CONCLUDES THE PLAIN LANGUAGE OF THE STATUTE DOES NOT DEFINE THE SCOPE OF RECLAMATION'S DISCRETION, RECLAMATION'S INTERPRETATION OF THE STATUTE SHOULD BE AFFIRMED.

Even if the Court were to conclude that the WIIN Act does not clearly express Congress's intent regarding the scope of Reclamation's discretion in converting contracts under the WIIN Act, Reclamation's interpretation of the WIIN Act should be affirmed because it is both "based on a permissible construction of the statute," *Chevron*, 467 U.S. at 843, and reasonable.

First, as explained above, Reclamation's interpretation of its discretion under the WIIN Act comports with the plain language of the Act and allows every provision of the statute to be given effect and harmonized.  *See Am. Bankers Ass'n*, 412 F.3d at 1086.  Most importantly, Reclamation's construction of the WIIN Act is consistent with Section 4011(a)(4) of the WIIN Act, which speaks directly to the scope of Reclamation's discretion under the WIIN Act and mandates that the converted contracts cannot change the water service provided under the former contracts.  *See Alaska Wilderness*, 788 F.3d at 1221 (finding it significant that agency's interpretation was based on provisions that spoke directly to the question at issue).

Second, Reclamation's interpretation is entirely consistent with the overall "statutory

scheme," which expressly requires the conversion of contracts to change the terms of repayment, but does not expressly speak to modifying the contracts to achieve environmental benefit.  Similarly, Reclamation's interpretation does not conflict with any clearly expressed intent of Congress.  *Id.*

Finally, Reclamation's interpretation is both plausible and reasonable because when Congress wanted NEPA to be applied, or to see specific actions to be taken to benefit protected species, it said so directly.  WIIN Act, §§ 4007(h) and 4010.  In contrast, the provisions of the Act setting out the process and terms for converting contracts do not even offer a hint that Congress intended NEPA or Section 7 of the ESA to apply to that process.

### Conclusion

The unambiguous, plain language of the WIIN Act limits Reclamation's discretion when converting water service contracts into prepayment contracts.  Section 4011(a)(2) grants Reclamation only the discretion to negotiate mutually agreeable financial terms.  Moreover, the conditions of Section 4011(a)(4)(C) preclude Reclamation from altering the preexisting terms of water delivery.  Given these clear statutory directives, Reclamation lacked discretion to negotiate additional terms that could benefit either protected species or the environment.  Because Reclamation could not do so, environmental analysis under NEPA or consultation under the ESA would have been superfluous and Federal Defendants are entitled to summary judgment.

Dated: Oct. 5, 2021

Respectfully submitted,

TODD KIM
Assistant Attorney General

*/s/ David W. Gehlert*
DAVID W. GEHLERT
Trial Attorney
U.S. Department of Justice

Attorneys for Federal Defendants