John Buse (SBN 163156)
Ross Middlemiss (SBN 323737)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800, Oakland, CA 94612
Tel: 510-844-7100
Fax: 510-844-7150
Email: jbuse@biologicaldiversity.org
        rmiddlemiss@biologicaldiversity.org

Attorneys for Plaintiff Center for Biological Diversity

E. Robert Wright (SBN 51861)
LAW OFFICE OF E. ROBERT WRIGHT
909 12th Street, Suite 202
Sacramento, California 95814
Tel: (916) 557-1104
Fax: (916) 557-9669
Email: bwrightatty@gmail.com

Attorney for Plaintiffs Restore the Delta and
Planning and Conservation League

Adam Keats (SBN 191157)
LAW OFFICE OF ADAM KEATS, PC
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
Tel: (415) 430-9403
Email: adam@keatslaw.org

Attorney for Plaintiffs Restore the Delta and
Planning and Conservation League

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY,
RESTORE THE DELTA and PLANNING AND
CONSERVATION LEAGUE,

       Plaintiffs,

       v.

UNITED STATES BUREAU OF
RECLAMATION, et al.

       Defendants.

Case No. **1:20-cv-00706-DAD-EPG**

**PLAINTIFFS' COMBINED BRIEF IN REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Noticed Date:  February 1, 2022
Noticed Time: None
Courtroom: 5, 7th Floor-Fresno
Judge: Hon: Dale A. Drozd

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................7

ADDITIONAL FACTUAL AND LEGAL BACKGROUND ....................................8

   I.  RECLAMATION EXERCISED ITS DISCRETION TO MATERIALLY CHANGE THE CONTRACTS ABSENT COMPLIANCE WITH NEPA AND THE ESA ............8

   II. PERTINENT WIIN ACT AND CVPIA PROVISIONS ..............................12

      A. WIIN Act Provisions ......................................................13

      B. CVPIA Provisions..........................................................15

STANDARD OF REVIEW....................................................................................17

ARGUMENT.......................................................................................................20

   I.  THE WIIN ACT, THE CVPIA AND NINTH CIRCUIT DECISIONS REQUIRED RECLAMATION TO COMPLY WITH NEPA AND THE ESA BEFORE CONVERTING THE CONTRACTS...................................................................20

      A. Under Reclamation's Interpretation of WIIN Act Section 4011(a)(4)(C), It Cannot Eliminate the Previous Contracts' Requirements to Comply with NEPA and the ESA before Entering into the Contracts ............................................20

      B. The Requirements for NEPA and ESA Compliance Before Entering into the Contracts are Established by Reclamation Law .........................................21

         1. The Ninth Circuit Held an EIS and ESA Consultation are Required Before Entering into CVP Contracts...................................................................21

         2. The WIIN Act Preserved the CVPIA EIS and ESA Consultation Requirements for CVP Contracts....................................................................21

         3. Congress Knew How to, and Did, Make Specific Exceptions to CVPIA Requirements Meaning NEPA and ESA Compliance are Not Excepted ...........23

      C. The WIIN Act Had No Purpose to Eliminate NEPA and ESA Review of CVP Water Export Contracts ...................................................................24

      D. The Titles and Headings in the Acts Further Show the Federal Defendants' Arguments Lack Merit.......................................................................25

      E. Reclamation is Trying to Amend WIIN Act Section 4011(a)..............................26

      F. WIIN Act Section 4011(a)(4)(C) Does Not Remove Discretion to Make Changes in the Contracts Following NEPA and ESA Review ..........................................27

         1. The Previous Contacts Required Environmental Documentation and ESA Consultations...............................................................................27

         2. Congress did Not Repeal the CVPIA provisions Requiring NEPA Analysis and ESA Consultations prior to Entering into CVP contracts .............................27

         3. That WIIN Act Section 4011 (a)(4)(C) Restricts Modifying Other Contracts, Not the Converted Contracts, is Consistent with Everything That Has Actually Been Done by Reclamation.................................................................28

   II. RECLAMATION'S ARGUMENTS LACK MERIT ....................................30

      A. WIIN Act Section 4011(a)(1) Did Not Confine Reclamation's Discretion to Only Negotiating Financial Terms of Repayment.............................................30

      B. The WIIN Act Did Not Deprive Reclamation of Discretion to Benefit Protected Species or the Environment ..................................................................31

      C. The WIIN Act Savings Clauses Retain Reclamation's Discretion to Benefit Protected Species and the Environment ....................................................32

         1. The Savings Clauses Demonstrate Congress Intended the ESA to Apply to Reclamation's Conversion of Contracts Pursuant to the WIIN Act ...................32

         2. The Savings Clauses Demonstrate Congress Intended NEPA to Apply to Reclamation's Conversions of Contracts Pursuant to the WIIN Act.................33

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

a. .......The WIIN Act Provisions Retaining CVPIA Obligations Do Require the Application of NEPA.................................................................................................33

b. The Savings Clause Referencing State Law Does Require the Application of NEPA.................................................................................................33

D. Reclamation's Interpretation of the Statute should Not be Affirmed .................35

III. THE CONTRACTORS' ARGUMENTS LACK MERIT...........................................37

A. The Ninth Circuit Has Held that Entering into CVP Contracts Requires NEPA Compliance and ESA Consultations.........................................................37

B. The WIIN Act Contract Conversions Do Result in an "Irreversible and Irretrievable Commitment" of Resources.....................................................39

C. The Contract Conversions Constitute "Agency Action" under the ESA............40

D. Plaintiffs are Entitled to the Relief Sought ...............................................40

CONCLUSION ...........................................................................................42

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.*, 340 U.S. 593 (1951) ...........26
*Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089 (9th Cir. 2008) .......................................36

4
*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993)...................41
*Almendarez-Torres v. U.S.*, 523 U.S. 224 (1998).......................................................25, 26

5
*Ariz. State Bd. For Charter Schools v. U.S. Dept. of Educ.* 464 F.3d 1003 (9th Cir. 2006).........26
*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988)..................................................36

6
*BP P.L.C. v. Mayor and City Council of Balt.*, 141 S. Ct. 1532 (2021).................................32
*Brown & Williamson Tobacco Corp.*, 529 U.S. at 159 (2000)...........................................36

7
*Cal.* ex rel. *Lockyer v. U.S. Dep't. of Agric.*, 575 F.3d 999 (9th Cir. 2009)...........................19

8
*California Natural Resources Agency v. Ross* No. 1:20-CV-00426, 2020 WL 2404853,
    at *20 (E.D. Cal., May 11, 2020) .........................................................................33, 41

9
*Central Sierra Environmental Resource Center v. U.S. Forest Service*, 916 F.Supp.2d
    1078 (E.D. Cal. 2013) .......................................................................................42

10
*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.837 (1984)........18, 35

11
*City & County of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018)...............................32
*Danielson v. Inslee*, 945 F.3d 1096 (9th Cir. 2019)......................................................37

12
*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000).....................................33
*Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776 (1976) .........................17

13
*Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008 (9th Cir. 2012).................32
*High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630 (9th Cir. 2004)...................................19

14
*Home Builders v. Defs. Of Wildlife*, 551 U.S. 644 (2007).................................................31
*Jones v. Gordon*, 792 F.2d 821 (9th Cir. 1986).............................................................17

15
*Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1066 (9th Cir. 2012)......19, 20, 21, 39

16
*Kimble v. Marvel Ent, LLC*, 576 U.S. 446 (2015).......................................................37, 38
*King v. Burwell*, 576 U.S. 473 (2015)......................................................................36

17
*La. Pub. Svc. Comm'n v. FCC*, 476 U.S. 355 (1986).....................................................35
*Lagos v. United States*, 138 S. Ct. 1684 (2018)...........................................................29

18
*Mastro Plastics Corp. v. Nat'l Lab. Rel. Bd.*, 650 U.S. 270 (1956)....................................24

19
*MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218 (1994) ............................................36
*N. Alaska Env't Ctr. v. U.S. Dep't of Interior*, 983 F.3d 1077 (9th Cir. 2020) ............................19

20
*N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929 (2017) ....................................................24
*Nat. Res. Def. Council v. Houston*, 146 F.3d 1118 (9th Cir. 1998)..................................passim

21
*Nat. Res. Def. Council v. Jewell*, 749 F.3d 776 (9th Cir. 2014).........................................39

22
*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007)...............................18
*National Audubon Society v. Superior Court*, 33 Cal.3d 419 (1983).....................................34

23
*Northcoast Env't Ctr. v. Glickman* 136 F.3d 660 (9th Cir. 1998).........................................19
*Nw. Forest Res. Council v. Pilchuck Audubon Soc'y*, 97 F.3d 1161 (9th Cir. 1996)..................17

24
*Oregon Natural Resources Council v. Allen*, 476 F.3d 1031 (9th Cir. 2007)...........................19
*Pit River Tribe v. U.S. Forest Service*, 469 F.3d 768 (9th Cir. 2006) ..................................39

25
*PPL Mont., LLC v. Montana*, 565 U.S. 576 (2012).......................................................34
*Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158 (1989)............................................18

26
*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) .........................30
*Rodriguez v. United States*, 480 U.S. 522 (1987)..........................................................17

27
*San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216 (9th Cir. 2017).................17

28
*Sturgeon v. Frost*, 139 S. Ct. 1066 (2019).................................................................34
*Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978)........................................................17, 35

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F. 3d 969 (9th Cir. 2003) .................................................................................................................................21, 39
*United States v. Atl. Rsch. Corp.*, 551 U.S. 128 (2007)...............................................35
*United States v. Mead Corp.*, 533 U.S. 218 (2001) ....................................................19
*Westlands Water Dist. v. Nat. Res. Def. Council*, 43 F.3d 457 (9th Cir. 1994) ............17
*Westlands Water Dist. v. U.S. Dep't of Interior*, 275 F.Supp.2d 1157 (E.D. Cal. 2002) ............18
*Whitman v. Am. Trucking Ass'ns*,  531 U.S. 457 (2001) .............................19, 25, 35
*Yates v. United States*, 574 U.S. 528 (2015)..........................................................25, 26

**Statutes**

Central Valley Project Improvement Act (CVPIA), Pub. L. No. 102-575, 106 Stat. 4706 ...........7
CVPIA § 3402 ......................................................................................................15, 24
CVPIA § 3404 ......................................................................................................15, 25
CVPIA § 3404(a)(1) .....................................................................................................16
CVPIA § 3404(c)(1) ...............................................................................16, 21, 22, 38
CVPIA § 3404(c)(2) ...............................................................................................16, 22
CVPIA § 3406(b)(1) .....................................................................................................17
CVPIA § 3407(d) .........................................................................................................14
CVPIA §§ 3406(b)-(d) .................................................................................................16
Sacramento-San Joaquin Delta Reform Act of 2009, [Water Code] §§ 85000 et seq .................34
Water Code § 85021 ...............................................................................................34, 41
Water Code § 85023 .....................................................................................................34
Water Infrastructure Improvements for the Nation (WIIN Act), Pub. L. No. 114-322, 130 Stat. 1851 ................................................................................................................................7
WIIN Act § 4007 ..........................................................................................................13
WIIN Act § 4007(b)(1) .................................................................................................14
WIIN Act § 4007(h) ...............................................................................................14, 24
WIIN Act § 4011 (a) ..............................................................................................22, 25
WIIN Act § 4011(a)(1) ..........................................................................................15, 26
WIIN Act § 4011(a)(4) .................................................................................................13
WIIN Act § 4011(a)(4)(C) ....................................................................................passim
WIIN Act § 4011(c)(1) .........................................................................................23, 28
WIIN Act § 4011(d) .....................................................................................................25
WIIN Act § 4011(d)(4) ........................................................................................passim
WIIN Act § 4011(e) .....................................................................................................13
WIIN Act § 4011(e)(2) ..........................................................................................13, 24
WIIN Act § 4012 ......................................................................................15, 32, 37
WIIN Act § 4012 11(d) .................................................................................................14
WIIN Act § 4012 11(g) .................................................................................................14
WIIN Act § 4012(a)(1) ..........................................................................18, 23, 33
WIIN Act § 4012(a)(2) ........................................................................................passim
WIIN Act § 4012(a)(3) ..........................................................................................22, 35
WIIN Act §§ 4012(a)(1)-(3) .........................................................................................29
WIIN Act §§ 4012(a)(2)-(3) .........................................................................................35

**Regulations**

16 U.S.C. [Endangered Species Act] §§ 1531 et seq ...............................................7, 14, 16, 22
42 U.S.C. [NEPA Guidelines] §§ 4321 et seq............................................................7
NEPA Guidelines § 4332 ..............................................................................................17

**Other**

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

*Black's Law Dictionary* (10th ed. 2014) ...................................................................................22

*Oxford Dictionary of English* (3rd ed. 2015) .........................................................................22

Statement on Signing the Water Infrastructure Improvements for the Nation Act, 2016 Daily
    Comp. Pres. Doc. 12  (Dec. 16, 2016), https://www.govinfo.gov/content/pkg/DCPD-
    201600852/html/DCPD- 201600852.htm. ..............................................................................37

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

**INTRODUCTION**

The key defense asserted by the Federal and Contractor Defendants in their briefs is meritless. According to them, the Water Infrastructure Improvements for the Nation (WIIN) Act, Pub. L. No. 114-322, 130 Stat. 1851, *repealed by implication* the requirements that Central Valley Project (CVP) contracts with the Bureau of Reclamation (Reclamation) to export about 3 million acre-feet of water per year from the watershed for the impaired San Francisco Bay-Delta Estuary (Delta) be preceded by analysis of environmental impacts and by consultations with fish and wildlife agencies. They assert this defense even though worsening climate change is increasing droughts and their severity and reducing freshwater runoff and river flows; even though toxic algae blooms are increasing in the Delta; even though climate change is increasing sea level rise and thus salinity intrusion into the Delta; even though technological innovations such as recycling and water conservation are reducing the needs for water exports; and even though the contracts Reclamation has been converting are as long as long-term can be—they are forever. The laws they claim to have been repealed, insofar as they require environmental review and consultations over the impacts on endangered and threatened fish species before Reclamation enters into the contracts, include the Central Valley Project Improvement Act (CVPIA), Pub. L. No. 102-575, 106 Stat. 4706, the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., and the Endangered Species Act (ESA), 16 U.S.C. § 1531 et seq.[1]

Reclamation wrongly claims that one subsection of the WIIN Act, section 4011(a)(4)(C), eliminated its discretion to make changes in the contracts and "none of the contract articles addressed to water service—delivery of water to the contractors—changed in a material way." In fact, the previous contracts expressly *required* environmental documentation and ESA consultation prior to execution of a long-term contract. Reclamation *changed* the contracts by *eliminating* those requirements.

Reclamation makes these claims of no discretion, no NEPA, and no ESA even though the purpose of the WIIN Act sections it relies upon was simply to facilitate accelerated repayments for funding federally-owned storage projects. Reclamation makes these claims even though one section of the WIIN Act states its implementation shall not alter, except as expressly provided, any obligations under the reclamation law, which includes the CVPIA. Reclamation makes these

---

[1] The page limit for the text of this brief is equal to the total pages of text of Federal Defendants' and Contractor Defendants' briefing. Order for Briefing Schedule, 9:15-20, **ECF 138**. Those two

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

claims even though another section of the WIIN Act includes savings language that requires the Act not be interpreted or implemented in a manner that affects or modifies any obligation under the CVPIA (except for one express exception) nor should it be interpreted to override, modify, or amend the applicability of the ESA. Reclamation makes these claims even though the CVPIA requires appropriate environmental review before Reclamation enters into long-term contracts. Reclamation makes these claims even though the Ninth Circuit has held NEPA's Environmental Impact Statement (EIS) requirement and the ESA's consultation requirement apply to Reclamation's entering into CVP contracts.

It is one thing for the Contractors to make such claims. Parties benefitted by government decisions, no matter how bad the decisions might be for the public interest and a public trust resource, understandably want those benefits. It is a different thing for Reclamation to thoughtlessly—and unlawfully—commit a vital public resource to one group of interests in perpetuity. Reclamation has failed as a steward, as a trustee, to think first and only act later before signing away the public trust resource of 3 million acre-feet of water per year forever.

## ADDITIONAL FACTUAL AND LEGAL BACKGROUND
### I. RECLAMATION EXERCISED ITS DISCRETION TO MATERIALLY CHANGE THE CONTRACTS ABSENT COMPLIANCE WITH NEPA AND THE ESA

Reclamation decided that the WIIN Act did not provide it with sufficient discretion to require environmental review under NEPA or consultation under Section 7 of the ESA when it converted CVP contracts into repayment contracts. J. Statement of Undisputed Facts ¶ 3, **ECF 143** [hereinafter Joint SUF]. Consequently, Reclamation did not comply with NEPA. Reclamation did not prepare or issue an Environmental Assessment (EA) on the conversion of the contracts, nor did it make a finding of no significant impact or issue a notice of categorical exclusion that would except it from NEPA's requirements. Joint SUF ¶ 8. Reclamation did not prepare an EIS on the conversion of the contracts. Joint SUF ¶ 7. Reclamation has not published a NEPA notice of intent in the Federal Register with respect to the CVP contracts it converted. Joint SUF ¶ 9.

Nor did Reclamation comply with the ESA. Reclamation did not initiate and complete consultation with the U.S. Fish and Wildlife Service (FWS) or the National Marine Fisheries Service (NMFS) under the ESA on the conversions of the contracts. Joint SUF ¶ 10. Reclamation

---

briefs total 41 pages exclusive of caption, table of contents, and table of authorities pages. This brief has 36 pages of text.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

did not prepare a Biological Assessment under the ESA on the conversion of the contracts. Joint SUF ¶ 11.

Reclamation claims WIIN Act section 4011(a)(4)(C) means it cannot modify "substantive terms of the contract other than the payment terms" in converting the contracts. Fed. Defs' Mem. In Resp. to Pls.' Mot. for Summ. J. and in Supp. of Cross-Mot. for Summ. J. 23-24, **ECF 145** [hereinafter Federal Brief].[2] Instead, Federal Defendants claim,

> *the scope of the negotiations was limited to the contractors' repayment obligations*, the inclusion of Reclamation's current standard terms and conditions required nation-wide for all contracts, tactical corrections, updates, and conforming edits to references to standard articles and administrative requirements—all matters not affecting how contractors receive water from the CVP. Federal Brief 12:15-19.

Federal Defendants also *wrongly* claim, "none of the contract articles addressed to water service—delivery of water to the contractors—changed in a material way." Federal Brief 13:11-12.

However, the contract drafting considerations show that Reclamation had discretion to negotiate agreeable terms. Article 46 of Westlands' converted contract states under the heading "CONTRACT DRAFTING CONSIDERATIONS,"

> *This amended Contract has been negotiated and reviewed by the parties hereto*, each of whom is sophisticated in the matters to which this amended Contract pertains. *The double-spaced Articles of this amended Contract have been drafted, negotiated, and reviewed by the parties, and no one party shall be considered to have drafted the stated Articles.* Single-spaced Articles are standard Articles pursuant to Bureau of Reclamation policy.

Joint SUF Ex. 1, at 88 (emphasis added).

Discrepancies between the double-spaced, negotiated terms of the previous and converted contracts reveal that Reclamation *did* change the contracts in material ways.

The material changes made by Reclamation to Articles 2(a), (b), 3(e), and 26 when it converted the contracts included: *eliminating* the requirement for prior completion of any necessary environmental documentation; *eliminating* the requirement for prior ESA consultation; *only* requiring prior *development of*, as opposed to *implementing of*, a water conservation plan. Plaintiffs' Supplemental Statement of Undisputed Facts ¶¶ 3-15 [hereinafter Plaintiffs' SUF]. Reclamation also eliminated detailed requirements and procedures pertaining to pumping facilities that had been in Article 28 of the previous contracts.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

The previous contracts required ESA review. Plaintiffs' SUF ¶ 4. The first sentence of Article 3(e) of the two *previous* contracts that are exhibits to the Joint SUF stated,

> The Contractor shall comply with requirements applicable to the Contractor in biological opinion(s) *prepared as result of a consultation regarding the execution of this Contract* undertaken pursuant to Section 7 of the Endangered Species Act of 1973 (ESA), as amended, that are within the Contractor's legal authority to implement. Joint SUF Ex. 2, at 120. (emphasis added).

The ESA consultation requirement was *eliminated* from the converted Westlands contract, contrary to Reclamation's claim that it did not and could not modify the provisions of the pre-existing contracts when it converted the contracts. Plaintiffs' SUF ¶ 5.

The previous Westlands contract also required NEPA review. Plaintiffs' SUF ¶¶ 8, 10-12. The second sentence of Article 2(a) of the previous Westlands contract stated:

> Except as provided in subdivision (b) of this Article, *until completion of all appropriate environmental review,* and provided that the Contractor has complied with all the terms and conditions of the interim renewal contract in effect for the period immediately preceding the requested successive interim renewal contract, *this Contract* will be renewed, upon request of the Contractor, for successive interim periods each of which shall be no more than two (2) Years in length.

Joint SUF Ex. 2, at 115 (emphasis added). The NEPA environmental review requirement was *eliminated* from the converted Westlands contract contrary to Reclamation's claim that it did not and could not modify the provisions of the pre-existing contracts when it converted the contracts. Plaintiffs' SUF ¶¶ 9, 13.

Article 26(a) of the previous contracts required that "[p]rior to the delivery of water provided … pursuant to *this Contract*, the Contractor *shall be implementing* an effective water conservation and efficiency program … ." Plaintiffs' SUF ¶ 14 (emphasis added). That requirement was modified in Article 25 (article number changed) to only requiring that "Prior to the delivery of water provided … pursuant to *this Contract*, the Contractor *shall develop* a water conservation plan … ." Plaintiffs' SUF ¶ 15 (emphasis added).

Pertinent provisions of these changes in the contracts are set out in more detail in Plaintiffs' SUF ¶¶ 3-15. It should also be noted that there are differences in the previous contracts because Westlands was at all times operating under interim renewal contracts, whereas the El Dorado Irrigation District was operating under a long-term contract. Interestingly, the converted El Dorado Irrigation District contract *retained* the ESA consultation requirement. **ECF**

---

[2] All citations to page numbers of the Federal Brief, Joint SUF Exhibits, or other previously filed papers in this action are to the file stamped page numbers at the ***top*** of the filed document.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

**143-1, Joint SUF** Ex. 3, at 16. Despite that, Reclamation did not initiate ESA consultation or prepare a Biological Assessment on the conversion of that contract. Joint SUF ¶¶ 10, 11.

The contracts in question encompass a huge amount of water. The 67 contracts that have already been converted contract for deliveries of about 2,848,952 acre-feet of water per year. Joint SUF App. 1, at 9-13. The eight contracts for which the public comment period concluded contract for deliveries of about 128,300 acre-feet of water per year. Joint SUF ¶ 5. The eight contracts anticipated to be executed before the end of December contract for deliveries of about 30,280 acre-feet of water per year. Joint SUF ¶ 6. Together, all of these contracts contract for deliveries of about *3,007,532 acre-feet of water per year*.

The contract quantities of water to be made available for delivery each year are set forth in Article 3(a) of the contracts. For example, the quantity of the Westlands contract—1,150,000 acre-feet of water per year—is unchanged from the pre-existing interim contract of December 2007. *Compare* Joint SUF Ex. 1 Art. 3(a), at 31, *with* Joint SUF Ex. 2 Art. 3(a), at 117.[3] For another example, the quantity of the El Dorado Irrigation District contract—7,555 acre-feet of water per year—is unchanged from the pre-existing contract of February 2006. **ECF 143-1, Joint SUF** *compare* Ex. 3 Art. 3(a), at 15 with Ex. 4 Art. 3(a), at 69.

Contracting for this immense volume of water is unrealistic and unnecessary. The converted contracts recite, "The Contracting Officer's modeling referenced in the PEIS [Programmatic Environmental Impact Statement] projected that the Contract Total set forth in this Contract will not be available to the Contractor in many years." Joint SUF Ex. 1 Art. 3(b), at 32; *see also* **ECF 143-1, Joint SUF** Ex. 3 Art. 3(b), at 15 (using nearly identical language). The same recitation was included in Westlands' pre-existing interim contract of December 2007 and El Dorado Irrigation District's pre-existing contract of February 2006. Joint SUF Ex. 2 Art. 3(b), at 119; **ECF 143-1, Joint SUF** Ex. 2 Art. 3(b), at 119.

Contractors have received substantially less water in practice than the contracted allocations. "[W]ater allocations to CVP contractors have varied in recent years and at times have been less than 100%." Contractor Def.'s Supplemental SUF ¶ 3, **ECF 160-2** [hereinafter Contractors' SUF]; Contractor Def.'s Request for Judicial Notice 2:28-3:1, **ECF 161** [hereinafter Contractors' Request]. In fact, the South of Delta agricultural contractors have received only 50% or less of the contract quantities in 16 of the past 30 years and 7 of the past 10 years, and

---

[3] The interim contract, December 2007 long form, was most recently renewed March 1, 2018, short form of four pages. Joint SUF Ex. 2, at 192-95.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

have received 20% or less of the contract quantities in 6 out of the last 10 years. Contractors'
Request Ex. 2, at 2-11.

In other words, the existing contract quantities represent unrealistic "paper water." The
converted contracts provide in Article 3(j), "The Contracting Officer shall make reasonable
efforts to protect the water rights necessary for the Project and to provide the water available
under this contract." The converted contracts provide in Article 12(a), "In its operation of the
Project, the Contracting Officer will use all reasonable means to guard against a Condition of
Shortage in the quantity of Project Water to be made available to the Contractor pursuant to this
Contract." Plaintiffs' SUF ¶ 1.

Moreover, these water allocations pose environmental risks. Deliveries of CVP water are
accomplished by diversions from rivers and the Delta, and there are instances when diversions
have adverse environmental impacts. Joint SUF ¶ 17. There are circumstances and instances
where pumping of water from the Bay-Delta entrains fish and alters hydraulic flow patterns in
the Delta. Joint SUF ¶ 18. In some instances, the CVP can have adverse environmental effects
and can harm fish and/or reduce freshwater flows. Joint SUF ¶ 19. These risks affect five fish
species listed as having designated critical habitat under the ESA within the Sacramento River
and/or Delta: the Sacramento River Winter-Run Chinook Salmon, which is listed as an
endangered species under the ESA, and four other fish species that are listed as threatened
species under the ESA. Joint SUF ¶ 20.

The converted contracts cement these contract terms for all time. The repayment
contracts do not have an expiration date and continue so long as the contractor pays applicable
rates and charges under the contract. Joint SUF ¶ 22.

The converted contracts are a long-term renewal of the previous contracts. Reclamation's
Manual defines a Long-Term Contract as "a contract with a term of more than 10 years."
Plaintiffs' SUF ¶ 2. A contract with no expiration date meets this definition.

Westlands' converted contract establishes on the first page that it was "made … in
pursuance generally of the original Act of June 17, 1902," and some nine Acts "amendatory
thereof or supplementary thereto, including but not limited to, … Title XXXIV of the Act of
October 30, 1992 (106 Stat. 4706) as amended, … ." Joint SUF Ex. 1, at 18.

Title XXXIV of the Act of October 30, 1992 *is the CVPIA*.

## II.    PERTINENT WIIN ACT AND CVPIA PROVISIONS

Pertinent provisions of the WIIN Act and the CVPIA are set forth here to avoid breaking
up the Argument with lengthy quotations of the statutes' provisions.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

**A.  WIIN Act Provisions**

Reclamation relies on WIIN Act section 4011(a)(4)(C) for its argument. Section 4011(a)(4) provides:

SEC. 4011. OFFSETS AND WATER STORAGE ACCOUNT.

(a) PREPAYMENT OF CERTAIN REPAYMENT CONTRACTS BETWEEN THE UNITED STATES AND CONTRACTORS OF FEDERALLY DEVELOPED WATER SUPPLIES.—

[(1)-(3) omitted]

(4) CONDITIONS.—All contracts entered into pursuant to paragraphs (1), (2), and (3) shall—
 (A) not be adjusted on the basis of the type of prepayment financing used by the water users' association;
 (B) conform to any other agreements, such as applicable settlement agreements and new constructed appurtenant facilities; and
 (C) not modify *other* water service, repayment, exchange and transfer contractual rights between the water users' association, and the Bureau of Reclamation, or any rights, obligations, or relationships of the water users' association and their landowners as provided under State law. § 4011(a)(4), 130 Stat. at 1878-80 (emphasis added).

Reclamation's narrow reading of section 4011(a)(4)(C) ignores the rest of section 4011, which demonstrates that the purpose of prepayments was not to eliminate NEPA and ESA review and analysis of proposed CVP contracts, but rather to "to fund the construction of water storage." § 4011(e)(2), 130 Stat. at 1881. WIIN Act section 4011(e), entitled "WATER STORAGE ENHANCEMENT PROGRAM," demonstrates this purpose,

 (e) WATER STORAGE ENHANCEMENT PROGRAM.— (1) IN GENERAL.—Except as provided in subsection (d)(2), $335,000,000 out of receipts generated from prepayment of contracts under this section beyond amounts necessary to cover the amount of receipts forgone from scheduled payments under current law for the 10-year period following the date of enactment of this Act shall be directed to the Reclamation Water Storage Account under paragraph (2).
 (2) STORAGE ACCOUNT.—The Secretary shall allocate amounts collected under paragraph (1) into the ''Reclamation Storage Account'' *to fund the construction of water storage*. The Secretary may also enter into cooperative agreements with water users' associations for the construction of water storage and amounts within the Storage Account may be used to fund such construction. Water storage projects that are otherwise not federally authorized shall not be considered Federal facilities as a result of any amounts allocated from the Storage Account for part or all of such facilities. *Id.* (emphasis added).

Section 4007 of the WIIN Act confirms that conversions to prepayment contracts are intended to finance water storage. § 4007, 130 Stat. at 1863-66. Entitled "STORAGE," section

13

4007 pertained to "the design, study, and construction or expansion of any federally owned storage project in accordance with this section." § 4007(b)(1), 130 Stat. at 1864. Section 4007(h) provides,

> (h) AUTHORIZATION OF APPROPRIATIONS.— (1) $335,000,000 of funding in section 4011(e) is authorized to remain available until expended. § 4007(h), 130 Stat. at 1865.

In the words of the Federal Defendants, the purpose of section 4011(a) was "[t]o facilitate accelerated repayment … ." Federal Brief 15:25.

That WIIN Act section 4011(a)(4)(C) was not intended to prevent environmental review is further confirmed by the provisions of the WIIN Act addressing the effect on existing law. WIIN Act section 4011(d)(4) expressly provides that implementation of its Subtitle J "shall not alter" any obligations under the reclamation law, which includes obligations under the CVPIA. § 4011(d)(4), 130 Stat. at 1880-81. The CVPIA is referred to in WIIN Act section 4011(d)(4) as Public Law 102-575. Section 4011(d)(4) states,

> (d) *EFFECT ON EXISTING LAW NOT ALTERED.—Implementation of the provisions of this subtitle shall not alter—*
> [(1), (2), and (3) omitted]
> (4) *except as expressly provided in this section, any obligations under the reclamation law*, including the continuation of Restoration Fund charges pursuant to section 3407(d) (Public Law 102–575 [the CVPIA]), of the water service and repayment contractors making prepayments pursuant to this section. *Id.* (emphasis added).

In addition, the savings language in section 4012 provides:

SEC. 4012. SAVINGS LANGUAGE.

> (a) IN GENERAL.—*This subtitle shall not be interpreted or implemented in a manner that—*
> (1) *preempts or modifies any obligation of the United States to act in conformance with applicable State law, including applicable State water law*;
> (2) *affects or modifies any obligation under the Central Valley Project Improvement Act* (Public Law 102–575; 106 Stat. 4706), except for the savings provisions for the Stanislaus River predator management program expressly established by section 11(d) and provisions in section 11(g);
> (3) *overrides, modifies, or amends the applicability of the Endangered Species Act* of 1973 (16 U.S.C. 1531 et seq.) or the application of the smelt and salmonid biological opinions to the operation of the Central Valley Project or the State Water Project;
> (4) *would cause additional adverse effects on listed fish species* beyond the range of effects anticipated to occur to the listed fish species for the duration of the applicable biological opinion, using the best scientific and commercial data available; or
> (5) overrides, modifies, or amends any obligation of the Pacific Fisheries Management Council, required by the Magnuson Stevens Act or the Endangered Species Act of 1973,

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

to manage fisheries off the coast of California, Oregon, or Washington. § 4012, 130 Stat. at 1882 (emphasis added).

WIIN Act section 4011(a)(1) provides:

(1) CONVERSION AND PREPAYMENT OF CONTRACTS.—Upon request of the contractor, the Secretary of the Interior shall convert any water service contract in effect on the date of enactment of this subtitle and between the United States and a water users' association *to allow for prepayment of the repayment contract* pursuant to paragraph (2) *under mutually agreeable terms and conditions*. The manner of conversion under this paragraph shall be as follows: § 4011(a)(1), 130 Stat. at 1878 (emphasis added).

Against the provision in WIIN Act section 4011(d)(4) that obligations under the reclamation law, including the CVPIA, are not altered, as well as the WIIN Act's savings language in section 4012, the Federal Defendants seek in essence to amend section 4011(a)(1) by adding the word "financial" between the words "agreeable" and "terms."

### B. CVPIA Provisions

CVPIA section 3402 sets out the statute's purposes:

SEC. 3402. PURPOSES.
The purposes of this title shall be—
(a) to protect, restore, and enhance fish, wildlife, and associated habitats in the Central Valley and Trinity River basins of California;
(b) to address impacts of the Central Valley Project on fish, wildlife and associated habitats;
(c) to improve the operational flexibility of the Central Valley Project;
(d) to increase water-related benefits provided by the Central Valley Project to the State of California through expanded use of voluntary water transfers and improved water conservation;
(e) to contribute to the State of California's interim and long-term efforts to protect the San Francisco Bay/Sacramento San Joaquin Delta Estuary;
(f) to achieve a reasonable balance among competing demands for use of Central Valley Project water, including the requirements of fish and wildlife, agricultural, municipal and industrial and power contractors. § 3402, 106 Stat. at 4706.

The title of CVPIA section 3404 is "LIMITATION ON CONTRACTING AND CONTRACT REFORM." § 3404, 106 Stat. at 4708. Section 3404(c)(1) states:

(c) RENEWAL OF EXISTING LONG-TERM CONTRACTS.—Notwithstanding the provisions of the Act of July 2, 1956 (70 Stat. 483), the Secretary shall, upon request, renew any existing long-term repayment or water service contract for the delivery of water from the Central Valley Project for a period of twenty-five years and may renew such contracts for successive periods of up to 25 years each.
(1) *No such renewals shall be authorized until appropriate environmental review,* including the preparation of the environmental impact statement required in section 3409 of this title, *has been completed*. Contracts which expire prior to the completion of the

15

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

environmental impact statement required by section 3409 may be renewed for an interim period not to exceed three years in length, and for successive interim periods of not more than two years in length, until the environmental impact statement required by section 3409 has been finally completed, at which time such interim renewal contracts shall be eligible for long-term renewal as provided above. Such interim renewal contracts shall be modified to comply with existing law, including provisions of this title. *With respect to all contracts renewed by the Secretary since January 1, 1988, the Secretary shall incorporate in said contracts* a provision requiring payment of the charge mandated in subsection 3406(c) and subsection 3407(b) of this title and *all other modifications needed to comply with existing law, including provisions of this title.* This title shall be deemed "applicable law" as that term is used in Article 14(c) of contracts renewed by the Secretary since January 1,1988. § 3404(c)(1), 106 Stat. at 4708-09 (emphasis added).

Section 3404(c)(2) states,

(2) Upon *renewal of any* long-term repayment or water service contract providing for the delivery of water from the Central Valley Project, the Secretary *shall incorporate all requirements* imposed by existing law, including provisions of this title, within such renewed contracts. The Secretary shall also administer all existing, new, and renewed contracts in conformance with the requirements and goals of this title. § 3404(c)(2), 106 Stat. at 4709 (emphasis added).

Section 3404(a)(1) states,

(a) NEW CONTRACTS.—Except as provided in subsection (b) of this section, the Secretary shall not enter into any new short-term, temporary, or long-term contracts or agreements for water supply from the Central Valley Project for any purpose other than fish and wildlife before:
(1) the provisions of subsections 3406(b)-(d) of this title are met. § 3404(a)(1), 106 Stat. at 4708.

Section 3406(b)(1) states:

(b) FISH AND WILDLIFE RESTORATION ACTIVITIES.—The Secretary, immediately upon the enactment of this title, shall operate the Central Valley Project to *meet all obligations under State and Federal law, including but not limited to the Federal Endangered Species Act*, 16 U.S.C. 1531, et seq., and all decisions of the California State Water Resources Control Board establishing conditions on applicable licenses and permits for the project. The Secretary, in consultation with other State and Federal agencies, Indian tribes, and affected interests, is further authorized and directed to:
(1) develop within three years of enactment and implement a program which makes all reasonable efforts to ensure that, by the year 2002, natural production of anadromous fish in Central Valley rivers and streams will be sustainable, on a long-term basis, at levels not less than twice the average levels attained during the period of 1967-1991; Provided, That this goal shall not apply to the San Joaquin River between Friant Dam and the Mendota Pool, for which a separate program is authorized under subsection 3406(c) of this title; Provided further. That the programs and activities authorized by this section shall, when fully implemented, be deemed to meet the mitigation, protection, restoration,

and enhancement purposes established by subsection 3406(a) of this title; *And provided further, That in the course of developing and implementing this program the Secretary shall make all reasonable efforts consistent with the requirements of this section to address other identified adverse environmental impacts of the Central Valley Project not specifically enumerated in this section.* § 3406(b)(1), 106 Stat. at 4714 (emphasis added).

## STANDARD OF REVIEW

The Federal Defendants start by saying, "Plaintiffs' ESA claims, like their NEPA claims, are reviewed under the APA's deferential standard of review." Federal Brief 18:1-3. That is wrong. Reclamation is claiming it need not/cannot comply with NEPA and the ESA for the proposed contracts because of provisions in the WIIN Act. This position is not subject to deferential review under the APA or any other applicable law.

Defendants seek a holding that the later WIIN Act has repealed the requirements for NEPA and ESA compliance established/confirmed by the earlier CVPIA. "'[R]epeals by implication are not favored,'" so Congress' intention "'to repeal must be clear and manifest'" and "'[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.'" *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 189-90 (1978) (internal citations omitted); *see also Rodriguez v. United States*, 480 U.S. 522, 524 (1987); *San Luis & Delta-Mendota Water Auth. v. Haugrud,* 848 F.3d 1216, 1230 (9th Cir. 2017); *Nw. Forest Res. Council v. Pilchuck Audubon Soc'y,* 97 F.3d 1161, 1166 (9th Cir. 1996).

The Supreme Court has also explained:

> NEPA's instruction that all federal agencies comply with the impact statement requirement and with all other requirements of section 102 "to the fullest extent possible," 42 U.S.C. § 4332, is neither accidental nor hyperbolic. Rather, the phrase is a deliberate command that the duty NEPA imposes upon the agencies to consider environmental factors not be shunted aside in the bureaucratic shuffle.

*Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.*, 426 U.S. 776, 787 (1976). The Supreme Court held in *Flint Ridge,* "Section 102 [of NEPA] recognizes, however, that where a clear and unavoidable conflict in statutory authority exists, NEPA must give way." *Id.* at 788. Consequently, when a conflict is claimed between NEPA and another statute, NEPA does not apply "only when a conflict is 'clear and unavoidable' and 'irreconcilable and fundamental.'" *Jones v. Gordon,* 792 F.2d 821, 826 (9th Cir. 1986); *see also Westlands Water Dist. v. Nat. Res. Def. Council,* 43 F.3d 457, 460 (9th Cir. 1994); *Westlands Water Dist. v. U.S. Dep't of Interior,* 275 F.Supp.2d 1157, 1177 (E.D. Cal. 2002), *aff'd in part, rev'd in part on other grounds*, 376 F.3d 853 (9th Cir. 2004).

As to the ESA, its "no-Jeopardy mandate applies to every *discretionary* agency action—regardless of the expense or burden its application might impose." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 671 (2007) (emphasis in original).

The task then for Defendants *is to prove to this Court* a clear and manifest intention by Congress to repeal by the WIIN Act, the CVPIA, NEPA, and ESA requirements for NEPA and ESA review of proposed water contracts. And Defendants must do that in the face of the WIIN Act section 4011(d)(4) "effect on existing law not altered" and the WIIN Act savings language in section 4012.

There is no deferential standard of review here. The task here for the Court is judicial interpretation of the WIIN Act, the CVPIA, NEPA and the ESA.

Reclamation argues *Chevron* deference should apply, citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.837, 842-45 (1984). Federal Brief 18-19, 30-31. But *Chevron* does not counsel deference in determining whether a later Act has repealed provisions of an earlier Act. Moreover, even when implied repeal is not being sought, the first question, "always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-843. Congress stated clearly in the WIIN Act it "shall not be interpreted or implemented in a manner that—(2) affects or modifies any obligation under the" CVPIA except for some provisions for the Stanislaus River predator management program. WIIN Act § 4012(a)(2). There is nothing ambiguous about WIIN Act sections 4011(d)(4) (not altering any obligations under reclamation law), and 4012(a)(1) (not modifying any obligation to act in conformance with State law), (2) (not modifying any obligation under the CVPIA), and (3) (not modifying the applicability of the ESA). Under the first step of *Chevron* analysis, that should be the end of the matter. "But, of course, no deference is due to agency interpretations at odds with the plain language of the statute itself. Even contemporaneous and long-standing agency interpretations must fall to the extent they conflict with statutory language." *Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989).

The claim that there should be deference in finding a provision facilitating accelerated repayment impliedly eliminates the requirements for NEPA and ESA review of CVP contracts runs afoul of common sense. As the Supreme Court said in *Whitman v. Am. Trucking Ass'ns*, "Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

terms or ancillary provisions—*it does not, one might say, hide elephants in mouseholes.*" 531 U.S. 457, 468 (2001) (emphasis added).

Moreover, both the CVPIA and the WIIN Act savings provisions were directed at Reclamation to require it to conduct environmental review and ESA consultations. This is not a situation for deference to an agency—one subject to corrective action by Congress.

Reclamation recognizes that, even when judicial deference does apply, it may be minimal "to the extent the interpretation is persuasive." Federal Brief 19:6-11; *see United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (where Chevron is inapplicable, agency interpretations carry "at least some added persuasive force" if reasonable).

But even if a court were to defer entirely to Reclamation's interpretation of WIIN Act section 4011(a)(4)(C), Reclamation nevertheless failed to proceed in the manner required by NEPA and the ESA. Under Reclamation's interpretation, it could not modify the previous contracts. The previous contracts *required* environmental documentation and ESA consultation before Reclamation entered into the contracts.

Even in cases where levels of deference apply, the Ninth Circuit applies the less deferential standard of "reasonableness" "to threshold agency decisions that certain activities are not subject to NEPA's procedures." *Northcoast Env't Ctr. v. Glickman* 136 F.3d 660, 667 (9th Cir. 1998); *see also N. Alaska Env't Ctr. v. U.S. Dep't of Interior*, 983 F.3d 1077, 1084 (9th Cir. 2020); *Cal.* ex rel. *Lockyer v. U.S. Dep't. of Agric.*, 575 F.3d 999, 1011 (9th Cir. 2009); *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 640 (9th Cir. 2004). This was a threshold decision where Reclamation did not even prepare on Environmental Assessment (EA). *See High Sierra Hikers Ass'n,* 390 F.3d at 640 ("[W]here an agency has decided that a project does not require an EIS without first conducting an EA, we review under the reasonableness standard").

In its bid to apply an incorrect, deferential standard of review, Reclamation cites *Oregon Natural Resources Council v. Allen*, 476 F.3d 1031 (9th Cir. 2007). Federal Brief 18:4. That case involved a review of incidental take statements, not a failure to consult. The court held the incidental take statement was invalid. *Or. Nat. Res. Council*, 476 F.3d at 1032-33. Reclamation also cites *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1066 (9th Cir. 2012) (en banc). Federal Brief 18:7-8. In addition to holding there was discretion and the agency had to consult, the court also explained in *Karuk Tribe*, "examples of agency actions triggering Section 7 consultation [under the ESA] include the renewal of existing water contracts." *Karuk Tribe*, 681 F.3d at 1021 (citing *Nat. Res. Def. Council v. Houston*, 146 F.3d 1118, 1125 (9th Cir. 1998), *cert. denied,* 526 U.S. 1111 (1999)).

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

The task for Defendants is to prove to this Court a clear and manifest intention by Congress to repeal by the WIIN Act the CVPIA, NEPA, and ESA requirements for preparation of an EIS and ESA consultation prior to converting the water contracts. They cannot meet this burden.

## ARGUMENT

The CVPIA and the previous contract provisions make clear that environmental review, in compliance with NEPA and the ESA, is required for any long-term renewal. Because a ten-year contract renewal is a long-term contract, the permanent conversions at issue here certainly surpass the bar for a long-term conversion and thus gives rise to NEPA and ESA review requirements. The WIIN Act does not provide an exception to this; in fact, the language clearly demonstrates that Congress intended all relevant environmental statutes to continue to apply to the converted contracts. Reclamation's contrary reading of the WIIN Act's plain language, and its claim Congress immunized permanent contract conversions from environmental and ESA review, is preposterous.[4]

**I.    THE WIIN ACT, THE CVPIA AND NINTH CIRCUIT DECISIONS REQUIRED RECLAMATION TO COMPLY WITH NEPA AND THE ESA BEFORE CONVERTING THE CONTRACTS**

**A.    Under Reclamation's Interpretation of WIIN Act Section 4011(a)(4)(C), It Cannot Eliminate the Previous Contracts' Requirements to Comply with NEPA and the ESA before Entering into the Contracts**

Reclamation claims WIIN Act section 4011(a)(4)(C) applies to the provisions of the converted contracts and prohibits it from modifying "substantive terms of the contracts other than the payment terms." Federal Brief 23-24. Assuming for the sake of argument that is the case, Reclamation had to comply with NEPA and the ESA before it entered into the contracts. Compliance with these laws was *required* by the previous contracts between Reclamation and its contractors. Plaintiffs' SUF ¶¶ 3-13. Under its own interpretation of the WIIN Act section Reclamation relies on, Reclamation *could not modify*, meaning eliminate, those requirements of NEPA and ESA compliance in Articles 2(a) and (b) and 3(e) of the previous contracts. Reclamation also could not have changed the requirement to be *implementing* a water

---

[4] Plaintiffs set forth their argument that the contract conversions were major federal actions requiring NEPA compliance and agency actions requiring ESA compliance in their opening brief updated (to include citations to the Joint SUF) on October 12, 2021. Pls.' Br. 11-14 (regarding NEPA), 21-23 (regarding the ESA), **ECF 150**.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

conservation plan, to only *developing* a water conservation plan. Plaintiffs' SUF ¶¶ 14-15. Yet Reclamation modified that provision as well when it converted the contracts.

The previous contracts required NEPA and ESA review. Under its argument, Reclamation could not lawfully eliminate those requirements when it converted the contracts. In conclusion, under Reclamation's interpretation of WIIN Act section 4011(a)(4)(C), it failed to proceed in the manner required by NEPA and the ESA when it converted the contracts without preparing an EIS and without ESA consultation.

### B.   The Requirements for NEPA and ESA Compliance Before Entering into the Contracts are Established by Reclamation Law

#### 1.   The Ninth Circuit Held an EIS and ESA Consultation are Required Before Entering into CVP Contracts

"[T]he CVPIA requires the government to complete an EIS before it may enter into any subsequent … renewal contracts." *Houston*, 146 F.3d at 1131 (citing CVPIA § 3404(c)(1) with respect to Friant contracts). The ESA consultation requirement also applies to CVP contract renewals. *Houston*, 146 F.3d 1118 at 1125-1128; *see also Karuk Tribe*, 681 F.3d at 1021 (writing that "examples of agency actions triggering Section 7 consultation include the renewal of existing water contracts") (citing *Houston*, 146 F.3d at 1125); *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F. 3d 969, 977 (9th Cir. 2003) (citing *Houston* that contract renewals constitute ongoing agency activity invoking the consultation provisions of the ESA); (finding consultation is required prior to renewing CVP settlement contracts).

#### 2.   The WIIN Act Preserved the CVPIA EIS and ESA Consultation Requirements for CVP Contracts

Reclamation relies entirely on WIIN Act section 4011(a)(4)(C) to argue that the plain meaning of the statute means that it need not comply with NEPA and ESA. A plain reading dictates precisely the opposite. Congress required compliance with ESA and NEPA. It did so on more than one occasion. And it did so plainly. Reclamation now seeks to wriggle out of this statutory mandate, and each of its arguments to that end are wrong.

Section 4011(d)(4) is entitled "EFFECT ON EXISTING LAW NOT ALTERED" and states that "implementation of the provisions of this subtitle shall not alter" "(4) except as expressly provided in this section, any obligations under the reclamation law." WIIN Act

21

§ 4011(d)(4). That includes obligations under the CVPIA.[5] In addition to § 4011(d)(4), the savings language in WIIN Act section 4012 is also relevant. That includes WIIN Act section 4012(a)(2), requiring that the WIIN Act "shall not be interpreted or implemented in a manner that … affects or modifies any obligation under the" CVPIA except for some provisions for the Stanislaus River predator management program. WIIN Act section 4012(a)(3) also commands that "[this] subtitle shall not be interpreted or implemented in a manner that … (3) overrides, modifies, or amends the applicability of the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.) or the application of the smelt and salmonid biological opinions to the operation of the Central Valley Project or the State Water Project."

There is no dispute that the contracts were converted pursuant to reclamation law. Westlands' converted contract shows on its first page it was made in pursuance of the Acts making up reclamation law, including the CVPIA. Joint SUF Ex.1, at 18.

Appropriate environmental review, meaning NEPA compliance, is required prior to entering into the contracts by CVPIA section 3404(c)(1) and (2). Section 3404(c)(2) requires incorporation of all requirements imposed by existing law, including the CVPIA, into renewed contracts. That also means compliance with NEPA and the ESA is required. ESA and NEPA compliance are also required by CVPIA sections 3404(a)(1) and 3406(b). In fact, Reclamation admits, "[t]o be sure, the CVPIA does expressly require NEPA when a contract is *renewed*." Federal Brief 9:2-3 (emphasis in original). Reclamation admits this a second time, "[a]s Plaintiffs correctly point out, one of the many obligations imposed on Reclamation by the CVPIA is to conduct environmental review for the renewal of any existing 'long-term' CVP contracts." Federal Brief 28:3-5.

Reclamation argues it was converting the contracts, not renewing them. Federal Brief 28. Reclamation cannot evade NEPA and ESA compliance by word games for several reasons.

First, there are the dictionary definitions of "renew" and "renewal." A definition of "renewal" in Black's Law Dictionary includes "The re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." *Renewal, Black's Law Dictionary* (10th ed. 2014). The Oxford Dictionary of English defines "renewal" as "the replacement or repair of something." *Renewal, Oxford Dictionary of English* (3rd ed. 2015). One of the definitions of "renew" is "replace." *Renew, Oxford Dictionary of English* (3rd ed. 2015). The entire purpose of § 4011(a) is to allow

---

[5] The WIIN Act and CVPIA sections cited now in Argument were set out at length, above, in the "Pertinent WIIN Act and CVPIA Provisions" portion of this brief.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

for prior contracts to be *replaced* by new prepayment contracts. As to the phrase "long-term," it was shown above in the Additional Factual and Legal Background Section that the Reclamation manual defines a long-term contract as "a contract with a term of more than 10 years." Plaintiffs' SUF ¶ 2 Certainly the contracts at issue are "long-term." "Long-term" is an adjective describing something occurring over or relating to a long period of time. *Long-term*, *Oxford Dictionary of English* (3rd ed. 2015).

Second, the combination of WIIN Act section 4011(d)(4)'s clear requirement that implementation of the provisions of the subtitle not alter "any obligations under the reclamation law" as well as the clear savings language in section 4012 are clear and controlling.

Third, locking in water quantities forever would destroy the application of the public trust doctrine to the allocation of the public trust water resource. That would be contrary to section 4012(a)(1) mandating the WIIN Act not be interpreted or implemented in a manner that preempts or modifies any obligation of the United States to act in conformance with applicable State law, including State water law. This issue is explained below in Argument IIE.

The CVPIA requires NEPA and ESA compliance. It does so in more than one location, and does so in a fashion that mandates Reclamation uphold its environmental obligations with respect to new WIIN Act prepayment contracts.

### 3. Congress Knew How to, and Did, Make Specific Exceptions to CVPIA Requirements Meaning NEPA and ESA Compliance are Not Excepted

Reclamation searches for an exception-by-inference to NEPA and ESA compliance when Congress demonstrated in the WIIN Act that it knew how to write precisely the exception Reclamation seeks. The WIIN Act does not alter "any obligations under the reclamation law" "except as *expressly provided* in this section … ." WIIN Act § 4011(d)(4) (emphasis added). Specifically, Congress exempted converted contracts from the acreage limitations referred to as the "excess land provisions" to give incentive to the contractors to prepay the contracts. § 4011(c)(1). Congress also included one exception in the savings language in section 4012(a)(2) that the WIIN Act "shall not be interpreted or implemented in a manner that … (2) affects or modifies any obligation under the Central Valley Project Improvement Act … ." § 4012(a)(2). That one exception, included in section 4012(a)(2), was for the savings provisions for the Stanislaus River predator management program. *Id.*

These exceptions show the flaw in Reclamation's argument. The interpretive canon *expressio unius est exclusio alterius* holds that "expressing one item of [an] associated group or series excludes another left unmentioned." *N.L.R.B. v. SW General, Inc.,* 137 S. Ct. 929, 940

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

(2017) (internal quotations omitted). The force of the negative implication depends on the context. *Id.* at 940. Here, the context works doubly against Reclamation's argument. Under WIIN Act section 4011(d)(4), obligations under the reclamation law are not altered except as expressly provided and one express exception related to acreage limitations is stated. The context also includes the command in the savings language in WIIN Act section 4012(a)(2) that the Act shall not be interpreted or implemented in a manner that "affects or modifies any obligation under the" CVPIA. That WIIN Act savings language includes one exception, for the savings provisions for the Stanislaus River predator management program. WIIN Act § 4012(a)(2). In other words, on two occasions Congress mandated compliance with reclamation law unless an express exemption was stated *and* offered an express exemption. On neither occasion did Congress eliminate the need for NEPA analysis and ESA consultation before entering into CVP contracts.

There simply is no basis to conclude that despite plain meaning and the canons of interpretation, the WIIN Act somehow repealed the CVPIA requirements for preparation of an EIS and ESA consultation before entering into CVP contracts.

### C.   The WIIN Act Had No Purpose to Eliminate NEPA and ESA Review of CVP Water Export Contracts

The purpose of WIIN Act section 4011 is narrow. It was to accelerate repayment "to fund the construction of water storage." § 4011(e)(2); *see also* § 4007(h). Again, as the Federal Defendants say, the purpose of section 4011(a) was "[t]o facilitate accelerated repayment … ." Federal Brief 15:25. There was no statutory purpose to eliminate the NEPA and ESA review and analysis of proposed CVP contracts required by the CVPIA, NEPA, and the ESA.

In contrast, the CVPIA in section 3402 set out purposes for requiring NEPA and ESA review. Those purposes include protecting and restoring and addressing impacts of the CVP on fish, wildlife and associated habitats; contributing to long-term efforts to protect the San Francisco Bay/Sacramento San Joaquin Delta Estuary; and achieving a reasonable balance among competing demands for use of CVP water.

The Supreme Court holds, "'In expounding a statute, we must not be guided by a single sentence or member of a sentence, *but look to the provisions of the whole law, and to its object and policy*.'" *Mastro Plastics Corp. v. Nat'l Lab. Rel. Bd.,* 650 U.S. 270, 285 (1956) (emphasis added).

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

The Supreme Court also says, "Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions — it does not, one might say, hide elephants in mouseholes." *Whitman*, 531 U.S. at 468.

There is simply no basis to be found in the objects and policies of the WIIN Act and the CVPIA to support a conclusion that the WIIN Act eliminated the requirement to review and analyze the proposed contracts under NEPA and the ESA.

### D.  The Titles and Headings in the Acts Further Show the Federal Defendants' Arguments Lack Merit

The Supreme Court explained in *Almendarez-Torres v. U.S.*, 523 U.S. 224, 234 (1998), "'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." Here, there is no doubt about the meaning of the WIIN Act and the CVPIA. Were there any doubt, titles and headings would resolve the doubt.

The title of WIIN Act section 4011 is "OFFSETS AND WATER STORAGE ACCOUNT." Nothing in that suggests elimination of NEPA and ESA review of proposed contracts. The same is true of the heading of subsection (a), "PREPAYMENT OF CERTAIN REPAYMENT CONTRACTS BETWEEN THE UNITED STATES AND CONTRACTORS OF FEDERALLY DEVELOPED WATER SUPPLIES." WIIN Act § 4011(a). The same is true also of the heading of subsection (a)(1), "CONVERSION AND PREPAYMENT OF CONTRACTS." § 4011(a)(1).

Each title points to the meaning of the statute: to enable Reclamation to obtain accelerated repayments, not to allow it to duck environmental review.

Indeed, where in section 4011 existing law is referenced, it is to note that Reclamation's obligations have not been altered. In stark contrast to the titles and headings of the sections relied on by Reclamation, the heading of WIIN Act subsection 4011(d), "EFFECT ON EXISTING LAW NOT ALTERED" makes clear that the CVPIA and ESA requirement for NEPA and ESA review of proposed contracts has not been altered. Likewise, the title of CVPIA section 3404, "LIMITATION ON CONTRACTING AND CONTRACT REFORM," underscores the applicability of environmental review requirements for proposed water contracts. The same is true of the title of CVPIA section 3406, "FISH, WILDLIFE AND HABITAT RESTORATION."

This is similar to the situation in *Yates v. United States*, where titles of sections in the Sarbanes-Oxley Act referred to destruction and falsification of records. 574 U.S. 528, 539-40 (2015). The Supreme Court explained, "[while] these headings are not commanding, they supply

25

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

cues that Congress did not intend 'tangible object' in § 1519 to sweep within its reach physical objects of every kind, including things no one would describe as records, documents, or devices closely associated with them." *Id.* at 540. After quoting *Almendarez-Torres*, the Supreme Court said, "If Congress indeed meant to make § 1519 an all-encompassing ban on the spoilation of evidence, as the dissent believes Congress did, one would have expected a clearer indication of that intent." *Id.* Likewise, if Congress had intended to make WIIN Act section 4011 a ban on NEPA and ESA review of proposed CVP contracts, one would have expected a clearer indication of that intent.

The Federal Defendants are twisting the WIIN Act and the CVPIA inside out and upside down in attempting to justify their end run on NEPA and the ESA. Their arguments lack merit.

### E.  Reclamation is Trying to Amend WIIN Act Section 4011(a)

Key language in WIIN Act section 4011(a)(1) pertaining to the conversion of water service contracts is "to allow for prepayment of the repayment contract pursuant to paragraph (2) under mutually agreeable terms and conditions." Reclamation in effect is trying to amend the statute by adding a word that does not appear in the statute. The Federal Defendants state, "rather than contemplating a wholesale rewriting of the contract terms, Congress intended Reclamation to take specific actions: negotiate *some* 'mutually agreeable' *financial terms* for the prepayment of construction costs." Federal Brief 22:6-7 (emphasis in original). So, Reclamation seeks to add the word "financial" between "mutually agreeable" and "terms and conditions."

That cannot be done by Reclamation. "But our problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain— neither to add nor to subtract, neither to delete nor to distort." *62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.*, 340 U.S. 593, 596 (1951) (quoted in *Ariz. State Bd. For Charter Schools v. U.S. Dept. of Educ.*, 464 F.3d 1003, 1007 (9th Cir. 2006)).

Adding the word "financial" to WIIN Act section 4011(a)(1) is contrary to the fact that the *previous* contracts *required* environmental documentation and ESA consultation. *See supra* Argument IA.

Amending what Congress has written would also be contrary to section 4011(d)(4), which makes it clear that obligations under the reclamation law including the CVPIA have not been altered. And amending what Congress has written would be contrary to the savings language in WIIN Act section 4012. Limiting the Secretary's discretion to *financial* terms and conditions would be contrary to law, meaning in this instance the WIIN Act, the CVPIA, NEPA and the ESA. Reclamation cannot do what Congress did not do.

26

### F. WIIN Act Section 4011(a)(4)(C) Does Not Remove Discretion to Make Changes in the Contracts Following NEPA and ESA Review

#### 1. The Previous Contacts Required Environmental Documentation and ESA Consultations

As pointed out in Argument IA, the previous contracts required environmental documentation and ESA consultation before entering into long-term CVP contracts. The purpose for such review would be to identify adverse impacts, along with alternatives and mitigation measures. Under Reclamation's interpretation of WIIN Act section 4011(a)(4)(C), that section did not allow it to eliminate those requirements from the converted contracts. That should be the end of the matter.

#### 2. Congress did Not Repeal the CVPIA provisions Requiring NEPA Analysis and ESA Consultations prior to Entering into CVP contracts

All of Reclamation's arguments are based on the language in WIIN Act section 4011(a)(4)(C). Again, the language reads,

SEC. 4011. OFFSETS AND WATER STORAGE ACCOUNT.

(a) PREPAYMENT OF CERTAIN REPAYMENT CONTRACTS BETWEEN THE UNITED STATES AND CONTRACTORS OF FEDERALLY DEVELOPED WATER SUPPLIES.—

[(1)-(3) omitted]

(4) CONDITIONS.—All contracts entered into pursuant to paragraphs (1), (2), and (3) shall—
    (A) not be adjusted on the basis of the type of prepayment financing used by the water users' association;
    (B) conform to any other agreements, such as applicable settlement agreements and new constructed appurtenant facilities; and
    (C*) not modify *other* water service, repayment, exchange and transfer contractual rights between the water users' association, and the Bureau of Reclamation, or any rights, obligations, or relationships of the water users' association and their landowners as provided under State law. (Emphasis added.)

The provision in section 4011(a)(4)(C) cannot preclude preparation of an EIS under NEPA and ESA consultation before entering into the contracts because that would repeal the provisions in the CVPIA requiring same and thus violate WIIN Act section 4011(d)(4) and the savings language in WIIN Act section 4012(a)(1), (2) and (3). Congress included one express exception under its command that the WIIN Act not alter "any obligations under the reclamation law" "except as expressly provided in this section." WIIN Act § 4011(d)(4). Again, Congress

27

gave incentive to the contractors to prepay the contracts by exempting converted contracts from the acreage limitations referred to as the "excess land provisions." § 4011(c)(1). Congress also included one exception to its command in the savings language in section 4012(a)(2) that the WIIN Act "shall not be interpreted or implemented in a manner that—(2) affects or modifies any obligation under the Central Valley Project Improvement Act … ." That one exception, included in section 4012(a)(2) was for the savings provisions for the Stanislaus River predator management program.

There is also the language in WIIN Act section 4011(a)(1) requiring the Secretary of the Interior to convert water service contracts "to allow for prepayment of the repayment contract pursuant to paragraph (2) *under mutually agreeable terms and conditions*." § 4011(a)(1) (emphasis added). That language, consistent with section 4011(d)(4) and the savings language in section 4012, makes clear that discretion is retained to make modifications in the converted contracts in the course of CVPIA, NEPA and ESA compliance. That language is also consistent with the purposes of the WIIN Act and the CVPIA and with the titles and headings of the pertinent sections and subsections in the two Acts. *See supra* Argument ID.

Subsection (4)(C) in light of all of the above means that the converted contracts cannot eliminate Reclamation's obligations to prepare an EIS and conduct ESA consultation before converting the contracts and cannot eliminate Reclamation's discretion to make changes in response to the NEPA and ESA processes.

### 3. That WIIN Act Section 4011 (a)(4)(C) Restricts Modifying Other Contracts, Not the Converted Contracts, is Consistent with Everything That Has Actually Been Done by Reclamation

What Reclamation has actually done with the converted contracts is consistent with WIIN Act section 4011(a)(4)(C): restrict modifying *other* contracts, not the converted contracts. Article 26 of the Westlands contract is entitled "EXISTING OR ACQUIRED WATER OR WATER RIGHTS." Joint SUF Ex.1 Art. 26, at 69. The article contains three sentences. The first two sentences deal with non-project water or water rights. The third sentence states,

> In addition, this Contract shall not be construed as limiting or curtailing any rights which the Contractor or any water user within the Contractor's Service Area acquires or has available under any other contract pursuant to Federal Reclamation law.

*Id.* The identical Article 26 appears in the El Dorado Irrigation District contract. **ECF 143-1, Joint SUF Ex. 3, at 44**.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

That provision in Article 26 of the converted contracts is consistent with WIIN Act section 4011(a)(4)(C) meaning that the converted contracts do not modify provisions in contracts other than the converted contracts.

Reclamation argues that section 4011(a)(4)(C) ties its hands with respect to all substantive terms of the contract except for repayment terms. There are at least four reasons Reclamation is wrong. First, it is internally incoherent and requires reading the word "other" nearly out of existence. The word "other" modifies each substantive element of the subsection, including water service, exchange and transfer rights. By Reclamation's logic, though, *no* water service, exchange and transfer rights may change upon conversion of the contracts. The word "other" would therefore make no sense in its present place.

Second, Reclamation's argument ignores subsection (4)(A) and the second half of subsection (4)(C) referring to obligations under state law, which are suggestive of the intent of the first half of the subsection. "'*Noscitur a sociis*' [is a] well-worn Latin phrase that tells courts that statutory words are often known by the company they keep." *Lagos v. United States*, 138 S. Ct. 1684, 1688 (2018) (internal punctuation omitted). The latter half of subsection (4)(C) refers to obligations *external* to the Reclamation-association prepayment contractual relationship— obligations, rights and relationships between the association and other actors under State law. Likewise, subsection 4(B) refers to *external* obligations. Moreover, Subsection (4)(A) refers to an issue *internal* to the prepayment contracts—the prepayment financing. Yet, confusingly, Reclamation claims that the first half of subsection (4)(C) referring to other substantive contractual rights is a reference to the internal substantive contractual rights of the prepayment contract. This reading ignores context and the weight given to context by the interpretive canon. The sole sensible reading is to understand all of subsection (4)(C) as referring to substantive contractual rights *external* to the present prepayment conversion contracts; the subsection's purpose is to ensure that the conversion of the contracts at hand does not interfere with other substantive rights and obligations owed to Reclamation, the association or any other actor under other contracts.

Third, if any doubt remained, the savings clauses resolve that doubt. Congress expressly required compliance with ESA and with reclamation law, including NEPA. *See* WIIN Act §§ 4011(d)(4), 4012(a)(1)-(3). Reclamation here tries to use clever statutory sleight-of-hand to override these express obligations. Its arguments are unpersuasive.

Fourth, the very reason we are here in this Court is because Reclamation did in fact make changes in the converted contracts. Reclamation eliminated requirements in the previous

29

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

contracts to, as required by the CVPIA and the Ninth Circuit, conduct NEPA review and ESA consultations before entering into the contracts. So Reclamation did not read section 4011(a)(4)(C) as preventing modification of the converted contracts when it was converting the contracts.

Finally, the only other reasonable meaning of section 4011(a)(4)(C) is that if it applies to the converted contracts, it does not eliminate discretion to make changes based upon NEPA review and ESA consultation. Again, the previous contracts *required* environmental documentation and ESA consultation.

## II.      RECLAMATION'S ARGUMENTS LACK MERIT

These responses to Reclamation's arguments will be brief in the effort to minimize repetition given that the preceding argument has established Reclamation had to prepare an EIS and conduct ESA consultation before entering into the CVP converted contracts.

Reclamation does get something right. "As with any case that turns on statutory interpretation, this Court's analysis necessarily begins with the plain language of the Act. Federal Brief 14:12-14 As set forth in the preceding argument, the plain language of the WIIN Act and the CVPIA show Reclamation failed to proceed in the manner required by those two Acts, and NEPA and the ESA, when it failed to prepare an EIS and conduct ESA consultation before entering into the contracts.

### A.    WIIN Act Section 4011(a)(1) Did Not Confine Reclamation's Discretion to Only Negotiating Financial Terms of Repayment

Reclamation turns things upside down in asserting nothing in the text of WIIN Act section 4011(a) "suggests that Congress intended Reclamation to consider the protection of listed species or the environment as ends to be achieved when converting the contracts." Federal Brief 20:26-21:1. Again, Congress preserved all CVPIA obligations which include NEPA and ESA compliance through WIIN Act section 4011(d)(4) and the savings language in sections 4012(a)(1), (2) and (3). Reclamation cites in a parenthetical that "a cardinal rule of statutory construction is that every clause and part of a statute should be given effect if possible." Federal Brief 21:14-17 (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, 645 (2012)). That means giving effect to sections 4011(d)(4) and  4012(a)(1), (2) and (3).

And, of course, the previous contracts required environmental documentation and ESA consultation. Reclamation could not eliminate those requirements when it converted the

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

contracts. *See supra* Argument IA. Nothing in the WIIN Act purposes, titles, headings, or text of section 4011(a) suggests that Congress intended, while allowing prepayment of the CVP contracts, to end the obligations to conduct NEPA analysis and ESA consultations before entering into the contracts. Again, Reclamation's effort to *rewrite* Congress' language in section 4011(a)(1) to read "under *some* mutually agreeable *financial* terms and conditions" lacks merit. *See* Federal Brief 22:6-7 (emphasis in original).

### B.   The WIIN Act Did Not Deprive Reclamation of Discretion to Benefit Protected Species or the Environment

Reclamation argues that under WIIN Act section 4011(a)(4)(C) "[the] listed rights which cannot be modified in conversion encompass effectively all substantive terms of the contract other than the payment terms Congress expressly authorized to be changed, and certainly reach any contract terms relating to water service, the delivery of water to the contractors." Federal Brief 23:19-22.

That is certainly not how Reclamation read the statute. Reclamation eliminated the requirement for NEPA compliance in contract articles 2(a) and (b) and the requirement for ESA consultation in Article 3(e).

Several other reasons have been set forth already including the preservation of CVPIA obligations by WIIN Act section 4011(d)(4) and the savings language in sections 4012(a)(2) and (3), the purposes of the WIIN Act and the CVPIA, and the titles and headings of the respective sections and subsections as to why the WIIN Act did not constitute a potentially catastrophic forever commitment of levels of water exports with no NEPA or ESA analysis of the consequences of same. *See supra* Argument I.

Reclamation argues "this case is effectively no different than *Home Builders*." Federal Brief 4:3-13, citing *Home Builders v. Defs. Of Wildlife*, 551 U.S. 644 (2007). Indeed, *Home Builders* is applicable here, although not in the way Reclamation asserts. The Supreme Court stated what this brief pointed out in the Standard of Review section: "'repeals by implication are not favored'" and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.'" *Home Builders*, 551 U.S. at 662. Moreover, "[we] will not infer a statutory repeal 'unless the later statute expressly contradict[s] the original act' or unless such a construction 'is absolutely necessary … in order that [the] words [of the later statute] shall have any meaning at all.'" *Id*. But contrary to what Reclamation seeks in this case, in *Home Builders* the Supreme Court refused to hold that a later statute, the ESA, had in effect repealed portions of

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

an earlier statute, the Clean Water Act. Here, Reclamation is trying to obtain a holding that the WIIN Act repealed obligations established by the CVPIA, NEPA and the ESA.

Reclamation also cites *Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008 (9th Cir. 2012). Federal Brief 14, 18-19, 23-24, 26. There is no comparison between the annual operating plans (AOPs) addressed in that case and the forever contracts in this case expressly made subject to the requirements of the CVPIA, NEPA, and the ESA.

### C.  The WIIN Act Savings Clauses Retain Reclamation's Discretion to Benefit Protected Species and the Environment

For starters, in addition to the savings clauses in WIIN Act section 4012,  section 4011(d)(4) also evinces Congress' clear command that implementation of the provisions of the subtitle "shall not alter …, (4) except as expressly provided in this section, any obligations under the reclamation law." WIIN Act § 4011(d)(4). The reference to "reclamation law" includes the CVPIA.

Reclamation cites *City & County of San Francisco v. Trump,* 897 F.3d 1225, 1239 (9th Cir. 2018), in trying to discount the savings clauses in section 4012. Federal Brief 24:17-24. That case involved a savings clause in an Executive Order that has nothing to do with the clear language in sections 4011(d)(4) and 4012.

The Supreme Court holds that it has "'no license to give statutory exemptions anything but a fair reading.' [Citation omitted.] Exceptions and exemptions are no less part of Congress' work than its rules and standards—and all are worthy of a court's respect." *BP P.L.C. v. Mayor and City Council of Balt.,* 141 S. Ct. 1532, 1538-39 (2021).

Contrary to what Reclamation argues, there is no fitting "all parts into a harmonious whole" by holding that the WIIN Act, in the face of its sections 4011(d)(4) and 4012, eliminated the requirements for NEPA analysis and ESA consultations prior to entering into CVP contracts; Reclamations' reading produces not harmony, but disruption through its implied repeal of NEPA and the ESA.

### 1.  The Savings Clauses Demonstrate Congress Intended the ESA to Apply to Reclamation's Conversion of Contracts Pursuant to the WIIN Act

Reclamation argues WIIN Act section 4012(a)(3) does not require ESA consultation over the contract conversions. Federal Brief 25-27. Reclamation overlooks WIIN Act sections 4011(d)(4) and 4012(a)(2) which command, except as expressly provided, implementation of the WIIN Act does not "alter," section 4011(d)(4), or "affect or modify" any obligations under the CVPIA. WIIN Act §§ 4012(a)(2), 4011(d)(4). As shown already in this brief, the CVPIA

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

requires an EIS and ESA consultations before entering into CVP contracts. And as shown already in this brief, the Ninth Circuit has held the CVPIA requires an EIS for renewal of long term CVP contracts and the ESA requires consultations for renewal of the contracts. *See Houston*, 146 F.3d at 1125-28, 1131.

Reclamation argues that because section 4010 of the WIIN Act omits consultation pursuant to ESA when converting contracts among its list of actions required to benefit protected species, Congress did not intend environmental review to attach to the contract conversion process. Federal Brief 26-27. However, it is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal citation omitted). That context includes section 4011(d)(4) and the savings language in section 4012.

This Court got it right in *California Natural Resources Agency v. Ross* in concluding "nothing in the WIIN Act modifies (or even bends) any of Federal Defendants' obligations under the ESA." No. 1:20-CV-00426, 2020 WL 2404853, at *20 (E.D. Cal., May 11, 2020).

### 2. The Savings Clauses Demonstrate Congress Intended NEPA to Apply to Reclamation's Conversions of Contracts Pursuant to the WIIN Act

#### a. The WIIN Act Provisions Retaining CVPIA Obligations Do Require the Application of NEPA

Reclamation admits "one of the many obligations imposed on Reclamation by the CVPIA is to conduct environmental review for the renewal of any existing 'long-term' CVP contracts." Federal Brief 28:3-5. Reclamation then makes its meritless argument contrary to the language, purposes, and intent of the WIIN Act and the CVPIA as well as dictionary definitions of the words "renew" and "renewal," that while NEPA review is required prior to entry into 25-year contracts, such review is not required prior to entry into forever contracts. Federal Brief 27-28.

Reclamation's argument lacks merit as explained above in this brief in Argument IB2.

#### b. The Savings Clause Referencing State Law Does Require the Application of NEPA

WIIN Act section 4012(a)(1) provides the Act "shall not be interpreted or implemented in a manner that … preempts or modifies any obligation of the United States to act in conformance with applicable State law, including applicable State water law." WIIN Act § 4012(a)(1). Reclamation argues Plaintiffs seek NEPA review going beyond assessing the impacts on the environment. Federal Brief 29:8-17. Given climate change, reduced runoff, and increasing

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

drought conditions, determining whether the California Constitution prohibition of waste or unreasonable use of water is being met by the contract provisions certainly would assess impacts on the environment.

There are also the requirements of the Sacramento-San Joaquin Delta Reform Act of 2009, Water Code §§ 85000 et seq. The established State policy is "*to reduce reliance on the Delta* in meeting California's future water supply needs through a statewide strategy of investing in improved water supplies, conservation, and water use efficiency." Cal. Water Code § 85021. (emphasis added). Determining whether the Delta Reform Act State policy to reduce reliance on the Delta is being met by the contract provisions certainly would assess impacts on the environment.

Then there is California's public trust doctrine as explained in *National Audubon Society v. Superior Court*,

> "The state has an affirmative duty to take the public trust into account in the planning and allocation of water resources, and to protect public trust uses whenever feasible. Just as the history of this state shows that appropriation may be necessary for efficient use of water despite unavoidable harm to public trust values, it demonstrates that an appropriative water rights system administered without consideration of the public trust may cause unnecessary and unjustified harm to trust interests … . As a matter of practical necessity the state may have to approve appropriations despite foreseeable harm to public trust uses. In so doing, however, the state must bear in mind its duty as trustee to consider the effect of the taking on the public trust … and to preserve, so far as consistent with the public interest, the uses protected by the trust." 33 Cal.3d 419, 446-47 (1983) (citations omitted).

The Supreme Court recognizes that "the States retain residual power to determine the scope of the public trust over waters within their borders." *PPL Mont., LLC v. Montana*, 565 U.S. 576, 604 (2012). And "running waters cannot be owned—whether by a government or by a private party." *Sturgeon v. Frost*, 139 S. Ct. 1066, 1078 (2019). The forever contracts with prescribed quantities of delivered water with no analysis whatsoever look like ownership. Going through the NEPA and ESA processes would have allowed the State and the public to provide views on the planning and allocation of the subject waters. The Delta Reform Act mandates that "[the] longstanding constitutional principle of reasonable use and the public trust doctrine shall be the foundation of state water management policy and are particularly important and applicable to the Delta." Cal. Water Code § 85023.

Obliviously, entering into the forever CVP contracts with no analysis of environmental impacts on the public trust resource of water preempts the obligations of the United States to act

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

in conformance with applicable California law including the California Constitution, the Delta Reform Act and California's public trust doctrine.

### D.  Reclamation's Interpretation of the Statute Should Not be Affirmed

Reclamation seeks *Chevron* deference in its quest to deliver over 3 million acre-feet of water to the CVP contractors forever while taking no look, let alone the NEPA-required "hard look," at the environmental consequences of doing so; alternatives to doing so; mitigation measures to address the environmental consequences; as well as the consequences for endangered and threatened fish species. Federal Brief 30-31.

Reading section 4011 to preclude NEPA analysis and ESA consultations would place section 4011 directly at odds with other provisions of the WIIN Act. "[W]here possible, provisions of a statute should be read so as not to create a conflict." *La. Pub. Svc. Comm'n v. FCC*, 476 U.S. 355, 370 (1986); *see United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007) ("[Statutes] must 'be read as a whole.'"). Per section 4012(a)(2), Subtitle J "shall not be interpreted or implemented in a manner that … affects or modifies any obligation under the" CVPIA. WIIN Act § 4012(a)(2). The savings provision in section 4012(a)(3) expressly affirms that the ESA applies to the entire subtitle, mandating that Subtitle J "not be interpreted or implemented in a manner that … (3) overrides, modifies, or amends the applicability of the Endangered Species Act of 1973." § 4012(a)(3). Interpreting section 4011 to preclude NEPA and ESA environmental review would directly conflict with the savings language in section 4012, and such an incongruous reading should be avoided. *See La. Pub. Svc. Comm'n*, 476 U.S. at 370. Read separately and as a whole, the language in section 4011(d)(4) and savings language in section 4012 indicates that Congress did not intend to exclude converted contracts from NEPA and ESA requirements.

Furthermore, Reclamation claims that its interpretation of section 4011 to exclude NEPA and ESA analysis is reasonable "because when Congress wanted NEPA to be applied, or to see specific actions to be taken to benefit protected species, it said so directly." Federal Brief 31:5-7. But Congress did say so directly; sections 4012(a)(2) and 4012(a)(3) expressly state that the CVPIA and ESA remain applicable to Subtitle J, and section 4011(d)(4) affirms existing obligations under the CVPIA persist unaltered. WIIN Act §§ 4011(d)(4), 4012(a)(2)-(3). Accordingly, section 4011 should not be read to implicitly repeal NEPA and ESA applicability. *See Tenn. Valley Auth.*, 437 U.S. at 189-190; *see also Whitman*, 531 U.S. at 468 ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes").

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

In cases where the delegation or reading of the statute involves a major legal question, the Supreme Court has cautioned against rushing to assume Congress meant its ambiguity to confer deference to the agency's interpretation. *See Brown & Williamson Tobacco Corp.*, 529 U.S. at 159 (2000) ("In extraordinary cases, however, there may be reason to hesitate before concluding that Congress has intended such an implicit delegation."); *King v. Burwell*, 576 U.S. 473, 474 (2015) ("[H]ad Congress wished to assign that question to an agency, it surely would have done so expressly."); *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 231 (1994) ("It is highly unlikely that Congress would leave the determination of whether an industry will be entirely, or even substantially, rate-regulated to agency discretion—and even more unlikely that it would achieve that through such a subtle device as permission to 'modify' rate-filing requirements."). Here, Reclamation's interpretation would upend bedrock environmental law and its application to the California water legal regime, in perpetuity.

Finally, the Ninth Circuit "do[es] not afford *Chevron* or *Skidmore* deference to litigation positions unmoored from any official agency interpretation because 'Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.'" *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008) (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212 (1988)) In *Federal Subsistence Board*, the Ninth Circuit ruled the Federal Subsistence Board's interpretation of "population" as synonymous with "species" was owed no deference because it was not adopted in any legally-binding regulation or in any official agency interpretation of the regulation, but "[r]ather, [the] interpretation appear[ed] to be purely a litigation position, developed during the course of the present case." *Id.*

Reclamation has not pointed to any public Reclamation regulation or official interpretation explaining why the NEPA and ESA review previously required for entering into long-term CVP contracts is not required before entering into forever contracts. Reclamation has not pointed to any public official agency interpretation explaining why, on the one hand, under WIIN Act section 4011(a)(4)(C) Reclamation claims it cannot modify the existing contracts when converting them but, on the other hand, it can modify them by eliminating the previous provisions requiring environmental documentation and ESA consultation. The only official, public Executive Branch pre-litigation interpretation Plaintiffs are aware of is the December 16, 2016, signing statement by President Obama. His statement included,

> Building on the work of previous Administrations, my Administration has worked closely with the State of California and other affected parties to address the critical elements of California's complex water challenges by accommodating the needs and concerns of

36

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

California water users and the important species that depend on that same water. This important partnership has helped us achieve a careful balance based on existing state and federal law. It is essential that it not be undermined by anyone who seeks to override that balance by misstating or incorrectly reading the provisions of Subtitle J. Consistent with the legislative history supporting these provisions, I interpret and understand Subtitle J to require continued application and implementation of the Endangered Species Act, consistent with the close and cooperative work of federal agencies with the State of California to assure that state water quality standards are met. This reading of the short-term operational provisions carries out the letter and spirit of the law and is essential for continuing the cooperation and commitment to accommodating the full range of complex important interests in matters related to California water. (Statement on Signing the Water Infrastructure Improvements for the Nation Act, 2016 Daily Comp. Pres. Doc. 12 (Dec. 16, 2016), https://www.govinfo.gov/content/pkg/DCPD-201600852/html/DCPD-201600852.htm.

As set forth in the Standard of Review section of this brief, Defendants' task is not to be carried over the finish line by *Chevron* deference. Instead, it is to prove to this Court that Congress had a clear and manifest intent in the WIIN Act to repeal the CVPIA requirements to prepare an EIS and conduct ESA consultations before entering into the CVP contracts. And Defendants must do that in the face of the WIIN Act section 4011(d)(4) "effect on existing law not altered" and the WIIN Act savings language in section 4012. WIIN Act §§ 4011(d)(4), 4012. And Defendants must do that even though the previous contracts *required* environmental documentation and ESA consultation.

## III. THE CONTRACTORS' ARGUMENTS LACK MERIT

### A.  The Ninth Circuit Has Held that Entering into CVP Contracts Requires NEPA Compliance and ESA Consultations

The Contractors argue that the contract conversions are not major Federal actions so that NEPA review is not required, even if Reclamation's action in entering into the contracts is discretionary. Contractors' Brief 8-13.

The Ninth Circuit laid that issue to rest years ago. The Ninth Circuit, citing CVPIA section 3404(c)(1), held, "the CVPIA requires the government to complete an EIS before it may enter into any subsequent Friant [the contracts involved in that case] renewal contracts." *Houston*, 146 F.3d at 1131.

This Court, as well as the Ninth Circuit should there be an appeal, are bound by the decision in *Houston* on this issue. "'*Stare decisis*—in English, the idea that today's Court should stand by yesterday's decisions— is a foundation stone of the rule of law.'" *Danielson v. Inslee*, 945 F.3d 1096, 1097 (9th Cir. 2019) (quoting *Kimble v. Marvel Ent, LLC,* 576 U.S. 446, 455

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

(2015)). *Stare decisis* carries enhanced force when a decision interprets a statute. *Kimble*, 576 U.S. 446 at 456. And, in "'cases involving property and contract rights'—considerations favoring *stare decisis* are 'at their acme.'" *Id.* at 457 (internal citations omitted). "That is because parties are especially likely to rely on such precedents when ordering their affairs." *Id.* So, the law on this issue is settled.

Beyond that, this issue was settled by CVPIA section 3404(c)(1), which expressly requires "appropriate environmental review" prior to renewal of CVP contracts, with the exception of interim 2- and 3-year contracts. This issue was also settled by section 3404(c)(2) requiring that all requirements imposed by existing law including the CVPIA be incorporated within CVP contracts. That would include compliance with NEPA and the ESA. The obligations of the CVPIA were preserved by WIIN Act section 4011(d)(4) and the savings language in section 4012. Arguments IB-F and II, above in this brief, argue this in detail. As pointed out above, in Argument IB2, Reclamation *admits* the CVPIA does *require* NEPA when a contract is renewed.

As Plaintiffs pointed out when moving for summary judgment on August 17, 2021, this paradigmatic shift from short-term, only *potentially* renewable water contracts, to permanent, fixed-quantity guarantees to deliver about 3 million acre-feet per year of CVP water is—on its face—the sort of "major" federal action that NEPA was plainly meant to encompass. Plaintiffs' Brief 12-14.

The Contractors argue the contract conversions do nothing to alter the environmental status quo. Contractors' Brief 12:1-3, 15:6-10. It would be difficult to do more to alter the environmental status quo than switch from short-term interim contracts to permanent contracts. And it would be difficult to do more to alter the environmental status quo than to drop as Reclamation did, requirements for appropriate environmental review and ESA consultations before entering into CVP contracts.

The Contractors mix into their argument the same claim as the Federal Defendants, that WIIN Act section 4011(a)(4)(C) "expressly prohibits Reclamation from altering the terms of water service through the course of conversion." Contractors' Brief 9:16-20, 12-13. Arguments I and II, above in this brief, address that claim.

The Contractors make their no agency discretion arguments after saying "[e]ven assuming for argument that the conversions had effects, … ." Contractors' Brief 12:13-15. There is no "assuming for argument" here that the conversions had effects. It is undisputed that the

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

deliveries of CVP water accomplished by diversions from rivers and the Delta have adverse environmental impacts. Joint SUF ¶¶ 17-20.

### B.   The WIIN Act Contract Conversions Do Result in an "Irreversible and Irretrievable Commitment" of Resources

The Contractors argue the converted contracts do not result in an "irreversible and irretrievable commitment" of resources. Contractors' Brief 13-15. The Federal Defendants try to excuse the absence of discretionary review of the contract amounts by the fact that contract quantities are often not delivered due to factors such as drought or existing biological opinions. Federal Brief 11-12, 23 n.14). In *Houston*, the Ninth Circuit has already held that entry into lengthy water contracts—40-year contracts in that case—constitute an irreversible and irretrievable commitment of resources under the ESA. *Houston*, 146 F.3d at 1128 n.5. The Ninth Circuit has affirmed this holding on numerous occasions. *Karuk Tribe*, 681 F.3d at 1021 ("Examples of agency actions triggering Section 7 consultation include the renewal of existing water contracts.") (citing *Houston*); *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F. 3d 969, 977 (9th Cir. 2003) ("*See Houston*, 146 F.3d at 1128 (contract renewals constitute ongoing agency activity invoking the consultation provisions of the ESA).").

An irreversible and irretrievable commitment of resources is such whether it is made under the ESA or NEPA. Under *stare decisis* this issue has already been decided by the Ninth Circuit in *Houston.*

The shortage provision cited by the contractors, Contractors' Brief 13:27-14:6, does not eliminate the requirement for ESA consultation, before renewing CVP contracts. *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 783-84 (9th Cir. 2014) (holding that the shortage provision in contracts with Reclamation does not deprive Reclamation of discretion).

The Contractors cite *Pit River Tribe v. U.S. Forest Service*, 469 F.3d 768 (9th Cir. 2006). Contractor's Brief 14:7-22. In that case, the Ninth Circuit actually reversed a summary judgment that had been granted in favor of the government, holding the agencies had violated NEPA by failing to complete an EIS before extending leases. *Pit River Tribe*, 469 F.3d at 788. The court pointed out that, before the leases were extended, the company would have had nothing after the term of the lease ended. *Id.* at 784. "Instead of preserving the status quo, the lease extensions gave Calpine an extra 5 years to develop the land and the possibility of obtaining a future lease extension of up to 40 years." *Id.*

The contracts provide:

39

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

1
2
3
4

> Because the capacity of the Project to deliver Project Water has been constrained in recent years and may be constrained in the future due to many factors including hydrologic conditions and implementation of Federal and State laws, the likelihood of the Contractor actually receiving the amount of Project Water set out in subdivision (a) of this Article in any given Year is uncertain. The Contracting Officer's modeling referenced in the PEIS projected that the Contract Total set forth in this Contract will not be available to the Contractor in many years.

5

Joint SUF Ex. 1 Art. 3(b), at 32; **ECF 143-1**, Joint SUF Ex. 3 Art. 3(b), at 15).

6
7
8
9
10
11
12
13
14
15
16

The contracts also provide, "The Contracting Officer shall make reasonable efforts to… provide the water available under this Contract" and "use all reasonable means to guard against a Condition of Shortage in the quantity of Project Water to be made available to the Contractor pursuant to this Contract." Plaintiffs' SUF ¶ 1. This sets the starting point, and creates momentum and pressure to deliver as much water as possible every year up to the contract amounts regardless of the consequences for other public trust values including water quality, public health, Delta agriculture and endangered and threatened fish species. And doing so without having had the opportunity provided by the NEPA and ESA processes which would include lowering quantities set forth in Article 3(a) of the contracts. Reclamation has instead locked in unsustainable amounts of water as established by the fact that Reclamation already knows "the Contract Total set forth in this Contract will not be available to the Contractor in many years." Joint SUF Ex. 1 Art. 3(b), at 32.

17
18
19

These contracts do establish an irreversible and irretrievable commitment of public trust resources in the absence of any compliance with NEPA, the ESA, or the public trust doctrine whatsoever.

### C. The Contract Conversions Constitute "Agency Action" under the ESA

20
21
22
23
24

The Contractors claim the contract conversions do not constitute agency action under the ESA. Contractors' Brief 15-16. This issue has also already been decided by the Ninth Circuit in *Houston*, 146 F.3d at 1125-28. As the Ninth Circuit said, "[c]learly, negotiating and executing contracts is 'agency action.'" *Id.* at 1125. Under *stare decisis* this issue has been decided by *Houston.*

25
26

Once again, the Contractors mix the WIIN Act section 4011(a)(4)(C) no discretion claim into their argument. Contractors' Brief, 16:6-8. That claim has been addressed in detail above. *See supra* Arguments I, II.

27

### D. Plaintiffs are Entitled to the Relief Sought

28

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

The Contractors contend Plaintiffs are not entitled to the relief sought including rescission of the contracts. Contractors' Brief 17-21. The Contractors request further briefing should the court find a NEPA or ESA violation in this case. *Id.* 19-21.

In *Houston*, the Ninth Circuit held all of the CVP contracts entered into in the absence of ESA compliance were subject to rescission. 146 F.3d at 1127.

The Contractors argue that before ordering vacatur of an agency action, "courts apply the two-factor test laid out in *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). Contractors' Brief 18:5-12.

The first factor is the seriousness of the agency's errors. It would be difficult to find errors more serious than those made by Reclamation in converting numerous contracts for water exports amounting to three million acre-feet per year into permanent contracts with absolutely no NEPA review or ESA consultations whatsoever. And doing that in the face of the CVPIA and the Ninth Circuit's decision in *Houston*, 146 F.3d 1118. And doing that in the face of this Court's decision in *Ross* that "nothing in the WIIN Act modifies (or even bends) any of Federal Defendant's obligations under the ESA." No. 1:20-CV-00426, 2020 WL 2404853, at *20. And doing that despite the fact the previous contracts *required* environmental documentation and ESA consultation. And doing that in the face of climate change reduced runoff and freshwater river flows on the one hand, coupled with climate change increased sea level rise and salinity intrusion into the imperiled San Francisco Bay-Delta estuary on the other hand. And doing that in the face of technological advances lessening the needs for exporting water and California's Delta Reform Act policy "to reduce reliance on the Delta in meeting California's future water supply needs through a statewide strategy of investing in improved water supplies, conservation, and water use efficiency." Cal. Water Code § 85021. This was a deliberate bad faith violation of law by Reclamation.

The second factor is the disruptive consequences that would result from vacatur. Contrary to the "profoundly disruptive impact" asserted by the Contractor Defendants, Contractors' Brief 19:1, there would be virtually no disruptive impact whatsoever. Water deliveries can proceed as they have for years under the interim contracts authorized by CVPIA section 3404(c)(1). All that is sought by Plaintiffs in this action is to rescind the converted contracts and prevent the entry into converted permanent contracts until Reclamation has complied with NEPA and the ESA as

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

required by the CVPIA, NEPA, the ESA, and the decision in *Houston*, 146 F.3d at 1125-28, 1131. Water is a public trust resource. The water does not belong to the CVP contractors.[6]

Finally, the Contractors cite cases seeking additional briefing on remedies if the Court rules for Plaintiffs on the NEPA or ESA issues. Contractors' Brief 20 n.9. Yet, cases included in Contractors' list, such as *Central Sierra Environmental Resource Center v. U.S. Forest Service*, 916 F.Supp.2d 1078, 1098 (E.D. Cal. 2013) , did not involve the seriousness of Reclamations' errors and the absence of disruptive consequences involved in this case.

**CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that summary judgment be granted in their favor, confirming that Reclamation's conversions of the CVP contracts violated NEPA and the ESA and that the continuing conversions violate NEPA and the ESA. Plaintiffs further request that the Court grant the declaratory and injunctive relief requested, including rescission of the contracts that have already been converted. Plaintiffs request the Court deny Defendants' cross-motions for summary judgment.[7]

///

Dated: December 6, 2021          /s/ E. Robert Wright

E. Robert Wright
LAW OFFICE OF E. ROBERT WRIGHT

Adam Keats
LAW OFFICE OF ADAM KEATS, PC
Attorneys for Plaintiffs Restore the Delta and
Planning and Conservation League

DATED: December 6, 2021          /s/ John Buse

John Buse
Ross Middlemiss
CENTER FOR BIOLOGICAL DIVERSITY
Attorneys for Plaintiff Center for Biological Diversity

---

[6] The Superior Court of California, County of Fresno denied in its entirety Westlands' renewed motion to validate its CVP contract on October 27, 2021. Plaintiffs do not know the validation status of other CVP converted contracts.

[7] The following law students from the Stanford Environmental Law Pro Bono Project participated in the research for and writing of this brief under the review of counsel: Julia Anderson, Kiran Chawla, Josh Kirmsse, Jesse Lazarus, Alistair Murray, Sydney Speizman and Vanessa Young Viniegra.

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I electronically filed PLAINTIFFS' COMBINED BRIEF IN REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFFS' OPPOSITION TO CONTRACTOR DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS; and PLAINTIFFS' RESPONSES TO CONTRACTOR DEFENDANTS' SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS with the Clerk of Court using the ECF system, such that email notification will automatically be sent to the attorneys of record.

/s/ John Buse
John Buse

Plaintiffs' Reply and Opposition to Cross-Motions for Summary Judgment