**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY; RESTORE THE DELTA; PLANNING AND CONSERVATION LEAGUE,

*Plaintiffs - Appellants*,

v.

UNITED STATES BUREAU OF RECLAMATION; DOUG BURGUM, in his official capacity of Secretary of Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; CITY OF FOLSOM; CITY OF ROSEVILLE; EAST BAY MUNICIPAL UTILITY DISTRICT; PLACER COUNTY WATER AGENCY; SACRAMENTO COUNTY WATER AGENCY; SACRAMENTO MUNICIPAL UTILITY DISTRICT; SAN JUAN WATER DISTRICT; WESTLANDS WATER DISTRICT; CITY OF WEST SACRAMENTO; CITY OF SHASTA LAKE; MOUNTAIN GATE COMMUNITY SERVICES DISTRICT; SHASTA COMMUNITY

No. 25-5137

D.C. No. 1:20-cv-00706-JLT-EPG

OPINION

SERVICES DISTRICT; SHASTA COUNTY WATER AGENCY; CITY OF REDDING; 4-M WATER DISTRICT; BELLA VISTA WATER DISTRICT; COLUSA COUNTY WATER DISTRICT; CORNING WATER DISTRICT; CORTINA WATER DISTRICT; DUNNIGAN WATER DISTRICT; GLIDE WATER DISTRICT; KANAWHA WATER DISTRICT; LA GRANDE WATER DISTRICT; CENTERVILLE COMMUNITY SERVICES DISTRICT; CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT; DAVIS WATER DISTRICT; DEL PUERTO WATER DISTRICT; GLENN VALLEY WATER DISTRICT; MYERS-MARSH MUTUAL WATER COMPANY; ORLAND-ARTOIS WATER DISTRICT; STOCKTON EAST WATER DISTRICT; WESTSIDE WATER DISTRICT; BANTA-CARBONA IRRIGATION DISTRICT; BYRON BETHANY IRRIGATION DISTRICT; EAGLE FIELD WATER DISTRICT; FRESNO SLOUGH WATER DISTRICT; HOLTHOUSE WATER DISTRICT; JAMES IRRIGATION DISTRICT; SANTA CLARA

VALLEY WATER DISTRICT; PROBERTA WATER DISTRICT; RECLAMATION DISTRICT 1606; TRANQUILITY IRRIGATION DISTRICT; WEST STANISLAUS IRRIGATION DISTRICT; PATTERSON IRRIGATION DISTRICT; CONTRA COSTA WATER DISTRICT; PACHECO WATER DISTRICT; SAN LUIS WATER DISTRICT; COUNTY OF COLUSA; EL DORADO IRRIGATION DISTRICT; PANOCHE WATER DISTRICT; CITY OF AVENAL; CITY OF COALINGA; CITY OF HURON; SAN BENITO COUNTY WATER DISTRICT; MERCY SPRINGS WATER DISTRICT; CITY OF LINDSAY; CITY OF ORANGE COVE; CITY OF TRACY; COUNTY OF FRESNO; COUNTY OF MADERA; COUNTY OF TULARE; HILLS VALLEY IRRIGATION DISTRICT; INTERNATIONAL WATER DISTRICT; KERN-TULARE WATER DISTRICT; LAGUNA WATER DISTRICT; LOWER TULE RIVER IRRIGATION DISTRICT; TRI VALLEY WATER DISTRICT; WESTLANDS WATER DISTRICT DISTRIBUTION DISTRICT NO. 1;

WESTLANDS WATER DISTRICT DISTRIBUTION DISTRICT NO. 2; WESTLANDS WATER DISTRICT FINANCING CORPORATION; CLEAR CREEK COMMUNITY SERVICES DISTRICT,

*Defendants - Appellees*.

Appeal from the United States District Court
for the Eastern District of California
Jennifer L. Thurston, District Judge, Presiding

Argued and Submitted May 22, 2026
San Francisco, California

Filed August 17, 2026

Before: Kim McLane Wardlaw, Daniel A. Bress, Gabriel P. Sanchez, Circuit Judges

Opinion by Judge Sanchez

## SUMMARY*

### Environmental Law

The panel affirmed the district court's summary judgment in favor of the U.S. Bureau of Reclamation in plaintiffs' action concerning environmental review of water service contracts under the Water Infrastructure Improvements for the Nation ("WIIN") Act for the Central Valley Project, a federally owned network of dams, canals and power plants that carry water from Northern California to water districts in Central and Southern California.

The WIIN Act created a mechanism for water districts to change the payment structure of their contracts so that water districts can prepay the costs of their water service contracts with the federal government and the government can use prepaid funds to build water storage infrastructure.

The panel held that Reclamation could convert the water service contracts at issue without conducting contract-specific National Environmental Policy Act ("NEPA") review and Endangered Species Act ("ESA") consultation.

NEPA requires that an agency conduct environmental review of actions only when that agency has some control over preventing the environmental effects of its actions. Similarly, Section 7(a)(2) of the ESA requires an agency to consult with the Fish and Wildlife Service and National Marine Fisheries Service only when that agency

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

has some discretion to take action for the benefit of a protected species.

The panel held that § 4011(a) of the WIIN Act creates a mandatory duty for Reclamation to convert water service contracts into repayment contracts upon the request of the contractor, and does not provide Reclamation any discretion to alter the terms of the contract to alleviate environmental harms as part of the conversion process. Read together, § 4011(a)(1) and § 4011(a)(4) of the WIIN Act order Reclamation to convert water service contracts upon request by changing only terms that relate to the contract payment structure. Thus, because conversion is a nondiscretionary act, the panel held that Reclamation was not required to undertake NEPA review or ESA consultation prior to converting each water service contract under the WIIN Act. Contrary to plaintiffs' argument, the panel held that its reading of § 4011(a) complies with the WIIN Act's savings clauses.

---

## COUNSEL

E. Robert Wright (argued), Law Office of E. Robert Wright, Sacramento, California; John Buse and Aruna M. Prabhala, Center for Biological Diversity, Oakland, California; Adam Keats, Law Office of Adam Keats PC, San Francisco, California; for Plaintiffs-Appellants.

Angela N. Ellis (argued), Robert P. Stockman, David W. Gehlert, and Jeffrey N. Candrian, Attorneys, Environment & Natural Resources Division; Robert Lundman, Deputy Section Chief; Adam R.F. Gustafson, Principal Deputy Assistant Attorney General; United States Department of

Justice, Washington, D.C.; Meredith E. Nikkel (argued), Michael E. Vergara, Alyson E. Ackerman, Rebecca R.A. Smith, and Brian E. Hamilton, Downey Brand LLP, Sacramento, California; Cynthia J. Larsen (argued) and Justin Giovannettone, Orrick Herrington & Sutcliffe LLP, Sacramento, California; Kristen T. Castanos and Elizabeth P. Ewens, Stoel Rives LLP, Sacramento, California; Jennifer T. Buckman, Bartkiewicz Kronick Shanahan PC, Sacramento, California; Andrew M. Hitchings, Aaron A. Ferguson, and Ramsey L. Kropf, Somach Simmons & Dunn, Sacramento, California; Mary Loum and Elisabeth Esposito, Brownstein Hyatt Farber Schreck, Sacramento, California; Eric N. Robinson, William T. Chisum, Elizabeth Leeper, and Daniel J. O'Hanlon, Kronick Moskovitz Tiedemann & Girard, Sacramento, California; Collin M. Bogener, Moore & Bogener Inc., Redding, California; Joseph Larmour, County Counsel, County of Shasta, Redding, California; Jeanne M. Zolezzi, Herum Crabtree Suntag, Stockton, California; Brett Stroud, Scott K. Kuney, and Alan F. Doud, Young Wooldridge LLP, Bakersfield, California; Kaitlin S. Bursey, Lauren D. Layne, and Joseph M. Marchini, Baker Manock & Jensen, Fresno, California; Sean G. Herman, Hanson Bridgett LLP, San Francisco, California; Sharon Nagle, Bold Polisner Maddow Nelson & Judson, Walnut Creek, California; Jolie-Anne S. Ansley and Thomas M. Berliner, Duane Morris LLP, San Francisco, California; Moses Diaz, Public Interest Law Firm APC, Visalia, California; Zishan Lokhandwala, Romaine Lokhandwala Law Group, Seattle, Washington; Mario U. Zamora, Megan N. Crouch, and Sebastian L. Silveira, Griswold LaSalle Cobb Dowd & Gin LLP, Hanford, California; Neal E. Costanzo, Costanzo & Associates, Fresno, California; Kyle R. Roberson, Attorney, County of Fresno, Fresno,

California; Quentin Cedar, Lozano Smith, Fresno, California; Ross W. Miller, Deputy County Counsel, Tulare Office of the County Counsel, Visalia, California; Philip A. Williams, Law Offices of Philip A. Williams, Ukiah, California; Alex M. Peltzer, Peltzer Richardson & Koontz Law Corporation, Visalia, California; for Defendants-Appellees.

Thane D. Somerville, Morisset Schlosser Jozwiak & Somerville, Seattle, Washington, for Amicus Curiae Hoopa Valley Tribe.

Stephan C. Volker, Stephanie C. Clarke, and Jamey M.B. Volker, Law Offices of Stephan C. Volker, Berkeley, California, for Amici Curiae North Coast Rivers Alliance, California Sportfishing Protection Alliance and San Francisco Crab Boat Owners Association.

Roger B. Moore, Law Office of Roger B. Moore, Oakland, California, for Amici Curiae California Water Impact Network, Sierra Club, Central Delta Water Agency, and South Delta Water Agency.

**OPINION**

SANCHEZ, Circuit Judge:

The Water Infrastructure Improvements for the Nation ("WIIN") Act, Pub. L. No. 114-322, 130 Stat. 1628 (2016), created a mechanism for water districts to change the payment structure of their contracts so that water districts can prepay the costs of their water service contracts with the federal government and the government can use prepaid funds to build water storage infrastructure. The WIIN Act applies to the Central Valley Project, a federally owned network of dams, canals, and power plants that carries water from Northern California to water districts in Central and Southern California.

This appeal addresses whether the Bureau of Reclamation ("Reclamation") must undertake environmental review and consultation under the National Environmental Policy Act ("NEPA") and the Endangered Species Act of 1973 ("ESA") before "converting" each of these water service contracts under the WIIN Act. We hold that Reclamation may convert these contracts without conducting contract-specific NEPA review and ESA consultation. Section 4011(a) of the WIIN Act creates a mandatory duty to convert water service contracts upon the request of the contractor and does not allow Reclamation to consider environmental effects or to take actions that could benefit protected species as part of the contract conversion process. Still, as Reclamation acknowledges, environmental review continues at a systemwide level in the ongoing operations of the Central Valley Project. We therefore affirm the district court's entry of summary judgment for Defendants.

# I.

## A.

The Central Valley Project is a federally run system of reservoirs, dams, canals, and hydroelectric power plants that carries water from Northern California to Central and Southern California. *Nat. Res. Def. Council v. Haaland*, 102 F.4th 1045, 1056 (9th Cir. 2024). That water irrigates farmland, generates electricity, and supplies drinking water for residents throughout California. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 984 (9th Cir. 2014). The Central Valley Project, however, has environmental costs. In diverting the natural flow of water, for example, the Central Valley Project alters the habitats of native fish and creates currents that strand fish in dangerous locations. *Id.* at 986, 996 n.14.

A complex legal architecture governs how the Department of the Interior—primarily through the Bureau of Reclamation—manages the Central Valley Project. Two environmental statutes require agencies to assess environmental effects before taking certain actions. First, NEPA, 42 U.S.C. § 4321 *et seq*., instructs all agencies to prepare an environmental impact statement for "major Federal actions significantly affecting the quality of the human environment." *Id.* § 4332(2)(C). The goal of NEPA is to "inform agency decisionmaking." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168, 173 (2025).

Second, Section 7(a)(2) of the ESA, 16 U.S.C. § 1531 *et seq*., directs all agencies to consult with the Fish and Wildlife Service or the National Marine Fisheries Service to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence

of any endangered species or threatened species or result in the destruction or adverse modification" of a critical habitat. *Id.* § 1536(a)(2). Once formally consulted, the relevant Service will issue a "biological opinion" that assesses the action's effect on the protected species or critical habitat. *Id.* § 1536(b)(3)(A); 50 C.F.R. § 402.02, 402.14(h)(1).

Congress's passage of the Central Valley Project Improvement Act ("CVPIA"), Pub. L. No. 102-575, § 3401 *et seq.*, 106 Stat. 4600, 4706–31 (1992), prompted Reclamation to develop a systematic process of environmental review for the Central Valley Project. *See Haaland*, 102 F.4th at 1057. The CVPIA added the protection of fish and wildlife to the Central Valley Project's official project purpose. CVPIA § 3402. In pursuit of that goal, the CVPIA directed Reclamation to prepare a "programmatic environmental impact statement" for its operation of the entire Central Valley Project, *id.* § 3409, and instructed that Reclamation conduct NEPA review for renewals of long-term contracts, *id.* § 3404(c)(1). Reclamation thereafter developed a "two-track" review process in which Reclamation conducts NEPA review and ESA consultation for both the entire operation of the Central Valley Project [1] and Reclamation's "narrower, discrete

[1] In 2024, Reclamation prepared a programmatic environmental impact statement and both the Fish and Wildlife Service and National Marine Fisheries Service generated programmatic biological opinions. *See Long-Term Operations of the Central Valley Project and State Water Project*, U.S. Bureau of Reclamation, https://perma.cc/X2ZF-HJ55; *2024 Biological Opinion*, U.S. Bureau of Reclamation, https://perma.cc/6DEQ-5WCG; *Endangered Species Act Section 7(a)(2) Programmatic Biological Opinion for the Reinitiation of Consultation on the Long-Term Operation of the Central Valley Project and State Water Project*, NOAA Fisheries, https://perma.cc/J9KP-54VE.

actions, such as the renewals of specific water contracts." *Haaland*, 102 F.4th at 1057.

Additionally, reclamation law governs how Reclamation contracts with water users to deliver water from the Central Valley Project to those users. The Reclamation Project Act of 1939 ("Reclamation Act"), Pub. L. No. 76–260, 53 Stat. 1187, codified at 43 U.S.C. § 485h, creates two types of contracts relevant here: repayment contracts and water service contracts. These contracts are often termed "Section 9(d)" and "Section 9(e)" contracts, respectively, corresponding with the sections of the Reclamation Act that authorized them. *See* 43 U.S.C. § 485h(d)–(e).

Under a repayment contract, the contractor receives water in exchange for repaying the water project's construction costs. 43 U.S.C. § 485h(d). The contractor pays in fixed installments over a period of up to forty years, and once those costs are fully repaid, the contractor pays only to operate and maintain the project going forward. *Id.* § 485h(d)(3); *Grant Cnty. Black Sands Irrigation Dist. v. U.S. Bureau of Reclamation*, 579 F.3d 1345, 1351 (Fed. Cir. 2009) (citing 43 U.S.C. § 498). In contrast, under a water service contract, the contractor receives water in exchange for paying an annual sum, at a rate set by the Secretary of the Interior, over a fixed term of years. *Id.* § 485h(e). Water service contracts, unlike repayment contracts, expire at the end of their term. *See id.* Thus, "[t]he repayment contract is analogous to a mortgage, while a water service contract is more like a lease." *Grant Cnty. Black Sands Irrigation Dist.*, 579 F.3d at 1354 (citation omitted). This case focuses on the conversion of water service contracts into repayment contracts.

The WIIN Act, enacted in 2016, created a new mechanism for water service contractors to convert their water service contracts into repayment contracts and prepay their construction costs, either in a lump sum or within three years. WIIN Act § 4011(a). Those prepayments would fund the federal government's construction of water storage projects. *Id.* § 4011(e)(2). The converted contracts would, as a repayment contract, last indefinitely, subject to the contractor's continued payments. *Id.* § 4011(a)(2)(D). The WIIN Act's conversion mechanism was new: prior to the WIIN Act, the Reclamation Act had empowered contractors to convert their long-term water service contracts to repayment contracts with standard—but not prepaid—payment terms. *See* 43 U.S.C. 485h-1(2). It was only through the WIIN Act that Central Valley Project contractors could convert their water service contracts to repayment contracts with prepayment terms.[2]

That conversion mechanism was part of the WIIN Act's broader efforts to reform the federal government's management of water in California, which, at the time of the WIIN Act's passage, endured a protracted drought.[3] *See* WIIN Act §§ 4001–4014. Some short-term provisions, for example, told agencies to "maximize" water supplies and deliveries. *See id.* §§ 4001–02. One provision streamlined the way that Reclamation implements biological opinions, *id.* § 4005, and another allocated millions of dollars to water storage projects, *id.* § 4007. A final "savings clause"

[2] Charles V. Stern, Pervaze A. Sheikh & Nicole T. Carter, Cong. Rsch. Serv., R44986, *Water Infrastructure Improvements for the Nation Act (WIIN): Bureau of Reclamation and California* 23 (last updated Dec. 14, 2018).

[3] Stern, Sheikh & Carter, *supra* note 2, at 5–6.

subsection, at the end of the WIIN Act's "California Water" subtitle, preserves obligations created by the CVPIA and the ESA. *Id.* § 4012(a)(2).

**B.**

Many water districts soon took advantage of the WIIN Act's conversion mechanism. Between 2020 and 2021, Reclamation converted 67 water service contracts into repayment contracts pursuant to § 4011(a)(1) of the WIIN Act.[4] The converted contracts provided for delivery of almost three million acre-feet of water per year to the contracting water districts, subject to the availability of water. The terms governing water delivery—such as the maximum quantity of water and purpose of delivery—remained the same as those in the pre-conversion water service contracts. And as repayment contracts, the converted contracts were designed to continue indefinitely "so long as the Contractor pays applicable Rates and Charges." Reclamation did not prepare an environmental impact statement or initiate consultation with the Services before it converted those contracts.

Plaintiffs Center for Biological Diversity, Restore the Delta, and Planning and Conservation League sued Reclamation, the Department of the Interior, and the Secretary of the Interior. Plaintiffs alleged that Reclamation was required to perform NEPA review and ESA consultation before it converted each water service contract and that Reclamation's failure to do so violated NEPA and the ESA, and therefore, the Administrative Procedure Act, 5 U.S.C. §§ 701–06. The allocations of water secured by the converted contracts, Plaintiffs argued, would harm the Bay-

[4] Another 16 contracts have been proposed for conversion.

Delta ecosystem, and in particular, four species of protected fish. The district court compelled joinder of the water districts that had converted their water service contracts under the WIIN Act ("Contractors").

The district court granted summary judgment for Reclamation and the Contractors, holding that Reclamation's conversion of contracts under the WIIN Act did not require contract-specific NEPA review or ESA consultation. That is because, the district court reasoned, § 4011(a) of the WIIN Act "strips" Reclamation of "discretion to modify any water contractual rights other than those related to the financial terms specifically addressed by the WIIN Act," which makes it "impossible" for Reclamation to exercise discretion to benefit protected species or consider environmental effects as part of the contract conversion process. In so holding, the district court rejected Plaintiffs' contentions that § 4011(a) provides Reclamation such discretion and that its interpretation of § 4011(a) violated the WIIN Act's savings clauses. Plaintiffs timely appealed.

## II.

We review de novo the district court's grant of summary judgment, *Haaland*, 102 F.4th at 1063, and its interpretation of statutes, *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012). To determine whether NEPA and the ESA apply to Reclamation's conversion of contracts, we must first resolve whether the WIIN Act allows Reclamation to consider environmental effects and take actions that could benefit protected species as part of the contract conversion process.

NEPA requires that an agency conduct environmental review of actions only when that agency has "some control over preventing the environmental effects" of its actions.

*Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1163 (9th Cir. 2020) (quoting *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767 (2004)). Specifically, NEPA instructs agencies to prepare an environmental impact statement only for "major Federal actions," 42 U.S.C. § 4332(2)(C), and excludes from the definition of such actions "activities or decisions that are non-discretionary and made in accordance with the agency's statutory authority." *Id.* § 4336e(10)(B)(vii); *see also id.* § 4336(a)(4) ("[A]n agency is not required to prepare an environmental document" for "a nondiscretionary action with respect to which such agency does not have authority to take environmental factors into consideration in determining whether to take the proposed action.").

Similarly, Section 7(a)(2) of the ESA requires an agency to consult with the Fish and Wildlife Service and National Marine Fisheries Service only when that agency has "'some discretion' to take action for the benefit of a protected species." *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 784 (9th Cir. 2014) (quoting *Karuk Tribe of Cal. v. U.S. Forest Service*, 681 F.3d 1006, 1024 (9th Cir. 2012)). Section 7(a)(2)'s consultation obligation "does not attach to actions . . . that an agency is *required* by statute to undertake once certain specified triggering events have occurred." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007). Nor must an agency consult when "another legal obligation makes it impossible for the agency to exercise discretion for the protected species' benefit." *Jewell*, 749 F.3d at 784.

As we explain next, § 4011(a) of the WIIN Act creates a mandatory duty for Reclamation to convert water service contracts into repayment contracts upon the request of the contractor, and § 4011(a) does not provide Reclamation any

discretion to alter the terms of the contract to alleviate environmental harms as part of the conversion process. Thus, because conversion is a nondiscretionary act, Reclamation was not required to undertake NEPA review or ESA consultation prior to converting each water service contract under the WIIN Act.

**A.**

"As always, we begin with the statute's plain meaning." *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006). We read "the words of a statute . . . in their context and with a view to their place in the overall statutory scheme." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Because "statutory language must be construed as a whole," *United States v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021) (citation omitted), we look for the statute's meaning "not in any single section" but instead in "the parts together and in their relation to the end in view," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 158 (2012) (quoting *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting)).

The plain text of § 4011(a) commands Reclamation to convert contracts upon request and provides Reclamation discretion to change only contract terms that relate to the contract's payment structure. Two subsections of the WIIN Act are pertinent to our analysis.

The first directs Reclamation to convert contracts upon request:

> (1) CONVERSION AND PREPAYMENT OF CONTRACTS.—Upon request of the contractor, the Secretary of the Interior shall

> convert any water service contract in effect on the date of enactment of this subtitle and between the United States and a water users' association to allow for prepayment of the repayment contract pursuant to paragraph (2) under mutually agreeable terms and conditions.

WIIN Act § 4011(a)(1).

The second places conditions on converted contracts:

> (4) CONDITIONS.—All contracts entered into pursuant to paragraphs (1), (2), and (3) shall—
>
> (A) not be adjusted on the basis of the type of prepayment financing used by the water users' association;
>
> (B) conform to any other agreements, such as applicable settlement agreements and new constructed appurtenant facilities; and
>
> (C) not modify other water service, repayment, exchange and transfer contractual rights between the water users' association, and the Bureau of Reclamation, or any rights, obligations, or relationships of the water users' association and their landowners as provided under State law.

*Id.* § 4011(a)(4).

Read together, § 4011(a)(1) and § 4011(a)(4) order Reclamation to convert water service contracts upon request by changing only terms that relate to the contract's payment structure. Section 4011(a)(1) creates a mandatory duty to convert because it states that Reclamation "*shall* convert any water service contract" upon request. *Id.* § 4011(a)(1) (emphasis added). The next part of that sentence—"to allow for prepayment of the repayment contract . . . under mutually agreeable terms and conditions"—empowers Reclamation to negotiate some terms and conditions in doing so, but leaves unclear whether all terms and conditions are up for negotiation or just those that relate to the contract's payment structure. *Id.* Section 4011(a)(4)(C) in turn clarifies that Reclamation may alter only those terms that relate to payment because it directs that Reclamation "shall" "not modify other water service . . . contractual rights." *Id.* § 4011(a)(4)(C). That phrase bars Reclamation from changing other existing rights in the prior water service contract, such as the amount of water to be delivered and the manner of delivery.

Under this reading, Reclamation must convert contracts upon request and cannot consider environmental effects or take actions to benefit protected species when doing so. Plaintiffs do not contend that changes to a contract's payment structure alone could benefit the environment or protected species; therefore, the only contractual changes that could benefit the environment or protected species are modifications to "other . . . contractual rights," which § 4011(a)(4)(C) expressly bars. Because Reclamation lacks discretion to alleviate environmental harms as part of WIIN Act conversion, NEPA and the ESA do not require that Reclamation undertake contract-specific environmental review and consultation with the Services in the course of

WIIN Act conversions. *See* 42 U.S.C. § 4332(2)(C); *id.* § 4336e(10)(B)(vii); *Home Builders*, 551 U.S. at 669.

The purpose of § 4011(a) supports our interpretation of the WIIN Act's plain text. The WIIN Act's creation of a mandatory and nondiscretionary conversion mechanism facilitates § 4011(a)'s stated purpose to "fund the construction of water storage" in response to a period of prolonged drought, *id.* § 4011(e)(2). Congress sought to incentivize contractors to prepay the costs of water delivery to bolster investments in water storage. Its decision to shield contractors' water rights from agency modification encourages contractors to choose prepayment without fear of risking previously held water service rights and arrangements. Other aspects of § 4011 also appear designed to incentivize conversion. *See e.g.*, *id.* § 4011(c)(1) (exempting converted contracts from acreage limitations and full-cost pricing).

**B.**

We find Plaintiffs' alternative interpretations of § 4011(a) unpersuasive. First, relying on our previous decision in *Natural Resources Defense Council v. Houston*, 146 F.3d 1118 (9th Cir. 1998), Plaintiffs argue that the phrase "mutually agreeable terms and conditions" in § 4011(a)(1) grants Reclamation discretion to modify other contractual terms in ways beneficial to the environment. *Houston*, however, is inapplicable. In *Houston*, we held that Section 7 of the ESA applied to renewals of long-term water service contracts. *Id.* at 1125–26. We analyzed the Reclamation Act's renewal provision, which directed Reclamation to "include in any long-term contract . . . if the other contracting party so requests, for renewal thereof under stated terms and conditions mutually agreeable to the parties," 43 U.S.C.

485h-1(1), as well as a provision that guaranteed the contractors' "first right . . . to a stated share or quantity of the project's available water supply" during renewal, *id.* § 485h–1(4).

We concluded that this statutory text granted some discretion to Reclamation during the negotiation process because (1) "the government is to renew the contracts on 'mutually agreeable' terms," (2) the Secretary "has the discretion to set rates to cover an appropriate share of the operation and maintenance costs," and (3) "water rights are based on the amount of available project water." *Houston*, 146 F.3d at 1126 (citing 43 U.S.C. §§ 485h–1(1), (4); *id.* § 485h(e)). Therefore, Reclamation could "reduce the amount of water for sale" while still maintaining a contractor's share of the water supply.**[5]** *Id.*

The WIIN Act's "mutually agreeable terms and conditions" phrase does not grant Reclamation the same discretion that we found in *Houston*. While this phrase empowers Reclamation to negotiate some terms and conditions, unlike the Reclamation Act provision at issue in

[5] In *Houston*, we found it significant that, during the renewal process, Reclamation had discretion to reduce the total amount of available water to all water districts to benefit protected species. That reduction in total water still complied with Reclamation's obligation to maintain contractors' "stated share" of the "project's available water supply," 43 U.S.C. § 485h–1(4). *See* 146 F.3d at 1126. But here, Plaintiffs do not argue that Reclamation has similar discretion in connection with WIIN Act contract conversions. While Reclamation may reduce the amount of water delivered to contractors if its programmatic review reveals adverse environmental impacts in its operations of the Central Valley Project, that review remains distinct from the contract conversion process. Reclamation may not modify any contractual right to address the potential adverse impacts of converting a water service contract under the WIIN Act's conversion process.

*Houston*, the WIIN Act expressly limits the scope of those negotiations. The WIIN Act makes clear that Reclamation may only negotiate payment-related terms because § 4011(a) directs that conversion should "allow for prepayment of the repayment contract" and that Reclamation "shall . . . not modify other water service . . . contractual rights." WIIN Act §§ 4011(a)(1), (4)(C). The Reclamation Act provision analyzed in *Houston* contained no similar restriction. *Compare id.*, *with* 43 U.S.C. 485h-1(1). Accordingly, our conclusion that Reclamation had discretion in *Houston* does not mean that Reclamation has discretion here. [6]

Second, Plaintiffs maintain that the WIIN Act's instruction to preserve "other water service . . . contractual rights" applies only to rights in "contracts *other* than the subject converted contracts," not rights within the converted contracts. Plaintiffs argue that the text of § 4011(a)(4)(C) leaves unclear which rights could be modified within the converted contracts. Plaintiffs' argument fails to persuade because the subsections preceding § 4011(a)(4)(C) make clear that the modifiable rights at issue are those the statute instructs Reclamation to modify—rights concerning

---

[6] A comparison between the WIIN Act and the Reclamation Act's conversion provisions reinforces our conclusion that WIIN Act conversion is non-discretionary. The Reclamation Act provides a right to convert a water service contract into a standard—that is, non-prepaid––repayment contract. That conversion provision uses the same "terms and conditions mutually agreeable" phrase used in the renewal provision of the Reclamation Act. *See* 43 U.S.C. 485h-1(2). And, like the renewal provision analyzed in *Houston*, the Reclamation Act's conversion provision contains no command to "not modify" other contractual rights. Congress's decision to draft the WIIN Act's conversion provision differently suggests that Congress wanted conversion to prepaid contracts to work differently—and more seamlessly—than conversion to standard contracts.

payment. *See id.* § 4011(a)(1)–(3). And grammatically, "other" does not modify "contracts" but instead modifies "contractual *rights*." *Id.* § 4011(a)(4)(C) (emphasis added). Finally, as the district court observed, "it is unclear how a contract converted/entered into pursuant to the WIIN Act could ever 'modify' rights created by a separate contract."

Third, Plaintiffs contend that Reclamation's actions are inconsistent with its current position that it does not have discretion to modify terms of a contract beyond the contracts' payment structure. To support their argument, Plaintiffs identify two articles in the pre-conversion version of the Westlands water service contract that, according to Plaintiffs, were modified or deleted to eliminate Reclamation's contractual obligation to conduct environmental review and consultation.[7] The changes Plaintiffs identify, however, were simply part of the ordinary transformation of a water service contract to a repayment contract and do not demonstrate that the agency had discretion to modify non-payment terms.

For example, Plaintiffs point to Reclamation's deletion of Article 2 (titled "Term of Contract"), which described the prior water service contract's fixed term of years and authorized the parties to extend that term through renewal. Article 2 stated that short-term renewals should only occur upon "completion of all environmental review," and that for long-term renewals, the parties should "expeditiously complete the environmental documentation required of each of them." This language does not create a freestanding duty to conduct environmental review for conversions. Instead, it merely reflects that contract renewals under the

[7] The parties stipulated that the Westlands contract is representative of the type of changes made to contracts converted under the WIIN Act.

Reclamation Act require environmental review. But as explained above, renewals are not conversions, and Reclamation's deletion of Article 2 makes sense here because the converted contract, as a repayment contract, lacks a fixed term of years and therefore does not need to be renewed. *See* WIIN Act § 4011(a)(2)(D).

Plaintiffs also identify Article 3(e), which directed the Contractor to "comply" with biological opinions prepared "as [a] result of a consultation regarding the execution of this Contract." After conversion, Article 3(e) directed the Contractor to instead comply with biological opinions prepared "as a result of a consultation regarding the *execution of any water service contract between the Contracting Officer and the Contractor in effect immediately prior to the Effective Date*." Plaintiffs argue that the pre-conversion version of this article obligated Reclamation to consult and that by adding the italicized language, Reclamation eliminated that obligation. We disagree. Article 3(e) does not require Reclamation to initiate consultation because it speaks to the Contractors'—not Reclamation's—obligations, and because Article 3(e) concerns compliance, not consultation, with any previously existing biological opinion under the prior water service contract.

## C.

Finally, contrary to Plaintiffs' argument, our reading of § 4011(a) complies with the WIIN Act's savings clauses. Plaintiffs argue that our interpretation violates the savings clauses that preserve obligations under the CVPIA, the ESA savings clauses, and "existing law." *See* WIIN Act §§ 4011(d)(4), 4012(a). We find no merit to Plaintiffs' arguments.

First, our reading of § 4011(a) complies with WIIN Act § 4012(a)(2), which preserves the government's obligations under the CVPIA. That clause provides:

> (a) IN GENERAL.—This subtitle [California Water Subtitle J] shall not be interpreted or implemented in a manner that—
>
> . . .
>
> (2) affects or modifies any obligation under the Central Valley Project Improvement Act (Public Law 102–575; 106 Stat. 4706), except for the savings provisions for the Stanislaus River predator management program expressly established by section 11(d) and provisions in section 11(g)[.]

WIIN Act § 4012(a)(2).

Our reading of § 4011(a) does not affect or modify any obligation under the CVPIA because the CVPIA speaks only to Reclamation's renewal—not conversion—of contracts. Plaintiffs invoke CVPIA § 3404(c), which authorizes Reclamation to "renew any existing long-term repayment or water service contract for the delivery of water from Central Valley Project for a period of twenty-five years" and "for successive periods of up to 25 years each" only after Reclamation conducts "appropriate environmental review" for "such renewals." CVPIA § 3404(c)(1). That provision does not speak to conversion, which reclamation law treats as distinct from renewal. *See, e.g.*, 43 U.S.C. § 485h-1. Even if the concept of renewal encompassed conversion, the

CVPIA's environmental review requirement still would not apply to these WIIN Act conversions because the CVPIA applies only to "such renewals"—that is, renewals for 25-year-long terms—and therefore, excludes contracts that last indefinitely.[8] CVPIA § 3404(c)(1).

Second, our interpretation of § 4011(a) also complies with the WIIN Act's ESA savings clauses in § 4012(a)(3) and § 4012(a)(4). Those clauses provide:

> (a) IN GENERAL.—This subtitle [California Water Subtitle J] shall not be interpreted or implemented in a manner that—
>
> . . .
>
> (3) overrides, modifies, or amends the applicability of the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.) or the application of the smelt and salmonid biological opinions to the operation of the Central Valley Project or the State Water Project;

[8] Plaintiffs' remaining arguments as to the WIIN Act's CVPIA savings clause presuppose that Reclamation must conduct environmental review in the first instance. Plaintiffs argue that the express exception for the "Stanislaus River predator management program," WIIN Act § 4012(a)(2), implies that Congress did not make a similar exception to the CVPIA for the conversion of contracts. But that argument assumes that the CVPIA requires environmental review for the conversion of contracts. Plaintiffs also argue that the district court's interpretation of the WIIN Act violates the CVPIA's requirement that Reclamation must, "[u]pon renewal," "incorporate all requirements imposed by existing law." CVPIA § 3404(c). But again, that requirement—in addition to applying only to renewals—preserves only existing obligations.

> (4) would cause additional adverse effects on listed fish species beyond the range of effects anticipated to occur to the listed fish species for the duration of the applicable biological opinion, using the best scientific and commercial data available[.]

WIIN Act § 4012(a)(3)–(4).

As to WIIN Act § 4012(a)(3), our interpretation does not override, modify, or amend any obligation to consult under the ESA because no consultation obligation attaches to WIIN Act conversions. Moreover, it is unclear whether § 4012(a)(3) applies to contract conversions at all because § 4012(a)(3) preserves the ESA's applicability only "to the operation" of the CVP, *id.*, which is the subject of separate sections of the WIIN Act. *See id.* §§ 4001–04. WIIN Act § 4012(a)(4), additionally, does not discuss Reclamation's consultation obligation.

Third, our interpretation of § 4011(a) complies with the WIIN Act's prepayments savings clause for "existing law not altered." That clause provides:

> (d) EFFECT ON EXISTING LAW NOT ALTERED.—Implementation of the provisions of this subtitle shall not alter—
>
> > (4) except as expressly provided in this section, any obligations under the reclamation law, including the continuation of Restoration Fund charges pursuant to section 3407(d), of the water service and repayment contractors

> making prepayments pursuant to this section.

WIIN Act § 4011(d)(4) (citation omitted)

Our reading of § 4011(a) does not alter "any obligations under reclamation law" because reclamation law creates no separate obligation to conduct review or consultation. *Id.* § 4011(d)(4). And § 4011(d)(4) does not concern Reclamation's obligations because that clause preserves only those "obligations . . . of the . . . contractors." *Id.* [9]

**III.**

We hold that Reclamation's conversion of contracts under § 4011(a) of the WIIN Act did not violate NEPA or the ESA. Reclamation was not required to conduct contract-specific environmental review or initiate consultation before converting those contracts because § 4011(a) creates a mandatory duty to convert water service contracts upon request and prohibits Reclamation from considering the environmental effects of the contract conversion or exercising discretion to benefit protected species when converting contracts. *See* 42 U.S.C. § 4332(2)(C); *id.* § 4336e(10)(B)(vii); *Home Builders*, 551 U.S. at 669.

Our holding is limited and is not meant to suggest that the water deliveries secured by the converted repayment contracts are no longer subject to environmental review. As Reclamation acknowledges, these water deliveries remain

[9] Contrary to Plaintiffs' argument, we do not need to conclude that the WIIN Act impliedly repealed the ESA, NEPA, and the CVPIA. These statutes do not conflict because the ESA, NEPA, and CVPIA do not apply to WIIN Act conversions. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (explaining that courts must "strive to give effect" to "two Acts of Congress allegedly touching on the same topic.").

subject to the environmental impact statements and biological opinions that Reclamation must prepare and follow as part of its operation of the Central Valley Project. *See Haaland*, 102 F.4th at 1057.

**AFFIRMED.**